🖎 JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

LAURA BARTONI, on behalf herself, and on behalf of all others similarly situated

### DEFENDANTS

AMERICAN MEDICAL RESPONSE WEST, AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE INC., AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE, AMERICAN MEDICAL RESPONSE OF SOUTHERN CALIFORNIA and DOES 1 THROUGH 50, inclusive

**(b)** County of Residence of First Listed Plaintiff  Contra Costa
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Yolo County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Todd M. Schneider
Schneider Wallace Cottrell Brayton Konecky LLP
180 Montgomery Street, Suite 200
San Francisco, CA 94104
415.421.7100

Attorneys (If Known)

MICHAEL S. KUN (#208684)
EPSTEIN BECKER & GREEN
1925 Century Park East, Suite 500
Los Angeles, California 90067
310.556.8861

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | **PERSONAL INJURY** | ☒ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 362 Personal Injury - Med. Malpractice | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 365 Personal Injury - Product Liability | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | **PERSONAL PROPERTY** | **IMMIGRATION** | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 370 Other Fraud | ☐ 462 Naturalization Application | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 371 Truth in Lending | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 380 Other Personal Property Damage | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 385 Property Damage Product Liability | | | |
| **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | |
| ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence Habeas Corpus: | | | |
| ☐ 442 Employment | ☐ 530 General | | | |
| ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | | |
| ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | |
| ☐ 445 Amer. w/Disabilities - Employment | ☐ 550 Civil Rights | | | |
| ☐ 446 Amer. w/Disabilities - Other | ☐ 555 Prison Condition | | | |
| ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 USC Section 1331, 1441(a)&(b), 1332, and 29 USC Section 152(2)

Brief description of cause:
Overtime, meal and rest breaks, and waiting time penalities

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

☐ CHECK YES only if demanded in complaint

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE                              DOCKET NUMBER

DATE                   SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

FDJS44

COPY

FILE BY FAX

E-filing

1  Michael S. Kun     (State Bar No. 208684)
   EPSTEIN BECKER & GREEN, P.C.
2  1925 Century Park East, Suite 500
   Los Angeles, California 90067-2506
3  Telephone: 310.556.8861
   Facsimile: 310.553.2165
4  mkun@ebglaw.com

5  Joseph D. Miller    (State Bar No. 109032)
   Matthew A. Goodin   (State Bar No. 169674)
6  EPSTEIN BECKER & GREEN, P.C.
   One California Street, 26th Floor
7  San Francisco, California 94111-5427
   Telephone: 415.398.3500
8  Facsimile: 415.398.0955
   jmiller@ebglaw.com
9  mgoodin@ebglaw.com

10 Attorneys for Defendants
   AMERICAN MEDICAL RESPONSE, INC., AMERICAN MEDICAL
11 RESPONSE WEST, AMERICAN MEDICAL RESPONSE
   AMBULANCE SERVICE INC., AMERICAN MEDICAL RESPONSE
12 OF INLAND EMPIRE, and AMERICAN MEDICAL RESPONSE OF
   SOUTHERN CALIFORNIA
13

ORIGINAL FILED
AUG 2 0 2008
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR
EMC

14         UNITED STATES DISTRICT COURT

15         NORTHERN DISTRICT OF CALIFORNIA

16 LAURA BARTONI, on behalf herself,      CASE NO. C08-03978
17 and on behalf of all others similarly
   situated,                             (Alameda County Superior Court Case
18                                        No.: RG08382130)
           Plaintiff,
19                                        Complaint Filed:  April 16, 2008
         v.
20                                        NOTICE OF REMOVAL BY
   AMERICAN MEDICAL RESPONSE             DEFENDANTS AMERICAN
21 WEST, AMERICAN MEDICAL                MEDICAL RESPONSE WEST,
   RESPONSE AMBULANCE SERVICE            AMERICAN MEDICAL
22 INC., AMERICAN MEDICAL                RESPONSE AMBULANCE
   RESPONSE OF INLAND EMPIRE,            SERVICE INC., AMERICAN
23 AMERICAN MEDICAL RESPONSE             MEDICAL RESPONSE OF
   OF SOUTHERN CALIFORNIA and            INLAND EMPIRE, AND
24 DOES 1 THROUGH 50, inclusive,         AMERICAN MEDICAL
                                         RESPONSE OF SOUTHERN
25         Defendants.                    CALIFORNIA
26
27                                        Under 28 U.S.C. § 1332(d) [Class
                                          Action Fairness Act Of 2005]; 28
                                          U.S.C. §1441(a) and (b) [Federal
                                          Question]
28

LA:525517v1

Bartoni v. American Medical Response, Inc., et al.
NOTICE OF REMOVAL

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that Defendants American Medical Response, Inc., American Medical Response West, American Medical Response Ambulance Service Inc., American Medical Response of Inland Empire, and American Medical Response of Southern California (collectively "Defendants") hereby remove to this Court the state court action filed by Plaintiff Laura Bartoni ("Plaintiff") on behalf of a proposed class of persons. Jurisdiction is invoked pursuant to 28 U.S.C §§ 1453 and 1332(d) and the Class Action Fairness Act of 2005 ("CAFA") in that the number of members of the proposed plaintiff class in the aggregate is more than 100, the amount in controversy exceeds $5 million exclusive of costs and interest and Plaintiff is a citizen of a state different than a Defendant. Jurisdiction is also independently involved pursuant to 28 U.S.C. § 1331, which confers jurisdiction for cases involving federal questions.

## PLEADINGS AND PROCESS

1.      On or about April 16, 2008, Plaintiff, on behalf of herself and on all others similarly situated, commenced the above-entitled action in the Superior Court of the State of California for the County of Alameda by filing a complaint therein entitled <u>Laura Bartoni, on behalf of herself, and on behalf of all others similarly situated vs. American Medical Response, Inc., American Medical Response West, American Medical Response Ambulance Service Inc., American Medical Response of Inland Empire, American Medical Response of Southern California and Does 1 through 50, Inclusive</u>, Case No. RG08382130.

2.      The Complaint purports to state causes of action for: (1)  failure to pay overtime wages in violation of Labor Code §§510 and 1194 and IWC Wage Orders; (2) failure to provide meal and rest periods in violation of California Labor Code §§226.7 and 512; IWC Wage Orders; (3) unpaid wages and waiting time penalties pursuant to Labor Code §§201-203; (4) violation of California Business and Professions Code §§17200, et seq.

- 1 -

3.     True and correct copies of the Summons, Complaint, and Civil Case Cover Sheet are attached hereto collectively as Exhibit A.

4.     Because the Complaint did not, on its face, set forth grounds for removal, each Defendant filed an Answer to the Complaint in state court on or about May 30, 2008.  True and correct copies of the Answers are attached hereto as Exhibit B.

5.     Exhibits A and B constitute all the process, pleadings and orders delivered on any party in the Superior Court action.

6.     As discussed more fully below, Plaintiff's responses to discovery requests have provided two independent grounds for removal.

## BASIS FOR REMOVAL

### I.     DIVERSITY JURISDICTION

7.     This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to the United States District Court by Defendants pursuant to the provisions of 28 U.S.C. §§ 1332(d), 1441 and 1453 in that it is a purported class action in which there are more than 100 putative class members, it is between citizens of different states, and the amount in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

8.     As alleged more fully below, this Court has original jurisdiction under CAFA over all claims brought by Plaintiff, on behalf of herself and all members of the putative class.  Because Plaintiff's action could have been filed in this Court, Defendants may remove it pursuant to 28 U.S.C. § 1441.

9.     CAFA was enacted to expand federal jurisdiction over purported class actions.  It provides that a purported class action may be removed in accordance with 28 U.S.C. § 1446 if:  (a) membership in the putative class is not less than 100; (b) any member of the plaintiff class is a citizen of a foreign country or a state different from any defendant; and (c) the aggregate amount in controversy exceeds

- 2 -

1  $5,000,000.00. 28 U.S.C. §§ 1332(d), 1453(b).

2  ### A.  Class Size

3      10.   CAFA's requirement that proposed class membership be no less than

4  100 (28 U.S.C. § 1332(d)(5)) is satisfied here because the putative class has more

5  than 100 members.

6      11.   Plaintiff seeks to represent all of Defendants' current or former

7  "dispatchers." (Complaint ¶¶ 1, 22.)   Defendant American Medical Response,

8  Inc.'s ("AMR") records indicate that it currently employ 265 dispatchers in

9  California. (Declaration of Lynne M. Ward, ¶ 4). This does not include other

10  persons who were employed as dispatchers during the four-year limitations period

11  who are no longer employed.

12  ### B.  Citizenship

13      12.   CAFA's requirement that any one member of the proposed class be a

14  citizen of a state different from any defendant (28 U.S.C. § 1332(d)(2)) is also

15  satisfied here.

16      13.   Defendants are informed and believe that Plaintiff was, at the time of

17  filing of this action, and still is, a citizen of the State of California. <u>See</u> Complaint

18  ¶ 7 (" . . . Plaintiff is and at all relevant times has been a resident of Brentwood,

19  California.")

20      14.   Defendant American Medical Response, Inc. was, at the time of the

21  filing of this action, and still is, a corporation formed under the laws of the State of

22  Delaware, and has its principal place of business in Greenwood Village, Colorado.

23  It has no employees in California. Defendant American Medical Response, Inc. is,

24  therefore, a citizen of Delaware and Colorado.  (Ward Dec., ¶ 2).

25      15.   Defendant American Medical Response Ambulance Service, Inc. was,

26  at the time of the filing of this action, and still is, a corporation formed under the

27  laws of the State of Delaware and has its principal place of business in Greenwood

28  Village, Colorado.   It has no employees in California. Defendant American

- 3 -

1    Medical Response Ambulance Service, Inc. is, therefore, a citizen of Delaware and

2    Colorado.  (Ward Dec., ¶ 3).

3         16.    The requirements for diversity jurisdiction are met because Plaintiff

4    and Defendants American Medical Response, Inc. and American Medical

5    Response Ambulance Service, Inc. are citizens of different states.

6         **C.    Amount In Controversy**

7         17.    CAFA's requirement that the aggregate amount in controversy

8    exceeds $5,000,000.00, exclusive of interest and costs (28 U.S.C. § 1332(d)(2)), is

9    satisfied as well.  Although Defendants dispute liability and damages, the damages

10   Plaintiff claims for herself and the putative classes exceed $5,000,000.00.

11        18.    The Complaint does not specify the amount in controversy.  However,

12   for a putative class of more than 265 persons, Plaintiff seeks, <u>inter alia</u>, recovery

13   for alleged unpaid overtime for a period of four (4) years, alleged unpaid meal and

14   rest breaks for a period of four (4) years, penalties for alleged wage statement

15   violations, waiting time penalties, and attorney's fees.

16        19.    In discovery responses she served on July 21, 2008, Plaintiff produced

17   a copy of the collective bargaining agreement ("CBA") between National

18   Emergency Medical Services Association and AMR. A copy of the collective

19   bargaining agreement produced by Plaintiff Laura Bartoni in discovery is attached

20   hereto as Exhibit F.

21        20.    According to the CBA, dispatchers' wages range from $13.89 to

22   $32.13 an hour depending on the dispatcher's work location, years of experience,

23   and shift type.

24        21.    Without admitting any liability whatsoever, the same being expressly

25   denied, Defendants calculate that given the wage rates as defined in the CBA, and

26   the recovery sought in the Complaint, including penalties, each putative class

27   member would receive more than $45,000.00 were a class to be certified and were

28   the class to prevail on all claims and recover the full amount permitted by law.

1 Accordingly, with a putative class of more than 265 persons, the amount in
2 controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

3     22.    For these reasons, the amount in controversy requirement of 28 U.S.C.
4 §§ 1332(d) and 1453 has been met.

5 **II.    FEDERAL QUESTION JURISDICTION**

6     23.    Removal is also proper for the independent reason that Plaintiff's
7 lawsuit involves a federal question. 28 U.S.C. §§1331, 1441(b). <u>Grable & Sons</u>
8 <u>Metal Pords., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 312 (2005). Specifically,
9 as Plaintiff's discovery responses make clear, Plaintiff's First and Second Causes
10 of Action arise under 29 U.S.C. §152(2), the Labor Management Relations Act of
11 1947.

12     24.    Defendant AMR is an employer within the meaning of the Labor
13 Management Relations Act of 1947 ("LMRA"); 29 U.S.C. §152(2).

14     25.    Plaintiff's Complaint makes no reference to any unions or collective
15 bargaining agreements. However, in the discovery responses she served on July 21,
16 2008, Plaintiff acknowledged that she had been represented by a union. A copy of
17 Plaintiff's Responses to Defendant AMR's Requests for Admission are attached
18 hereto as Exhibit E.

19     26.    On the same day, Plaintiff also produced a copy of the collective
20 bargaining agreement between National Emergency Medical Services Association
21 and American Medical Response Northern California. A copy of the collective
22 bargaining agreement produced by Plaintiff Laura Bartoni in discovery is attached
23 hereto as Exhibit F.

24     27.    The First Cause of Action of the Complaint alleges a cause of action
25 for failure to pay overtime wages in violation of Labor Code §§510 and 1194 and
26 Industrial Welfare Commission ("IWC") Wage Orders. The Second Cause of
27 Action in the Complaint alleges a cause of action for failure to provide meal and
28 rest periods in violation of California Labor Code §§226.7 and 512; IWC Wage

- 5 -

1    Orders. (Complaint ¶¶ 24 -29, 35-37.)

2        28.    Federal courts have original jurisdiction over claims under the LMRA

3    for breaches of collective bargaining agreements.   29 U.S.C. § 185 ("Section

4    301").   Section 301 provides that: "[s]uits for violation of contracts between an

5    employer and a labor organization . . . may be brought in any district court of the

6    United States having jurisdiction of the parties without regard to the amount in

7    controversy or without regard to the citizenship of the parties.   Firestone v.

8    Southern California Gas Co., 219 F.3d 1063, 1065 (9th Cir. 2000).   Accordingly,

9    Section 301 preempts state-law claims "that are substantially dependent upon

10   analysis of the terms of an agreement made between the parties in a labor

11   contract."   Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985).   Any state

12   claim implicating Section 301 as a defense, therefore, is subject to "complete

13   preemption" and may be removed where the court must interpret the parties

14   collective bargaining agreement to resolve the dispute.   Metropolitan Life, Ins. Co.

15   v. Taylor, 481 U.S. 58, 63-64, 107 S. Ct. 1542 (1987); Adkins v. Mireles, 2008

16   WL 2066569, at *4 (9th Cir. May 16, 2008) (Section 301 preempts state law

17   claims that require a resolution of the meaning of a CBA);  Newberry v. Pacific

18   Racing Association, 854 F.2d 1142, 1146 (9th Cir. 1988) ("The preemptive force

19   of section 301 is so powerful that it displaces entirely any state cause of action for

20   violation of a collective bargaining agreement . . . and any state claim whose

21   outcome depends on analysis of the terms of the agreement."); Young v.

22   Anthony's Fish Grottos, Inc., 830 F. 2d 993, 997-98 (9th Cir. 1987) (Section 301

23   preemption supplants state claim with federal claim); Greenly v. Sara Lee Corp.,

24   2008 WL 192925230, at *21 (E.D. Cal. 2008) ("The United States Supreme Court

25   has articulated that 'where the right [at issue in the lawsuit] is created by state law

26   [but the application of state law] requires the interpretation of a [CBA],'" state law

27   claims are preempted by Section 301).

28       29.    Plaintiff's state law claims based on Defendants' alleged failure to pay

- 6 -

1  overtime wages in violation of Labor Code §§510 and 1194 and IWC Wage

2  Orders, and alleged failure to provide meal and rest periods in violation of

3  California Labor Code §§226.7 and 512 and IWC Wage Orders, are preempted by

4  Section 301 because whether Defendants paid Plaintiff overtime wages, and

5  whether they provided meal and rest periods, requires the Court to analyze and

6  interpret the collective bargaining agreement and the past practices between

7  Defendants and the unions.  The parties' past practices are deemed to be part of the

8  collective bargaining agreement. <u>Consol. Rail Corp. v. Ry. Labor Execs. Ass'n</u>,

9  491 U.S. 299, 302 (1989) ("[C]ollective-bargaining agreements may include

10 implied, as well as express, terms.  Furthermore, it is well established that the

11 parties' 'practice, usage, and custom' is of significance in interpreting their

12 agreement.")    Specifically, the Court must interpret Defendants' practices

13 regarding the extent to which they agreed that the putative class members are to be

14 paid overtime in accordance with Labor Code §§510 and 119 and may take rest

15 and meal breaks in accordance with California IWC Wage Order No. 1-

16 2001(11)(A), or as bargained for in the collective bargaining agreement.

17        30.    The Court also must interpret the parties' labor contract and its

18 practice of providing and making available to the putative class members rest and

19 meal periods, during which they are able to do what they choose, to resolve

20 Plaintiff's claims. <u>Brinker Rest. Co. v. Sup. Ct.</u> (2008) 2008 Cal.App.  LEXIS

21 1138 (meal and rest breaks need only be offered to employees, and need not be

22 ensured);  <u>Brown v. Federal Express Corp</u>, 2008 WL 906517, at *6 (C.D. Cal.

23 February 26, 2008) (employers must simply allow their employees to take breaks

24 because requiring employers to enforce meal breaks would create an undue burden

25 on them); <u>White v. Starbucks</u>, 497 F. Supp. 2d 1080, 1086 (N.D. Cal. 2007)

26 (employers are only required to make meal breaks available and need not force

27 their employees to take breaks).

28 ///

- 7 -

LA:525517v1

Bartoni v. American Medical Response, Inc., et al.
NOTICE OF REMOVAL

31.    These issues require the Court to interpret the parties' custom and practices and are readily distinguishable from the decision in <u>Valles v. Ivy Hill Corp.</u>, 410 F.3d 1071, 1076 (9th Cir. 2005), in which the court found no Section 301 preemption on the grounds that employees could not waive their right to take a meal break after five hours of work.   Here, analysis of the parties' collective bargaining agreement and past practices is necessary, not to determine waiver, but to show duty free time was made available to employees by agreement.

32.    Plaintiff's First and Second Causes of Action are therefore ones for breach of a collective bargaining agreement, and these state law claims are entirely preempted under LMRA § 301(a), 29 U.S.C. § 185(a).   Accordingly, this is an action over which the United States District Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185. <u>Young,</u> 830 F.2d at 997-999.

33.    The district court may exercise supplemental jurisdiction over Plaintiff's non-preempted state claims, if any, by virtue of 28 U.S.C. §1441(c).

## VENUE

34.    This is the District Court of the United States for the district embracing the place where the state court action was filed, and is, therefore, the appropriate court for removal.

## TIMELINESS OF REMOVAL

35.    This Notice of Removal is being timely filed within thirty (30) days of service on Defendant American Medical Response West ("AMR West") of Plaintiff's July 21, 2008 responses to Defendant AMR West's Request for Production of Documents and Requests for Admissions, in which Plaintiff first provided information revealing that the case was removable in diversity and/or federal question grounds.

36.    Removability under 29 U.S.C. §1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry.   Thus, the first 30-requirement is

- 8 -

1  triggered by defendant's receipt of an "initial pleading" that reveals a basis for
2  removal. If no ground for removal is evident in that pleading, the case is not
3  removable at that stage. In such case, "the notice of removal may be filed within
4  thirty days after the defendant receives 'an amended pleading, motion or other
5  paper' from which it can be ascertained from the face of the document that
6  removal is proper." <u>Harris v. Bankers Life and Casualty Company</u>, 425 F. 3d 689,
7  *694* (9th Cir.2005). Discovery responses may serve as papers within the meaning
8  of section 1446(b) of informing a defendant that the case is no longer ambiguous
9  and is consequently removable. <u>Eyak Native Vill. V. Exxon Corp.</u>, 25 F.3d 773,
10 779 (9th Cir. 1994).

11      37.    On June 13, 2008, Defendant AMR West served its Requests for
12 Production of Documents and Requests for Admissions on Plaintiff. (Declaration
13 of Michael S. Kun, ¶ 2, Exhs. C and D).

14      38.    On July 21, 2008, Plaintiff responded to Defendant AMR West's
15 Request for Admissions by admitting that she was a member of the National
16 Emergency Medical Services Association. (Kun Dec., ¶ 3, Exh. E).

17      39.    On July 21, 2008, Plaintiff responded to Defendant AMR West's
18 Requests for Production of Documents by producing a copy of the collective
19 bargaining agreement between National Emergency Medical Services Association
20 and American  Medical Response Northern California for the period between July
21 1, 2006 and June 30, 2008. (Kun Dec., ¶ 4, Exh. F).

22      40.    Plaintiff's discovery responses constitute "papers" indicating that this
23 case is removable.

24      41.    This notice of removal is filed within thirty (30) days of Plaintiff's
25 service of her discovery responses.

26 ///
27 ///
28 ///

- 9 -

LA:525517v1

Bartoni v. American Medical Response, Inc., et al.
NOTICE OF REMOVAL

1      42.   For all of the foregoing reasons, this Court has original jurisdiction

2  under 28 U.S.C. §§ 1331, 1332 and 1441(b).

3

4  DATED:  August 20, 2008

EPSTEIN BECKER & GREEN, P.C.

5

6  By:

Michael S. Kun
7      Joseph D. Miller
Matthew A. Goodin
8

9  Attorneys for Defendants
AMERICAN MEDICAL RESPONSE,
INC., AMERICAN MEDICAL
10  RESPONSE WEST, AMERICAN
MEDICAL RESPONSE
11  AMBULANCE SERVICE INC.,
AMERICAN MEDICAL RESPONSE
12  OF INLAND EMPIRE, and
AMERICAN MEDICAL RESPONSE
13  OF SOUTHERN CALIFORNIA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 10 -

LA:525517v1

Bartoni v. American Medical Response, Inc., et al.
NOTICE OF REMOVAL

# DECLARATION

xxx

## DECLARATION OF MICHAEL S. KUN

I, Michael S. Kun, the undersigned, hereby declare and say as follows:

1.      I am an attorney licensed to practice law before all courts of the State of California and am a Shareholder in the law firm of Epstein Becker & Green, P.C., attorneys for Defendants American Medical Response, Inc., American Medical Response West, American Medical Response Ambulance Service Inc., American Medical Response of Inland Empire, and American Medical Response of Southern California (collectively "Defendants"). I have direct and personal knowledge of the facts stated herein and, if called and sworn as a witness, I would and could testify competently to the truth of the matters set forth herein. I submit this declaration in support of Defendants' removal of the State Court Action.

2.      On June 13, 2008, Defendant American Medical Response West ("AMR West") served its Requests for Production of Documents and Requests for Admissions on Plaintiff. A true and correct copy of Defendant AMR West's Requests for Production of Documents served on Plaintiff is attached hereto as Exhibit C. A true and correct copy of Defendant AMR West's Requests for Admissions served on Plaintiff is attached hereto as Exhibit D.

3.      On July 21, 2008, Plaintiff responded to Defendant AMR West's Request for Admissions by admitting that she was a member of the National Emergency Medical Services Association. A true and correct copy of Plaintiff's Responses to Defendant AMR West's Requests for Admissions is attached hereto as Exhibit E.

4.      On July 21, 2008, Plaintiff responded to Defendant AMR West's Requests for Production of Documents by producing a copy of the collective bargaining agreement between National Emergency Medical Services Association and American Medical Response Northern California for the period between July 1, 2006 and June 30, 2008. A true and correct copy of Plaintiff's Responses to Defendant AMR West's Requests for Production of Documents with the collective

- 11 -

1    bargaining agreement is attached hereto as Exhibit F.

2        5.    We have calculated that each putative class member would receive in

3    excess of $45,000 were a class to be certified and were the class to prevail on all

4    claims and recover the full amount permitted by law.  Given a putative class of

5    more than 265 persons, the amount in controversy in this case exceeds

6    $5,000,000.00.

7        I declare under penalty of perjury under the laws of the United States of

8    America that the foregoing is true and correct.

9        Executed this 20th day of August, 2008, at Los Angeles, California.

10

11

12    MICHAEL S. KUN

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 12 -

# EXHIBIT A

xxx

*6493091*

00

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
American Medial Response, Inc., American Medical Response West,
American Medical Response Ambulance Service, Inc., American
Medical Response of Inland Empire, American Medical Response of
Southern California, and Does 1 Through 50, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Laura Bartoni, on behalf of herself, and on behalf of all others similarly
situated

**FILED**
**ALAMEDA COUNTY**

APR 1 6 2008

CLERK OF THE SUPERIOR COURT
By _____
                        Deputy

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Alameda<br>1225 Fallon Street, Oakland, CA 94612 | CASE NUMBER: *(Número del Caso):*<br>**0 8 3 8 2 1 3 0** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Todd M. Schneider, Clint J. Brayton, W.H. "Hank" Willson, IV
SCHNEIDER & WALLACE, 180 Montgomery St, Suite 2000, San Francisco, CA 94104

| DATE: *(Fecha)* 4/16/08 | Pat S. Sweeten Clerk, by *(Secretario)* _____, Deputy *(Adjunto)* |
|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [ ] on behalf of *(specify):*
   under: [ ] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

EXHIBIT A PAGE 13

**ORIGINAL**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Todd M. Schneider SBN 158253, Clint Brayton SBN 199214
W. H. "Hank" Willson, IV SBN 233321
SCHNEIDER & WALLACE
180 Montgomery Street, Suite 2000, San Francisco, CA 94104
TELEPHONE NO.: 415 421 7100     FAX NO.: 415 421 7105
ATTORNEY FOR *(Name):* Plaintiff Laura Bartoni et al

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland 94612
BRANCH NAME:

**FILED
ALAMEDA COUNTY**

APR 16 2008

CLERK OF THE SUPERIOR COURT
By _____
Deputy

CASE NAME:
Laura Bartoni, et al. v. American Medical Response, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | RG 08 382130<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of Judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
 a. [ ] Large number of separately represented parties
 b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
 c. [✓] Substantial amount of documentary evidence
 d. [✓] Large number of witnesses
 e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
 f. [✓] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):* Four (4)
5. This case [✓] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 16, 2008

W. H. "Hank" Willson, IV
_____
*(TYPE OR PRINT NAME)*

*Hank W.*
_____
*(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.

EXHIBIT A PAGE 14

| Short Title: | Case Number: |
|---|---|
| Bartoni, et al., v. American Medical Response, et al. | |

## CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW UNLIMITED CIVIL CASE FILINGS IN THE**
**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

| | |
|---|---|
| [X] Oakland, Rene C. Davidson Alameda County Courthouse (446) | [ ] Hayward Hall of Justice (447)<br>[ ] Pleasanton, Gale-Schenone Hall of Justice (448) |

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) | | |
|---|---|---|---|---|
| Auto Tort | Auto tort (22) | [ ] | 34 | Auto tort (G) |
| | | **Is this an uninsured motorist case? [ ] yes [ ] no** | | |
| Other PI /PD / WD Tort | Asbestos (04) | [ ] | 75 | Asbestos (D) |
| | Product liability (24) | [ ] | 89 | Product liability (not asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] | 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] | 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [ ] | 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] | 80 | Civil rights (G) |
| | Defamation (13) | [ ] | 84 | Defamation (G) |
| | Fraud (16) | [ ] | 24 | Fraud (G) |
| | Intellectual property (19) | [ ] | 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] | 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] | 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] | 38 | Wrongful termination (G) |
| | Other employment (15) | [X] | 85 | Other employment (G) |
| | | [ ] | 53 | Labor comm award confirmation |
| | | [ ] | 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] | 04 | Breach contract / Wrnty (G) |
| | Collections (09) | [ ] | 81 | Collections (G) |
| | Insurance coverage (18) | [ ] | 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] | 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] | 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] | 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] | 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] | 94 | Unlawful Detainer - commercial     **Is the deft. in possession** |
| | Residential (32) | [ ] | 47 | Unlawful Detainer - residential     **of the property?** |
| | Drugs (38) | [ ] | 21 | Unlawful detainer – drugs     **[ ] Yes   [ ] No** |
| Judicial Review | Asset forfeiture (05) | [ ] | 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] | 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] | 49 | Writ of mandate |
| | | **Is this a CEQA action (Publ.Res.Code section 21000 et seq) [ ] Yes [ ] No** | | |
| | Other judicial review (39) | [ ] | 64 | Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ] | 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] | 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] | 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] | 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] | 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] | 95 | Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] | 19 | Enforcement of judgment |
| | | [ ] | 06 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] | 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] | 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] | 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] | 06 | Change of name |
| | | [ ] | 69 | Other petition |

EXHIBIT A PAGE 15

ORIGINAL

1  Todd M. Schneider (SBN 158253)
   Clint J. Brayton (SBN 192214)
2  W.H. "Hank" Willson, IV (SBN 233321)
   SCHNEIDER & WALLACE
3  180 Montgomery Street, Suite 2000
   San Francisco, California 94104
4  Tel: (415) 421-7100
   Fax: (415) 421-7105
5  TTY: (415) 421-1665
6

7  Attorneys for Plaintiff and the proposed class

FILED
ALAMEDA COUNTY

APR 1 6 2008

CLERK OF THE SUPERIOR COURT
By_____
                        Deputy

8

9                    SUPERIOR COURT OF CALIFORNIA

10                        COUNTY OF ALAMEDA

11
   LAURA BARTONI, on behalf of herself, and     Case No. **RG 08382130**
12 on behalf of all others similarly situated,
                                               **COMPLAINT FOR VIOLATIONS OF THE**
13          Plaintiff,                          **LABOR CODE, INDUSTRIAL WELFARE**
                                               **COMMISSION WAGE ORDERS, AND**
14     vs.                                      **BUSINESS AND PROFESSIONS CODE**
                                               **§§17200, *et seq*.**
15 AMERICAN MEDICAL RESPONSE, INC.,
   AMERICAN MEDICAL RESPONSE WEST,             **DEMAND FOR A JURY TRIAL**
16 AMERICAN MEDICAL RESPONSE
   AMBULANCE SERVICE, INC., AMERICAN           **CLASS ACTION**
17 MEDICAL RESPONSE OF INLAND
   EMPIRE, AMERICAN MEDICAL                    **COMPLEX CASE**
18 RESPONSE OF SOUTHERN CALIFORNIA,
   and DOES 1 through 50, inclusive,
19
            Defendants.
20

21

22         Plaintiff Laura Bartoni ("Plaintiff"), on behalf of herself and all others similarly situated,
23
   complains and alleges as follows:
24

25                              **INTRODUCTION**
26
        1.     This is a class action against American Medical Response, Inc., American Medical
27
   Response West, American Medical Response Ambulance Service, Inc., American Medical
28

---

SCHNEIDER
& WALLACE

COMPLAINT FOR VIOLATIONS OF THE LABOR CODE AND BUSINESS AND PROFESSIONS CODE §§17200, *ET SEQ.*
*Bartoni, et al. v. American Medical Response, Inc., et al.*

1

EXHIBIT A PAGE 16

1   Response of Inland Empire, and American Medical Response of Southern California (collectively,

2   "AMR") to challenge its policy and practice of failing to pay its dispatchers all of the overtime

3   wages they are owed, and failing to provide its dispatchers with the meal and rest periods to which

4   they are entitled by law.

5       2.    AMR is the largest private ambulance provider company in the nation, and maintains

6   over 28 ambulance-dispatch locations in the United States. At each of its locations in California, it

7   employs multiple ambulance dispatchers. AMR concedes that its dispatchers are hourly

8   employees who are entitled to overtime, yet consistently pays its dispatchers less overtime

9   compensation that that to which they are entitled.

10      3.    Despite the fact that AMR routinely requires dispatchers to work approximately 20

11  hours of overtime per week, it pays them for only a fraction of those overtime hours.

12      4.    In addition, AMR regularly denies off-duty meal and rest periods to its dispatchers.

13  Despite the fact that dispatchers have consistently been denied their lawfully entitled meal and rest

14  periods, AMR has not offered to pay its dispatchers an hour of pay for any missed meal or rest

15  period.

16      5.    As a result of these violations, AMR is also liable for various other penalties under

17  the Labor Code, and for violation the Unfair Business Practices Act ("UCL"), Business and

18  Professions Code §§17200, et seq.

19      6.    Plaintiff seeks full compensation on behalf of herself and all others similarly situated

20  for all unpaid overtime, denied meal and rest periods, and waiting time penalties. Plaintiff further

21  seeks penalties on behalf of herself and the proposed Class for AMR's violations of the Labor

22  Code and California Industrial Welfare Commission ("IWC") wage orders. Plaintiff also seeks

23  declaratory and injunctive relief, including restitution. Finally, Plaintiff seeks reasonable

24  attorneys' fees and costs under the Labor Code and Code of Civil Procedure §1021.5.

25                                      **PARTIES**

26      7.    Plaintiff Laura Bartoni was employed by AMR as a dispatcher until November 2007.

27  Plaintiff is and at all relevant times has been a resident of Brentwood, California. Plaintiff has

28  been employed at AMR's location in Burlingame, California. At all relevant times, she has been

SCHNEIDER
& WALLACE

EXHIBIT _A_ PAGE _17_

1   an "employee" as that term is used in the California Labor Code and the IWC wage orders

2   regulating wages, hours and working conditions.

3        8.     Defendant AMR is, and at all times has been, a provider of private ambulance

4   services throughout the United States.  It has dozens of locations in California.

5        9.     At all relevant times, AMR has done business under the laws of California, has had

6   places of business in California, including in this judicial district, and has employed Class

7   Members in this judicial district.  AMR is a "person" as defined in California Labor Code §18 and

8   California Business and Professions Code §17201.  AMR is also an "employer" as that term is

9   used in the California Labor Code and the IWC's Orders regulating wages, hours and working

10  conditions.

11       10.    Plaintiff does not know the true names and capacities of Defendants sued herein as

12  DOES 1-50, and therefore sue these Defendants by fictitious names.  Plaintiff will amend her

13  complaint to state the true names and capacities when ascertained.  Plaintiff is informed and

14  believes and thereon alleges that each of the fictitiously named Defendants is responsible in some

15  manner for the occurrences and damages alleged herein, and that Plaintiff's damages as hereinafter

16  set forth were proximately caused by said Defendants.

17       11.    Plaintiff is informed and believes and thereon alleges that each of the Defendants

18  acted in concert with each and every other Defendant, intended to and did participate in the events,

19  acts, practices and courses of conduct alleged herein, and was a proximate cause of damage and

20  injury thereby to Plaintiff as alleged herein.

21       12.    At all times herein mentioned, each Defendant was the agent or employee of each of

22  the other Defendants and was acting within the course and scope of such agency or employment.

23       13.    Throughout this Complaint, any reference to "AMR" is intended to refer to all

24  Defendants jointly.

25                               **JURISDICTION**

26       14.    This Court has jurisdiction over Plaintiff's and the Class Members' claims for

27  unpaid wages and denied meal and rest periods pursuant to the California Labor Code, including

28  Labor Code §§218 and 1194, and the wage orders of the IWC.

SCHNEIDER
& WALLACE

COMPLAINT FOR VIOLATIONS OF THE LABOR CODE AND BUSINESS AND PROFESSIONS CODE §§17200, *ET SEQ.*
*Bartoni, et al. v. American Medical Response, Inc., et al.*

3

EXHIBIT A PAGE 18

1    15.    This Court has jurisdiction over Plaintiff's and the Class Members' claims for

2    injunctive relief, including restitution of earned wages and benefits, which are the money and

3    property of Plaintiff and the Class Members, arising from AMR's unfair competition under

4    Business & Professions Code §§17203 and 17204. This Court also has jurisdiction over Plaintiff's

5    and the Class Members' claims for penalties in violation of the Labor Code pursuant to Business

6    and Professions Code §17202, as well as pursuant to the applicable Labor Code provisions.

7    **VENUE**

8    16.    Venue as to AMR is proper in this County pursuant to Code of Civil Procedure

9    §395(a). AMR conducts business, employs Class Members, and has locations in this County, and

10    the events complained of occurred in this County.

11    **FACTUAL ALLEGATIONS**

12    17.    The policies and practices of AMR, including failure to pay all overtime wages

13    owed, denial of meal and rest periods, and failure to pay wages upon termination of employment,

14    at all relevant times have been substantially similar, if not identical, throughout the different AMR

15    locations in California.

16    18.    AMR fails to pay its dispatchers the proper amount of overtime compensation for

17    overtime hours worked, in violation of Labor Code §510 and the applicable IWC wage orders.

18    AMR concedes that its dispatchers are not exempt from the overtime provisions of Labor Code

19    §510 and the IWC wage orders, and purports to pay overtime compensation to its dispatchers.

20    However, AMR routinely causes its dispatchers to work as many as 20 hours of overtime per pay

21    period, but pays them for far fewer overtime hours each pay period.

22    19.    AMR's dispatchers are regularly denied off-duty meal and rest periods. They are

23    frequently forced to eat while working, often have to skip their meal periods altogether, and rarely

24    have a chance to take a rest break. This is in violation of Labor Code §§226.7, 512 and the IWC

25    wage orders.

26    20.    AMR has also failed to pay wages due and owing promptly upon the end of

27    employment of those dispatchers who have left their employment within the statutory period, in

28

SCHNEIDER
& WALLACE

COMPLAINT FOR VIOLATIONS OF THE LABOR CODE AND BUSINESS AND PROFESSIONS CODE §§17200, *ET SEQ.*
*Bartoni, et al. v. American Medical Response, Inc., et al.*
4

EXHIBIT A    PAGE 19

1  violation of Labor Code §§201-203, as a result of AMR's failure to pay all overtime wages owed,

2  and its failure to properly compensate its dispatchers for the meal and rest periods they are denied.

3      21.    AMR's unlawful conduct has been widespread, repeated, and willful throughout its

4  California locations.  AMR knew or should have known that its policies and practices have been

5  unlawful and unfair.

6  **CLASS ALLEGATIONS**

7      22.    Plaintiff brings this action on behalf of herself and all others similarly situated

8  pursuant to California Code of Civil Procedure §382.  The Class that Plaintiff seeks to represent is

9  defined as follows:

10      All individuals who are currently employed, or formerly have been employed, as dispatchers
    at American Medical Response, Inc., American Medical Response West, American Medical

11      Response Ambulance Service, Inc., American Medical Response Of Inland Empire, and
    American Medical Response of Southern California locations in California, at any time

12      within four years prior to the filing of this complaint until resolution of this action.

13      23.    This action has been brought and may properly be maintained as a class action under

14  Code of Civil Procedure §382 because there is a well-defined community of interest in the

15  litigation and the proposed class is easily ascertainable:

16      a.    Numerosity:  The potential members of the Class as defined are so numerous

17  that joinder of all the members of the Class is impracticable.

18      b.    Commonality:  There are questions of law and fact common to Plaintiff and

19  the Class that predominate over any questions affecting only individual members of the

20  Class.  These common questions of law and fact include, but are not limited to:

21      i.    Whether AMR's policy of failing to pay its dispatchers all of the

22  overtime compensation they are owed violates the California Labor Code;

23      ii.    Whether AMR's policy of failing to pay its dispatchers all of the

24  overtime compensation they are owed has been an unlawful, unfair or fraudulent

25  business act or practice in violation of Business and Professions Code §17200 *et*

26  *seq.*;

27

28

EXHIBIT _A_ PAGE _20_

iii.    Whether AMR's systemic failure to provide its dispatchers with an opportunity to schedule and take off-duty meal periods violates the California Labor Code and IWC wage orders;

iv.    Whether AMR's systemic failure to schedule or otherwise ensure off-duty rest periods constitutes a violation of its legal obligation to authorize and permit off-duty rest periods;

v.    Whether AMR's systemic failure to provide meal and rest breaks to its dispatchers has been an unlawful, unfair or fraudulent business act or practice in violation of Business and Professions Code §17200 *et seq.*;

vi.    Whether AMR's systemic failure to schedule or otherwise ensure off-duty rest periods has been an unlawful, unfair or fraudulent business act or practice in violation of Business and Professions Code §17200 *et seq.*;

vii.    Whether AMR's policy and practice of failing to pay its dispatchers all wages due upon the end of their employment violates the California Labor Code;

viii.    Whether AMR's policy and practice of failing to pay its dispatchers all wages due upon the end of their employment has been an unlawful, unfair or fraudulent business act or practice in violation of Business and Professions Code §17200 *et seq.*;

ix.    The proper formula for calculating restitution, damages and penalties owed to Plaintiff and the Class as alleged herein.

c.    Typicality:  Plaintiff's claims are typical of the claims of the Class.  AMR's common course of conduct in violation of law as alleged herein has caused Plaintiff and Class Members to sustain the same or similar injuries and damages.  Plaintiff's claims are thereby representative of and co-extensive with the claims of the class.

d.    Adequacy of Representation:  Plaintiff is a member of the Class, does not have any conflicts of interest with other Class Members, and will prosecute the case vigorously on behalf of the Class.  Counsel representing Plaintiff are competent and experienced in litigating large employment class actions, including large minimum wage

SCHNEIDER & WALLACE

COMPLAINT FOR VIOLATIONS OF THE LABOR CODE AND BUSINESS AND PROFESSIONS CODE §§17200, *ET SEQ.*
*Bartoni, et al. v. American Medical Response, Inc., et al.*
6

EXHIBIT A PAGE 21

1    and overtime class actions.  Plaintiff will fairly and adequately represent and protect the

2    interests of the Class Members.

3        e.    Superiority of Class Action:  A class action is superior to other available

4    means for the fair and efficient adjudication of this controversy.  Individual joinder of all

5    Class Members is not practicable, and questions of law and fact common to the Class

6    predominate over any questions affecting only individual members of the Class.  Each Class

7    Member has been damaged and is entitled to recovery by reason of Defendants' illegal

8    policies and/or practices.  Class action treatment will allow those similarly situated persons

9    to litigate their claims in the manner that is most efficient and economical for the parties and

10   the judicial system.

### FIRST CAUSE OF ACTION
**Failure to Pay Overtime Wages in Violation of Labor Code §§510 and 1194 and IWC Wage Orders**
(Against All Defendants)

24.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

25.    California Labor Code §510(a) provides as follows:

Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.  Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.  In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.  Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work.

26.    The IWC Wage Order 7-2001(3)(A)(1), 8 Cal. Code Regs. §11040, states:

(3)(A)(1)The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school and are not otherwise prohibited by law from engaging in the subject work.  Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1 ½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek.  Eight (8) hours of labor constitutes a day's work.  Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than:

SCHNEIDER
& WALLACE

COMPLAINT FOR VIOLATIONS OF THE LABOR CODE AND BUSINESS AND PROFESSIONS CODE §§17200, *ET SEQ.*
*Bartoni, et al. v. American Medical Response, Inc., et al.*
7

EXHIBIT A  PAGE 22

1    One and one-half (1 ½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight

2    (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and

3    Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th)

4    consecutive day of work in a workweek.

5    27.    California Labor Code §1194(a) provides as follows:

6    Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is

7    entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and

8    costs of suit.

9    28.    California Labor Code §200 defines wages as "all amounts for labor performed by

10    employees of every description, whether the amount is fixed or ascertained by the standard of time,

11    task, piece, commission basis or other method of calculation." All such wages are subject to

12    California's overtime requirements, including those set forth above.

13    29.    AMR's across-the-board policy of failing to pay its dispatchers all of the overtime

14    compensation they are owed has been unlawful. At no relevant time have Plaintiff and the Class

15    Members been primarily engaged in exempt duties—indeed, AMR itself classifies dispatchers as

16    non-exempt. Despite this, AMR regularly employs dispatchers in excess of 8 hours in a day

17    without paying them full overtime compensation, in violation of Labor Code §§510 and 1194.

18    30.    Plaintiff and Class Members have worked overtime hours for AMR without being

19    paid overtime premiums in violation of the California Labor Code, IWC wage orders and other

20    applicable law.

21    31.    AMR has knowingly and willfully refused to perform its obligations to compensate

22    Plaintiff and the Class for all premium wages for overtime work. As a proximate result of the

23    aforementioned violations, Defendants have damaged Plaintiff and the Class in amounts to be

24    determined according to proof at time of trial, but in an amount in excess of the jurisdictional

25    requirements of this Court.

26    32.    Defendants are liable to Plaintiff and the Class alleged herein for the unpaid

27    overtime and civil penalties, with interest thereon. Furthermore, Plaintiff is entitled to an award of

28    attorneys' fees and costs as set forth below.

SCHNEIDER
& WALLACE

EXHIBIT __A__ PAGE 23

1    33.    Wherefore, Plaintiff and the Class request relief as hereinafter provided.

2    **SECOND CAUSE OF ACTION**
**Failure to Provide Meal and Rest Periods**
3    **in Violation of California Labor Code §§226.7 and 512; IWC Wage Orders**
**(Against All Defendants)**
4

5    34.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set

6    forth herein.

7    35.    California Labor Code §§226.7 and 512 and the applicable IWC wage orders require

8    AMR to provide meal and rest periods to its dispatchers. Labor Code §§226.7 and 512 and the

9    IWC wage orders prohibit employers from employing an employee for more than five hours

10   without a meal period of not less than 30 minutes, and from employing an employee more than ten

11   hours per day without providing the employee with a second meal period of not less than 30

12   minutes. Section 226.7 and the applicable wage orders also require employers to provide

13   employees ten minutes of net rest time per four hours or major fraction thereof of work, and to pay

14   employees their full wages during those rest periods. Unless the employee is relieved of all duty

15   during the 30-minute meal period and ten-minute rest period, the employee is considered "on duty"

16   and the meal or rest period is counted as time worked under the applicable wage orders.

17   36.    Under §226.7(b) and the applicable wage orders, an employer who fails to provide a

18   required meal period must, as compensation, pay the employee one hour of pay at the employee's

19   regular rate of compensation for each workday that the meal period was not provided. Similarly,

20   an employer must pay an employee denied a required rest period one hour of pay at the employee's

21   regular rate of compensation for each workday that the rest period was not provided.

22   37.    Despite these requirements, AMR has knowingly and willfully refused to perform its

23   obligations to provide Plaintiff and the Class with the meal and rest periods to which they are

24   entitled. AMR's conduct described herein violates California Labor Code §§226.7 and 512, and

25   the applicable wage orders. Therefore, pursuant to Labor Code §226.7(b), Plaintiff and the Class

26   are entitled to compensation for the failure to provide meal and rest periods, plus interest,

27   attorneys' fees, expenses and costs of suit.

28   38.    Wherefore, Plaintiff and the Class request relief as hereinafter provided.

SCHNEIDER
& WALLACE

COMPLAINT FOR VIOLATIONS OF THE LABOR CODE AND BUSINESS AND PROFESSIONS CODE §§17200, *ET SEQ.*
*Bartoni, et al. v. American Medical Response, Inc., et al.*
9

EXHIBIT A PAGE 24

**THIRD CAUSE OF ACTION**
**Unpaid Wages and Waiting Time Penalties Pursuant to Labor Code §§201-203**
(Against All Defendants)

39.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

40.     Labor Code §201 provides:

If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

41.     Labor Code §202 provides:

If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

42.     Labor Code §203 provides, in relevant part:

If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

43.     Class Members have left their employment with AMR during the statutory period, at which time AMR owed those Class Members their overtime wages. AMR willfully refused and continues to refuse to pay Class Members all the wages that were due and owing them upon the end of employment. As a result of AMR's actions, the Class has suffered and continues to suffer substantial losses, including lost earnings and interest.

44.     AMR's willful failure to pay Class Members the wages due and owing them constitutes a violation of Labor Code §§201-202. As a result, AMR is liable to Plaintiff and the Class Members for all penalties owing pursuant to Labor Code §§201-203.

45.     In addition, §203 provides that an employee's wages will continue as a penalty up to thirty (30) days from the time the wages were due. Therefore, the Class is entitled to penalties pursuant to Labor Code §203, plus interest.

46.     Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

47.     Wherefore, Plaintiff and the Class request relief as hereinafter provided.

COMPLAINT FOR VIOLATIONS OF THE LABOR CODE AND BUSINESS AND PROFESSIONS CODE §§17200, *ET SEQ.*
*Bartoni, et al. v. American Medical Response, Inc., et al.*

EXHIBIT A PAGE 25

## FOURTH CAUSE OF ACTION
### Violation of California Business and Professions Code §§17200, *et seq.*
(Against All Defendants)

48.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

49.    California Business and Professions Code §§17200 *et seq.* (also referred to herein as the "Unfair Business Practices Act," "Unfair Competition Law," or "UCL"), prohibits unfair competition in the form of any unlawful, unfair or fraudulent business acts or practices.

50.    California Business and Professions Code §17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

51.    Labor Code §90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

52.    Beginning at an exact date unknown to Plaintiff, but at least since the date four years prior to the filing of this suit, AMR has committed acts of unfair competition as defined by the Unfair Business Practices Act, by engaging in the unlawful, unfair and fraudulent business acts and practices described in this Complaint, including, but not limited to:

   a.   violations of Labor Code §§510 and 1194 and IWC wage orders pertaining to overtime;

   b.   violations of Labor Code §§226.7 and 512 and IWC wage orders pertaining to meal and rest breaks; and

   c.   violations of Labor Code §§201-203.

53.    The violations of these laws and regulations, as well as of the fundamental California public policies protecting wages and discouraging overtime labor underlying them, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§17200, *et seq.*

SCHNEIDER
& WALLACE

COMPLAINT FOR VIOLATIONS OF THE LABOR CODE AND BUSINESS AND PROFESSIONS CODE §§17200, *ET SEQ.*
*Bartoni, et al. v. American Medical Response, Inc., et al.*
11

EXHIBIT A PAGE 26

1    54.    The acts and practices described above constitute unfair, unlawful and fraudulent

2    business practices, and unfair competition, within the meaning of Business and Professions Code

3    §§17200 *et seq*.  Among other things, the acts and practices have taken from Plaintiff and the Class

4    wages rightfully earned by them, while enabling AMR to gain an unfair competitive advantage

5    over law-abiding employers and competitors.

6    55.    Business and Professions Code §17203 provides that a court may make such orders

7    or judgments as may be necessary to prevent the use or employment by any person of any practice

8    which constitutes unfair competition.  Injunctive relief is necessary and appropriate to prevent

9    AMR from repeating its unlawful, unfair and fraudulent business acts and business practices

10   alleged above.

11   56.    As a direct and proximate result of the aforementioned acts and practices, Plaintiff

12   and the Class Members have suffered a loss of money and property, in the form of unpaid wages

13   which are due and payable to them.

14   57.    Business and Professions Code §17203 provides that the Court may restore to any

15   person in interest any money or property which may have been acquired by means of such unfair

16   competition.  Plaintiff and the Class are entitled to restitution pursuant to Business and Professions

17   Code §17203 for all wages and payments unlawfully withheld from employees during the four-

18   year period prior to the filing of this Complaint.

19   58.    Business and Professions Code §17202 provides: "Notwithstanding Section 3369 of

20   the Civil Code, specific or preventive relief may be granted to enforce a penalty, forfeiture, or

21   penal law in a case of unfair competition."  Plaintiff and Class Members are entitled to enforce all

22   applicable penalty provisions of the Labor Code pursuant to Business and Professions Code

23   §17202.

24   59.    Plaintiff's success in this action will enforce important rights affecting the public

25   interest and in that regard Plaintiff sues on behalf of herself as well as others similarly situated.

26   Plaintiff and the Class seek and are entitled to unpaid wages, declaratory and injunctive relief, and

27   all other equitable remedies owing to them.

28

SCHNEIDER
& WALLACE

COMPLAINT FOR VIOLATIONS OF THE LABOR CODE AND BUSINESS AND PROFESSIONS CODE §§17200, *ET SEQ.*
*Bartoni, et al. v. American Medical Response, Inc., et al.*

12

A PAGE 27

1    60.    Plaintiff herein takes upon herself enforcement of these laws and lawful claims.
2    There is a financial burden involved in pursuing this action, the action is seeking to vindicate a
3    public right, and it would be against the interests of justice to penalize Plaintiff by forcing her to
4    pay attorneys' fees from the recovery in this action.  Attorneys' fees are appropriate pursuant to
5    Code of Civil Procedure §1021.5 and otherwise.

6    61.    Wherefore, Plaintiff and the Class request relief as hereinafter provided.

7    <u>**PRAYER FOR RELIEF**</u>

8    WHEREFORE, Plaintiff prays for relief as follows:

9    1.    For an order certifying this action as a class action under California Code of Civil
10   Procedure §382, as alleged herein, appointing Plaintiff as a Class Representatives, and Plaintiff's
11   attorneys as Class Counsel;

12   2.    For a declaratory judgment that AMR has violated the California Labor Code and
13   public policy as alleged herein;

14   3.    For a declaratory judgment that AMR has violated Business and Professions Code
15   §§17200, *et seq.*, as a result of the aforementioned violations of the Labor Code and of California
16   public policy protecting wages;

17   4.    For preliminary, permanent and mandatory injunctive relief prohibiting AMR, its
18   officers, agents and all those acting in concert with them, from committing in the future those
19   violations of law herein alleged;

20   5.    For an equitable accounting to identify, locate and restore to all current and former
21   employees the wages they are due, with interest thereon;

22   6.    For an order awarding Plaintiff and the Class compensatory damages, including lost
23   wages, earnings and other employee benefits and all other sums of money owed to Plaintiff and
24   Class Members, together with interest on these amounts, according to proof;

25   7.    For an order awarding Plaintiff and the Class civil penalties pursuant to the Labor
26   Code provisions cited herein and the Unfair Business Practices Act, with interest thereon.

27   8.    For an award of reasonable attorneys' fees as provided by the California Labor
28   Code; California Code of Civil Procedure §1021.5; and/or other applicable law;

SCHNEIDER
& WALLACE

COMPLAINT FOR VIOLATIONS OF THE LABOR CODE AND BUSINESS AND PROFESSIONS CODE §§17200, *ET SEQ.*
*Bartoni, et al. v. American Medical Response, Inc., et al.*

13

EXHIBIT A PAGE 28

1    9.    For all costs of suit; and

2    10.    For such other and further relief as this Court deems just and proper.

3

4    Respectfully submitted,

5    Dated:  April 16, 2008                          SCHNEIDER & WALLACE

6

7    _Hank W_____

8                                                    Hank Willson
                                                     Counsel for Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATIONS OF THE LABOR CODE AND BUSINESS AND PROFESSIONS CODE §§17200, *ET SEQ.*
*Bartoni, et al. v. American Medical Response, Inc., et al.*
14

EXHIBIT A  PAGE 29

1

## DEMAND FOR JURY TRIAL

2        Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff is entitled to

3    a jury.

4

5    Respectfully submitted,

6    Dated:  April 16, 2008                                SCHNEIDER & WALLACE

7

8

9                                                          Hank Willson
                                                           Counsel for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHNEIDER
& WALLACE

EXHIBIT A PAGE 30

ORIGINAL

1 | Todd M. Schneider (SBN 158253)
Clint J. Brayton (SBN 192214)
2 | W.H. "Hank" Willson, IV (SBN 233321)
3 | SCHNEIDER & WALLACE
180 Montgomery Street, Suite 2000
4 | San Francisco, California 94104
Tel: (415) 421-7100
5 | Fax: (415) 421-7105
TTY: (415) 421-1665
6

7 | Attorneys for Plaintiffs and the proposed Class

8

**FILED**
**ALAMEDA COUNTY**

APR 16 2008

CLERK OF THE SUPERIOR COURT
By_____
                          Deputy

9 |              **SUPERIOR COURT OF CALIFORNIA**

10 |                **COUNTY OF ALAMEDA**

11

12 | LAURA BARTONI, on behalf of herself, and    Case No.
on behalf of all others similarly situated,
13 |                                              **DECLARATION OF TODD M.**
14 |            Plaintiff,                        **SCHNEIDER IN SUPPORT OF**
                                                 **DETERMINATION THAT CASE IS**
15 |      vs.                                     **COMPLEX UNDER CRC 3.400**
16 | AMERICAN MEDICAL RESPONSE, INC.,
AMERICAN MEDICAL RESPONSE WEST,
AMERICAN MEDICAL RESPONSE
17 | AMBULANCE SERVICE, INC., AMERICAN
MEDICAL RESPONSE OF INLAND
18 | EMPIRE, AMERICAN MEDICAL
RESPONSE OF SOUTHERN CALIFORNIA,
19 | and DOES 1 through 50, inclusive,
20 |            Defendants.
21
22
23
24
25
26
27
28

SCHNEIDER
& WALLACE

DECLARATION OF TODD SCHNEIDER IN SUPPORT OF DETERMINATION THAT CASE IS COMPLEX
*Bartoni, et al. v. American Medical Response, Inc., et al.*

EXHIBIT A PAGE 31

1    I, Todd M. Schneider, hereby declare as follows:

2        1.    I am a partner of Schneider & Wallace in San Francisco, California, and counsel of

3    record for Plaintiff in the above-referenced action. Each of the facts set forth herein is true and

4    correct within my personal knowledge, and if called and sworn as a witness, I would competently

5    testify thereto.

6        2.    I have litigated numerous wage and hour class and collective actions in state and

7    federal court, including the Superior Court of California for the County of Alameda. Based on my

8    experience, I regard this case to be complex within the meaning of California Rule of Court

9    ("CRC") 3.400. I believe that it will benefit from a complex case determination and single

10   assignment, in terms of overall judicial efficiency and other case management issues.

11       3.    Plaintiff's complaint alleges that Defendant American Medical Response ("AMR")

12   fails to pay its dispatchers overtime compensation for all of the overtime hours they work, and fails

13   to provide its dispatcher employees with the off-duty meal and rest periods to which they are

14   entitled. The complexity of this case arises from (1) the two distinct wage and hour violations

15   which Plaintiff alleges as a result of AMR's policies and practices, and (2) the underlying legal

16   questions which these claims raise. Unlike other wage and hour cases which may allege a single

17   underlying violation from which all the other claims flow, Plaintiff here alleges that AMR has

18   violated the Labor Code rights of its dispatcher employees in two distinct ways.

19       4.    This case is a "complex case" as that term is defined by CRC 3.400(a), in that it will

20   require exceptional judicial management to avoid placing unnecessary burdens on the court and the

21   litigants to expedite the case, keep costs reasonable, and promote effective decision making.

22       5.    This case will require several pre-trial motions, including, for example, motions for

23   class certification and summary judgment by Plaintiff. All of the anticipated motions in this

24   action, including discovery motions, motion for class certification, and motions for summary

25   judgment, will likely involve many of the same underlying set of facts and law. This case will

26   involve running themes and issues that will best be handled by a single judge.

27

28

SCHNEIDER
& WALLACE

EXHIBIT *A* PAGE 32

6.     This case will most likely involve a large number of witnesses and a substantial amount of documentary evidence, since the case involves a policy and practice of AMR that applies and has applied to all of its dispatcher employees throughout California.

7.     Post-judgment judicial supervision may be necessary in this case because Plaintiff seeks injunctive relief on behalf of herself and the members of the proposed class of AMR dispatcher employees.  Plaintiff seeks to enjoin AMR from continuing certain policies and practices regarding overtime and meal and rest periods.

8.     This case is provisionally complex under CRC 3.400(c), as it is a class action.  This County does not have a local rule declaring that cases such as this one are not provisionally complex.


I declare under penalty of perjury under that the foregoing is true and correct.  Executed on this 16th day of April, 2008, in San Francisco, California.


Todd M. Schneider

SCHNEIDER
& WALLACE

# EXHIBIT B

xxx



1  DOUGLAS J. FARMER, State Bar No. 139646
   douglas.farmer@ogletreedeakins.com
2  DAVID D. SOHN, State Bar No. 221119
   david.sohn@ogletreedeakins.com
3  PATRICIA SALAZAR, State Bar No. 249935
   patricia.salazar@ogletreedeakins.com
4  OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
   Steuart Tower, Suite 1300
5  One Market Plaza
6  San Francisco, California  94105
   Telephone:    415-442-4810
7  Facsimile:    415-442-4870
   Attorneys for Defendants
8  AMERICAN MEDICAL RESPONSE, INC.,
   AMERICAN MEDICAL RESPONSE WEST,
9  AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.,
   AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE, and
10 AMERICAN MEDICAL RESPONSE OF SOUTHERN CALIFORNIA

11

12              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

13

14                   FOR THE COUNTY OF ALAMEDA

15

16 LAURA BARTONI, on behalf of herself, and          Case No. RG 08382130
   on behalf of all others similarly situated,
17
18              Plaintiff,
19        v.                                         **DEFENDANT AMERICAN MEDICAL
                                                     RESPONSE, INC.'S ANSWER TO
20 AMERICAN MEDICAL RESPONSE, INC.,                  PLAINTIFFS' UNVERIFIED COMPLAINT**
   AMERICAN MEDICAL RESPONSE WEST,
21 AMERICAN MEDICAL RESPONSE
   AMBULANCE SERVICE, INC., AMERICAN
22 MEDICAL RESPONSE OF INLAND
   EMPIRE, AMERICAN MEDICAL
23 RESPONSE OF SOUTHERN CALIFORNIA,
   and DOES 1 through 50, inclusive,
24
25              Defendants.                          Action Filed:  April 16, 2008
                                                     Trial Date:    Not Set
26
27
28

―――――――――――――――――――――――――――――――――――――――――――――――――――
DEFENDANT AMERICAN MEDICAL RESPONSE, INC.'S ANSWER TO UNVERIFIED COMPLAINT

EXHIBIT B PAGE 34

1    Defendant American Medical Response, Inc. ("Defendant") responds to the unverified

2    Complaint ("Complaint") filed by Plaintiff Laura Bartoni, on behalf of herself and on behalf of all

3    others similarly situated ("Plaintiffs"), as follows:

4

5                            **GENERAL DENIAL**

6        Pursuant to Code of Civil Procedure § 431.30, Defendant generally denies each and every,

7    all and singular, allegation in the Complaint, and generally denies that Plaintiffs have been injured

8    in any of the sums mentioned in the said Complaint, or any sum at all, as the result of any act,

9    omission to act and/or delay in acting of Defendant.

10

11                          **AFFIRMATIVE DEFENSES**

12       Defendant asserts each of the following separate, distinct, and affirmative defenses listed

13   below.  Defendant presently has insufficient knowledge or information upon which to form a belief

14   as to whether it may have additional, as yet unstated, affirmative defenses available.  Defendant

15   therefore reserves the right to assert additional affirmative defenses in the event discovery indicates

16   they would be appropriate.  Defendant also reserves the right to amend, correct and/or withdraw

17   any of its affirmative defenses in the event discovery indicates this would be appropriate.

18                        **FIRST AFFIRMATIVE DEFENSE**
                          (Lack of Employment Relationship)
19

20       To the extent Defendant was not the employer of any of the Plaintiffs, such Plaintiffs have

21   not been damaged by Defendant's acts and/or omissions.

22                       **SECOND AFFIRMATIVE DEFENSE**
                          (Failure to State a Cause of Action)
23

24       The Complaint and each purported cause of action alleged therein fail to state facts

25   sufficient to constitute a cause of action upon which relief can be granted against Defendant.

26                        **THIRD AFFIRMATIVE DEFENSE**
                                 (No Liability)
27

28       Defendant alleges that in the event any of the allegations of unlawful conduct contained in

---

                                         1
DEFENDANT AMERICAN MEDICAL RESPONSE, INC.'S ANSWER TO UNVERIFIED COMPLAINT

EXHIBIT _B_ PAGE _35_

1  the Complaint are found to have merit, it took prompt and appropriate action and has no liability

2  for any alleged unlawful conduct.

3  **FOURTH AFFIRMATIVE DEFENSE**

(Defendant's Reasonable Care)

4

5  Defendant was fully justified and exercised reasonable care, prudence, skill, and business

6  judgment in the management of its affairs.  Defendant acted in good faith, with honesty of purpose,

7  consistent with the law and its established policies and practices.

8  **FIFTH AFFIRMATIVE DEFENSE**

(Failure to Exhaust Internal Remedies)

9

10  The Complaint and each purported cause of action alleged therein are barred, in whole or in

11  part, because Plaintiffs failed to exhaust internal grievance procedures pursuant to an agreement

12  and/or by virtue of any defenses related to such an agreement.

13  **SIXTH AFFIRMATIVE DEFENSE**

(Failure to Exhaust Collective Bargaining Grievance Procedures)

14

15  The Complaint and each purported cause of action alleged therein are barred, in whole or in

16  part, because Plaintiffs failed to exhaust collective bargaining grievance procedures.

17  **SEVENTH AFFIRMATIVE DEFENSE**

(Failure to Exhaust Contractual Dispute Resolution Procedures)

18

19  The Complaint and each purported cause of action alleged therein are barred, in whole or in

20  part, because Plaintiffs failed to exhaust contractual dispute resolution procedures including, but

21  not limited to, arbitration or mediation.

22  **EIGHTH AFFIRMATIVE DEFENSE**

(Failure to Exhaust Administrative Remedies)

23

24  The Complaint and each purported cause of action alleged therein are barred, in whole or in

25  part, because Plaintiffs failed to exhaust administrative remedies.

26  **NINTH AFFIRMATIVE DEFENSE**

(Releases)

27

28  The Complaint and each purported cause of action alleged therein are barred, in whole or in

DEFENDANT AMERICAN MEDICAL RESPONSE, INC.'S ANSWER TO UNVERIFIED COMPLAINT

EXHIBIT *B* PAGE *36*

1   part, to the extent Plaintiffs and/or their agents have released any of their purported causes of

2   action against Defendant.

3   **TENTH AFFIRMATIVE DEFENSE**
(Payments)

4

5   The Complaint and each purported cause of action alleged therein are barred, in whole or in

6   part, to the extent Plaintiffs and/or their agents have received payment of any of the amounts

7   claimed therein.

8   **ELEVENTH AFFIRMATIVE DEFENSE**
(Laches)

9

10   The Complaint and each purported cause of action alleged therein are barred, in whole or in

11   part, by the equitable doctrine of laches.

12   **TWELFTH AFFIRMATIVE DEFENSE**
(Statute of Limitations)

13

14   The Complaint, each purported cause of action alleged therein, and the elements of relief

15   sought therein are barred, in whole or in part, by one or more statutes of limitations including, but

16   not limited to, Code of Civil Procedure §§ 338, 339 and 340, Business and Professions Code §

17   17208, and/or Labor Code § 203.

18   **THIRTEENTH AFFIRMATIVE DEFENSE**
(Estoppel)

19

20   Plaintiffs are estopped by their own acts, omissions, representations, and/or courses of

21   conduct from asserting the causes of action upon which they seek relief.

22   **FOURTEENTH AFFIRMATIVE DEFENSE**
(Res Judicata and Collateral Estoppel)

23

24   The Complaint, each purported cause of action alleged therein, and the elements of relief

25   sought therein are barred, in whole or in part, by res judicata and/or collateral estoppel.

26   **FIFTEENTH AFFIRMATIVE DEFENSE**
(Judicial Estoppel)

27

28   The Complaint, each purported cause of action alleged therein, and the elements of relief

---

3

DEFENDANT AMERICAN MEDICAL RESPONSE, INC.'S ANSWER TO UNVERIFIED COMPLAINT

1    sought therein are barred, in whole or in part, by judicial estoppel.

2    ### SIXTEENTH AFFIRMATIVE DEFENSE
3    #### (Waiver)

4    The Complaint and each purported cause of action alleged therein are barred, in whole or in

5    part, by the waiver doctrine.

6    ### SEVENTEENTH AFFIRMATIVE DEFENSE
7    #### (Unclean Hands)

8    Plaintiffs have or have had unclean hands with respect to the matters alleged in the

9    Complaint and are therefore barred, in whole or in part, from recovering any relief on the

10    Complaint or any purported cause of action alleged therein.

11    ### EIGHTEENTH AFFIRMATIVE DEFENSE
12    #### (Contributory Negligence)

13    Without admitting that Plaintiffs suffered any injury or damages whatsoever, Defendant

14    alleges that any such injury or damages were caused by Plaintiffs' own contributory negligence.

15    Plaintiffs' recoverable damages, if any, must be reduced by the percentage of total fault for which

16    Plaintiffs are responsible.

17    ### NINETEENTH AFFIRMATIVE DEFENSE
18    #### (Allocation of Fault based on Negligence)

19    Without admitting that Plaintiffs suffered any injury or damages whatsoever, Defendant

20    alleges that any such injury or damages were caused by the acts and/or omissions of third parties

21    other than Defendant. Defendant requests that an allocation of such negligence and conduct be

22    made among such other parties, and if any liability is found on the part of Defendant, that judgment

23    against Defendant be only in an amount which is proportional to the extent or percentage by which

24    its acts and/or omissions contributed to the alleged injuries and damage.

25    ### TWENTIETH AFFIRMATIVE DEFENSE
26    #### (Intervening or Superseding Acts of Third Parties)

27    Plaintiffs' damages, if any, resulted from the acts or omissions of third parties. The acts or

28    omissions of these third parties constitute intervening or superseding causes of the harm, if any,

---

4

DEFENDANT AMERICAN MEDICAL RESPONSE, INC.'S ANSWER TO UNVERIFIED COMPLAINT

1  suffered by Plaintiffs, and said third parties should bear the responsibility of compensating

2  Plaintiffs for said damages.

3  ### TWENTY-FIRST AFFIRMATIVE DEFENSE
   (After-Acquired Evidence)
4

5      The Complaint and each purported cause of action alleged therein are barred, in whole or in

6  part, by after-acquired evidence.

7  ### TWENTY-SECOND AFFIRMATIVE DEFENSE
   (Inapplicability of Overtime Requirements)
8

9      California's overtime requirements do not apply to Plaintiffs to the extent Plaintiffs fall

10  within the exemptions and exclusions under California wage and hour law, including, but not

11  limited to, applicable IWC Wage Orders.

12  ### TWENTY-THIRD AFFIRMATIVE DEFENSE
   (Inapplicability of Meal and Rest Period Requirements)
13

14      California's meal and rest period requirements do not apply to Plaintiffs to the extent

15  Plaintiffs fall within the exemptions and exclusions under California wage and hour law, including,

16  but not limited to, applicable IWC Wage Orders.

17  ### TWENTY-FOURTH AFFIRMATIVE DEFENSE
   (No Willful Failure to Pay)
18

19      Plaintiffs cannot recover waiting time penalties because any alleged failure to pay wages

20  was based on a good faith dispute regarding the applicable law or facts.

21  ### TWENTY-FIFTH AFFIRMATIVE DEFENSE
   (Labor Management Relations Act Preemption)
22

23      The Complaint and each purported cause of action alleged therein are preempted by the

24  provisions of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).

25  ### TWENTY-SIXTH AFFIRMATIVE DEFENSE
   (Fair Labor Standards Act Preemption)
26

27      The Complaint and each purported cause of action alleged therein are preempted by the

28  provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

DEFENDANT AMERICAN MEDICAL RESPONSE, INC.'S ANSWER TO UNVERIFIED COMPLAINT

EXHIBIT 5 PAGE 39

1         **TWENTY-SEVENTH AFFIRMATIVE DEFENSE**
(Failure to Join Necessary Parties)

2

3       The Complaint and each purported cause of action alleged therein are barred, in whole or in

4 part, as a result of Plaintiffs' failure to join necessary parties to the action.

5         **TWENTY-EIGHTH AFFIRMATIVE DEFENSE**
(Justification And Privilege)

6

7       Defendant alleges it cannot be liable for any alleged violation of Business and Professions

8 Code § 17200 et seq. because its actions, conduct and/or dealings with its employees were lawful,

9 and were carried out in good faith and for legitimate business purposes.

10         **TWENTY-NINTH AFFIRMATIVE DEFENSE**
(Consent)

11

12       The Complaint and each purported cause of action alleged therein are barred, in whole or in

13 part, to the extent Plaintiffs consented to any and/or all of the conduct about which they now

14 complain.

15         **THIRTIETH AFFIRMATIVE DEFENSE**
(Failure to Mitigate)

16

17       Plaintiffs are barred, in whole or in part, from recovering any damages, or any recovery of

18 damages must be reduced, excused and/or discharged by virtue of Plaintiffs' failure to exercise

19 reasonable diligence to mitigate their alleged damages.

20         **THIRTY-FIRST AFFIRMATIVE DEFENSE**
(Misrepresentations)

21

22       The Complaint and each purported cause of action alleged therein are barred, in whole or in

23 part, by misrepresentations made by Plaintiffs.

24         **THIRTY-SECOND AFFIRMATIVE DEFENSE**
(Setoff, Offset, and/or Recoupment)

25

26       Some or all of the purported causes of action in the Complaint are subject to setoff, offset

27 and/or recoupment.

28

1

## THIRTY-THIRD AFFIRMATIVE DEFENSE
(Balancing of Hardships)

2

3    Plaintiffs are not entitled to injunctive or declaratory relief because the benefit of such

4    relief, if any, is slight compared to the harm Defendant will suffer if injunctive or declaratory relief

5    is permitted.

6    ## THIRTY-FOURTH AFFIRMATIVE DEFENSE
(Lack of Irreparable Injury)

7

8    Plaintiffs are not entitled to injunctive or declaratory relief because they will not suffer any

9    irreparable injury if injunctive or declaratory relief is declined.

10   ## THIRTY-FIFTH AFFIRMATIVE DEFENSE
(No Proper Representative Claims)

11

12   Plaintiffs' Business and Professions Code § 17200 et seq. cause of action is not appropriate

13   for resolution on a representative basis.

14   ## THIRTY-SIXTH AFFIRMATIVE DEFENSE
(Not a Class Action)

15

16   Plaintiffs' causes of action, and each of them, cannot and should not be maintained as a

17   class action pursuant to any section of the Labor Code, Government Code, Code of Civil Procedure

18   or other statute, any applicable state court rule or any applicable court decisions.

19   ## THIRTY-SEVENTH AFFIRMATIVE DEFENSE
(Failure to Meet Class Action Requirements)

20

21   The Complaint and each purported cause of action alleged therein are barred, in whole or in

22   part, to the extent Plaintiffs have failed to allege sufficient facts to meet the necessary requirements

23   for class certification, including typicality, commonality, numerosity, superiority, and/or adequacy.

24

25

26

27

28

7

EXHIBIT B PAGE 41

**THIRTY-EIGHTH AFFIRMATIVE DEFENSE**
(Non-Certifiable Class)

The Complaint and each purported cause of action alleged therein fail to state facts sufficient to certify a class pursuant to Code of Civil Procedure § 382, or pursuant to any other applicable law, and this action is not properly brought as a class action.

**THIRTY-NINTH AFFIRMATIVE DEFENSE**
(Representative Claims Violate Defendant's Rights)

Defendant alleges that, to the extent the Court declines to certify a class, then maintenance of those claims as "representative" actions under the Business and Professions Code (assuming, arguendo, some or all of these claims could be so maintained, which Defendant specifically denies) would violate the Due Process Clause of the United States and California Constitutions by authorizing actions to be brought on behalf of a class without requiring class certification of persons allegedly injured by the challenged act or practice. Moreover, any finding of liability pursuant to the Business and Professions Code would violate the Due Process Clause of the United States and California Constitutions because, among other things, the standards of liability under the Business and Professions Code are unduly vague and subjective, and permit retroactive, random, arbitrary and capricious punishment that serves no legitimate governmental interest. Finally, any award of restitution under the Business and Professions Code would violate the Excessive Fines and Due Process Clauses of the United States and California Constitutions.

**FORTIETH AFFIRMATIVE DEFENSE**
(No Damages)

Plaintiffs have not suffered any damages as a result of any actions taken by Defendant and/or its agents and Plaintiffs are therefore barred, in whole or in part, from asserting any cause of action against Defendant.

**FORTY-FIRST AFFIRMATIVE DEFENSE**
(Speculative Damages)

Plaintiffs cannot recover any of the damages alleged in the Complaint because such damages, if any, are too speculative to be recoverable at law.

8

EXHIBIT B PAGE 42

**FORTY-SECOND AFFIRMATIVE DEFENSE**
(No Availability of Damages)

Pursuant to Business and Professions Code § 17200 et seq., Plaintiffs are not entitled to an award of damages.

**FORTY-THIRD AFFIRMATIVE DEFENSE**
(Attorneys' Fees)

The Complaint and each purported cause of action alleged therein fail to state a cause of action for attorneys' fees against Defendant.

**FORTY-FOURTH AFFIRMATIVE DEFENSE**
(Costs of Suit)

The Complaint and each purported cause of action alleged therein fail to state a cause of action for costs of suit against Defendant.

**FORTY-FIFTH AFFIRMATIVE DEFENSE**
(Primary Jurisdiction Doctrine)

The Complaint and each purported cause of action alleged therein should be abated in the Court's discretion, and Plaintiffs should be forced to pursue their administrative remedies with the California Division of Labor Standards Enforcement, which has primary jurisdiction over Plaintiffs' claims.

**FORTY-SIXTH AFFIRMATIVE DEFENSE**
(Standing)

The Complaint and each purported cause of action alleged therein are barred, in whole or in part, to the extent Plaintiffs lack standing and were not a party aggrieved by the alleged unlawful employment practices.

**FORTY-SEVENTH AFFIRMATIVE DEFENSE**
(Claim Based on Frivolous Grounds)

The Complaint and each purported cause of action alleged therein are frivolous, unreasonable, groundless, designed to harass and annoy Defendant, and/or are not brought in good faith. Defendant is entitled to recover from Plaintiffs all costs and its attorneys' fees incurred

9

EXHIBIT B PAGE 43.

1   defending this lawsuit pursuant to all applicable laws.

2

3                        **PRAYER FOR RELIEF**

4      WHEREFORE, Defendant prays as follows:

5      1.     For entry of judgment in favor of Defendant and against Plaintiffs;

6      2.     That Plaintiffs take nothing by way of their Complaint;

7      3.     That Defendant be awarded costs of suit herein;

8      4.     That Defendant be awarded actual attorneys' fees incurred in defending this suit;

9           and

10     5.     For such other and further relief as this Court may deem just and proper.

11

12   DATED: May 30, 2008          OGLETREE, DEAKINS, NASH, SMOAK &
13                           STEWART, P.C.

14                           By: _____

15                                Douglas J. Farmer
16                                David D. Sohn
                               Patricia Salazar

17                          Attorneys for Defendants
18                          AMERICAN MEDICAL RESPONSE, INC.,
                         AMERICAN MEDICAL RESPONSE WEST,
19                          AMERICAN MEDICAL RESPONSE
                         AMBULANCE SERVICE, INC., AMERICAN
20                          MEDICAL RESPONSE OF INLAND EMPIRE,
                         and AMERICAN MEDICAL RESPONSE OF
21                          SOUTHERN CALIFORNIA

22

23

24

25

26

27

28

DEFENDANT AMERICAN MEDICAL RESPONSE, INC.'S ANSWER TO UNVERIFIED COMPLAINT

EXHIBIT _B_ PAGE 44

ENDORSED
FILED
ALAMEDA COUNTY

MAY 3 0 2008

CLERK OF THE SUPERIOR COURT

1    DOUGLAS J. FARMER, State Bar No. 139646
     douglas.farmer@ogletreedeakins.com
2    DAVID D. SOHN, State Bar No. 221119
     david.sohn@ogletreedeakins.com
3    PATRICIA SALAZAR, State Bar No. 249935
     patricia.salazar@ogletreedeakins.com
4    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
     Steuart Tower, Suite 1300
5    One Market Plaza
6    San Francisco, California 94105
     Telephone:    415-442-4810
7    Facsimile:    415-442-4870
     Attorneys for Defendants
8    AMERICAN MEDICAL RESPONSE, INC.,
     AMERICAN MEDICAL RESPONSE WEST,
9    AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.,
     AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE, and
10   AMERICAN MEDICAL RESPONSE OF SOUTHERN CALIFORNIA

11

12                   SUPERIOR COURT FOR THE STATE OF CALIFORNIA

13

14                          FOR THE COUNTY OF ALAMEDA

15

16   LAURA BARTONI, on behalf of herself, and          Case No. RG 08382130
     on behalf of all others similarly situated,
17
                         Plaintiff,
18
          v.                                            DEFENDANT AMERICAN MEDICAL
19                                                      RESPONSE WEST'S ANSWER TO
     AMERICAN MEDICAL RESPONSE, INC.,                   PLAINTIFFS' UNVERIFIED COMPLAINT
20   AMERICAN MEDICAL RESPONSE WEST,
     AMERICAN MEDICAL RESPONSE
21   AMBULANCE SERVICE, INC., AMERICAN
     MEDICAL RESPONSE OF INLAND
22   EMPIRE, AMERICAN MEDICAL
     RESPONSE OF SOUTHERN CALIFORNIA,
23   and DOES 1 through 50, inclusive,
24
                         Defendants.                    Action Filed:    April 16, 2008
25                                                      Trial Date:      Not Set
26

27

28

_____
DEFENDANT AMERICAN MEDICAL RESPONSE WEST'S ANSWER TO UNVERIFIED COMPLAINT

1        Defendant American Medical Response West ("Defendant") responds to the unverified

2   Complaint ("Complaint") filed by Plaintiff Laura Bartoni, on behalf of herself and on behalf of all

3   others similarly situated ("Plaintiffs"), as follows:

4

5                                   **GENERAL DENIAL**

6        Pursuant to Code of Civil Procedure § 431.30, Defendant generally denies each and every,

7   all and singular, allegation in the Complaint, and generally denies that Plaintiffs have been injured

8   in any of the sums mentioned in the said Complaint, or any sum at all, as the result of any act,

9   omission to act and/or delay in acting of Defendant.

10

11                            **AFFIRMATIVE DEFENSES**

12       Defendant asserts each of the following separate, distinct, and affirmative defenses listed

13   below. Defendant presently has insufficient knowledge or information upon which to form a belief

14   as to whether it may have additional, as yet unstated, affirmative defenses available. Defendant

15   therefore reserves the right to assert additional affirmative defenses in the event discovery indicates

16   they would be appropriate. Defendant also reserves the right to amend, correct and/or withdraw

17   any of its affirmative defenses in the event discovery indicates this would be appropriate.

18                **FIRST AFFIRMATIVE DEFENSE**

19               (Lack of Employment Relationship)

20       To the extent Defendant was not the employer of any of the Plaintiffs, such Plaintiffs have

21   not been damaged by Defendant's acts and/or omissions.

22             **SECOND AFFIRMATIVE DEFENSE**

23            (Failure to State a Cause of Action)

24       The Complaint and each purported cause of action alleged therein fail to state facts

25   sufficient to constitute a cause of action upon which relief can be granted against Defendant.

26              **THIRD AFFIRMATIVE DEFENSE**

27                 (No Liability)

28       Defendant alleges that in the event any of the allegations of unlawful conduct contained in

DEFENDANT AMERICAN MEDICAL RESPONSE WEST'S ANSWER TO UNVERIFIED COMPLAINT

EXHIBIT _B_ PAGE _46_

1  the Complaint are found to have merit, it took prompt and appropriate action and has no liability

2  for any alleged unlawful conduct.

3
### FOURTH AFFIRMATIVE DEFENSE
4
(Defendant's Reasonable Care)

5  Defendant was fully justified and exercised reasonable care, prudence, skill, and business

6  judgment in the management of its affairs. Defendant acted in good faith, with honesty of purpose,

7  consistent with the law and its established policies and practices.

8
### FIFTH AFFIRMATIVE DEFENSE
9
(Failure to Exhaust Internal Remedies)

10  The Complaint and each purported cause of action alleged therein are barred, in whole or in

11  part, because Plaintiffs failed to exhaust internal grievance procedures pursuant to an agreement

12  and/or by virtue of any defenses related to such an agreement.

13
### SIXTH AFFIRMATIVE DEFENSE
14
(Failure to Exhaust Collective Bargaining Grievance Procedures)

15  The Complaint and each purported cause of action alleged therein are barred, in whole or in

16  part, because Plaintiffs failed to exhaust collective bargaining grievance procedures.

17
### SEVENTH AFFIRMATIVE DEFENSE
18
(Failure to Exhaust Contractual Dispute Resolution Procedures)

19  The Complaint and each purported cause of action alleged therein are barred, in whole or in

20  part, because Plaintiffs failed to exhaust contractual dispute resolution procedures including, but

21  not limited to, arbitration or mediation.

22
### EIGHTH AFFIRMATIVE DEFENSE
23
(Failure to Exhaust Administrative Remedies)

24  The Complaint and each purported cause of action alleged therein are barred, in whole or in

25  part, because Plaintiffs failed to exhaust administrative remedies.

26
### NINTH AFFIRMATIVE DEFENSE
27
(Releases)

28  The Complaint and each purported cause of action alleged therein are barred, in whole or in

2

DEFENDANT AMERICAN MEDICAL RESPONSE WEST'S ANSWER TO UNVERIFIED COMPLAINT

EXHIBIT B PAGE 47

1 | part, to the extent Plaintiffs and/or their agents have released any of their purported causes of
2 | action against Defendant.

3 | **TENTH AFFIRMATIVE DEFENSE**
4 | (Payments)

5 | The Complaint and each purported cause of action alleged therein are barred, in whole or in
6 | part, to the extent Plaintiffs and/or their agents have received payment of any of the amounts
7 | claimed therein.

8 | **ELEVENTH AFFIRMATIVE DEFENSE**
9 | (Laches)

10 | The Complaint and each purported cause of action alleged therein are barred, in whole or in
11 | part, by the equitable doctrine of laches.

12 | **TWELFTH AFFIRMATIVE DEFENSE**
13 | (Statute of Limitations)

14 | The Complaint, each purported cause of action alleged therein, and the elements of relief
15 | sought therein are barred, in whole or in part, by one or more statutes of limitations including, but
16 | not limited to, Code of Civil Procedure §§ 338, 339 and 340, Business and Professions Code §
17 | 17208, and/or Labor Code § 203.

18 | **THIRTEENTH AFFIRMATIVE DEFENSE**
19 | (Estoppel)

20 | Plaintiffs are estopped by their own acts, omissions, representations, and/or courses of
21 | conduct from asserting the causes of action upon which they seek relief.

22 | **FOURTEENTH AFFIRMATIVE DEFENSE**
23 | (Res Judicata and Collateral Estoppel)

24 | The Complaint, each purported cause of action alleged therein, and the elements of relief
25 | sought therein are barred, in whole or in part, by res judicata and/or collateral estoppel.

26 | **FIFTEENTH AFFIRMATIVE DEFENSE**
27 | (Judicial Estoppel)

28 | The Complaint, each purported cause of action alleged therein, and the elements of relief

DEFENDANT AMERICAN MEDICAL RESPONSE WEST'S ANSWER TO UNVERIFIED COMPLAINT

EXHIBIT _B_ PAGE _48_

1    sought therein are barred, in whole or in part, by judicial estoppel.

2                  **SIXTEENTH AFFIRMATIVE DEFENSE**
3                        (Waiver)

4        The Complaint and each purported cause of action alleged therein are barred, in whole or in

5    part, by the waiver doctrine.

6               **SEVENTEENTH AFFIRMATIVE DEFENSE**
7                     (Unclean Hands)

8        Plaintiffs have or have had unclean hands with respect to the matters alleged in the

9    Complaint and are therefore barred, in whole or in part, from recovering any relief on the

10    Complaint or any purported cause of action alleged therein.

11               **EIGHTEENTH AFFIRMATIVE DEFENSE**
12                  (Contributory Negligence)

13        Without admitting that Plaintiffs suffered any injury or damages whatsoever, Defendant

14    alleges that any such injury or damages were caused by Plaintiffs' own contributory negligence.

15    Plaintiffs' recoverable damages, if any, must be reduced by the percentage of total fault for which

16    Plaintiffs are responsible.

17             **NINETEENTH AFFIRMATIVE DEFENSE**
18           (Allocation of Fault based on Negligence)

19        Without admitting that Plaintiffs suffered any injury or damages whatsoever, Defendant

20    alleges that any such injury or damages were caused by the acts and/or omissions of third parties

21    other than Defendant. Defendant requests that an allocation of such negligence and conduct be

22    made among such other parties, and if any liability is found on the part of Defendant, that judgment

23    against Defendant be only in an amount which is proportional to the extent or percentage by which

24    its acts and/or omissions contributed to the alleged injuries and damage.

25              **TWENTIETH AFFIRMATIVE DEFENSE**
26          (Intervening or Superseding Acts of Third Parties)

27        Plaintiffs' damages, if any, resulted from the acts or omissions of third parties. The acts or

28    omissions of these third parties constitute intervening or superseding causes of the harm, if any,

DEFENDANT AMERICAN MEDICAL RESPONSE WEST'S ANSWER TO UNVERIFIED COMPLAINT

EXHIBIT _D_ PAGE _49_

1    suffered by Plaintiffs, and said third parties should bear the responsibility of compensating

2    Plaintiffs for said damages.

3    **TWENTY-FIRST AFFIRMATIVE DEFENSE**
     (After-Acquired Evidence)

4

5    The Complaint and each purported cause of action alleged therein are barred, in whole or in

6    part, by after-acquired evidence.

7    **TWENTY-SECOND AFFIRMATIVE DEFENSE**
     (Inapplicability of Overtime Requirements)

8

9    California's overtime requirements do not apply to Plaintiffs to the extent Plaintiffs fall

10   within the exemptions and exclusions under California wage and hour law, including, but not

11   limited to, applicable IWC Wage Orders.

12   **TWENTY-THIRD AFFIRMATIVE DEFENSE**
     (Inapplicability of Meal and Rest Period Requirements)

13

14   California's meal and rest period requirements do not apply to Plaintiffs to the extent

15   Plaintiffs fall within the exemptions and exclusions under California wage and hour law, including,

16   but not limited to, applicable IWC Wage Orders.

17   **TWENTY-FOURTH AFFIRMATIVE DEFENSE**
     (No Willful Failure to Pay)

18

19   Plaintiffs cannot recover waiting time penalties because any alleged failure to pay wages

20   was based on a good faith dispute regarding the applicable law or facts.

21   **TWENTY-FIFTH AFFIRMATIVE DEFENSE**
     (Labor Management Relations Act Preemption)

22

23   The Complaint and each purported cause of action alleged therein are preempted by the

24   provisions of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).

25   **TWENTY-SIXTH AFFIRMATIVE DEFENSE**
     (Fair Labor Standards Act Preemption)

26

27   The Complaint and each purported cause of action alleged therein are preempted by the

28   provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

DEFENDANT AMERICAN MEDICAL RESPONSE WEST'S ANSWER TO UNVERIFIED COMPLAINT

EXHIBIT B PAGE 50

1

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE
(Failure to Join Necessary Parties)

2

3    The Complaint and each purported cause of action alleged therein are barred, in whole or in

4    part, as a result of Plaintiffs' failure to join necessary parties to the action.

5    ## TWENTY-EIGHTH AFFIRMATIVE DEFENSE
(Justification And Privilege)

6

7    Defendant alleges it cannot be liable for any alleged violation of Business and Professions

8    Code § 17200 et seq. because its actions, conduct and/or dealings with its employees were lawful,

9    and were carried out in good faith and for legitimate business purposes.

10   ## TWENTY-NINTH AFFIRMATIVE DEFENSE
(Consent)

11

12   The Complaint and each purported cause of action alleged therein are barred, in whole or in

13   part, to the extent Plaintiffs consented to any and/or all of the conduct about which they now

14   complain.

15   ## THIRTIETH AFFIRMATIVE DEFENSE
(Failure to Mitigate)

16

17   Plaintiffs are barred, in whole or in part, from recovering any damages, or any recovery of

18   damages must be reduced, excused and/or discharged by virtue of Plaintiffs' failure to exercise

19   reasonable diligence to mitigate their alleged damages.

20   ## THIRTY-FIRST AFFIRMATIVE DEFENSE
(Misrepresentations)

21

22   The Complaint and each purported cause of action alleged therein are barred, in whole or in

23   part, by misrepresentations made by Plaintiffs.

24   ## THIRTY-SECOND AFFIRMATIVE DEFENSE
(Setoff, Offset, and/or Recoupment)

25

26   Some or all of the purported causes of action in the Complaint are subject to setoff, offset

27   and/or recoupment.

28

6

EXHIBIT B PAGE 51

1

## THIRTY-THIRD AFFIRMATIVE DEFENSE
### (Balancing of Hardships)

2

3    Plaintiffs are not entitled to injunctive or declaratory relief because the benefit of such

4    relief, if any, is slight compared to the harm Defendant will suffer if injunctive or declaratory relief

5    is permitted.

6

## THIRTY-FOURTH AFFIRMATIVE DEFENSE
### (Lack of Irreparable Injury)

7

8    Plaintiffs are not entitled to injunctive or declaratory relief because they will not suffer any

9    irreparable injury if injunctive or declaratory relief is declined.

10

## THIRTY-FIFTH AFFIRMATIVE DEFENSE
### (No Proper Representative Claims)

11

12    Plaintiffs' Business and Professions Code § 17200 et seq. cause of action is not appropriate

13    for resolution on a representative basis.

14

## THIRTY-SIXTH AFFIRMATIVE DEFENSE
### (Not a Class Action)

15

16    Plaintiffs' causes of action, and each of them, cannot and should not be maintained as a

17    class action pursuant to any section of the Labor Code, Government Code, Code of Civil Procedure

18    or other statute, any applicable state court rule or any applicable court decisions.

19

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE
### (Failure to Meet Class Action Requirements)

20

21    The Complaint and each purported cause of action alleged therein are barred, in whole or in

22    part, to the extent Plaintiffs have failed to allege sufficient facts to meet the necessary requirements

23    for class certification, including typicality, commonality, numerosity, superiority, and/or adequacy.

24

25

26

27

28

DEFENDANT AMERICAN MEDICAL RESPONSE WEST'S ANSWER TO UNVERIFIED COMPLAINT

EXHIBIT B PAGE 52

1

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE
(Non-Certifiable Class)

2

3    The Complaint and each purported cause of action alleged therein fail to state facts

4    sufficient to certify a class pursuant to Code of Civil Procedure § 382, or pursuant to any other

5    applicable law, and this action is not properly brought as a class action.

6

## THIRTY-NINTH AFFIRMATIVE DEFENSE
(Representative Claims Violate Defendant's Rights)

7

8    Defendant alleges that, to the extent the Court declines to certify a class, then maintenance

9    of those claims as "representative" actions under the Business and Professions Code (assuming,

10   arguendo, some or all of these claims could be so maintained, which Defendant specifically denies)

11   would violate the Due Process Clause of the United States and California Constitutions by

12   authorizing actions to be brought on behalf of a class without requiring class certification of

13   persons allegedly injured by the challenged act or practice.  Moreover, any finding of liability

14   pursuant to the Business and Professions Code would violate the Due Process Clause of the United

15   States and California Constitutions because, among other things, the standards of liability under the

16   Business and Professions Code are unduly vague and subjective, and permit retroactive, random,

17   arbitrary and capricious punishment that serves no legitimate governmental interest.  Finally, any

18   award of restitution under the Business and Professions Code would violate the Excessive Fines

19   and Due Process Clauses of the United States and California Constitutions.

20

## FORTIETH AFFIRMATIVE DEFENSE
(No Damages)

21

22   Plaintiffs have not suffered any damages as a result of any actions taken by Defendant

23   and/or its agents and Plaintiffs are therefore barred, in whole or in part, from asserting any cause of

24   action against Defendant.

25

## FORTY-FIRST AFFIRMATIVE DEFENSE
(Speculative Damages)

26

27   Plaintiffs cannot recover any of the damages alleged in the Complaint because such

28   damages, if any, are too speculative to be recoverable at law.

---

DEFENDANT AMERICAN MEDICAL RESPONSE WEST'S ANSWER TO UNVERIFIED COMPLAINT

EXHIBIT B PAGE 53

1

## FORTY-SECOND AFFIRMATIVE DEFENSE
(No Availability of Damages)

2

3     Pursuant to Business and Professions Code § 17200 et seq., Plaintiffs are not entitled to an

4     award of damages.

5

## FORTY-THIRD AFFIRMATIVE DEFENSE
(Attorneys' Fees)

6

7     The Complaint and each purported cause of action alleged therein fail to state a cause of

8     action for attorneys' fees against Defendant.

9

## FORTY-FOURTH AFFIRMATIVE DEFENSE
(Costs of Suit)

10

11     The Complaint and each purported cause of action alleged therein fail to state a cause of

12     action for costs of suit against Defendant.

13

## FORTY-FIFTH AFFIRMATIVE DEFENSE
(Primary Jurisdiction Doctrine)

14

15     The Complaint and each purported cause of action alleged therein should be abated in the

16     Court's discretion, and Plaintiffs should be forced to pursue their administrative remedies with the

17     California Division of Labor Standards Enforcement, which has primary jurisdiction over

18     Plaintiffs' claims.

19

## FORTY-SIXTH AFFIRMATIVE DEFENSE
(Standing)

20

21     The Complaint and each purported cause of action alleged therein are barred, in whole or in

22     part, to the extent Plaintiffs lack standing and were not a party aggrieved by the alleged unlawful

23     employment practices.

24

## FORTY-SEVENTH AFFIRMATIVE DEFENSE
(Claim Based on Frivolous Grounds)

25

26     The Complaint and each purported cause of action alleged therein are frivolous,

27     unreasonable, groundless, designed to harass and annoy Defendant, and/or are not brought in good

28     faith.  Defendant is entitled to recover from Plaintiffs all costs and its attorneys' fees incurred

9

DEFENDANT AMERICAN MEDICAL RESPONSE WEST'S ANSWER TO UNVERIFIED COMPLAINT

EXHIBIT B PAGE 54

1  defending this lawsuit pursuant to all applicable laws.

2

3                          **PRAYER FOR RELIEF**

4        WHEREFORE, Defendant prays as follows:

5        1.      For entry of judgment in favor of Defendant and against Plaintiffs;

6        2.      That Plaintiffs take nothing by way of their Complaint;

7        3.      That Defendant be awarded costs of suit herein;

8        4.      That Defendant be awarded actual attorneys' fees incurred in defending this suit;

9                and

10       5.      For such other and further relief as this Court may deem just and proper.

11

12  DATED:  May 30, 2008                OGLETREE, DEAKINS, NASH, SMOAK &
                                        STEWART, P.C.
13

14                                      By: _____
15                                          Douglas J. Farmer
                                            David D. Sohn
16                                          Patricia Salazar

17
                                        Attorneys for Defendants
18                                      AMERICAN MEDICAL RESPONSE, INC.,
                                        AMERICAN MEDICAL RESPONSE WEST,
19                                      AMERICAN MEDICAL RESPONSE
                                        AMBULANCE SERVICE, INC., AMERICAN
20                                      MEDICAL RESPONSE OF INLAND EMPIRE,
                                        and AMERICAN MEDICAL RESPONSE OF
21                                      SOUTHERN CALIFORNIA

22

23

24

25

26

27

28

DEFENDANT AMERICAN MEDICAL RESPONSE WEST'S ANSWER TO UNVERIFIED COMPLAINT

1    DOUGLAS J. FARMER, State Bar No. 139646
     douglas.farmer@ogletreedeakins.com
2    DAVID D. SOHN, State Bar No. 221119
     david.sohn@ogletreedeakins.com
3    PATRICIA SALAZAR, State Bar No. 249935
     patricia.salazar@ogletreedeakins.com
4    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
     Steuart Tower, Suite 1300
5    One Market Plaza
6    San Francisco, California 94105
     Telephone:    415-442-4810
7    Facsimile:     415-442-4870
     Attorneys for Defendants
8    AMERICAN MEDICAL RESPONSE, INC.,
     AMERICAN MEDICAL RESPONSE WEST,
9    AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.,
     AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE, and
10   AMERICAN MEDICAL RESPONSE OF SOUTHERN CALIFORNIA

11

12            **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

13

14                 **FOR THE COUNTY OF ALAMEDA**

15

| | |
|---|---|
| 16   LAURA BARTONI, on behalf of herself, and on behalf of all others similarly situated, | Case No. RG 08382130 |
| 17 | |
| 18          Plaintiff, | |
| 19       v. | **DEFENDANT AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.'S ANSWER TO PLAINTIFFS' UNVERIFIED COMPLAINT** |
| 20   AMERICAN MEDICAL RESPONSE, INC., AMERICAN MEDICAL RESPONSE WEST, | |
| 21   AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC., AMERICAN | |
| 22   MEDICAL RESPONSE OF INLAND EMPIRE, AMERICAN MEDICAL | |
| 23   RESPONSE OF SOUTHERN CALIFORNIA, and DOES 1 through 50, inclusive, | |
| 24 | Action Filed:   April 16, 2008 |
| 25         Defendants. | Trial Date:     Not Set |

26

27

28

1    Defendant American Medical Response Ambulance Service, Inc. ("Defendant") responds

2  to the unverified Complaint ("Complaint") filed by Plaintiff Laura Bartoni, on behalf of herself and

3  on behalf of all others similarly situated ("Plaintiffs"), as follows:

4

5                                    **GENERAL DENIAL**

6        Pursuant to Code of Civil Procedure § 431.30, Defendant generally denies each and every,

7  all and singular, allegation in the Complaint, and generally denies that Plaintiffs have been injured

8  in any of the sums mentioned in the said Complaint, or any sum at all, as the result of any act,

9  omission to act and/or delay in acting of Defendant.

10

11                                **AFFIRMATIVE DEFENSES**

12        Defendant asserts each of the following separate, distinct, and affirmative defenses listed

13  below.  Defendant presently has insufficient knowledge or information upon which to form a belief

14  as to whether it may have additional, as yet unstated, affirmative defenses available.  Defendant

15  therefore reserves the right to assert additional affirmative defenses in the event discovery indicates

16  they would be appropriate.  Defendant also reserves the right to amend, correct and/or withdraw

17  any of its affirmative defenses in the event discovery indicates this would be appropriate.

18                              **FIRST AFFIRMATIVE DEFENSE**
                                 (Lack of Employment Relationship)
19

20        To the extent Defendant was not the employer of any of the Plaintiffs, such Plaintiffs have

21  not been damaged by Defendant's acts and/or omissions.

22                             **SECOND AFFIRMATIVE DEFENSE**
                                  (Failure to State a Cause of Action)
23

24        The Complaint and each purported cause of action alleged therein fail to state facts

25  sufficient to constitute a cause of action upon which relief can be granted against Defendant.

26                              **THIRD AFFIRMATIVE DEFENSE**
                                         (No Liability)
27

28        Defendant alleges that in the event any of the allegations of unlawful conduct contained in

----
                                          1

1 | the Complaint are found to have merit, it took prompt and appropriate action and has no liability

2 | for any alleged unlawful conduct.

3 | **FOURTH AFFIRMATIVE DEFENSE**
(Defendant's Reasonable Care)

4

5 | Defendant was fully justified and exercised reasonable care, prudence, skill, and business

6 | judgment in the management of its affairs.  Defendant acted in good faith, with honesty of purpose,

7 | consistent with the law and its established policies and practices.

8 | **FIFTH AFFIRMATIVE DEFENSE**
(Failure to Exhaust Internal Remedies)

9

10 | The Complaint and each purported cause of action alleged therein are barred, in whole or in

11 | part, because Plaintiffs failed to exhaust internal grievance procedures pursuant to an agreement

12 | and/or by virtue of any defenses related to such an agreement.

13 | **SIXTH AFFIRMATIVE DEFENSE**
(Failure to Exhaust Collective Bargaining Grievance Procedures)

14

15 | The Complaint and each purported cause of action alleged therein are barred, in whole or in

16 | part, because Plaintiffs failed to exhaust collective bargaining grievance procedures.

17 | **SEVENTH AFFIRMATIVE DEFENSE**
(Failure to Exhaust Contractual Dispute Resolution Procedures)

18

19 | The Complaint and each purported cause of action alleged therein are barred, in whole or in

20 | part, because Plaintiffs failed to exhaust contractual dispute resolution procedures including, but

21 | not limited to, arbitration or mediation.

22 | **EIGHTH AFFIRMATIVE DEFENSE**
(Failure to Exhaust Administrative Remedies)

23

24 | The Complaint and each purported cause of action alleged therein are barred, in whole or in

25 | part, because Plaintiffs failed to exhaust administrative remedies.

26 | **NINTH AFFIRMATIVE DEFENSE**
(Releases)

27

28 | The Complaint and each purported cause of action alleged therein are barred, in whole or in

2

1  part, to the extent Plaintiffs and/or their agents have released any of their purported causes of

2  action against Defendant.

### TENTH AFFIRMATIVE DEFENSE
(Payments)

5  The Complaint and each purported cause of action alleged therein are barred, in whole or in

6  part, to the extent Plaintiffs and/or their agents have received payment of any of the amounts

7  claimed therein.

### ELEVENTH AFFIRMATIVE DEFENSE
(Laches)

10  The Complaint and each purported cause of action alleged therein are barred, in whole or in

11  part, by the equitable doctrine of laches.

### TWELFTH AFFIRMATIVE DEFENSE
(Statute of Limitations)

14  The Complaint, each purported cause of action alleged therein, and the elements of relief

15  sought therein are barred, in whole or in part, by one or more statutes of limitations including, but

16  not limited to, Code of Civil Procedure §§ 338, 339 and 340, Business and Professions Code §

17  17208, and/or Labor Code § 203.

### THIRTEENTH AFFIRMATIVE DEFENSE
(Estoppel)

20  Plaintiffs are estopped by their own acts, omissions, representations, and/or courses of

21  conduct from asserting the causes of action upon which they seek relief.

### FOURTEENTH AFFIRMATIVE DEFENSE
(Res Judicata and Collateral Estoppel)

24  The Complaint, each purported cause of action alleged therein, and the elements of relief

25  sought therein are barred, in whole or in part, by res judicata and/or collateral estoppel.

### FIFTEENTH AFFIRMATIVE DEFENSE
(Judicial Estoppel)

EXT B PAGE 59

28  The Complaint, each purported cause of action alleged therein, and the elements of relief

3

DEFENDANT AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.'S ANSWER TO
UNVERIFIED COMPLAINT

1 | sought therein are barred, in whole or in part, by judicial estoppel.

2 | ### SIXTEENTH AFFIRMATIVE DEFENSE
### (Waiver)

3

4 | The Complaint and each purported cause of action alleged therein are barred, in whole or in

5 | part, by the waiver doctrine.

6 | ### SEVENTEENTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

7

8 | Plaintiffs have or have had unclean hands with respect to the matters alleged in the

9 | Complaint and are therefore barred, in whole or in part, from recovering any relief on the

10 | Complaint or any purported cause of action alleged therein.

11 | ### EIGHTEENTH AFFIRMATIVE DEFENSE
### (Contributory Negligence)

12

13 | Without admitting that Plaintiffs suffered any injury or damages whatsoever, Defendant

14 | alleges that any such injury or damages were caused by Plaintiffs' own contributory negligence.

15 | Plaintiffs' recoverable damages, if any, must be reduced by the percentage of total fault for which

16 | Plaintiffs are responsible.

17 | ### NINETEENTH AFFIRMATIVE DEFENSE
### (Allocation of Fault based on Negligence)

18

19 | Without admitting that Plaintiffs suffered any injury or damages whatsoever, Defendant

20 | alleges that any such injury or damages were caused by the acts and/or omissions of third parties

21 | other than Defendant. Defendant requests that an allocation of such negligence and conduct be

22 | made among such other parties, and if any liability is found on the part of Defendant, that judgment

23 | against Defendant be only in an amount which is proportional to the extent or percentage by which

24 | its acts and/or omissions contributed to the alleged injuries and damage.

25 | ### TWENTIETH AFFIRMATIVE DEFENSE
### (Intervening or Superseding Acts of Third Parties)

26

27 | Plaintiffs' damages, if any, resulted from the acts or omissions of third parties. The acts or

28 | omissions of these third parties constitute intervening or superseding causes of the harm, if any,

4

1    suffered by Plaintiffs, and said third parties should bear the responsibility of compensating

2    Plaintiffs for said damages.

### TWENTY-FIRST AFFIRMATIVE DEFENSE
(After-Acquired Evidence)

5    The Complaint and each purported cause of action alleged therein are barred, in whole or in

6    part, by after-acquired evidence.

### TWENTY-SECOND AFFIRMATIVE DEFENSE
(Inapplicability of Overtime Requirements)

9    California's overtime requirements do not apply to Plaintiffs to the extent Plaintiffs fall

10   within the exemptions and exclusions under California wage and hour law, including, but not

11   limited to, applicable IWC Wage Orders.

### TWENTY-THIRD AFFIRMATIVE DEFENSE
(Inapplicability of Meal and Rest Period Requirements)

14   California's meal and rest period requirements do not apply to Plaintiffs to the extent

15   Plaintiffs fall within the exemptions and exclusions under California wage and hour law, including,

16   but not limited to, applicable IWC Wage Orders.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE
(No Willful Failure to Pay)

19   Plaintiffs cannot recover waiting time penalties because any alleged failure to pay wages

20   was based on a good faith dispute regarding the applicable law or facts.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE
(Labor Management Relations Act Preemption)

23   The Complaint and each purported cause of action alleged therein are preempted by the

24   provisions of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).

### TWENTY-SIXTH AFFIRMATIVE DEFENSE
(Fair Labor Standards Act Preemption)

27   The Complaint and each purported cause of action alleged therein are preempted by the

28   provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

5

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE
(Failure to Join Necessary Parties)

The Complaint and each purported cause of action alleged therein are barred, in whole or in part, as a result of Plaintiffs' failure to join necessary parties to the action.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE
(Justification And Privilege)

Defendant alleges it cannot be liable for any alleged violation of Business and Professions Code § 17200 et seq. because its actions, conduct and/or dealings with its employees were lawful, and were carried out in good faith and for legitimate business purposes.

## TWENTY-NINTH AFFIRMATIVE DEFENSE
(Consent)

The Complaint and each purported cause of action alleged therein are barred, in whole or in part, to the extent Plaintiffs consented to any and/or all of the conduct about which they now complain.

## THIRTIETH AFFIRMATIVE DEFENSE
(Failure to Mitigate)

Plaintiffs are barred, in whole or in part, from recovering any damages, or any recovery of damages must be reduced, excused and/or discharged by virtue of Plaintiffs' failure to exercise reasonable diligence to mitigate their alleged damages.

## THIRTY-FIRST AFFIRMATIVE DEFENSE
(Misrepresentations)

The Complaint and each purported cause of action alleged therein are barred, in whole or in part, by misrepresentations made by Plaintiffs.

## THIRTY-SECOND AFFIRMATIVE DEFENSE
(Setoff, Offset, and/or Recoupment)

Some or all of the purported causes of action in the Complaint are subject to setoff, offset and/or recoupment.

DEFENDANT AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.'S ANSWER TO
UNVERIFIED COMPLAINT

1

2

## THIRTY-THIRD AFFIRMATIVE DEFENSE
### (Balancing of Hardships)

3    Plaintiffs are not entitled to injunctive or declaratory relief because the benefit of such

4    relief, if any, is slight compared to the harm Defendant will suffer if injunctive or declaratory relief

5    is permitted.

6

## THIRTY-FOURTH AFFIRMATIVE DEFENSE
### (Lack of Irreparable Injury)

7

8    Plaintiffs are not entitled to injunctive or declaratory relief because they will not suffer any

9    irreparable injury if injunctive or declaratory relief is declined.

10

## THIRTY-FIFTH AFFIRMATIVE DEFENSE
### (No Proper Representative Claims)

11

12    Plaintiffs' Business and Professions Code § 17200 et seq. cause of action is not appropriate

13    for resolution on a representative basis.

14

## THIRTY-SIXTH AFFIRMATIVE DEFENSE
### (Not a Class Action)

15

16    Plaintiffs' causes of action, and each of them, cannot and should not be maintained as a

17    class action pursuant to any section of the Labor Code, Government Code, Code of Civil Procedure

18    or other statute, any applicable state court rule or any applicable court decisions.

19

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE
### (Failure to Meet Class Action Requirements)

20

21    The Complaint and each purported cause of action alleged therein are barred, in whole or in

22    part, to the extent Plaintiffs have failed to allege sufficient facts to meet the necessary requirements

23    for class certification, including typicality, commonality, numerosity, superiority, and/or adequacy.

24

25

26

27

28

DEFENDANT AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.'S ANSWER TO
UNVERIFIED COMPLAINT

1

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE
(Non-Certifiable Class)

2

3      The Complaint and each purported cause of action alleged therein fail to state facts

4    sufficient to certify a class pursuant to Code of Civil Procedure § 382, or pursuant to any other

5    applicable law, and this action is not properly brought as a class action.

6                    ## THIRTY-NINTH AFFIRMATIVE DEFENSE
                    (Representative Claims Violate Defendant's Rights)

7

8      Defendant alleges that, to the extent the Court declines to certify a class, then maintenance

9    of those claims as "representative" actions under the Business and Professions Code (assuming,

10   arguendo, some or all of these claims could be so maintained, which Defendant specifically denies)

11   would violate the Due Process Clause of the United States and California Constitutions by

12   authorizing actions to be brought on behalf of a class without requiring class certification of

13   persons allegedly injured by the challenged act or practice.  Moreover, any finding of liability

14   pursuant to the Business and Professions Code would violate the Due Process Clause of the United

15   States and California Constitutions because, among other things, the standards of liability under the

16   Business and Professions Code are unduly vague and subjective, and permit retroactive, random,

17   arbitrary and capricious punishment that serves no legitimate governmental interest.  Finally, any

18   award of restitution under the Business and Professions Code would violate the Excessive Fines

19   and Due Process Clauses of the United States and California Constitutions.

20                    ## FORTIETH AFFIRMATIVE DEFENSE
                    (No Damages)

21

22     Plaintiffs have not suffered any damages as a result of any actions taken by Defendant

23   and/or its agents and Plaintiffs are therefore barred, in whole or in part, from asserting any cause of

24   action against Defendant.

25                    ## FORTY-FIRST AFFIRMATIVE DEFENSE
                    (Speculative Damages)

26

27     Plaintiffs cannot recover any of the damages alleged in the Complaint because such

28   damages, if any, are too speculative to be recoverable at law.

8

DEFENDANT AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.'S ANSWER TO
UNVERIFIED COMPLAINT

**FORTY-SECOND AFFIRMATIVE DEFENSE**
(No Availability of Damages)

Pursuant to Business and Professions Code § 17200 et seq., Plaintiffs are not entitled to an award of damages.

**FORTY-THIRD AFFIRMATIVE DEFENSE**
(Attorneys' Fees)

The Complaint and each purported cause of action alleged therein fail to state a cause of action for attorneys' fees against Defendant.

**FORTY-FOURTH AFFIRMATIVE DEFENSE**
(Costs of Suit)

The Complaint and each purported cause of action alleged therein fail to state a cause of action for costs of suit against Defendant.

**FORTY-FIFTH AFFIRMATIVE DEFENSE**
(Primary Jurisdiction Doctrine)

The Complaint and each purported cause of action alleged therein should be abated in the Court's discretion, and Plaintiffs should be forced to pursue their administrative remedies with the California Division of Labor Standards Enforcement, which has primary jurisdiction over Plaintiffs' claims.

**FORTY-SIXTH AFFIRMATIVE DEFENSE**
(Standing)

The Complaint and each purported cause of action alleged therein are barred, in whole or in part, to the extent Plaintiffs lack standing and were not a party aggrieved by the alleged unlawful employment practices.

**FORTY-SEVENTH AFFIRMATIVE DEFENSE**
(Claim Based on Frivolous Grounds)

The Complaint and each purported cause of action alleged therein are frivolous, unreasonable, groundless, designed to harass and annoy Defendant, and/or are not brought in good faith. Defendant is entitled to recover from Plaintiffs all costs and its attorneys' fees incurred

9

1    defending this lawsuit pursuant to all applicable laws.

2

3                              **PRAYER FOR RELIEF**

4        WHEREFORE, Defendant prays as follows:

5        1.      For entry of judgment in favor of Defendant and against Plaintiffs;

6        2.      That Plaintiffs take nothing by way of their Complaint;

7        3.      That Defendant be awarded costs of suit herein;

8        4.      That Defendant be awarded actual attorneys' fees incurred in defending this suit;

9                and

10       5.      For such other and further relief as this Court may deem just and proper.

11

12   DATED:  May 30, 2008                OGLETREE, DEAKINS, NASH, SMOAK &
                                         STEWART, P.C.
13

14                                       By: _____

15                                           Douglas J. Farmer
                                             David D. Sohn
16                                           Patricia Salazar

17                                       Attorneys for Defendants
                                         AMERICAN MEDICAL RESPONSE, INC.,
18                                       AMERICAN MEDICAL RESPONSE WEST,
                                         AMERICAN MEDICAL RESPONSE
19                                       AMBULANCE SERVICE, INC., AMERICAN
                                         MEDICAL RESPONSE OF INLAND EMPIRE,
20                                       and AMERICAN MEDICAL RESPONSE OF
                                         SOUTHERN CALIFORNIA
21

22

23

24

25

26

27

28

                                          10

ENDORSED
FILED
ALAMEDA COUNTY

M⸻

CLERK OF THE SUPERIOR COUR.

E. BAKER

1  DOUGLAS J. FARMER, State Bar No. 139646
   douglas.farmer@ogletreedeakins.com
2  DAVID D. SOHN, State Bar No. 221119
   david.sohn@ogletreedeakins.com
3  PATRICIA SALAZAR, State Bar No. 249935
   patricia.salazar@ogletreedeakins.com
4  OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
   Steuart Tower, Suite 1300
5  One Market Plaza
   San Francisco, California  94105
6  Telephone:    415-442-4810
7  Facsimile:    415-442-4870
   Attorneys for Defendants
8  AMERICAN MEDICAL RESPONSE, INC.,
   AMERICAN MEDICAL RESPONSE WEST,
9  AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.,
   AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE, and
10 AMERICAN MEDICAL RESPONSE OF SOUTHERN CALIFORNIA

11

12              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

13

14                  FOR THE COUNTY OF ALAMEDA

15

16  LAURA BARTONI, on behalf of herself, and          Case No. RG 08382130
    on behalf of all others similarly situated,
17
18                          Plaintiff,

19          v.                                         DEFENDANT AMERICAN MEDICAL
                                                       RESPONSE OF INLAND EMPIRE'S
20  AMERICAN MEDICAL RESPONSE, INC.,                   ANSWER TO PLAINTIFFS' UNVERIFIED
    AMERICAN MEDICAL RESPONSE WEST,                    COMPLAINT
21  AMERICAN MEDICAL RESPONSE
    AMBULANCE SERVICE, INC., AMERICAN
22  MEDICAL RESPONSE OF INLAND
    EMPIRE, AMERICAN MEDICAL
23  RESPONSE OF SOUTHERN CALIFORNIA,
    and DOES 1 through 50, inclusive,
24
25                          Defendants.

26                                                     Action Filed:    April 16, 2008
                                                       Trial Date:      Not Set
27

28

DEFENDANT AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE'S ANSWER TO UNVERIFIED
COMPLAINT

1    Defendant American Medical Response of Inland Empire ("Defendant") responds to the

2    unverified Complaint ("Complaint") filed by Plaintiff Laura Bartoni, on behalf of herself and on

3    behalf of all others similarly situated ("Plaintiffs"), as follows:

4

5    ### GENERAL DENIAL

6    Pursuant to Code of Civil Procedure § 431.30, Defendant generally denies each and every,

7    all and singular, allegation in the Complaint, and generally denies that Plaintiffs have been injured

8    in any of the sums mentioned in the said Complaint, or any sum at all, as the result of any act,

9    omission to act and/or delay in acting of Defendant.

10

11    ### AFFIRMATIVE DEFENSES

12    Defendant asserts each of the following separate, distinct, and affirmative defenses listed

13    below. Defendant presently has insufficient knowledge or information upon which to form a belief

14    as to whether it may have additional, as yet unstated, affirmative defenses available. Defendant

15    therefore reserves the right to assert additional affirmative defenses in the event discovery indicates

16    they would be appropriate. Defendant also reserves the right to amend, correct and/or withdraw

17    any of its affirmative defenses in the event discovery indicates this would be appropriate.

18    ### FIRST AFFIRMATIVE DEFENSE
     (Lack of Employment Relationship)
19

20    To the extent Defendant was not the employer of any of the Plaintiffs, such Plaintiffs have

21    not been damaged by Defendant's acts and/or omissions.

22    ### SECOND AFFIRMATIVE DEFENSE
     (Failure to State a Cause of Action)
23

24    The Complaint and each purported cause of action alleged therein fail to state facts

25    sufficient to constitute a cause of action upon which relief can be granted against Defendant.

26    ### THIRD AFFIRMATIVE DEFENSE
     (No Liability)
27

28    Defendant alleges that in the event any of the allegations of unlawful conduct contained in

1

1  the Complaint are found to have merit, it took prompt and appropriate action and has no liability

2  for any alleged unlawful conduct.

3  **FOURTH AFFIRMATIVE DEFENSE**
(Defendant's Reasonable Care)

4

5  Defendant was fully justified and exercised reasonable care, prudence, skill, and business

6  judgment in the management of its affairs.  Defendant acted in good faith, with honesty of purpose,

7  consistent with the law and its established policies and practices.

8  **FIFTH AFFIRMATIVE DEFENSE**
(Failure to Exhaust Internal Remedies)

9

10  The Complaint and each purported cause of action alleged therein are barred, in whole or in

11  part, because Plaintiffs failed to exhaust internal grievance procedures pursuant to an agreement

12  and/or by virtue of any defenses related to such an agreement.

13  **SIXTH AFFIRMATIVE DEFENSE**
(Failure to Exhaust Collective Bargaining Grievance Procedures)

14

15  The Complaint and each purported cause of action alleged therein are barred, in whole or in

16  part, because Plaintiffs failed to exhaust collective bargaining grievance procedures.

17  **SEVENTH AFFIRMATIVE DEFENSE**
(Failure to Exhaust Contractual Dispute Resolution Procedures)

18

19  The Complaint and each purported cause of action alleged therein are barred, in whole or in

20  part, because Plaintiffs failed to exhaust contractual dispute resolution procedures including, but

21  not limited to, arbitration or mediation.

22  **EIGHTH AFFIRMATIVE DEFENSE**
(Failure to Exhaust Administrative Remedies)

23

24  The Complaint and each purported cause of action alleged therein are barred, in whole or in

25  part, because Plaintiffs failed to exhaust administrative remedies.

26  **NINTH AFFIRMATIVE DEFENSE**
(Releases)

27

28  The Complaint and each purported cause of action alleged therein are barred, in whole or in

2

DEFENDANT AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE'S ANSWER TO UNVERIFIED
COMPLAINT

B 69

1 | part, to the extent Plaintiffs and/or their agents have released any of their purported causes of

2 | action against Defendant.

### TENTH AFFIRMATIVE DEFENSE
#### (Payments)

The Complaint and each purported cause of action alleged therein are barred, in whole or in part, to the extent Plaintiffs and/or their agents have received payment of any of the amounts claimed therein.

### ELEVENTH AFFIRMATIVE DEFENSE
#### (Laches)

The Complaint and each purported cause of action alleged therein are barred, in whole or in part, by the equitable doctrine of laches.

### TWELFTH AFFIRMATIVE DEFENSE
#### (Statute of Limitations)

The Complaint, each purported cause of action alleged therein, and the elements of relief sought therein are barred, in whole or in part, by one or more statutes of limitations including, but not limited to, Code of Civil Procedure §§ 338, 339 and 340, Business and Professions Code § 17208, and/or Labor Code § 203.

### THIRTEENTH AFFIRMATIVE DEFENSE
#### (Estoppel)

Plaintiffs are estopped by their own acts, omissions, representations, and/or courses of conduct from asserting the causes of action upon which they seek relief.

### FOURTEENTH AFFIRMATIVE DEFENSE
#### (Res Judicata and Collateral Estoppel)

The Complaint, each purported cause of action alleged therein, and the elements of relief sought therein are barred, in whole or in part, by res judicata and/or collateral estoppel.

### FIFTEENTH AFFIRMATIVE DEFENSE
#### (Judicial Estoppel)

The Complaint, each purported cause of action alleged therein, and the elements of relief

3

1    sought therein are barred, in whole or in part, by judicial estoppel.

2

### SIXTEENTH AFFIRMATIVE DEFENSE
3    (Waiver)

4      The Complaint and each purported cause of action alleged therein are barred, in whole or in

5    part, by the waiver doctrine.

6

### SEVENTEENTH AFFIRMATIVE DEFENSE
7    (Unclean Hands)

8      Plaintiffs have or have had unclean hands with respect to the matters alleged in the

9    Complaint and are therefore barred, in whole or in part, from recovering any relief on the

10    Complaint or any purported cause of action alleged therein.

11

### EIGHTEENTH AFFIRMATIVE DEFENSE
12    (Contributory Negligence)

13      Without admitting that Plaintiffs suffered any injury or damages whatsoever, Defendant

14    alleges that any such injury or damages were caused by Plaintiffs' own contributory negligence.

15    Plaintiffs' recoverable damages, if any, must be reduced by the percentage of total fault for which

16    Plaintiffs are responsible.

17

### NINETEENTH AFFIRMATIVE DEFENSE
18    (Allocation of Fault based on Negligence)

19      Without admitting that Plaintiffs suffered any injury or damages whatsoever, Defendant

20    alleges that any such injury or damages were caused by the acts and/or omissions of third parties

21    other than Defendant. Defendant requests that an allocation of such negligence and conduct be

22    made among such other parties, and if any liability is found on the part of Defendant, that judgment

23    against Defendant be only in an amount which is proportional to the extent or percentage by which

24    its acts and/or omissions contributed to the alleged injuries and damage.

25

### TWENTIETH AFFIRMATIVE DEFENSE
26    (Intervening or Superseding Acts of Third Parties)

27      Plaintiffs' damages, if any, resulted from the acts or omissions of third parties. The acts or

28    omissions of these third parties constitute intervening or superseding causes of the harm, if any,

4

EXHIBIT B PAGE 71

1    suffered by Plaintiffs, and said third parties should bear the responsibility of compensating

2    Plaintiffs for said damages.

3    **TWENTY-FIRST AFFIRMATIVE DEFENSE**
     (After-Acquired Evidence)
4

5        The Complaint and each purported cause of action alleged therein are barred, in whole or in

6    part, by after-acquired evidence.

7    **TWENTY-SECOND AFFIRMATIVE DEFENSE**
     (Inapplicability of Overtime Requirements)
8

9        California's overtime requirements do not apply to Plaintiffs to the extent Plaintiffs fall

10   within the exemptions and exclusions under California wage and hour law, including, but not

11   limited to, applicable IWC Wage Orders.

12   **TWENTY-THIRD AFFIRMATIVE DEFENSE**
     (Inapplicability of Meal and Rest Period Requirements)
13

14       California's meal and rest period requirements do not apply to Plaintiffs to the extent

15   Plaintiffs fall within the exemptions and exclusions under California wage and hour law, including,

16   but not limited to, applicable IWC Wage Orders.

17   **TWENTY-FOURTH AFFIRMATIVE DEFENSE**
     (No Willful Failure to Pay)
18

19       Plaintiffs cannot recover waiting time penalties because any alleged failure to pay wages

20   was based on a good faith dispute regarding the applicable law or facts.

21   **TWENTY-FIFTH AFFIRMATIVE DEFENSE**
     (Labor Management Relations Act Preemption)
22

23       The Complaint and each purported cause of action alleged therein are preempted by the

24   provisions of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).

25   **TWENTY-SIXTH AFFIRMATIVE DEFENSE**
     (Fair Labor Standards Act Preemption)
26

27       The Complaint and each purported cause of action alleged therein are preempted by the

28   provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

DEFENDANT AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE'S ANSWER TO UNVERIFIED
COMPLAINT

EXHIBIT B PAGE 72

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE
(Failure to Join Necessary Parties)

The Complaint and each purported cause of action alleged therein are barred, in whole or in part, as a result of Plaintiffs' failure to join necessary parties to the action.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE
(Justification And Privilege)

Defendant alleges it cannot be liable for any alleged violation of Business and Professions Code § 17200 et seq. because its actions, conduct and/or dealings with its employees were lawful, and were carried out in good faith and for legitimate business purposes.

## TWENTY-NINTH AFFIRMATIVE DEFENSE
(Consent)

The Complaint and each purported cause of action alleged therein are barred, in whole or in part, to the extent Plaintiffs consented to any and/or all of the conduct about which they now complain.

## THIRTIETH AFFIRMATIVE DEFENSE
(Failure to Mitigate)

Plaintiffs are barred, in whole or in part, from recovering any damages, or any recovery of damages must be reduced, excused and/or discharged by virtue of Plaintiffs' failure to exercise reasonable diligence to mitigate their alleged damages.

## THIRTY-FIRST AFFIRMATIVE DEFENSE
(Misrepresentations)

The Complaint and each purported cause of action alleged therein are barred, in whole or in part, by misrepresentations made by Plaintiffs.

## THIRTY-SECOND AFFIRMATIVE DEFENSE
(Setoff, Offset, and/or Recoupment)

Some or all of the purported causes of action in the Complaint are subject to setoff, offset and/or recoupment.

DEFENDANT AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE'S ANSWER TO UNVERIFIED COMPLAINT

B 73

1    **THIRTY-THIRD AFFIRMATIVE DEFENSE**
     (Balancing of Hardships)

2

3    Plaintiffs are not entitled to injunctive or declaratory relief because the benefit of such

4    relief, if any, is slight compared to the harm Defendant will suffer if injunctive or declaratory relief

5    is permitted.

6    **THIRTY-FOURTH AFFIRMATIVE DEFENSE**
     (Lack of Irreparable Injury)

7

8    Plaintiffs are not entitled to injunctive or declaratory relief because they will not suffer any

9    irreparable injury if injunctive or declaratory relief is declined.

10   **THIRTY-FIFTH AFFIRMATIVE DEFENSE**
     (No Proper Representative Claims)

11

12   Plaintiffs' Business and Professions Code § 17200 et seq. cause of action is not appropriate

13   for resolution on a representative basis.

14   **THIRTY-SIXTH AFFIRMATIVE DEFENSE**
     (Not a Class Action)

15

16   Plaintiffs' causes of action, and each of them, cannot and should not be maintained as a

17   class action pursuant to any section of the Labor Code, Government Code, Code of Civil Procedure

18   or other statute, any applicable state court rule or any applicable court decisions.

19   **THIRTY-SEVENTH AFFIRMATIVE DEFENSE**
     (Failure to Meet Class Action Requirements)

20

21   The Complaint and each purported cause of action alleged therein are barred, in whole or in

22   part, to the extent Plaintiffs have failed to allege sufficient facts to meet the necessary requirements

23   for class certification, including typicality, commonality, numerosity, superiority, and/or adequacy.

24

25

26

27

28

DEFENDANT AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE'S ANSWER TO UNVERIFIED
COMPLAINT

EXHIBIT B   PAGE 74

1

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE
### (Non-Certifiable Class)

2

3    The Complaint and each purported cause of action alleged therein fail to state facts

4    sufficient to certify a class pursuant to Code of Civil Procedure § 382, or pursuant to any other

5    applicable law, and this action is not properly brought as a class action.

6

## THIRTY-NINTH AFFIRMATIVE DEFENSE
### (Representative Claims Violate Defendant's Rights)

7

8    Defendant alleges that, to the extent the Court declines to certify a class, then maintenance

9    of those claims as "representative" actions under the Business and Professions Code (assuming,

10   arguendo, some or all of these claims could be so maintained, which Defendant specifically denies)

11   would violate the Due Process Clause of the United States and California Constitutions by

12   authorizing actions to be brought on behalf of a class without requiring class certification of

13   persons allegedly injured by the challenged act or practice.  Moreover, any finding of liability

14   pursuant to the Business and Professions Code would violate the Due Process Clause of the United

15   States and California Constitutions because, among other things, the standards of liability under the

16   Business and Professions Code are unduly vague and subjective, and permit retroactive, random,

17   arbitrary and capricious punishment that serves no legitimate governmental interest.  Finally, any

18   award of restitution under the Business and Professions Code would violate the Excessive Fines

19   and Due Process Clauses of the United States and California Constitutions.

20

## FORTIETH AFFIRMATIVE DEFENSE
### (No Damages)

21

22   Plaintiffs have not suffered any damages as a result of any actions taken by Defendant

23   and/or its agents and Plaintiffs are therefore barred, in whole or in part, from asserting any cause of

24   action against Defendant.

25

## FORTY-FIRST AFFIRMATIVE DEFENSE
### (Speculative Damages)

26

27   Plaintiffs cannot recover any of the damages alleged in the Complaint because such

28   damages, if any, are too speculative to be recoverable at law.

8

DEFENDANT AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE'S ANSWER TO UNVERIFIED
COMPLAINT

## FORTY-SECOND AFFIRMATIVE DEFENSE
(No Availability of Damages)

Pursuant to Business and Professions Code § 17200 et seq., Plaintiffs are not entitled to an award of damages.

## FORTY-THIRD AFFIRMATIVE DEFENSE
(Attorneys' Fees)

The Complaint and each purported cause of action alleged therein fail to state a cause of action for attorneys' fees against Defendant.

## FORTY-FOURTH AFFIRMATIVE DEFENSE
(Costs of Suit)

The Complaint and each purported cause of action alleged therein fail to state a cause of action for costs of suit against Defendant.

## FORTY-FIFTH AFFIRMATIVE DEFENSE
(Primary Jurisdiction Doctrine)

The Complaint and each purported cause of action alleged therein should be abated in the Court's discretion, and Plaintiffs should be forced to pursue their administrative remedies with the California Division of Labor Standards Enforcement, which has primary jurisdiction over Plaintiffs' claims.

## FORTY-SIXTH AFFIRMATIVE DEFENSE
(Standing)

The Complaint and each purported cause of action alleged therein are barred, in whole or in part, to the extent Plaintiffs lack standing and were not a party aggrieved by the alleged unlawful employment practices.

## FORTY-SEVENTH AFFIRMATIVE DEFENSE
(Claim Based on Frivolous Grounds)

The Complaint and each purported cause of action alleged therein are frivolous, unreasonable, groundless, designed to harass and annoy Defendant, and/or are not brought in good faith. Defendant is entitled to recover from Plaintiffs all costs and its attorneys' fees incurred

9

EXHIBIT B PAGE 76

1    defending this lawsuit pursuant to all applicable laws.

2

3                               **PRAYER FOR RELIEF**

4        WHEREFORE, Defendant prays as follows:

5        1.      For entry of judgment in favor of Defendant and against Plaintiffs;

6        2.      That Plaintiffs take nothing by way of their Complaint;

7        3.      That Defendant be awarded costs of suit herein;

8        4.      That Defendant be awarded actual attorneys' fees incurred in defending this suit;

9                and

10       5.      For such other and further relief as this Court may deem just and proper.

11

12   DATED:  May 30, 2008                    OGLETREE, DEAKINS, NASH, SMOAK &
                                             STEWART, P.C.
13

14                                           By: _____

15                                               Douglas J. Farmer
                                                 David D. Sohn
16                                               Patricia Salazar

17                                           Attorneys for Defendants
                                             AMERICAN MEDICAL RESPONSE, INC.,
18                                           AMERICAN MEDICAL RESPONSE WEST,
                                             AMERICAN MEDICAL RESPONSE
19                                           AMBULANCE SERVICE, INC., AMERICAN
                                             MEDICAL RESPONSE OF INLAND EMPIRE,
20                                           and AMERICAN MEDICAL RESPONSE OF
                                             SOUTHERN CALIFORNIA
21

22

23

24

25

26

27

28
                                          10
     DEFENDANT AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE'S ANSWER TO UNVERIFIED
                                       COMPLAINT

EXHIBIT B  PAGE 77

1    DOUGLAS J. FARMER, State Bar No. 139646
     douglas.farmer@ogletreedeakins.com
2    DAVID D. SOHN, State Bar No. 221119
     david.sohn@ogletreedeakins.com
3    PATRICIA SALAZAR, State Bar No. 249935
     patricia.salazar@ogletreedeakins.com
4    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
     Steuart Tower, Suite 1300
5    One Market Plaza
6    San Francisco, California 94105
     Telephone:    415-442-4810
7    Facsimile:     415-442-4870
     Attorneys for Defendants
8    AMERICAN MEDICAL RESPONSE, INC.,
     AMERICAN MEDICAL RESPONSE WEST,
9    AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.,
     AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE, and
10   AMERICAN MEDICAL RESPONSE OF SOUTHERN CALIFORNIA

11

12            **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

13

14                **FOR THE COUNTY OF ALAMEDA**

15

| | |
|---|---|
| 16   LAURA BARTONI, on behalf of herself, and | Case No. RG 08382130 |
| 17   on behalf of all others similarly situated, | |
| 18          Plaintiff, | |
| 19      v. | **DEFENDANT AMERICAN MEDICAL RESPONSE OF SOUTHERN CALIFORNIA'S ANSWER TO PLAINTIFFS' UNVERIFIED COMPLAINT** |
| 20   AMERICAN MEDICAL RESPONSE, INC., AMERICAN MEDICAL RESPONSE WEST, | |
| 21   AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC., AMERICAN | |
| 22   MEDICAL RESPONSE OF INLAND EMPIRE, AMERICAN MEDICAL | |
| 23   RESPONSE OF SOUTHERN CALIFORNIA, and DOES 1 through 50, inclusive, | |
| 24 | Action Filed:    April 16, 2008 |
| 25          Defendants. | Trial Date:      Not Set |

26

27

28

EXHIBIT B PAGE 78

1    Defendant American Medical Response of Southern California ("Defendant") responds to

2 the unverified Complaint ("Complaint") filed by Plaintiff Laura Bartoni, on behalf of herself and

3 on behalf of all others similarly situated ("Plaintiffs"), as follows:

4

5                              **GENERAL DENIAL**

6    Pursuant to Code of Civil Procedure § 431.30, Defendant generally denies each and every,

7 all and singular, allegation in the Complaint, and generally denies that Plaintiffs have been injured

8 in any of the sums mentioned in the said Complaint, or any sum at all, as the result of any act,

9 omission to act and/or delay in acting of Defendant.

10

11                           **AFFIRMATIVE DEFENSES**

12    Defendant asserts each of the following separate, distinct, and affirmative defenses listed

13 below. Defendant presently has insufficient knowledge or information upon which to form a belief

14 as to whether it may have additional, as yet unstated, affirmative defenses available. Defendant

15 therefore reserves the right to assert additional affirmative defenses in the event discovery indicates

16 they would be appropriate. Defendant also reserves the right to amend, correct and/or withdraw

17 any of its affirmative defenses in the event discovery indicates this would be appropriate.

18                         **FIRST AFFIRMATIVE DEFENSE**
                            (Lack of Employment Relationship)
19

20    To the extent Defendant was not the employer of any of the Plaintiffs, such Plaintiffs have

21 not been damaged by Defendant's acts and/or omissions.

22                        **SECOND AFFIRMATIVE DEFENSE**
                            (Failure to State a Cause of Action)
23

24    The Complaint and each purported cause of action alleged therein fail to state facts

25 sufficient to constitute a cause of action upon which relief can be granted against Defendant.

26                         **THIRD AFFIRMATIVE DEFENSE**
                                    (No Liability)
27

28    Defendant alleges that in the event any of the allegations of unlawful conduct contained in

---
1

DEFENDANT AMERICAN MEDICAL RESPONSE OF SOUTHERN CALIFORNIA'S ANSWER TO
UNVERIFIED COMPLAINT

B PAGE 79

1  the Complaint are found to have merit, it took prompt and appropriate action and has no liability

2  for any alleged unlawful conduct.

3  ### FOURTH AFFIRMATIVE DEFENSE
(Defendant's Reasonable Care)

4

5  Defendant was fully justified and exercised reasonable care, prudence, skill, and business

6  judgment in the management of its affairs. Defendant acted in good faith, with honesty of purpose,

7  consistent with the law and its established policies and practices.

8  ### FIFTH AFFIRMATIVE DEFENSE
(Failure to Exhaust Internal Remedies)

9

10  The Complaint and each purported cause of action alleged therein are barred, in whole or in

11  part, because Plaintiffs failed to exhaust internal grievance procedures pursuant to an agreement

12  and/or by virtue of any defenses related to such an agreement.

13  ### SIXTH AFFIRMATIVE DEFENSE
(Failure to Exhaust Collective Bargaining Grievance Procedures)

14

15  The Complaint and each purported cause of action alleged therein are barred, in whole or in

16  part, because Plaintiffs failed to exhaust collective bargaining grievance procedures.

17  ### SEVENTH AFFIRMATIVE DEFENSE
(Failure to Exhaust Contractual Dispute Resolution Procedures)

18

19  The Complaint and each purported cause of action alleged therein are barred, in whole or in

20  part, because Plaintiffs failed to exhaust contractual dispute resolution procedures including, but

21  not limited to, arbitration or mediation.

22  ### EIGHTH AFFIRMATIVE DEFENSE
(Failure to Exhaust Administrative Remedies)

23

24  The Complaint and each purported cause of action alleged therein are barred, in whole or in

25  part, because Plaintiffs failed to exhaust administrative remedies.

26  ### NINTH AFFIRMATIVE DEFENSE
(Releases)

27

28  The Complaint and each purported cause of action alleged therein are barred, in whole or in

2

EXHIBIT B PAGE 80

1    part, to the extent Plaintiffs and/or their agents have released any of their purported causes of

2    action against Defendant.

3                          **TENTH AFFIRMATIVE DEFENSE**
                                      (Payments)
4

5          The Complaint and each purported cause of action alleged therein are barred, in whole or in

6    part, to the extent Plaintiffs and/or their agents have received payment of any of the amounts

7    claimed therein.

8                        **ELEVENTH AFFIRMATIVE DEFENSE**
                                       (Laches)
9

10         The Complaint and each purported cause of action alleged therein are barred, in whole or in

11   part, by the equitable doctrine of laches.

12                        **TWELFTH AFFIRMATIVE DEFENSE**
                                 (Statute of Limitations)
13

14         The Complaint, each purported cause of action alleged therein, and the elements of relief

15   sought therein are barred, in whole or in part, by one or more statutes of limitations including, but

16   not limited to, Code of Civil Procedure §§ 338, 339 and 340, Business and Professions Code §

17   17208, and/or Labor Code § 203.

18                      **THIRTEENTH AFFIRMATIVE DEFENSE**
                                      (Estoppel)
19

20         Plaintiffs are estopped by their own acts, omissions, representations, and/or courses of

21   conduct from asserting the causes of action upon which they seek relief.

22                      **FOURTEENTH AFFIRMATIVE DEFENSE**
                             (Res Judicata and Collateral Estoppel)
23

24         The Complaint, each purported cause of action alleged therein, and the elements of relief

25   sought therein are barred, in whole or in part, by res judicata and/or collateral estoppel.

26                       **FIFTEENTH AFFIRMATIVE DEFENSE**
                                  (Judicial Estoppel)
27

28         The Complaint, each purported cause of action alleged therein, and the elements of relief

---
                                            3
     DEFENDANT AMERICAN MEDICAL RESPONSE OF SOUTHERN CALIFORNIA'S ANSWER TO
                          UNVERIFIED COMPLAINT

EXHIBIT B PAGE 81

1  sought therein are barred, in whole or in part, by judicial estoppel.

2  ### SIXTEENTH AFFIRMATIVE DEFENSE
3  (Waiver)

4  The Complaint and each purported cause of action alleged therein are barred, in whole or in

5  part, by the waiver doctrine.

6  ### SEVENTEENTH AFFIRMATIVE DEFENSE
7  (Unclean Hands)

8  Plaintiffs have or have had unclean hands with respect to the matters alleged in the

9  Complaint and are therefore barred, in whole or in part, from recovering any relief on the

10  Complaint or any purported cause of action alleged therein.

11  ### EIGHTEENTH AFFIRMATIVE DEFENSE
12  (Contributory Negligence)

13  Without admitting that Plaintiffs suffered any injury or damages whatsoever, Defendant

14  alleges that any such injury or damages were caused by Plaintiffs' own contributory negligence.

15  Plaintiffs' recoverable damages, if any, must be reduced by the percentage of total fault for which

16  Plaintiffs are responsible.

17  ### NINETEENTH AFFIRMATIVE DEFENSE
18  (Allocation of Fault based on Negligence)

19  Without admitting that Plaintiffs suffered any injury or damages whatsoever, Defendant

20  alleges that any such injury or damages were caused by the acts and/or omissions of third parties

21  other than Defendant. Defendant requests that an allocation of such negligence and conduct be

22  made among such other parties, and if any liability is found on the part of Defendant, that judgment

23  against Defendant be only in an amount which is proportional to the extent or percentage by which

24  its acts and/or omissions contributed to the alleged injuries and damage.

25  ### TWENTIETH AFFIRMATIVE DEFENSE
26  (Intervening or Superseding Acts of Third Parties)

27  Plaintiffs' damages, if any, resulted from the acts or omissions of third parties. The acts or

28  omissions of these third parties constitute intervening or superseding causes of the harm, if any,

EXHIBIT B PAGE 82

1 suffered by Plaintiffs, and said third parties should bear the responsibility of compensating
2 Plaintiffs for said damages.

3 ### TWENTY-FIRST AFFIRMATIVE DEFENSE
(After-Acquired Evidence)
4

5 The Complaint and each purported cause of action alleged therein are barred, in whole or in
6 part, by after-acquired evidence.

7 ### TWENTY-SECOND AFFIRMATIVE DEFENSE
(Inapplicability of Overtime Requirements)
8

9 California's overtime requirements do not apply to Plaintiffs to the extent Plaintiffs fall
10 within the exemptions and exclusions under California wage and hour law, including, but not
11 limited to, applicable IWC Wage Orders.

12 ### TWENTY-THIRD AFFIRMATIVE DEFENSE
(Inapplicability of Meal and Rest Period Requirements)
13

14 California's meal and rest period requirements do not apply to Plaintiffs to the extent
15 Plaintiffs fall within the exemptions and exclusions under California wage and hour law, including,
16 but not limited to, applicable IWC Wage Orders.

17 ### TWENTY-FOURTH AFFIRMATIVE DEFENSE
(No Willful Failure to Pay)
18

19 Plaintiffs cannot recover waiting time penalties because any alleged failure to pay wages
20 was based on a good faith dispute regarding the applicable law or facts.

21 ### TWENTY-FIFTH AFFIRMATIVE DEFENSE
(Labor Management Relations Act Preemption)
22

23 The Complaint and each purported cause of action alleged therein are preempted by the
24 provisions of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).

25 ### TWENTY-SIXTH AFFIRMATIVE DEFENSE
(Fair Labor Standards Act Preemption)
26

27 The Complaint and each purported cause of action alleged therein are preempted by the
28 provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

5

DEFENDANT AMERICAN MEDICAL RESPONSE OF SOUTHERN CALIFORNIA'S ANSWER TO
UNVERIFIED COMPLAINT

EXHIBIT B PAGE 83.

1

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE
(Failure to Join Necessary Parties)

2

3      The Complaint and each purported cause of action alleged therein are barred, in whole or in

4 part, as a result of Plaintiffs' failure to join necessary parties to the action.

5      ## TWENTY-EIGHTH AFFIRMATIVE DEFENSE
(Justification And Privilege)

6

7      Defendant alleges it cannot be liable for any alleged violation of Business and Professions

8 Code § 17200 et seq. because its actions, conduct and/or dealings with its employees were lawful,

9 and were carried out in good faith and for legitimate business purposes.

10     ## TWENTY-NINTH AFFIRMATIVE DEFENSE
(Consent)

11

12     The Complaint and each purported cause of action alleged therein are barred, in whole or in

13 part, to the extent Plaintiffs consented to any and/or all of the conduct about which they now

14 complain.

15     ## THIRTIETH AFFIRMATIVE DEFENSE
(Failure to Mitigate)

16

17     Plaintiffs are barred, in whole or in part, from recovering any damages, or any recovery of

18 damages must be reduced, excused and/or discharged by virtue of Plaintiffs' failure to exercise

19 reasonable diligence to mitigate their alleged damages.

20     ## THIRTY-FIRST AFFIRMATIVE DEFENSE
(Misrepresentations)

21

22     The Complaint and each purported cause of action alleged therein are barred, in whole or in

23 part, by misrepresentations made by Plaintiffs.

24     ## THIRTY-SECOND AFFIRMATIVE DEFENSE
(Setoff, Offset, and/or Recoupment)

25

26     Some or all of the purported causes of action in the Complaint are subject to setoff, offset

27 and/or recoupment.

28

---

6

DEFENDANT AMERICAN MEDICAL RESPONSE OF SOUTHERN CALIFORNIA'S ANSWER TO
UNVERIFIED COMPLAINT

P        84

1

## THIRTY-THIRD AFFIRMATIVE DEFENSE
(Balancing of Hardships)

2

3    Plaintiffs are not entitled to injunctive or declaratory relief because the benefit of such

4    relief, if any, is slight compared to the harm Defendant will suffer if injunctive or declaratory relief

5    is permitted.

6    ## THIRTY-FOURTH AFFIRMATIVE DEFENSE
(Lack of Irreparable Injury)

7

8    Plaintiffs are not entitled to injunctive or declaratory relief because they will not suffer any

9    irreparable injury if injunctive or declaratory relief is declined.

10   ## THIRTY-FIFTH AFFIRMATIVE DEFENSE
(No Proper Representative Claims)

11

12   Plaintiffs' Business and Professions Code § 17200 et seq. cause of action is not appropriate

13   for resolution on a representative basis.

14   ## THIRTY-SIXTH AFFIRMATIVE DEFENSE
(Not a Class Action)

15

16   Plaintiffs' causes of action, and each of them, cannot and should not be maintained as a

17   class action pursuant to any section of the Labor Code, Government Code, Code of Civil Procedure

18   or other statute, any applicable state court rule or any applicable court decisions.

19   ## THIRTY-SEVENTH AFFIRMATIVE DEFENSE
(Failure to Meet Class Action Requirements)

20

21   The Complaint and each purported cause of action alleged therein are barred, in whole or in

22   part, to the extent Plaintiffs have failed to allege sufficient facts to meet the necessary requirements

23   for class certification, including typicality, commonality, numerosity, superiority, and/or adequacy.

24

25

26

27

28

EXHIBIT B PAGE 85

1

2

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE
(Non-Certifiable Class)

3

4   The Complaint and each purported cause of action alleged therein fail to state facts

5   sufficient to certify a class pursuant to Code of Civil Procedure § 382, or pursuant to any other
applicable law, and this action is not properly brought as a class action.

6

7

## THIRTY-NINTH AFFIRMATIVE DEFENSE
(Representative Claims Violate Defendant's Rights)

8   Defendant alleges that, to the extent the Court declines to certify a class, then maintenance

9   of those claims as "representative" actions under the Business and Professions Code (assuming,

10  arguendo, some or all of these claims could be so maintained, which Defendant specifically denies)

11  would violate the Due Process Clause of the United States and California Constitutions by

12  authorizing actions to be brought on behalf of a class without requiring class certification of

13  persons allegedly injured by the challenged act or practice.  Moreover, any finding of liability

14  pursuant to the Business and Professions Code would violate the Due Process Clause of the United

15  States and California Constitutions because, among other things, the standards of liability under the

16  Business and Professions Code are unduly vague and subjective, and permit retroactive, random,

17  arbitrary and capricious punishment that serves no legitimate governmental interest.  Finally, any

18  award of restitution under the Business and Professions Code would violate the Excessive Fines

19  and Due Process Clauses of the United States and California Constitutions.

20

21

## FORTIETH AFFIRMATIVE DEFENSE
(No Damages)

22  Plaintiffs have not suffered any damages as a result of any actions taken by Defendant

23  and/or its agents and Plaintiffs are therefore barred, in whole or in part, from asserting any cause of

24  action against Defendant.

25

26

## FORTY-FIRST AFFIRMATIVE DEFENSE
(Speculative Damages)

27  Plaintiffs cannot recover any of the damages alleged in the Complaint because such

28  damages, if any, are too speculative to be recoverable at law.

---

8

DEFENDANT AMERICAN MEDICAL RESPONSE OF SOUTHERN CALIFORNIA'S ANSWER TO
UNVERIFIED COMPLAINT

## FORTY-SECOND AFFIRMATIVE DEFENSE
### (No Availability of Damages)

Pursuant to Business and Professions Code § 17200 et seq., Plaintiffs are not entitled to an award of damages.

## FORTY-THIRD AFFIRMATIVE DEFENSE
### (Attorneys' Fees)

The Complaint and each purported cause of action alleged therein fail to state a cause of action for attorneys' fees against Defendant.

## FORTY-FOURTH AFFIRMATIVE DEFENSE
### (Costs of Suit)

The Complaint and each purported cause of action alleged therein fail to state a cause of action for costs of suit against Defendant.

## FORTY-FIFTH AFFIRMATIVE DEFENSE
### (Primary Jurisdiction Doctrine)

The Complaint and each purported cause of action alleged therein should be abated in the Court's discretion, and Plaintiffs should be forced to pursue their administrative remedies with the California Division of Labor Standards Enforcement, which has primary jurisdiction over Plaintiffs' claims.

## FORTY-SIXTH AFFIRMATIVE DEFENSE
### (Standing)

The Complaint and each purported cause of action alleged therein are barred, in whole or in part, to the extent Plaintiffs lack standing and were not a party aggrieved by the alleged unlawful employment practices.

## FORTY-SEVENTH AFFIRMATIVE DEFENSE
### (Claim Based on Frivolous Grounds)

The Complaint and each purported cause of action alleged therein are frivolous, unreasonable, groundless, designed to harass and annoy Defendant, and/or are not brought in good faith. Defendant is entitled to recover from Plaintiffs all costs and its attorneys' fees incurred

9

DEFENDANT AMERICAN MEDICAL RESPONSE OF SOUTHERN CALIFORNIA'S ANSWER TO UNVERIFIED COMPLAINT

B 87

1    defending this lawsuit pursuant to all applicable laws.

2

3                              **PRAYER FOR RELIEF**

4        WHEREFORE, Defendant prays as follows:

5        1.      For entry of judgment in favor of Defendant and against Plaintiffs;

6        2.      That Plaintiffs take nothing by way of their Complaint;

7        3.      That Defendant be awarded costs of suit herein;

8        4.      That Defendant be awarded actual attorneys' fees incurred in defending this suit;

9                and

10       5.      For such other and further relief as this Court may deem just and proper.

11

12   DATED:  May 30, 2008                    OGLETREE, DEAKINS, NASH, SMOAK &
                                             STEWART, P.C.
13

14                                           By: _____
15                                              Douglas J. Farmer
                                                David D. Sohn
16                                              Patricia Salazar

17                                           Attorneys for Defendants
18                                           AMERICAN MEDICAL RESPONSE, INC.,
                                             AMERICAN MEDICAL RESPONSE WEST,
19                                           AMERICAN MEDICAL RESPONSE
                                             AMBULANCE SERVICE, INC., AMERICAN
20                                           MEDICAL RESPONSE OF INLAND EMPIRE,
                                             and AMERICAN MEDICAL RESPONSE OF
21                                           SOUTHERN CALIFORNIA

22

23

24

25

26

27

28

                                        10

B PAGE 88

# EXHIBIT C

1   DOUGLAS J. FARMER, State Bar No. 139646
    doug.farmer@ogletreedeakins.com
2   DAVID D. SOHN, State Bar No. 221119
    david.sohn@ogletreedeakins.com
3   OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
    Steuart Tower, Suite 1300
4   One Market Plaza
    San Francisco, California  94105
5   Telephone:     415-442-4810
    Facsimile:     415-442-4870
6
    Attorneys for Defendants
7   AMERICAN MEDICAL RESPONSE, INC.,
    AMERICAN MEDICAL RESPONSE WEST,
8   AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.,
    AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE, and
9   AMERICAN MEDICAL RESPONSE OF SOUTHERN CALIFORNIA

10

11

12                  **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

13                        **FOR THE COUNTY OF ALAMEDA**

14

15

16
    LAURA BARTONI, on behalf of herself, and        Case No. RG 08382130
17  on behalf of all others similarly situated,

18                  Plaintiff,

19           v.                                     **DEFENDANT AMERICAN MEDICAL**
                                                    **RESPONSE WEST'S FIRST SET OF**
20  AMERICAN MEDICAL RESPONSE, INC.,                **REQUESTS FOR PRODUCTION OF**
    AMERICAN MEDICAL RESPONSE WEST,                 **DOCUMENTS**
21  AMERICAN MEDICAL RESPONSE
    AMBULANCE SERVICE, INC., AMERICAN
22  MEDICAL RESPONSE OF INLAND
    EMPIRE, AMERICAN MEDICAL
23  RESPONSE OF SOUTHERN CALIFORNIA,
    and DOES 1 through 50, inclusive,
24
                                                    Action Filed:    April 16, 2008
25                  Defendants.                     Trial Date:      Not Set

26

27                                                  EXHIBIT _C_ PAGE _89_

28

_____
                 DEF. AMR WEST'S FIRST SET OF DOCUMENT REQUESTS

1  PROPOUNDING PARTY:        Defendant AMERICAN MEDICAL RESPONSE WEST

2  RESPONDING PARTY:         Plaintiff LAURA BARTONI

3  SET NO.:                  ONE

4

5      Pursuant to Code of Civil Procedure § 2031.010, *et seq.*, Defendant American Medical

6  Response West ("Defendant"), requests the following First Set of Requests For Production Of

7  Documents be answered in writing, under oath, by Plaintiff Laura Bartoni ("Plaintiff") within 30

8  days from the date this First Set of Requests for Production of Documents is served.  The original

9  of your written responses is to be served upon Defendant's attorneys, Ogletree, Deakins, Nash,

10 Smoak & Stewart, P.C., located at Steuart Tower, Suite 1300, One Market Plaza, San Francisco,

11 California 94105.

12                              **DEFINITIONS**

13      Unless otherwise specified, the terms listed below have the following meaning:

14      1.      "YOU" or "YOUR" refers to Plaintiff Laura Bartoni and any of her agents,

15 including her attorneys.

16      2.      "DOCUMENT" OR "DOCUMENTS" means and includes the original or copies of

17 any written, printed, typed, recorded, computerized, electronic, taped, graphic or other matter, in

18 whatever form, whether in final or draft, including, but not limited to, all materials and things that

19 constitute "writings" as defined in California Evidence Code § 250.  These include, but are not

20 limited to, all records, diaries, journals, letters, notes, memorandum, correspondence, telexes,

21 facsimiles, sound recordings, intra or inter-office communications, contracts, supplements,

22 comments, agreements, checks, bank statements, invoices, charge slips, receipts, bills, notebooks,

23 complaints, intake forms, instructions, pamphlets, booklets, questionnaires, computer data,

24 however stored, including data stored on or in diskettes and disk drives, time cards, printouts, data

25 sheets,  or anything similar to any of the foregoing, however denominated by the responding party,

26 as well as copies, including archived copies, amendments, modifications and drafts of the

27 foregoing.  If you are not in custody or control of the original document, "DOCUMENT" or

28 "DOCUMENTS" shall mean the original or any copy or reproduction or facsimile thereof.  If you

                                        1

1   are in custody or control of the original and copies, reproductions or facsimiles, the term

2   "DOCUMENT" or "DOCUMENTS" shall mean the original and any copy or reproduction or

3   facsimile thereof that is in any way different from the original.

4          3.     "COMPLAINT" refers to the complaint (Case No. RG 08382130) filed by Plaintiff

5   Laura Bartoni on April 16, 2008 in the Superior Court of the State of California for the County of

6   Alameda.

7          4.     "PERTAIN TO" or "PERTAINING TO" means referring to, relating to, concerning,

8   reporting, regarding, embodying, establishing, evidencing, comprising, connected with,

9   commencing on, responding to, showing, demonstrating, describing, setting forth, containing,

10  analyzing, reflecting, presenting or being in any way factually connected with.

11         5.     "AMR" refers to Defendant American Medical Response West.

12         6.     "COMMUNICATIONS" means oral communications, including, but not limited to,

13  face-to-face conversations, conferences and telephone conversation, written and computerized

14  communications and correspondence and the delivery or furnishing of DOCUMENTS.

15                                      **INSTRUCTIONS**

16         1.     In responding to these Requests for Production of Documents, you are requested to

17  furnish all documents which are in your possession, custody or control, including information in

18  the possession of your attorneys, or other persons directly or indirectly employed or retained by

19  YOU, or connected with you or your attorneys, or anyone else acting on your behalf or otherwise

20  subject to your control.  In addition to the original of each document, you must also provide each

21  non-identical copy of each document or other tangible thing which is your possession.

22         2.     You must respond separately to each document request.  If you cannot respond to

23  any document request in full, respond to the fullest extent possible, explain why you cannot

24  respond to the remainder, and describe the nature of the documents which you cannot furnish.

25         3.     A statement of compliance with a particular demand shall state that the production

26  will be allowed either in whole or in part, and that all documents and things in a demanded

27  category that are in your possession, custody or control and to which no objection is being made

28  will be included in the production.

C PAGE 97

2
DEF. AMR WEST'S FIRST SET OF DOCUMENT REQUESTS

1        4.     Each document and/or thing produced in response hereto shall either be produced as

2 it is kept in the usual course of business, including all file folders, binders, notebooks and other

3 devices by which such papers or things may be organized or separated, or shall be organized and

4 labeled to correspond with the categories of the demand in response to which it is being produced.

5        5.     A representation of inability to comply with a particular demand shall affirm that a

6 diligent search and a reasonable inquiry have been made.  The statement shall also specify whether

7 the inability to comply is because the item has never existed, has been destroyed, has been lost,

8 misplaced or stolen, or has never been, or no longer is, in your possession, custody, or control.  If

9 the item is not in your possession, custody or control, the statement shall specify the name and

10 address of any natural person or organization believed to have such possession, custody or control.

11        6.     If you or your counsel object to any demand, please set forth the extent of and

12 specific ground for the objection.  If an objection pertains to only a portion of a demand, or a word,

13 phrase, or clause contained within it, you are required to state your objection to that portion only

14 and to respond with a statement of compliance, or a representation of inability to comply, with

15 respect to the remainder of the demand.

16        7.     If you or your counsel claim that the attorney-client privilege, the work product

17 doctrine, or any other privilege or reason for withholding documents is applicable to any document

18 request, you should:

19               A.     Identify the document date, creator, addressee and type of document;

20               B.     Provide sufficient further information concerning the document and the

21                        circumstances thereof to explain the claim of privilege and to allow a court

22                        to adjudicate the propriety of such claim;

23               C.     Location of the document;

24               D.     Custodian of the document; and

25               F.     The identity of persons to whom the information, or any portion thereof, has

26                        been revealed.

27        8.     The Requests for Production of Documents shall be deemed continuous up to and

28 following the date of your production such that any document or thing demanded herein which is

---

3

EXHIBIT C PAGE 92

1  either discovered by you or comes within your possession, custody or control subsequent to your

2  initial production but prior to the final conclusion of this case should be produced immediately

3  upon its discovery or receipt.

4          9.      As used herein, the conjunctive "and" and "or" shall be construed both

5  conjunctively and disjunctively, and each shall include the other whenever such dual construction

6  will serve to bring within the scope of a Request for Production of Documents any documents

7  which would otherwise not be brought within its scope.

8          10.     As used herein, the singular form shall include the plural and vice-versa whenever

9  such dual construction will serve to bring within the scope of a Request for Production of

10 Documents any documents which would otherwise not be brought within its scope.

11              **REQUEST FOR PRODUCTION OF DOCUMENTS**

12 **REQUEST FOR PRODUCTION NO. 1:**

13         Any and all DOCUMENTS that PERTAIN TO the terms and conditions of YOUR

14 employment with AMR.

15 **REQUEST FOR PRODUCTION NO. 2:**

16         Any and all DOCUMENTS that PERTAIN TO YOUR employment with AMR other than

17 the DOCUMENTS sought in Request No. 1.

18 **REQUEST FOR PRODUCTION NO. 3:**

19         Any and all DOCUMENTS that PERTAIN TO the income YOU earned during YOUR

20 employment with AMR, including, but not limited to, IRS W-2 forms, IRS 1099 forms, paychecks,

21 wage stubs and payroll summaries.

22 **REQUEST FOR PRODUCTION NO. 4:**

23         Any and all DOCUMENTS that PERTAIN TO any meal periods taken by YOU during

24 YOUR employment with AMR.

25 **REQUEST FOR PRODUCTION NO. 5:**

26         Any and all DOCUMENTS that PERTAIN TO any rest periods taken by YOU during

27 YOUR employment with AMR.

28

DEF. AMR WEST'S FIRST SET OF DOCUMENT REQUESTS

EXHIBIT C PAGE 93

1  **REQUEST FOR PRODUCTION NO. 6:**

2        Any and all DOCUMENTS that PERTAIN TO YOUR allegation in paragraph 4 of the

3  COMPLAINT that "AMR regularly denies off-duty meal and rest periods to its dispatchers" and

4  that "AMR has not offered to pay its dispatchers an hour of pay for any missed meal or rest

5  period."

6  **REQUEST FOR PRODUCTION NO. 7:**

7        Any and all DOCUMENTS that PERTAIN TO any alleged overtime hours worked by

8  YOU during YOUR employment with AMR.

9  **REQUEST FOR PRODUCTION NO. 8:**

10        Any and all DOCUMENTS that PERTAIN TO YOUR allegation in paragraph 3 of the

11  COMPLAINT that "AMR routinely requires dispatchers to work approximately 20 hours of

12  overtime per week" and that "it pays them for only a fraction of those overtime hours."

13  **REQUEST FOR PRODUCTION NO. 9:**

14        Any and all DOCUMENTS that PERTAIN TO the actual number of hours worked by YOU

15  during YOUR employment with AMR.

16  **REQUEST FOR PRODUCTION NO. 10:**

17        Any and all DOCUMENTS that PERTAIN TO the actual compensation YOU received for

18  the hours YOU worked during YOUR employment with AMR.

19  **REQUEST FOR PRODUCTION NO. 11:**

20        Any and all DOCUMENTS that PERTAIN TO any COMMUNICATIONS between YOU

21  and any member of the purported class PERTAINING TO the allegations in the COMPLAINT.

22  **REQUEST FOR PRODUCTION NO. 12:**

23        Any and all DOCUMENTS that PERTAIN TO any COMMUNICATIONS between YOU

24  and any former or current employee of AMR PERTAINING TO the allegations in the

25  COMPLAINT.

26  **REQUEST FOR PRODUCTION NO. 13:**

27        Any and all DOCUMENTS that PERTAIN TO any COMMUNICATIONS between YOU

28  and any other natural person, besides those identified in Request Nos. 11 and 12, PERTAINING

EXHIBIT _C_ PAGE _94_

1  TO the allegations in the COMPLAINT.

2  **REQUEST FOR PRODUCTION NO. 14:**

3      Any and all DOCUMENTS that PERTAIN TO the damages YOU allegedly incurred as a

4  result of the conduct in the COMPLAINT.

5  **REQUEST FOR PRODUCTION NO. 15:**

6      Any and all DOCUMENTS that PERTAIN TO the damages allegedly incurred by the

7  purported class as a result of the conduct in the COMPLAINT.

8  **REQUEST FOR PRODUCTION NO. 16:**

9      Any and all DOCUMENTS that PERTAIN TO any complaints brought by YOU or any

10  other former or current employee of AMR PERTAINING TO the allegations in the COMPLAINT.

11  **REQUEST FOR PRODUCTION NO. 17:**

12      Any and all DOCUMENTS that PERTAIN TO the allegation in paragraph 23 of the

13  COMPLAINT that "[t]he potential members of the Class as defined are so numerous that joinder of

14  all the members of the Class is impracticable."

15  **REQUEST FOR PRODUCTION NO. 18:**

16      Any and all DOCUMENTS that PERTAIN TO the allegation in paragraph 23 of the

17  COMPLAINT that "[t]here are questions of law and fact common to Plaintiff and the Class that

18  predominate over any questions affecting only individual members of the Class."

19  **REQUEST FOR PRODUCTION NO. 19:**

20      Any and all DOCUMENTS that PERTAIN TO the allegation in paragraph 23 of the

21  COMPLAINT that "Plaintiff's claims are typical of the claims of the Class."

22  **REQUEST FOR PRODUCTION NO. 20:**

23      Any and all DOCUMENTS that PERTAIN TO the allegation in paragraph 23 of the

24  COMPLAINT that "[t]he potential members of the Class as defined are so numerous that joinder of

25  all the members of the Class is impracticable."

26  **REQUEST FOR PRODUCTION NO. 21:**

27      Any and all DOCUMENTS that PERTAIN TO the allegation in paragraph 23 of the

28  COMPLAINT that "Plaintiff does not have any conflicts of interest with other Class Members."

DEF. AMR WEST'S FIRST SET OF DOCUMENT REQUESTS

EXHIBIT C PAGE 95

1    **REQUEST FOR PRODUCTION NO. 22:**

2        Any and all DOCUMENTS that PERTAIN TO YOUR fee arrangement with the attorneys

3    representing YOU in this case.

4

5    DATED:  June 13, 2008                    OGLETREE, DEAKINS, NASH, SMOAK &
                                              STEWART, P.C.
6

7

8                                            By: _____
                                                     David J. Farmer
9                                                    David D. Sohn

10                                           Attorneys for Defendants
                                             AMERICAN MEDICAL RESPONSE, INC.,
11                                           AMERICAN MEDICAL RESPONSE WEST,
                                             AMERICAN MEDICAL RESPONSE
12                                           AMBULANCE SERVICE, INC.,
                                             AMERICAN MEDICAL RESPONSE OF INLAND
13                                           EMPIRE, and
                                             AMERICAN MEDICAL RESPONSE OF
14                                           SOUTHERN CALIFORNIA

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                            EXHIBIT _C_ PAGE _96_

                    DEF. AMR WEST'S FIRST SET OF DOCUMENT REQUESTS

# EXHIBIT D

1   DOUGLAS J. FARMER, Cal. Bar No. 139646
    doug.farmer@ogletreedeakins.com
2   DAVID D. SOHN, Cal Bar No. 221119
    david.sohn@ogletreedeakins.com
3   OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
    Steuart Tower, Suite 1300
4   One Market Plaza
    San Francisco, California 94105
5   Telephone:   415-442-4810
    Facsimile:   415-442-4870
6
    Attorneys for Defendants
7   AMERICAN MEDICAL RESPONSE, INC.,
    AMERICAN MEDICAL RESPONSE WEST,
8   AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.,
    AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE, and
9   AMERICAN MEDICAL RESPONSE OF SOUTHERN CALIFORNIA

10

11

12                  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13                        **FOR THE COUNTY OF ALAMEDA**

14

15

16  LAURA BARTONI, on behalf of herself, and      Case No. RG 08382130
17  on behalf of all others similarly situated,

18                     Plaintiff,                 **DEFENDANT AMERICAN MEDICAL**
                                                   **RESPONSE WEST'S FIRST SET OF**
19         v.                                      **REQUESTS FOR ADMISSION**

20  AMERICAN MEDICAL RESPONSE, INC.,
    AMERICAN MEDICAL RESPONSE
21  WEST, AMERICAN MEDICAL
    RESPONSE AMBULANCE SERVICE,
22  INC., AMERICAN MEDICAL RESPONSE
    OF INLAND EMPIRE, AMERICAN
23  MEDICAL RESPONSE OF SOUTHERN
    CALIFORNIA, and DOES 1 through 50,
24  inclusive,                                     Complaint Filed: April 16, 2008
25                     Defendants.                 Trial Date: Not Set

26

27

28
                                                   EXHIBIT D PAGE 97

1 | PROPOUNDING PARTY:    DEFENDANT AMERICAN MEDICAL RESPONSE WEST

2 | RESPONDING PARTY:    PLAINTIFF LAURA BARTONI

3 | SET NO.:    ONE

4

5 |     Pursuant to Code of Civil Procedure § 2033.010 *et seq.*, Defendant American Medical

6 | Response West ("Defendant") propounds the following requests for admission to be answered in

7 | writing, under oath, by Plaintiff Laura Bartoni ("Plaintiff") within 30 days from the date these

8 | requests for admission are served.  The original of your written responses is to be served upon

9 | Defendant's attorneys, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., located at Steuart Tower,

10 | Suite 1300, One Market Plaza, San Francisco, California 94105.

11

12 | **REQUESTS FOR ADMISSION**

13 | **REQUEST FOR ADMISSION NO. 1:**

14 |     Admit Plaintiff was a member of NEMSA while employed by AMR.

15 |     For purposes of this request and all other requests for admission, unless specified

16 | otherwise, the term "AMR" refers to Defendant American Medical Response West.  For purposes

17 | of this request and all other requests for admission, unless specified otherwise, the term

18 | "NEMSA" refers to the National Emergency Medical Services Association.

19 | **REQUEST FOR ADMISSION NO. 2:**

20 |     Admit Plaintiff was a member of SEIU Local 250, prior to her membership with NEMSA,

21 | while employed by AMR.

22 | **REQUEST FOR ADMISSION NO. 3:**

23 |     Admit the terms and conditions of Plaintiff's employment, for the four years prior to the

24 | COMPLAINT, were governed by a collective bargaining agreement.

25 |     For purposes of this interrogatory and all other interrogatories, unless specified otherwise,

26 | the term "COMPLAINT" refers to the complaint (Case No. RG 08382130) filed by Plaintiff Laura

27 | Bartoni on April 16, 2008 in the Superior Court of the State of California for the County of

28 | Alameda.

EXHT D PAGE 98.

1    **REQUEST FOR ADMISSION NO. 4:**

2        Admit Plaintiff was not employed by American Medical Response, Inc.

3    **REQUEST FOR ADMISSION NO. 5:**

4        Admit Plaintiff was not employed by American Medical Response of Southern California.

5    **REQUEST FOR ADMISSION NO. 6:**

6        Admit Plaintiff was not employed by American Medical Response of Inland Empire.

7    **REQUEST FOR ADMISSION NO. 7:**

8        Admit Plaintiff was not employed by American Medical Response Ambulance Service,

9    Inc.

10

11    DATED:  June 13, 2008          OGLETREE, DEAKINS, NASH, SMOAK &

12                                STEWART, P.C.

13

14                 By: _____

15                           Douglas J. Farmer

                               David D. Sohn

16

                               Attorneys for Defendants

17                          AMERICAN MEDICAL RESPONSE, INC.,

                          AMERICAN MEDICAL RESPONSE WEST,

18                       AMERICAN MEDICAL RESPONSE

                          AMBULANCE SERVICE, INC.,

19                       AMERICAN MEDICAL RESPONSE OF INLAND

                          EMPIRE, and

20                       AMERICAN MEDICAL RESPONSE OF

                          SOUTHERN CALIFORNIA

21

22

23

24

25

26

27

28

                                  EXHIBIT D PAGE 99.

DEF. AMR WEST'S 1st SET OF REQUESTS FOR ADMISSION

# EXHIBIT E

1   Todd M. Schneider (SBN 158253)
    Clint J. Brayton (SBN 192214)
2   W.H. "Hank" Willson, IV (SBN 233321)
    SCHNEIDER WALLACE COTTRELL
3   BRAYTON KONECKY LLP
4   180 Montgomery Street, Suite 2000
    San Francisco, California 94104
5   Tel: (415) 421-7100
    Fax: (415) 421-7105
6   TTY: (415) 421-1665

7
    Attorneys for Plaintiff and the proposed Class
8

9                  **SUPERIOR COURT OF CALIFORNIA**

10                     **COUNTY OF ALAMEDA**

11

12   LAURA BARTONI, on behalf of herself, and       Case No. RG08382130
     on behalf of all others similarly situated,
13                                                   **PLAINTIFF'S OBJECTIONS AND**
14                  Plaintiff,                       **RESPONSES TO DEFENDANT**
                                                     **AMERICAN MEDICAL RESPONSE**
15          vs.                                      **WEST'S FIRST SET OF REQUESTS FOR**
                                                     **ADMISSION**
16   AMERICAN MEDICAL RESPONSE, INC.,
     AMERICAN MEDICAL RESPONSE WEST,
17   AMERICAN MEDICAL RESPONSE
     AMBULANCE SERVICE, INC., AMERICAN
18   MEDICAL RESPONSE OF INLAND
     EMPIRE, AMERICAN MEDICAL
19   RESPONSE OF SOUTHERN CALIFORNIA,
     and DOES 1 through 50, inclusive,
20
                    Defendants.
21

22

23

24

25

26

27

28

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

---

PLAINTIFF'S OBJECTIONS AND RESPONSES TO AMR WEST'S FIRST SET OF REQUESTS FOR ADMISSION
*Bartoni v. American Medical Response, et al.*, Case No. RG08382130

EXHIBIT *E* PAGE *100*

1    **Request for Admission No. 1:**

2         Admit Plaintiff was a member of NEMSA while employed by AMR.

3         For purposes of this request and all other requests for admission, unless specified otherwise,

4    the term "AMR" refers to Defendant American Medical Response West.  For purposes of this

5    request and all other requests for admission, unless specified otherwise, the term "NEMSA" refers

6    to the National Emergency Medical Services Association.

7    **Response to Request for Admission No. 1:**

8         Plaintiff objects to the Request on the grounds that it is vague and ambiguous and calls for a

9    legal conclusion.  Subject to and without waiving the foregoing objections, Plaintiff responds as

10   follows:

11        Plaintiff admits that she was a member of NEMSA while employed by American Medical

12   Response, but Plaintiff cannot admit or deny whether American Medical Response West was her

13   employer.

14   **Request for Admission No. 2:**

15        Admit Plaintiff was a member of SEIU Local 250, prior to her membership with NEMSA,

16   while employed by AMR.

17   **Response to Request for Admission No. 2:**

18        Plaintiff objects to the Request on the grounds that it is vague and ambiguous and calls for a

19   legal conclusion.  Subject to and without waiving the foregoing objections, Plaintiff responds as

20   follows:

21        Plaintiff admits that she was a member of SEIU Local 250, prior to her membership with

22   NEMSA, while employed by American Medical Response.  Plaintiff admits that American

23   Medical Response West appears on her paychecks, but Plaintiff believes that all of the American

24   Medical Response entities that are Defendants in this lawsuit are interrelated; as a result, Plaintiff

25   cannot admit or deny whether American Medical Response West was her employer.

26   **Request for Admission No. 3:**

27        Admit the terms and conditions of Plaintiff's employment, for the four years prior to the

28   COMPLAINT, were governed by a collective bargaining agreement.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY...

PLAINTIFF'S OBJECTIONS AND RESPONSES TO AMR WEST'S FIRST SET OF REQUESTS FOR ADMISSION
*Bartoni v. American Medical Response, et al.*, Case No. RG08382130

1



1     For purposes of this interrogatory and all other interrogatories, unless specified otherwise,

2  the term "COMPLAINT" refers to the complaint (Case No. RG 08382130) filed by Plaintiff Laura

3  Bartoni on April 16, 2008 in the Superior Court of the State of California for the County of

4  Alameda.

5  **Response to Request for Admission No. 3:**

6     Plaintiff objects to the Request on the grounds that it is vague and ambiguous and calls for a

7  legal conclusion.  Subject to and without waiving the foregoing objections, Plaintiff responds as

8  follows:

9     Plaintiff cannot admit or deny.

10  **Request for Admission No. 4:**

11     Admit Plaintiff was not employed by American Medical Response, Inc.

12  **Response to Request for Admission No. 4:**

13     Plaintiff objects to the Request on the grounds that it calls for a legal conclusion, and

14  because discovery is ongoing.  Subject to and without waiving the foregoing objections, Plaintiff

15  responds as follows:

16     Plaintiff cannot admit or deny.

17  **Request for Admission No. 5:**

18     Admit Plaintiff was not employed by American Medical Response of Southern California.

19  **Response to Request for Admission No. 5:**

20     Plaintiff objects to the Request on the grounds that it calls for a legal conclusion, and

21  because discovery is ongoing.  Subject to and without waiving the foregoing objections, Plaintiff

22  responds as follows:

23     Plaintiff cannot admit or deny.

24  **Request for Admission No. 6:**

25     Admit Plaintiff was not employed by American Medical Response of Inland Empire.

26

27

28

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY ⸱⸱

EXHIBIT _E_ PAGE _102_

1   **Response to Request for Admission No. 6:**

2        Plaintiff objects to the Request on the grounds that it calls for a legal conclusion, and

3   because discovery is ongoing.  Subject to and without waiving the foregoing objections, Plaintiff

4   responds as follows:

5        Plaintiff cannot admit or deny.

6   **Request for Admission No. 7:**

7        Admit Plaintiff was not employed by American Medical Response Ambulance Service, Inc.

8   **Response to Request for Admission No. 7:**

9        Plaintiff objects to the Request on the grounds that it calls for a legal conclusion, and

10   because discovery is ongoing.  Subject to and without waiving the foregoing objections, Plaintiff

11   responds as follows:

12        Plaintiff cannot admit or deny.

13

14   Date: July 21, 2008                     SCHNEIDER WALLACE

15                                  COTTRELL BRAYTON

                                 KONECKY LLP

16

17                                  Hank Willson

18                                  Counsel for Plaintiff and the proposed Class

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OBJECTIONS AND RESPONSES TO AMR WEST'S FIRST SET OF REQUESTS FOR ADMISSION
*Bartoni v. American Medical Response, et al.*, Case No. RG08382130

# EXHIBIT F

1  Todd M. Schneider (SBN 158253)
   Clint J. Brayton (SBN 192214)
2  W.H. "Hank" Willson, IV (SBN 233321)
   SCHNEIDER WALLACE COTTRELL
3  BRAYTON KONECKY LLP
4  180 Montgomery Street, Suite 2000
   San Francisco, California 94104
5  Tel: (415) 421-7100
   Fax: (415) 421-7105
6  TTY: (415) 421-1665

7
   Attorneys for Plaintiff and the proposed Class
8

9              SUPERIOR COURT OF CALIFORNIA

10                 COUNTY OF ALAMEDA

11

12  LAURA BARTONI, on behalf of herself, and    Case No. RG08382130
    on behalf of all others similarly situated,
13
                                                 PLAINTIFF'S OBJECTIONS AND
14            Plaintiff,                          RESPONSES TO DEFENDANT
                                                 AMERICAN MEDICAL RESPONSE
15        vs.                                    WEST'S FIRST SET OF REQUESTS FOR
                                                 PRODUCTION OF DOCUMENTS
16  AMERICAN MEDICAL RESPONSE, INC.,
    AMERICAN MEDICAL RESPONSE WEST,
17  AMERICAN MEDICAL RESPONSE
    AMBULANCE SERVICE, INC., AMERICAN
18  MEDICAL RESPONSE OF INLAND
    EMPIRE, AMERICAN MEDICAL
19  RESPONSE OF SOUTHERN CALIFORNIA,
    and DOES 1 through 50, inclusive,
20
              Defendants.
21

22

23

24

25

26

27

28

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

EXHIBIT F PAGE 104

**Request for Production No. 1:**

Any and all DOCUMENTS that PERTAIN TO the terms and conditions of YOUR employment with AMR.

**Response to Request for Production No. 1:**

Plaintiff objects to the Request on the grounds that it is overbroad, vague and ambiguous, and seeks documents that are within Defendant's possession. Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff produces herewith all responsive documents that have been located after a reasonable and diligent search.

**Request for Production No. 2:**

Any and all DOCUMENTS that PERTAIN TO YOUR employment with AMR other than the DOCUMENTS sought in Request No.1.

**Response to Request for Production No. 2:**

Plaintiff objects to the Request on the grounds that it is overbroad, duplicative of Request No. 1, and seeks documents that are within Defendant's possession. Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff produces herewith all responsive documents that have been located after a reasonable and diligent search.

**Request for Production No. 3:**

Any and all DOCUMENTS that PERTAIN TO the income YOU earned during YOUR employment with AMR, including, but not limited to, IRS W-2 forms, IRS 1099 forms, paychecks, wage stubs and payroll summaries.

**Response to Request for Production No. 3:**

Plaintiff objects to the Request on the grounds that it seeks documents that are within Defendant's possession, violates Plaintiff's privacy rights, and is calculated to harass and annoy. Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff produces herewith all responsive documents that have been located after a reasonable and diligent search.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY ...

P's OBJECTIONS AND RESPONSES TO AMR WEST'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
*Bartoni v. American Medical Response, et al.*, Case No. RG08382130

1

**Request for Production No. 4:**

Any and all DOCUMENTS that PERTAIN TO any meal periods taken by YOU during YOUR employment with AMR.

**Response to Request for Production No. 4:**

Plaintiff objects to the Request on the grounds that it is overbroad, vague and ambiguous, functions as a premature contention interrogatory, and because discovery is ongoing. Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff produces herewith all responsive documents that have been located after a reasonable and diligent search.

**Request for Production No. 5:**

Any and all DOCUMENTS that PERTAIN TO any rest periods taken by YOU during YOUR employment with AMR.

**Response to Request for Production No. 5:**

Plaintiff objects to the Request on the grounds that it is overbroad, vague and ambiguous, functions as a premature contention interrogatory, and because discovery is ongoing. Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff produces herewith all responsive documents that have been located after a reasonable and diligent search.

**Request for Production No. 6:**

Any and all DOCUMENTS that PERTAIN TO YOUR allegation in paragraph 4 of the COMPLAINT that "AMR regularly denies off-duty meal and rest periods to its dispatchers" and that "AMR has not offered to pay its dispatchers an hour of pay for any missed meal or rest period."

**Response to Request for Production No. 6:**

Plaintiff objects to the Request on the grounds that it is overbroad, vague and ambiguous, seeks documents within Defendant's possession, functions as a premature contention interrogatory, and because discovery is ongoing. Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY ...

1   Plaintiff produces herewith all responsive documents that have been located after a

2   reasonable and diligent search.

3   **Request for Production No. 7:**

4   Any and all DOCUMENTS that PERTAIN TO any alleged overtime hours worked by YOU

5   during YOUR employment with AMR.

6   **Response to Request for Production No. 7:**

7   Plaintiff objects to the Request on the grounds that it is overbroad and seeks documents that

8   are within Defendant's possession.  Subject to and without waiving the foregoing objections,

9   Plaintiff responds as follows:

10  Plaintiff produces herewith all responsive documents that have been located after a

11  reasonable and diligent search.

12  **Request for Production No. 8:**

13  Any and all DOCUMENTS that PERTAIN TO YOUR allegation in paragraph 3 of the

14  COMPLAINT that "AMR routinely requires dispatchers to work approximately 20 hours of

15  overtime per week" and that "it pays them for only a fraction of those overtime hours."

16  **Response to Request for Production No. 8:**

17  Plaintiff objects to the Request on the grounds that it is overbroad, vague and ambiguous,

18  seeks documents within Defendant's possession, functions as a premature contention interrogatory,

19  and because discovery is ongoing.  Subject to and without waiving the foregoing objections,

20  Plaintiff responds as follows:

21  Plaintiff produces herewith all responsive documents that have been located after a

22  reasonable and diligent search.

23  **Request for Production No. 9:**

24  Any and all DOCUMENTS that PERTAIN TO the actual number of hours worked by YOU

25  during YOUR employment with AMR.

26  **Response to Request for Production No. 9:**

27  Plaintiff produces herewith all responsive documents that have been located after a

28  reasonable and diligent search.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY

P's OBJECTIONS AND RESPONSES TO AMR WEST'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
*Bartoni v. American Medical Response, et al.*, Case No. RG08382130

3    EXHIBIT *F* PAGE *107*

1  **Request for Production No. 10:**

2      Any and all DOCUMENTS that PERTAIN TO the actual compensation YOU received for

3  the hours YOU worked during YOUR employment with AMR.

4  **Response to Request for Production No. 10:**

5      Plaintiff objects to the Request on the grounds that it seeks documents that are within

6  Defendant's possession.  Subject to and without waiving the foregoing objections, Plaintiff

7  responds as follows:

8      Plaintiff produces herewith all responsive documents that have been located after a

9  reasonable and diligent search.

10  **Request for Production No. 11:**

11      Any and all DOCUMENTS that PERTAIN TO any COMMUNICATIONS between YOU

12  and any member of the purported class PERTAINING TO the allegations in the COMPLAINT.

13  **Response to Request for Production No. 11:**

14      Plaintiff objects to the Request on the grounds that it is compound and seeks documents

15  protected by the attorney-client privilege and/or the attorney work product doctrine.  Subject to and

16  without waiving the foregoing objections, Plaintiff responds as follows:

17      Plaintiff produces herewith all responsive documents that have been located after a

18  reasonable and diligent search.

19  **Request for Production No. 12:**

20      Any and all DOCUMENTS that PERTAIN TO any COMMUNICATIONS between YOU

21  and any former or current employee of AMR PERTAINING TO the allegations in the

22  COMPLAINT.

23  **Response to Request for Production No. 12:**

24      Plaintiff objects to the Request on the grounds that it is compound and seeks documents

25  protected by the attorney-client privilege and/or the attorney work product doctrine.  Subject to and

26  without waiving the foregoing objections, Plaintiff responds as follows:

27      Plaintiff produces herewith all responsive documents that have been located after a

28  reasonable and diligent search.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY

P's OBJECTIONS AND RESPONSES TO AMR WEST'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
*Bartoni v. American Medical Response, et al.*, Case No. RG08382130

4    COPY F PAGE 108.

1    **Request for Production No. 13:**

2         Any and all DOCUMENTS that PERTAIN TO any COMMUNICATIONS between YOU

3    and any other natural person, besides those identified in Request Nos. 11 and 12, PERTAINING

4    TO the allegations in the COMPLAINT.

5    **Response to Request for Production No. 13:**

6         Plaintiff objects to the Request on the grounds that it is compound and seeks documents

7    protected by the attorney-client privilege and/or the attorney work product doctrine.  Subject to and

8    without waiving the foregoing objections, Plaintiff responds as follows:

9         Plaintiff produces herewith all responsive documents that have been located after a

10   reasonable and diligent search.

11   **Request for Production No. 14:**

12        Any and all DOCUMENTS that PERTAIN TO the damages YOU allegedly incurred as a

13   result of the conduct in the COMPLAINT.

14   **Response to Request for Production No. 14:**

15        Plaintiff objects to the Request on the grounds that it functions as a premature contention

16   interrogatory, seeks documents that are within the Defendant's possession, and because discovery

17   is ongoing.  Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

18        Plaintiff produces herewith all responsive documents that have been located after a

19   reasonable and diligent search.

20   **Request for Production No. 15:**

21        Any and all DOCUMENTS that PERTAIN TO the damages allegedly incurred by the

22   purported class as a result of the conduct in the COMPLAINT.

23   **Response to Request for Production No. 15:**

24        Plaintiff objects to the Request on the grounds that it functions as a premature contention

25   interrogatory, seeks documents that are within the Defendant's possession, and because discovery

26   is ongoing.  Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

27        Plaintiff produces herewith all responsive documents that have been located after a

28   reasonable and diligent search.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY

P'S OBJECTIONS AND RESPONSES TO AMR WEST'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
*Bartoni v. American Medical Response, et al.*, Case No. RG08382130

5    F PAGE 109,

1    **Request for Production No. 16:**

2        Any and all DOCUMENTS that PERTAIN TO any complaints brought by YOU or any

3    other former or current employee of AMR PERTAINING TO the allegations in the COMPLAINT.

4    **Response to Request for Production No. 16:**

5        Plaintiff objects to the Request on the grounds that it is compound and seeks documents that

6    are equally accessible to Defendant.  Subject to and without waiving the foregoing objections,

7    Plaintiff responds as follows:

8        Plaintiff produces herewith all responsive documents that have been located after a

9    reasonable and diligent search.

10   **Request for Production No. 17:**

11       Any and all DOCUMENTS that PERTAIN TO the allegation in paragraph 23 of the

12   COMPLAINT that "[t]he potential members of the Class as defined are so numerous that joinder

13   of all the members of the Class is impracticable."

14   **Response to Request for Production No. 17:**

15       Plaintiff objects to the Request on the grounds that it functions as a premature contention

16   interrogatory and because discovery is ongoing.  Subject to and without waiving the foregoing

17   objections, Plaintiff responds as follows:

18       Plaintiff produces herewith all responsive documents that have been located after a

19   reasonable and diligent search.

20   **Request for Production No. 18:**

21       Any and all DOCUMENTS that PERTAIN TO the allegation in paragraph 23 of the

22   COMPLAINT that "[t]here are questions of law and fact common to Plaintiff and the Class that

23   predominate over any questions affecting only individual members of the Class."

24   **Response to Request for Production No. 18:**

25       Plaintiff objects to the Request on the grounds that it functions as a premature contention

26   interrogatory and because discovery is ongoing.  Subject to and without waiving the foregoing

27   objections, Plaintiff responds as follows:

28

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY

P'S OBJECTIONS AND RESPONSES TO AMR WEST'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
*Bartoni v. American Medical Response, et al.,* Case No. RG08382130

6

EXHIBIT _F_ PAGE _110_

1  Plaintiff produces herewith all responsive documents that have been located after a

2  reasonable and diligent search.

**Request for Production No. 19:**

4  Any and all DOCUMENTS that PERTAIN TO the allegation in paragraph 23 of the

5  COMPLAINT that "Plaintiffs claims are typical of the claims of the Class."

**Response to Request for Production No. 19:**

7  Plaintiff objects to the Request on the grounds that it functions as a premature contention

8  interrogatory and because discovery is ongoing.  Subject to and without waiving the foregoing

9  objections, Plaintiff responds as follows:

10  Plaintiff produces herewith all responsive documents that have been located after a

11  reasonable and diligent search.

**Request for Production No. 20:**

13  Any and all DOCUMENTS that PERTAIN TO the allegation in paragraph 23 of the

14  COMPLAINT that "[t]he potential members of the Class as defined are so numerous that joinder

15  of all the members of the Class is impracticable."

**Response to Request for Production No. 20:**

17  Plaintiff objects to the Request on the grounds that it functions as a premature contention

18  interrogatory and because discovery is ongoing.  Subject to and without waiving the foregoing

19  objections, Plaintiff responds as follows:

20  Plaintiff produces herewith all responsive documents that have been located after a

21  reasonable and diligent search.

**Request for Production No. 21:**

23  Any and all DOCUMENTS that PERTAIN TO the allegation in paragraph 23 of the

24  COMPLAINT that "Plaintiff does not have any conflicts of interest with other Class Members."

**Response to Request for Production No. 21:**

26  Plaintiff objects to the Request on the grounds that it functions as a premature contention

27  interrogatory and because discovery is ongoing.  Subject to and without waiving the foregoing

28  objections, Plaintiff responds as follows:

SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY

P's Objections and Responses to AMR West's First Set of Requests for Production of Documents
*Bartoni v. American Medical Response, et al.*, Case No. RG08382130

7

1    Plaintiff produces herewith all responsive documents that have been located after a

2    reasonable and diligent search.

3    **Request for Production No. 22:**

4    Any and all DOCUMENTS that PERTAIN TO YOUR fee arrangement with the attorneys

5    representing YOU in this case.

6    **Response to Request for Production No. 22:**

7    Plaintiff objects to the Request on the grounds that it seeks documents protected by the

8    attorney-client privilege and the attorney work product doctrine, and violates Plaintiff's privacy

9    rights.

10

11    Date: July 21, 2008                                       SCHNEIDER WALLACE
                                                                 COTTRELL BRAYTON
12                                                               KONECKY LLP

13

14    _Hank W_____

                                                                 Hank Willson
15                                                               Counsel for Plaintiff and the proposed Class

16

17

18

19

20

21

22

23

24

25

26

27

28

P'S OBJECTIONS AND RESPONSES TO AMR WEST'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
_Bartoni v. American Medical Response, et al._, Case No. RG08382130

8    EXHIBIT _F_ PAGE 112

BARTONI00510



# COLLECTIVE BARGAINING AGREEMENT

## NATIONAL EMERGENCY MEDICAL SERVICES ASSOCIATION
## NEMSA

### AND

## AMERICAN MEDICAL RESPONSE
## NORTHERN CALIFORNIA



**July 1, 2006 through June 30, 2008**

EXHIBIT F PAGE 113

## TABLE OF CONTENTS

Page

ARTICLE 1 - RECOGNITION .................................................................................................. 1
    1.1   Scope of Agreement ........................................................................................ 1
    1.2   Supervisory Employees ................................................................................... 1
ARTICLE 2         UNION SECURITY ........................................................................................ 2
    2.1   Union Membership .......................................................................................... 2
    2.2   New Employee/Termination Notice/Change of Status .................................... 2
    2.3   Union Dues Deduction .................................................................................... 2
    2.4   Indemnification ............................................................................................... 3
    2.5   Applicable Law ............................................................................................... 3
    2.6   Union Activity ................................................................................................. 3
    2.7   Union Notice ................................................................................................... 3
    2.8   Computerized Information ............................................................................... 3
ARTICLE 3 - UNION RIGHTS ................................................................................................. 3
    3.1   Shop Stewards ................................................................................................. 3
    3.2   Access of Union Representatives ..................................................................... 4
    3.3   Union Bulletin Boards ..................................................................................... 4
    3.4   Employee Mailboxes and Courier System ....................................................... 4
    3.5   Notification of Coverage ................................................................................. 4
ARTICLE 4 - MANAGEMENT RIGHTS .................................................................................. 5
    4.1    ....................................................................................................................... 5
    4.2    ....................................................................................................................... 5
    4.3    ....................................................................................................................... 5
    4.4    ....................................................................................................................... 5
    4.5    ....................................................................................................................... 5
ARTICLE 5 - DISCIPLINE AND DISCHARGE ....................................................................... 6
    5.1   Discipline and Discharge ................................................................................. 6
    5.2   Procedure ......................................................................................................... 6
    5.3   Right to Representation ................................................................................... 6
    5.4   Company Rules ................................................................................................ 6
    5.5   Termination and Suspension ........................................................................... 6
    5.6   Disciplinary Notices ........................................................................................ 6
    5.7   Disclosure ........................................................................................................ 7

-i-

BARTONI00511

EXHIBIT F PAGE 114

BARTON100512

TABLE OF CONTENTS
(continued)

Page

ARTICLE 6 - GRIEVANCE PROCEDURE AND ARBITRATION ...................................... 7

    6.1    Grievance Procedure ..................................................................................... 7

    6.2    Time Limits ..................................................................................................... 8

    6.3    Participants ..................................................................................................... 8

    6.4    Complaint Procedure ..................................................................................... 8

    6.5    Liability ........................................................................................................... 8

ARTICLE 7 - PROBATION ............................................................................................. 9

    7.1    Probationary Period ....................................................................................... 9

    7.2    Probationary Employee Shift ......................................................................... 9

ARTICLE 8 - HEALTH AND SAFETY ............................................................................ 9

    8.1    Employee's Right to Refuse Unsafe Work ..................................................... 9

    8.2    Company Paid Immunizations ........................................................................ 9

    8.3    Safety Equipment ........................................................................................ 10

    8.4    DMV Physical Examinations ........................................................................ 10

    8.5    Crew Quarters ............................................................................................. 10

    8.6    The Use of Tobacco Products ...................................................................... 11

    8.7    Driver Exclusion .......................................................................................... 11

    8.8    Driving Record Standards ............................................................................ 11

    8.9    Ergonomics and Office Equipment .............................................................. 12

ARTICLE 9 - EDUCATION AND TRAINING ................................................................ 13

    9.1    Paramedic Continuing Education ................................................................ 13

    9.2    Paramedic Re-certification and Re-licensure Fees ..................................... 13

    9.3    EMT Re-certification .................................................................................... 14

    9.4    Licensing/Qualifications .............................................................................. 14

    9.5    Communications Center Training ................................................................. 14

    9.6    Orientation ................................................................................................... 14

ARTICLE 10 - HOURS OF WORK ............................................................................... 15

    10.1    Work Schedules .......................................................................................... 15

    10.2    Work Schedules Posted .............................................................................. 15

    10.3    Normal Hours of Work ................................................................................. 15

    10.4    Maximum Consecutive Shifts ...................................................................... 15

    10.5    System Status Management ........................................................................ 15

EXHIBIT F PAGE 115

BARTON100513

TABLE OF CONTENTS
(continued)

Page

10.6    Workweek Defined ................................................................................................. 15

10.7    Call In/Call Back Pay .......................................................................................... 16

10.8    Report In Pay ...................................................................................................... 16

10.9    Meal Periods ....................................................................................................... 16

10.10   Notification of Holdover ..................................................................................... 16

10.11   Documentation of Holdover ............................................................................... 16

10.12   Reporting for Work ............................................................................................. 16

10.13   Job Abandonment ............................................................................................... 17

10.14   Two Employees/Same Assignment .................................................................... 17

10.15   Shift Trades/Giveaways ...................................................................................... 17

10.16   Floater Positions ................................................................................................. 18

ARTICLE 11   SENIORITY ......................................................................................... 18

11.1    Seniority Defined ................................................................................................ 18

11.2    Definition of Regular Full-Time Employee ....................................................... 19

11.3    Definition of Regular Part-Time Employee ....................................................... 19

11.4    Return to the Union ............................................................................................. 19

11.5    Loss of Seniority ................................................................................................. 20

11.6    Recall from layoff ............................................................................................... 20

11.7    Seniority Lists ..................................................................................................... 21

11.8    Filling Vacant Positions ..................................................................................... 21

11.9    Work Schedules .................................................................................................. 22

11.10   Seniority for Scheduling ........................................................... : ....................... 22

11.11   Seniority Application .......................................................................................... 22

11.12   Advance Notice of Layoff .................................................................................. 22

11.13   Transfer ............................................................................................................... 22

11.14   Transfer Eligibility ............................................................................................. 23

11.15   Maintenance of Transfer Eligibility Standards .................................................. 23

11.16   Transfer Effective Date ...................................................................................... 24

11.17   Transfer Field Training and Field Evaluation Assignments .............................. 24

11.18   Seniority of Transferred Employee .................................................................... 24

11.19   Responsibility of Transferring Employee .......................................................... 24

11.20   Transfer Accreditation/Orientation .................................................................... 24

EXHIBIT F PAGE 116

BARTONI00514

TABLE OF CONTENTS
(continued)

Page

11.21 Compensation for Required Classroom/Field Training and/or Evaluation .................... 24

11.22 Transferred Employee Who Fails Training and/or Evaluation ................................ 25

11.23 Special Seniority Provisions .................................................................... 25

11.24 Transfer in Lieu of or to Prevent Layoff ....................................................... 25

ARTICLE 12 - PAID TIME OFF (PTO) AND HOLIDAYS ............................................ 25

12.1 Paid Time Off (PTO) ............................................................................ 25

12.2 Paid Time Off (PTO) Schedule .................................................................. 25

12.3 PTO Use ........................................................................................... 26

12.4 PTO Week Use .................................................................................... 26

12.5 VACATION Scheduling ........................................................................... 26

12.6 PTO near Holidays ................................................................................ 27

12.7 PTO Carry Over ................................................................................... 27

12.8 PTO Pay at Termination .......................................................................... 27

12.9 PTO Pay in Lieu of Time Off .................................................................... 27

12.10 Holidays .......................................................................................... 27

12.11 Eligibility for Holiday Compensation ........................................................... 28

12.12 Holiday Duration ................................................................................. 28

12.13 Additional Holidays and/or Pay ................................................................. 28

ARTICLE 13 - LEAVES OF ABSENCE (LOAS) ...................................................... 28

13.1 Personal Leave .................................................................................... 28

13.2 Family, Pregnancy, and Medical ................................................................. 29

13.3 Worker's Compensation Leave ................................................................... 29

13.4 Union Leave ....................................................................................... 30

13.5 Military ............................................................................................ 30

13.6 Extension of a Leave of Absence ................................................................ 30

13.7 Rights Upon Return from a Leave of Absence ................................................. 30

13.8 Successive Leaves of Absence ................................................................... 30

13.9 Jury Service ....................................................................................... 31

13.10 Subpoena/Witness Service ...................................................................... 31

13.11 Bereavement ..................................................................................... 31

ARTICLE 14 EMPLOYEE BENEFITS ................................................................ 32

14.1 Insurance Benefits ................................................................................ 32

TABLE OF CONTENTS
(continued)

|  |  | Page |
|---|---|---|
| A. | Medical Insurance | 32 |
| B. | Dental Insurance | 33 |
| C. | Vision Plan | 33 |
| D. | Short Term Disability Insurance | 33 |
| E. | Life and ADD Insurance | 33 |
| F. | Opt-Out | 33 |
| G. | Flex Pay | 34 |
| 14.2 | Flexible Spending Account | 34 |
| 14.3 | Workers' Compensation | 34 |
| 14.4 | Employee Assistance Program (EAP) | 35 |
| 14.5 | Credit Union | 35 |
| 14.6 | 401(K) Plan | 35 |
| 14.7 | Unemployment Insurance | 35 |
| ARTICLE 15 - COMPENSATION | | 36 |
| 15.1 | Annual Increase | 36 |
| 15.2 | Appointment - Wages | 36 |
| 15.3 | Overtime | 36 |
| 15.4 | Filling Open Shift(s) | 36 |
| 15.5 | Holdover Pay | 37 |
| 15.6 | Acting Supervisor Differential | 37 |
| 15.7 | Bilingual Differential | 38 |
| 15.8 | In Lieu of Benefits Differential | 38 |
| 15.9 | Field Training Officer (FTO) Differential | 38 |
| 15.10 | Communications Center Instructor Differential | 38 |
| 15.11 | Preceptor Pay | 39 |
| 15.12 | Scholarships | 39 |
| 15.13 | Full-time EMTs with Paramedic Certification | 39 |
| 15.14 | Operational/Wage Parity Discussions | 40 |
| ARTICLE 16 UNIFORMS | | 40 |
| 16.1 | Uniforms | 40 |
| 16.2 | Replacement of Worn Uniform Components | 40 |
| 16.3 | Uniforms Provided | 41 |
|  |  | 41 |

EXHIBIT F PAGE 118

BARTONI00516

TABLE OF CONTENTS
(continued)

Page

16.4    Uniform Maintenance Allowance ...................................................... 42

16.5    Return of Uniforms ........................................................................ 42

16.6    Employee Appearance .................................................................... 42

ARTICLE 17 - NO STRIKE/NO LOCK-OUT .............................................. 43

ARTICLE 18 - NO DISCRIMINATION/HARASSMENT ............................... 44

18.1    No Discrimination ........................................................................... 44

18.2    Sexual Harassment ........................................................................ 44

ARTICLE 19 - COMMITTEE(S)................................................................. 44

19.1    Labor/Management Committee (LMC) .............................................. 44

19.2    Health and Safety Committee ......................................................... 44

19.3    Role of the Health and Safety Committee ....................................... 45

19.4    Health and Safety Committee Recommendation(s) .......................... 45

19.5    Affirmative Action Board ................................................................ 46

19.6    System Status Committee .............................................................. 46

19.7    Local Labor/Management Committee (LLMC) .................................. 46

19.8    Committee Participation ................................................................. 47

19.9    State EMS Commission/Authority .................................................. 47

ARTICLE 20 - CONTRACT BARGAINING UNDERSTANDINGS ................. 47

20.1    Separability .................................................................................. 47

20.2    Amendments ................................................................................. 47

20.3    Waiver ......................................................................................... 48

ARTICLE 21 - CRITICAL INCIDENT STRESS DEBRIEFING ..................... 48

21.1    Stress Counseling.......................................................................... 48

ARTICLE 22 - SUBSTANCE ABUSE TESTING ........................................ 48

Section 22.1.................................................................................................. 48

Section 22.2................................................................................................. 48

Section 22.3 – Contractual Testing Obligations............................................ 49

ARTICLE 23 - MISCELLANEOUS .............................................................. 49

23.1    Employer Required Protective Clothing and Equipment ................... 49

23.2    Liability Insurance ........................................................................ 49

23.3    Outside Employment ..................................................................... 49

23.4    Work Stations ............................................................................... 49

BARTONI00517

TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---|
| 23.5 | Workplace Conduct | 50 |
| 23.6 | Incident Reports | 50 |
| 23.7 | Replacement of Personal Items | 50 |
| 23.8 | Subcontracting | 50 |
| 23.9 | Access to Personnel Files | 51 |
| 23.10 | Fatigue Policy | 51 |
| 23.11 | Job Sharing | 52 |
| 23.12 | Facsimile Facilities | 54 |
| ARTICLE 24 - DURATION | | 54 |
| 24.1 | Term | 54 |
| APPENDIX A – WAGES | | 58 |
| | Bay Area EMT (Alameda, Contra Costa, Santa Clara, San Mateo, CCT) | 58 |
| | Alameda / Contra Costa / Santa Clara Driver Wage Scale | 59 |
| | Alameda / Contra Costa / Santa Clara & San Mateo Clerk Wage Scale | 60 |
| | Alameda / Contra Costa / Santa Clara & San Mateo Stocker / Washer | 60 |
| | San Mateo Dispatch Wage Scale | 61 |
| | Santa Clara Paramedic Wage Scale | 62 |
| | Alameda / Contra Costa Paramedic Wage Scale | 63 |
| | Sacramento / Yolo / Placer EMT Wage Scale | 64 |
| | Sacramento / Yolo / Placer Parmedic Wage Scale | 65 |
| | Stanislaus Paramedic Wage Scale | 66 |
| | Stanislaus EMT Wage Scale | 67 |
| | Stanislaus VST Wage Scale | 68 |
| | Sonoma EMT Wage Scale | 69 |
| | Sonoma Paramedic Wage Scale | 70 |
| | Sonoma Dispatch Wage Scale | 71 |
| | San Joaquin (Stockton Only) EMT Wage Scale | 72 |
| | San Joaquin (Stockton Only) Paramedic Wage Scale | 73 |
| | San Joaquin (Stockton Only) VST Wage Scale | 74 |
| | Tulare EMT Wage Scale | 75 |
| | Tulare EMT-II Wage Scale | 76 |
| | Tulare  Paramedic Wage Scale | 77 |

EXHIBIT F PAGE 120

TABLE OF CONTENTS
(continued)

Page

Marin EMT Wage Scale ....................................................................... 78

Marin Paramedic Wage Scale .............................................................. 79

San Francisco EMT Wage Scale .......................................................... 80

San Francisco Paramedic Wage Scale .................................................. 81

Santa Cruz Paramedic Wage Scale ...................................................... 82

Monterey EMT Wage Scale ................................................................. 83

Monterey Paramedic Wage Scale ......................................................... 84

Monterey Dispatch Wage Scale ........................................................... 85

Shasta EMT Wage Scale ...................................................................... 86

Shasta Paramedic Wage Scale ............................................................. 87

Sacramento Dispatch Wage Scale ........................................................ 88

LifeCom Modesto Dispatch Wage Scale .............................................. 89

San Benito EMT Wage Scale ............................................................... 90

San Benito  Paramedic Wage Scale ...................................................... 91

Valley CCT RN Wage Scale ................................................................ 92

Bay/Coast CCT RN Wage Scale .......................................................... 93

SIDE LETTER OF AGREEMENT ...................................................................... 94

DESCRIPTION OF DOCUMENT ...................................................................... 94

Section 5.4  Company Rules ................................................................. 94

Section5.6  Disciplinary Hearings ........................................................ 94

Section 7.2  Probationary Employee Shift Assignment ......................... 94

Section 8.3  Safety Equipment ............................................................. 95

Section 8.5  Crew Quarters .................................................................. 95

ARTICLE 9 – EDUCATION AND TRAINING ................................................... 97

Section 9.4  Licensing/Qualifications ................................................... 97

Section 9.5  Communications Center Training ...................................... 97

Section 10.1  Work Schedules .............................................................. 98

Section 10.4  Maximum Consecutive Shifts .......................................... 98

Section 10.5  System Status Management .............................................. 98

Section 10.8  Report in Pay ................................................................. 99

Section 10.9  Meal Periods .................................................................. 99

Section 10.10  Notification of Holdover ............................................... 100

-viii-



BARTONI00519

TABLE OF CONTENTS
(continued)

Page

Section 10.15  Shift Trades ............................................................................................. 100

Section 11.1  Seniority Defined ...................................................................................... 100

Section 11.5  Loss of Seniority ....................................................................................... 101

Section 11.8  Filling Vacant Positions ........................................................................... 102

Section 11.9  Work Schedules ......................................................................................... 102

Section 11.10  Seniority for Scheduling ......................................................................... 102

Section 12.2  Paid Time off (PTO) Schedule ................................................................ 103

Section 12.9  PTO Pay in Lieu of Time Off .................................................................. 103

Section 12.13  PTO Pay in Lieu of Time Off ................................................................ 103

Section 13.2  Family, Pregnancy and Medical ............................................................ 104

Section 13.3  Worker's Compensation Leave ............................................................... 105

ARTICLE 15          COMPENSATION .......................................................................... 105

Section 15.2  Appointment – Wages .............................................................................. 107

Section 15.3  Overtime .................................................................................................... 107

Section 15.4  Filling Open Shift(s) ................................................................................. 108

Section 15.6  Acting Supervisor Differential ............................................................... 109

Section 15.7  Bilingual Differential ............................................................................... 109

Section 15.10  Communications Center Instructor Differential ................................ 109

Section 15.11  Preceptor Pay .......................................................................................... 109

Section 16.3  Uniforms Provided ................................................................................... 110

Section 16.4  Uniform Maintenance Allowance .......................................................... 110

ARTICLE 19          COMMITTEE(S) ............................................................................. 110

Section 23.7  Replacement of Personal Items .............................................................. 110

Letter of Agreement – 1-0701 ........................................................................................ 111

Letter of Agreement – 2-0716 ........................................................................................ 112

Letter of Agreement No. 3-0920 .................................................................................... 113

Memorandum of Understanding 4-1011 ....................................................................... 114

Memorandum of Understanding 5-1026 ....................................................................... 115

Memorandum of Understanding 6-1119 ....................................................................... 116

Memorandum of Understanding 8-0205 ....................................................................... 118

Letter of Agreement #10 ................................................................................................. 119

Memorandum of Understanding #11-0502 ................................................................... 120

EXHIBIT _F_ PAGE _122_

BARTONI00520

**TABLE OF CONTENTS**
(continued)

Page

Letter of Agreement #12-0502 ............................................................... 121

Memorandum of Understanding 13-1602 ................................................ 122

Memorandum of Understanding 4-1011-A .............................................. 123

Memorandum of Understanding ............................................................. 124

F PAGE 123

# AGREEMENT

This Agreement is entered into on October 20, 2006, by the National Emergency Medical Services Association (hereinafter referred to as "NEMSA" or "Union") and American Medical Response, (hereinafter referred to as "AMR" or the "Employer").

## ARTICLE 1 - RECOGNITION

### 1.1 Scope of Agreement

**UNIT:** The Northern California employees of American Medical Response, including: All full-time and regularly scheduled part-time EMT-1's, EMT-2's, EMT-P's, Drivers, Wheelchair Van Drivers, Dispatchers, System Status Controllers, Call takers, Pre-Billers, and Billers (except for Pre-Billers and Billers in Stanislaus, San Francisco, Sacramento, Shasta and San Joaquin Counties) including bargaining unit personnel serving as acting supervisors in the following counties: Monterey, Tulare, Santa Cruz, Santa Clara, San Mateo (except EMT-P's covered in a separate Agreement), Stanislaus (excluding Turlock Operations), Alameda, San Francisco, Contra Costa, San Joaquin (excluding Tracy Operations), Calaveras, Marin, Solano, Sonoma, Yolo, Sacramento, Placer and Shasta. In addition, all full-time and regularly scheduled part-time Clerk 1's, Clerk 2's, Stockers, Washers, Couriers and Schedulers in the following counties: Santa Clara, Alameda, Contra Costa, San Mateo, Stanislaus (Vehicle Service Technician only) and Tulare (Clerk 1's and Clerk 2's only). Also including: all full-time and regularly scheduled part-time CCT's and EMT/CCT's in Alameda, Contra Costa, San Mateo and Yolo Counties; Paramedic/CCT's in Contra Costa, Monterey, Placer, Sacramento, San Joaquin, Calaveras, and Santa Clara Counties; Mail Room Clerks in Alameda County; Dispatchers and Call Takers in Modesto and Sacramento Dispatch Centers, EMT 1's and Paramedics in San Benito County; Vehicle Service Technicians (VST) in Contra Costa, San Joaquin, Calaveras, San Mateo and Santa Clara Counties; Gurney Van Drivers in Sacramento County, Pre-Billing Representatives and Technicians in San Mateo County; and Service Receipt Processor/Pre-Billers in Santa Clara County employed by the employer, also included are all full-time and regularly scheduled part-time Registered Nursed (RNs) employed by American Medical Response, Incorporated in Northern California, including all CCT/RNs in Alameda, Contra Costa, Monterey, Sacramento, Santa Clara, and Sonoma Counties excluding all other professional employees, all Advanced Life Support (ALS) paramedics in Tracy, Turlock and San Mateo County, all other personnel including guards and supervisors as defined by the National Labor Relations Act, as amended.

The side letters are incorporated into this Agreement by reference. To the extent there is a conflict between any side letter and any provision of this Agreement, the side letter will govern.

### 1.2 Supervisory Employees

The Employer recognizes the fact that bona fide supervisory employees are only those who have the authority to hire, promote, discipline, discharge, or otherwise effect changes in the status of employees or effectively recommend such action, and it is not the Employer's policy to establish jobs or job titles for the purpose of excluding employees from the bargaining unit.

1

BARTONI00521

BARTON00522

## ARTICLE 2  UNION SECURITY

### 2.1    Union Membership

No later than the thirty-first (31st) day following the beginning of employment, or the effective date of this agreement, or the execution date of this agreement, whichever is later, every employee subject to the terms of this agreement shall, as a condition of employment, become and remain a member of the Union, paying the periodic dues and initiation fees uniformly required, or, in the alternative, shall, as a condition of employment, pay a fee in the amount equal to the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership, or if the employee objects to the payment of that agency fee, such employee shall, as a condition of employment, pay that portion of the agency fee that is related to the Union's representation costs.

Employees who fail to pay the monies required by the Union, and employees who are required to join the Union and fail to do so, upon written request to the Employer from the Union, will be terminated.

### 2.2    New Employee/Termination Notice/Change of Status

The Employer agrees to furnish the Union each month with the name of all newly hired employees covered by this Agreement, their address, social security number, classification, date of hire and the name of terminated employees and date of termination. The Employer shall also provide on a monthly basis, the name, address, and classification of employees who were previously ineligible to be a member of the Union, but who have become eligible for such representation due to a change in the employee's job status.

### 2.3    Union Dues Deduction

Upon receipt of an individual, voluntary, written and unrevoked check-off authorization from the Employee, the Employer will deduct from the pay of such employee during each calendar month a sum equal to that employee's Union monthly membership dues which fell due during the immediately preceding month. The Employer agrees to promptly remit the sums deducted under this paragraph to the Union.

Employees who transfer or are promoted from one county operation to another shall not be required to submit a new check-off authorization form.

The Employer shall be relieved of making such deductions upon a) termination of employment, or b) transfer to a job other than one covered by the union or, c) layoff from work, or d) an agreed leave of absence. Notwithstanding any of the foregoing, upon return of the Employee to work from any of the foregoing enumerated absences, the Employer will immediately resume the obligation of making said deductions.



BARTON00523

## 2.4    Indemnification

The Union shall indemnify and save the Employer harmless against all claims, demands, actions, or other liabilities, including the Employer's reasonable attorney's fees, that may be made against or incurred by it arising from or by reason of any action or inaction by the Employer in carrying out the provisions of this Article 2.

## 2.5    Applicable Law

The foregoing provisions shall be subject to applicable provisions of Federal and State laws.

## 2.6    Union Activity

The Employer will not discriminate in any way against any employee engaging in official Union activity.

## 2.7    Union Notice

The Union shall be notified of any rule, resolution, regulation, policy, or procedure change relating to matters within the scope of representation not covered by the Agreement, which is adopted or implemented by the Employer.

## 2.8    Computerized Information

The Employer shall provide the Union with a computerized accounting for dues. Such accounting may be by tape or diskette and shall be in a format mutually agreed upon by both parties. The cost will be shared equally by both parties.

## ARTICLE 3 - UNION RIGHTS

## 3.1    Shop Stewards

The Employer recognizes the right of the Union to select a reasonable number of Union Stewards. The Employer agrees that there will be no discrimination against authorized Stewards because of Union activity. Stewards shall not be recognized by the Employer until the Union has notified the Employer in writing when individuals leave the position of Steward. Stewards shall not allow their activities as Stewards to interfere with or disrupt the performance of their work or the work of any other employee. Shop Stewards shall suffer no loss in pay for attendance at disciplinary and investigatory meetings and Step 1-grievance meetings held during their shift. Management shall attempt to schedule such meetings during the steward's shift.

When a shop steward is required to attend an investigatory meeting and AMR Management determines it is not operationally feasible to use a shop steward currently on duty, management will authorize the off-duty shop steward to be paid, to attend the investigatory meeting. The Shop Steward will receive a minimum of 2 hours pay at their regular straight time pay rate regardless of how long the meeting runs. Hours paid solely for the performance of Shop

3



Steward duties will not be counted towards hours worked for purposes of calculating overtime and benefits.

## 3.2    Access of Union Representatives

A duly authorized representative of the Union shall be permitted to meet with employees on duty in order to conduct legitimate Union business provided such activity does not interrupt or interfere with the work of any employee and is not at an Employer sponsored meeting or event. All business and conversations between Union representatives and employees will be conducted in a private location so they will not be observed nor overheard by patients, customers or the public. Union representatives must immediately notify the Department Head or his/her designee of their presence upon their arrival for any visitation.

## 3.3    Union Bulletin Boards

Bulletin boards shall be made available at each work site to post official Union business (on NEMSA letterhead stationery). Glassed encased bulletin boards in place at the time of this agreement shall remain in place and the Union shall have access to such bulletin boards for the posting of Union material. The Director of Operations or his/her designee shall receive copies of all material to be posted prior to or at the time of posting. The space provided for such bulletin boards will be maintained by the shop steward and official Union representative, with the posting or removal of bulletins and publications to be handled only by the same. The Employer and the Union recognize the Employer's right to remove posted material which is derogatory or damaging to the Employers' business or industry after consultation with the Union representative.

Materials shall be posted upon the bulletin board space as designated and not upon walls, doors, windows, etc.

## 3.4    Employee Mailboxes and Courier System

The Union shall have reasonable access to all employee mailboxes and the courier system for the purpose of communicating official Union business and information (on NEMSA letterhead or an official NEMSA publication). The Employer shall receive a copy of all material meant for general distribution at the time of distribution. The Union will not hold the Employer responsible for Union mail placed in mailboxes or courier system. Nothing in this provision shall impose an obligation on the Employer to provide, install, or maintain employee mailboxes or provide or maintain a courier system.

## 3.5    Notification of Coverage

When an applicant is hired into a classification covered by this Agreement, the Employer will notify such new employee that the Union is recognized as the bargaining representative for employees in such covered classification(s).

BARTON00524

EX F PAGE 127

BARTON00525

## ARTICLE 4 - MANAGEMENT RIGHTS

**4.1** All rights, powers, and authority the Employer had prior to entering the collective bargaining agreement are retained by the Employer, except as expressly and specifically abridged, by the expressed provisions of this Agreement. The following rights of the Employer are not all-inclusive but indicate some of the matters or rights, which belong to and are inherent to the Employer in its capacity as management.

**4.2** The management of the Employer's business and the direction of the working force including the right to hire, assign, suspend, transfer, promote, discharge or discipline for just cause, and to maintain discipline and efficiency of its employees and the right to relieve employees from duty because of lack of work or for other reasonable reasons determined by the Employer, the right to determine the extent to which the business shall be operated and to change methods or processes, or to use new equipment, the right to establish schedules of service, to introduce new or improved services, products, methods or facilities and to extend, limit, curtail or close its operations, the right to establish and assign job duties, and the right to establish, eliminate or combine job classifications is vested exclusively in the Employer. The above statement of management functions shall not be deemed to exclude other functions not herein listed. In no case shall the exercise of the above prerogatives be in derogation of the express terms and conditions of this Agreement; provided however, nothing in this Agreement is intended to, or is to be construed in any way to interfere with the recognized prerogative of the Employer to manage and control the business.

**4.3** In addition, the Employer, due to the nature of the services it provides, must, without qualification, continue to have the right to establish, delete and modify policies and practices, particularly including but not limited to those relating to safety, security, discipline, and control.

**4.4** The Employer is bound to response time commitments and reserves the right to amend the unit deployment and staffing plans as necessary to insure financial and contractual obligations and will notify the Union prior to the change. Upon written request by the Union, the Employer shall meet with the Union to discuss the impact of its system status management actions on the employees. The decision to make such changes shall not (except with respect to seniority and shift bidding) be negotiable or grounds for a grievance. If the parties are unable to reach an agreement over the impact of the changes on the employees, within a fourteen (14) day period, the Employer shall have the right to implement these changes, and the resulting impact of these changes upon the expiration of the fourteen (14) day period without further consultation with the Union. Prior notice shall not be required if a change is made to meet emergency conditions, but in no case shall a change to meet emergency conditions be continued more than twenty-one (21) days without the required notice. Employees shall be scheduled as deemed necessary by the Employer in its sole judgment to meet the system status management plan.

**4.5** If the Employer fails to exercise any one or more of the above rights, powers or authority from time to time, this will not be deemed a waiver of the Employer's right to exercise any or all of such rights, powers or authority in the future.



EXHIBIT F PAGE 128

BARTONI00526

## ARTICLE 5 - DISCIPLINE AND DISCHARGE

### 5.1    Discipline and Discharge

The Employer shall have the right to discharge or assess other disciplinary action for just cause.

### 5.2    Procedure

The Employer shall follow progressive disciplinary procedures before discharging an employee, except for causes involving serious misconduct such as, but not limited to, gross insubordination, dishonesty, gross misconduct, and/or alcohol or substance abuse. Attempts will be made to counsel employees prior to taking disciplinary action when the Employer determines such action is appropriate.

### 5.3    Right to Representation

Management shall ask employees and inform them that it is their right to have a Union Steward present in an investigatory meeting which will or could lead to discipline.

### 5.4    Company Rules

Company rules and regulations shall be made available to each employee for his/her benefit and understanding. Any modification of these rules and regulations by the Company shall be provided to employees and the Union before they are enforced.

### 5.5    Termination and Suspension

The Employer shall send to the authorized Union representative written notification of all discharges and suspensions of employees within four (4) business days after the effective date of such discharge or suspension. If the Union desires to contest any discharge or suspension, the Union must pursue the matter through the grievance procedure provided for in Article 6 of this Agreement beginning with Step One.

### 5.6    Disciplinary Notices

The Employer agrees to provide the Union copies of all disciplinary notices within five (5) business days after issuance.

It is understood that the disciplinary notices for incidents of unsatisfactory performance for which there has been no recurrence for twelve (12) months, shall not be used in support of any disciplinary action against the employee, except that disciplinary notices relating to patient care shall remain in effect for twenty-four (24) months. Disciplinary notices related to vehicle accidents will be maintained according to the Driver Exclusion Section 8.8 of this Agreement.

The Employer agrees to provide language on the disciplinary notice form to the effect that the employee's signature is only an acknowledgment of receipt. The Employer and Union

F    129

BARTONI00527

encourage employees to sign disciplinary notices. Should the employee refuse to sign, a supervisor's signature will serve as evidence that the employee did receive the disciplinary notice. Upon the employee's written request to the Human Resources Department, disciplinary notices, and any related employee responses, will be removed from the employee's file at the end of the time period as specified above.

5.7     Disclosure

In the event the Employer disciplines or discharges an employee, the Employer will, upon request of the Union, provide to the Union copies of any documents or written statements used by the Employer as a basis for its action. Where such documents contain confidential patient care or legal information, such confidential information will be blacked out prior to providing the documents to the Union.

## ARTICLE 6 - GRIEVANCE PROCEDURE AND ARBITRATION

### 6.1     Grievance Procedure

The purpose of this procedure is a timely adjustment of grievances by the Employer and the Union following a prompt investigation and thorough discussion. In the event any grievance arises concerning the interpretation or application of any of the terms of this Agreement, and/or any dispute concerning wages, benefits and working conditions, such matters shall be adjusted according to the procedures and conditions set forth below.

Employees should attempt to resolve problems informally with their immediate supervisor before resorting to the grievance procedure. Any agreement between the employee and the supervisor will be a non-precedent setting settlement.

**Step One** - The employee or the Union through its shop steward or field representative shall submit the grievance in writing to the appropriate department/division director within fifteen (15) calendar days of the occurrence giving rise to the grievance. The Director or his/her designee, (the designee may be an operations manager, supervisor or other Director, but will not be the person who issued the discipline), shall meet with the grievant and/or his/her representative within ten (10) calendar days and give his/her answer in writing within ten (10) calendar days after such discussion.

In case of a discharge or suspension the grievance must be filed within ten (10) calendar days of the Union receiving notification of such discharge or suspension. Grievances resolved at this step shall not be precedent setting.

**Step Two** - If the procedure in Step One fails to resolve the grievance then, within fifteen (15) calendar days after the receipt of the Step One answer, the grievance shall be submitted to the Director of Human Resources, or his/her designee. The parties shall meet in an attempt to resolve the issue within fifteen (15) calendar days after such submission or at the next regularly scheduled Step Two meeting, if such there be, or by mutual agreement, the parties may submit the matter to some alternative non-binding dispute resolution procedure. The Director of Human

BARTON00528

Resources or his/her designee shall respond, in writing, within fifteen (15) calendar days from the date of the meeting or alternative dispute resolution procedure. Disputes resolved at this level may be precedent setting if the parties mutually agree.

**Step Three** - In case of failure of the parties to settle the grievance at Step Two, the Union may request that the grievance be referred to arbitration within ten (10) calendar days from the Union's receipt of the Employer's Step Two response and shall request a list of seven (7) arbitrators from the American Arbitration Association ("AAA"). Within ten (10) calendar days from the receipt of the list from AAA, the parties shall select an arbitrator by the process of alternately striking names from such list. The party to strike the first name shall be determined by lot. The arbitrator's decision shall be final and binding on the Employer, the Union, and the employee(s) involved. The cost of the arbitrator shall be borne by the losing party. The arbitrator shall have no power to add to, subtract from, or otherwise modify any provision of this Agreement.

6.2    **Time Limits**

By mutual agreement between the Union and the Employer, the time limits of any step of the grievance procedure may be extended and this extension must be confirmed in writing within the specified time limits. In the event the Union fails to appeal the grievance to the next step of the procedure or either party fails to respond to the grievance within the time limits specified, the grievance shall be resolved on the basis of the opposing party's last stated position without setting precedent.

6.3    **Participants**

The Employer agrees that the grievant shall be allowed to participate in any and all steps of the dispute procedure. The parties agree to exercise their best efforts to arrange grievance meetings, which accommodate the schedule of all participants.

6.4    **Complaint Procedure**

Any other complaint that is not covered by the terms and conditions of the Agreement may be taken up to Step 2 of the grievance procedure. The decision at the Step 2 level may not be taken to arbitration.

6.5    **Liability**

Liability for back wages, time off accruals, or any other economic benefit, shall be limited to 360 days from the date a grievance is appealed by the Union to arbitration or to any other method of resolution mutually agreed to by the parties. Any time limit extensions requested by the Employer and approved by the Union in writing shall extend the 360-day maximum liability period by an amount of days equal to such extension.



BARTON00529

## ARTICLE 7 - PROBATION

### 7.1     Probationary Period

Full-time employees covered by this Agreement shall be on probation for their first six-(6) months of employment. Regularly scheduled part-time employees covered by this Agreement shall be on probation for their first twelve- (12) months of employment. Employees may be discharged for any reason during such probationary period without recourse through the grievance procedure set forth in Article 6 unless a violation of Article 18 has occurred. An employee's probation period may not be extended except by mutual agreement between the Employer and the Union.

### 7.2     Probationary Employee Shift

Two (2) probationary employees will not be regularly scheduled to work together, nor will two-(2) employee with a sum total of less than one (1) year of work experience in the county of employment be regularly scheduled to work together. If a county contract has a stricter requirement than this section, the stricter requirement shall apply.

## ARTICLE 8 - HEALTH AND SAFETY

### 8.1     Employee's Right to Refuse Unsafe Work

No employee shall be required to work under hazardous conditions or with unsafe equipment, which would be hazardous to him/her or to his/her co-workers and/or a patient's health and safety.

Employees who become aware of hazardous conditions and/or unsafe equipment must notify the on-duty supervisor as soon as possible. Employees who violate Company safety rules and regulations may be subject to disciplinary action up to and including termination. No employee will be subject to discipline for reporting a health or safety problem.

### 8.2     Company Paid Immunizations

The Employer will either provide or pay the fees for only those immunizations which are in accordance with the recommendations of the United States Public Health Service Advisory Committee on Immunization Practices which are recommended by the County Health Officer. The Employer reserves the right to determine times and locations within the county of employment where an immunization must be obtained. If the Employer elects to provide an immunization, the Employer will not pay the fees for any employee who obtains it elsewhere. All employees shall either obtain each immunization provided by the Employer or sign a waiver as requested by the Employer.



EXHIBIT F PAGE 132

BARTONI00530

### 8.3    Safety Equipment

Employees shall be required to use the following safety and protective gear in accordance with policy as established by the Employer and in effect at the time of this Agreement:

     a.     Leather Gloves

     b.     Hearing and Eye Protection

     c.     Safety Helmets with Face Shields

Upon presentation of a receipt the Employer shall reimburse non-probationary, full-time employees for expenditures for repair or replacement of the following items up to a total maximum of one hundred fifty dollars ($150) once each two- (2) calendar years. Employees may choose to receive either one hundred fifty dollars ($150) for one (1) item listed below or seventy-five dollars ($75) for each item. Ballistic vests will only be eligible for reimbursement once during the life of this Agreement.

     A.     Steel-toed boots or, where appropriate, other safety footwear mutually agreed to between the Union and management.

     B.     Ballistic vests

Upon presentation of a receipt, the Employer shall reimburse part-time employees for expenditures for repair or replacement of the following items up to a maximum of one hundred dollars ($100) once during the life of this Agreement. Such employees may choose to receive either one hundred dollars ($100) for one (1) item listed above or fifty dollars ($50) for each item.

To be eligible for this benefit, part-time employees shall have been continuously employed by the Employer for more than one (1) year; not employed by any other EMS agency; and demonstrate to the Employer that such employee(s) worked for the Employer seven hundred (700) or more hours in the preceding year.

### 8.4    DMV Physical Examinations

Employees may be required, at the Employer's discretion, to submit to an Employer provided physical examination on a biannual basis. This examination, if provided, will be sufficient to meet Department of Motor Vehicle requirements for an Ambulance Driver's License. Medical records of such examinations shall be confidential.

### 8.5    Crew Quarters

Crew quarters shall be maintained in accordance with all state, federal and local laws, ordinances, and regulations.



BARTON00531

When new, and/or replacement crew quarters are under consideration by the Employer, a Union designated chief steward or steward from the county operation of the employees who will be using the new and/or replacement crew quarters will be given the opportunity to review the prospective crew quarters and provide input to the adequacy of such facilities prior to a final decision being made by management.

Special issues concerning such items as kitchen appliances in crew quarters will be resolved through local bargaining.

## 8.6    The Use of Tobacco Products

Smoking or use of tobacco products in accordance with local ordinances will not be permitted in areas, which constitute either a fire hazard or disturbance to patients, visitors, or co-workers. In cases of dispute, the rights of the non-tobacco user shall prevail. Smoking or use of tobacco products will not be permitted in any company vehicle or building.

## 8.7    Driver Exclusion

Employees who are excluded from driving company vehicles by the Employer's insurance carrier or by the Employer's Driving Record Standards contained in Section 8.8 below, shall be subject to appropriate disciplinary action, up to and including termination. All drivers shall be solely responsible to remain properly certified and/or licensed according to the State requirements to drive ambulance units. Violations of such certification and/or licensure requirements are not subject to the grievance procedure provided in Article 6 of this Agreement.

## 8.8    Driving Record Standards

Employees who are excluded from driving company vehicles by the Employer's insurance carrier or by the Employer shall be subject to appropriate disciplinary action, up to and including termination.

Drivers will not be acceptable to the Employer to drive Company vehicles if their MVR or Employer loss records reveal convictions for any of the following reasons within the past 36 months or as otherwise indicated below:

1.  DWI/DUI/BAC (Blood Alcohol Content); In physical control; Open container; Implied consent; or Drug Abuse.

2.  Hit and run or leaving the scene of an accident.

3.  More than two (2) at-fault collisions. The first at-fault collision in any 36-month period shall result in counseling and remedial drivers training. The second at-fault collision in any 36-month period shall result in a one-shift suspension. A third at-fault collision within 36 months will be cause for termination.

4.  More than three (3) moving violations.

11



BARTONI00532

5. A combination of two (2) at-fault collisions and two (2) moving violations within the past twelve (12) months or a combination of two (2) at-fault collisions and three (3) moving violations within the past thirty-six (36) months.

6. Suspended or revoked license, even if the suspension or revocation does not apply to employment usage.

7. Driving while license is suspended or revoked.

8. Reckless driving.

9. Falling asleep at the wheel while the vehicle is in motion, at any time.

10. Use of a vehicle in a felony, at any time.

11. Any "speed" contest or exhibition of speed.

12. Fleeing/eluding any police officer.

13. Record which evidences disregard for the law, evidenced by an accumulation of more than two (2) non-moving type violations, (i.e., failure to appear, financial responsibility, expired license, etc.)

"At fault" shall be determined based upon consideration of whether a "reasonable person" in similar circumstances would have avoided the accident. Such determinations shall take into consideration all relevant facts including: road conditions, vehicle status, driver status, etc. If a police report or citation is issued, such report or citation shall be considered in light of all other known facts.

**ALL DRIVERS MUST BE PROPERLY CERTIFIED ACCORDING TO THE STATE REQUIREMENTS TO OPERATE AMBULANCE UNITS.**

**8.9   Ergonomics and Office Equipment**

A. When purchasing VDT equipment, the Employer will purchase VDT equipment with manufacturer specified non-reflective screens, brightness and contrast controls and situate such equipment to reduce screen glare as much as possible;

B. The Employer will provide non-direct fluorescent lighting in all dispatch centers. If the Employer determines other office locations need non-direct fluorescent lighting, such lighting will be provided;

C. During the first year immediately following ratification of this contract and when replacement is required, the Employer will provide chairs that are adjustable in height and the angle of the back support and height and width of armrests;


EXHIBIT F PAGE 135

BARTONI00533

D. During the first year immediately following ratification of this contract, when replacement is required, the Employer will provide workstations that allow independent adjustment of the keyboard height, screen height and positions.

E. The Employer will provide on an individual basis upon request foot and wrist rests anti-glare screens, anti-static pads or spray.

F. Ambulances purchased or ordered (after ratification of this contract) will provide seating for the driver and attendant in the front compartment which is a cloth covered captain's chair style, with lumbar back support and arm rests, as soon as the Employer's current vehicle manufacturer can begin installing such items.

## ARTICLE 9 - EDUCATION AND TRAINING

### 9.1    Paramedic Continuing Education

All full-time paramedics shall be allowed to attend CE training equal to 24 hours per calendar year with regular pay while off duty. Employer provided CE training shall be given reasonable preference by employees over outside providers where the subject of such training is the same. Should the state or county require additional hours of continuing education, the employer will provide such training and will pay the employee up to the number of hours per year required.

### 9.2    Paramedic Re-certification and Re-licensure Fees

A. The items listed below may be required to maintain paramedic accreditation. The Employer will provide each required item at no charge or reimburse full-time employees any fees paid, upon verification of a passing score or certificate of completion and presentation of receipt of payment.

If the employer provides any of the following training within the three (3) months preceding the expiration date of a license or certification, and if there is an available opening in the training, and an employee elects not to participate, then he/she will remain responsible for payment of all required fees.

1. Advanced Cardiac Life Support

2. Basic Cardiac Life Support

3. Pediatric Advanced Life Support

4. Pre-hospital Trauma Life Support - or Basic Trauma Life Support

5. Any other license/certification required by the County or State

B. The Employer shall reimburse full-time paramedics for re-licensure and re-accreditation fees required by the state and county upon proof of payment. The Employer shall reimburse Full-time paramedics for the renewal cost of the State of California Ambulance Driver License fee upon presentation of the renewed certificate and receipt for proof of payment.



BARTONI00534

Part-time employees who have been employed by the Employer for more than one year; who have not been employed by any other EMS agency; and who demonstrate to the Employer that such employee(s) worked for the Employer seven hundred (700) or more hours in the preceding year, will upon providing the receipt for proof of payment and renewed certificate to the Employer, be reimbursed for the cost of obtaining the State of California Ambulance Driver License renewal fee.

9.3    EMT Re-certification

A. All full-time EMTs shall be allowed to attend employer provided continuing education training or an EMT re-certification class, whichever is required by the county in which the EMT is employed, for up to twelve (12) hours per calendar year with regular pay while off duty. Should the state or county require additional hours of continuing education, the employer will pay the employee up to the number of hours per year required.

B. The Employer shall reimburse full-time paramedics for re-licensure and re-accreditation fees required by the state and county upon proof of payment. The Employer shall reimburse Full-time paramedics for the renewal cost of the State of California Ambulance Driver License fee upon presentation of the renewed certificate and receipt for proof of payment.

Part-time employees who have been employed by the Employer for more than one year; who have not been employed by any other EMS agency; and who demonstrate to the Employer that such employee(s) worked for the Employer seven hundred (700) or more hours in the preceding year, will upon providing the receipt for proof of payment and renewed certificate to the Employer, be reimbursed for the cost of obtaining the State of California Ambulance Driver License renewal fee.

9.4    Licensing/Qualifications

All employees required by law and/or Employer policy to hold any license, certificate, or accreditation in order to perform their job responsibilities are solely responsible for maintaining such license, certificate, or accreditation in current, valid status. Failure to maintain such a license, certificate and/or accreditation may result in disciplinary action, up to, and including, termination.

9.5    Communications Center Training

The Employer shall provide CPR training to all communications center personnel.

9.6    Orientation

All new employees will be provided with up to forty (40) hours of orientation. This orientation may include supervised ride-a-longs.

EXHIBIT F PAGE 137

BARTONI00535

## ARTICLE 10 - HOURS OF WORK

### 10.1    Work Schedules

Based on the needs of the operation, as determined by the Employer in its sole judgment, the Employer has the right to determine, establish, and change work schedules, including starting times, lengths or types of shifts, and the mix of different types of shifts.  Prior to implementing major shift changes, the company will inform the union.

### 10.2    Work Schedules Posted

Work schedules shall be posted and/or provided to employees at least fourteen (14) calendar days in advance.

### 10.3    Normal Hours of Work

This Article defines the normal hours of work and shall not be construed as a guarantee of hours of work per day or per week or of days of work per week.  This Article shall not be considered as any basis of the calculation of overtime.

### 10.4    Maximum Consecutive Shifts

No employee shall be required to work more than two (2) consecutive shifts without a minimum break period of twelve (12) hours.

### 10.5    System Status Management

The Employer is bound to response time commitments and reserves the right to amend the unit deployment and staffing plans as the Employer deems necessary to insure financial and contractual obligations and will notify the Union prior to such change when practical.  Where such prior notification is not practical, the Union will be notified as soon as time permits.  Upon written request by the Union, the Employer shall meet with the Union to discuss the impact on the employees.  However, the decision to make such changes shall not be negotiable or grievable with the exception of issues of seniority and/or shift bidding.  If the parties are unable to reach an agreement over the impact of the changes on the employees within a fourteen (14) day period the Employer shall have the right to implement these changes and the resulting impact of these changes upon the expiration of the fourteen (14) day period without further consultation with the Union.  Prior notice shall not be required if a change is made to meet emergency conditions, but in no case shall a change to meet emergency conditions be continued more than twenty-one (21) days without the required notice.  Employees shall be scheduled as deemed necessary by the Employer in its sole judgment to meet the system status management plan.

### 10.6    Workweek Defined

The workweek shall be defined as beginning on Sunday and ending on the following Saturday.  Payroll is issued bi-weekly. All employees are eligible to participate in the Direct Deposit pay


EXHIBIT F PAGE 138

BARTON100536

program when such program becomes effective. This electronic deposit of funds produces a check stub instead of an actual check at each pay period.

**10.7    Call In/Call Back Pay**

Employees who are called in to work or called back to work from their homes to perform extra work shall be guaranteed a minimum of four (4) hours of work at the appropriate wage rate. The sole exception to this Section 10.7 shall be for employees called back for training in which case the employee will be paid for actual hours in training or a minimum of two (2) hours, whichever is greater, at the appropriate wage rate.

**10.8    Report In Pay**

An employee who reports to work as scheduled by or requested by the Employer and who is not permitted to work his shift shall, at the employee's option, either be compensated for four (4) hours of pay, provided the employee performs work within their classification including reassignment to another unit, or receive four (4) hours pay and be released from duty.

**10.9    Meal Periods**

Each field employee shall be allowed three (3) paid meal periods per twenty-four (24) hour shift, consisting of one-half (1/2) hour duration each. Non-twenty four- (24) hour field employees shall be allowed a one-half (1/2) hour paid meal period.

To ensure that patient care in not jeopardized, meal periods may be interrupted by Code 3 calls and emergency move ups. A crew on a meal period may only be interrupted for a routine, non-emergency BLS transfer if they are the last available unit within fifteen (15) minutes of the call.

**10.10    Notification of Holdover**

Should the potential for a mandatory holdover arise, a reasonable effort will be made by the on-duty supervisor, or his/her designee, to find voluntary coverage before a mandatory holdover is implemented. No employee will be held over longer than two and one-half (2 1/2) hours beyond the regularly scheduled end of a shift without the employee's agreement.

**10.11    Documentation of Holdover**

The Employer will maintain a record of all Employer initiated mandatory holdovers, which last for a period of greater than one (1) hour. The employee shall initiate the record on a Company Incident Report form, and provide the same to the Employer. This record will be made available to the Union within a reasonable time period upon request.

**10.12    Reporting for Work**

Employees will report for work call-ready at the location of their workstation at the assigned time for the shift and will remain on duty, barring extenuating circumstances, until properly

16



BARTON00537

relieved. If the employee is required to remain on duty beyond the normal end of their shift, such requirement shall not exceed two and one half (2 1/2) hours beyond the end of such normal shift.

**10.13  Job Abandonment**

Barring extenuating circumstances, any employee who fails to report to work or to notify the Employer of the specific reason(s) for his absence for two (2) consecutive scheduled shifts, including pre-scheduled overtime shifts, shall be considered to have abandoned his job and to have voluntarily terminated.

**10.14  Two Employees/Same Assignment**

In the event two-(2) employees report for the same assignment they will attempt to mutually agree on whom will work. In the absence of mutual agreement the employee regularly scheduled for that assignment shall work. In the event neither of them are regularly scheduled for that assignment the most senior will choose whether or not to work. Should the most senior employee decide not to work the employee with the lessor seniority must work.

**10.15  Shift Trades/Giveaways**

Full time and regularly scheduled part-time employees may be allowed to trade/giveaway shifts in accordance with the following procedure:

1.  Submit a completed Shift Exchange Form to the Director of the Department or his/her designee 48 hours prior to the date of the requested trade/giveaway. A completed Shift Exchange Form will include the signature of both employees.

2.  The Employer's designated supervisor or scheduler will respond to the request at least twenty-four (24) hours prior to the beginning of the applicable shift. Trades/giveaways will be approved at the discretion of the Employer designee. This discretion will be exercised reasonably.

3.  Shift trades/giveaways shall not result in additional labor costs to the Employer. Shift trades/giveaways must occur during two consecutive pay periods.

4.  With the exception of those locations where a local practice has resulted in shift trade/giveaway of less duration than full or half shifts, shift trades/giveaways shall be for full or half shifts only and comply with experience requirements.

5.  Shift trades/giveaways shall not result in uncovered hours.

6.  The shift trade/giveaway of any employee may be denied by the Employer for cause or operational requirements.

7.  The shift trade/giveaway will not be allowed for the purpose of avoiding discipline.

17

EXHIBIT _F_ PAGE 140

BARTONI00538

8. Employees will be held accountable for shifts they agree to cover.

9. Failure of an employee to show ("no show") for agreed shift trade/giveaway may result in termination of employee's shift trade/giveaway privileges for up to six (6) months.

10. A part-time employee who is not regularly scheduled may trade or giveaway a prescheduled shift provided that it is done in accordance with the above and it does not violate his/her division/departments availability requirements.

11. Exceptions to any of the above may be made at the Employer's sole discretion.

12. Shift trades shall be unlimited. Shift giveaways will be limited to four (4) per month except in operational areas where local practice has previously allowed unlimited giveaways in which cases the local practice shall continue. Employees will not be allowed to use PTO for Give-a-ways.

**10.16  Floater Positions**

Designated relief positions known as "floaters" shall be staffed by full-time paramedics with at least one (1) year paramedic experience in the county or by full-time EMTs with at least nine (9) months of EMT experience in the county. These positions are open to any qualified paramedic or EMT. These positions will be staffed during a bid process, or personnel shall be assigned using reverse seniority, should there be a lack of participation. Floaters will be paid the 24 hour wage rate for the portion of the 24-hour period they are available to work. The Employer reserves the right to create additional 24 hour or non-24 hour "floater" positions, slots or schedules as the Employer may deem necessary to meet operational needs. If assigned to a unit, the floater shall be released at the end of the shift for the unit assigned.

Employees who are normally scheduled, as Floaters shall be issued company pagers 24 hours a day, seven (7) days a week.

No floater will be required to work over twelve (12) hours except on a 24-hour unit or a combination of 24-hour units during a 24-hour period.

ARTICLE 11 SENIORITY

**11.1  Seniority Defined**

Seniority for full-time employees, shall be defined as the period of continuous service from the employee's most recent date of hire into such full-time employee's current classification except as otherwise provided in side letters describing unique local practices.

Seniority for employees who change job classifications shall remain unchanged for purposes of time-off accruals and benefits.



BARTON00539

Seniority for part-time employees shall be defined as the period of continuous service from the employee's most recent date of hire into such part-time employee's current classification. Part-time employees who become full-time employees will be given fifty percent (50%) of their part-time seniority for purposes of shift bidding, layoff, and recall.

Seniority lists will be maintained in accordance with current local practice and this agreement. All decisions which are subject to seniority application will be made based on the most recent seniority list which has been reviewed and approved by a Union representative. The Employer will have no liability for the application of seniority dates that are determined later to be incorrect.

In the case of more than one employee having the same date of hire, the date the most recent application for the current classification was received by the Human Resources Department shall determine relative seniority.

In the event two or more employees have the same date of hire and application date, relative seniority shall be determined by lot within the Human Resources Department in the presence of the employees involved and any available Union representative. All applications will be date and time stamped at the time of their receipt by the Employer's Human Resource department. Issues relating to determining and documenting date of receipt of applications are not subject to any part of the grievance procedure.

## 11.2    Definition of Regular Full-Time Employee

Regular full-time employees will be those employees who are designated as such by the Employer and are defined as those employees who are regularly scheduled to work a schedule predetermined by the Employer which consists of forty (40) hours per week or more.

Any full-time employee whose work hours per week fall below forty (40) for a period of eight (8) continuous weeks shall have their status changed to part-time if such absence was for reasons other than being on a scheduled vacation or an approved leave of absence.

## 11.3    Definition of Regular Part-Time Employee

Regular part-time employees will be those employees who are designated as such by the Employer and who are regularly scheduled to work less than forty (40) hours per week, and/or those employees who work on an intermittent, on-call, or temporary basis.

Part-time employees who work forty (40) or more hours each week for more than six (6) months shall have their status changed to full-time.

## 11.4    Return to the Union

A supervisor who has been out of the bargaining unit for a period not to exceed eighteen (18) months, and who is granted a bargaining unit position will retain seniority accrued prior to

EXHIBIT F    PAGE 142

BARTON00540

leaving the bargaining unit. Such a supervisor who is returned to the bargaining unit by the Employer shall return to an opening and therefore not directly cause the layoff of a bargaining unit employee.

**11.5    Loss of Seniority**

An employee shall lose all seniority rights and employment will cease for any of the following reasons:

    A.    Resignation.

    B.    Discharge for cause.

    C.    Twelve (12) months of continuous layoff. This may be extended in increments of three (3) months by mutual agreement of the parties.

    D.    Failure to report on recall to work following layoff within one (1) calendar week after notice by Certified mail has been received by the employee. This shall not apply if an employee on layoff has informed the Company by certified mail, within one (1) calendar week of receipt of their recall letter, of his/her intent to return to work. After such notification, the employee must report within four (4) weeks.

    E.    Barring extenuating circumstances, failure to report to work at the conclusion of an authorized leave of absence.

    F.    Absence for any reason extending beyond one hundred and twenty (120) calendar days, excluding absence for industrial injury or illness or an approved leave of absence.

    G.    Occupation of a position outside of the bargaining unit for eighteen (18) months or more.

**11.6    Recall from layoff**

As positions become available, qualified employees who have not exhausted their recall rights shall be recalled beginning with the most senior such qualified employee within the county operations where such opening(s) has occurred. An employee who has been recalled and who has returned to work will have health benefits restored effective the first day of the month immediately after the month in which such employee returns to work.

Qualified employees will have current and valid licenses and certifications or will obtain them within sixty (60) days. A position will be held, up to a maximum of sixty (60) days from the date the recall notice is mailed, for employees who: (a) are in the process of obtaining current licenses and certifications and, (b) who have indicated in writing that they will be returning to a



position with the Employer. The Employer will pay all hours required by the County for field evaluations.

Employees who have been notified in writing by the Employer that they will be laid off may apply for an existing, vacant position with the Employer provided that they meet all required qualifications. Such employees will receive preference in the hiring process over non-employees provided they have notified the Employer in writing within seven (7) calendar days of receipt of layoff notification. Employees who accept such a position shall be paid the rate of pay of the new classification and shall retain their position on the recall list until such recall rights have expired as provided in Section 11.5, C above, or until recalled to their former position, whichever comes first.

No new employee(s) shall be hired into a classification until such time as all qualified laid off employees whose recall rights have not expired for such classification have been recalled.

## 11.7    Seniority Lists

Upon request by the Union Field Representative, the Employer shall provide a seniority list of all regular full-time employees covered by this Agreement, and a seniority list of all regular part-time employees covered by this Agreement, both of which shall include each employee's seniority date.

## 11.8    Filling Vacant Positions

Vacant positions shall be filled subject to the following provisions:

A.    Positions declared vacant by the Employer shall be posted within the county for seven (7) calendar days. The resulting vacancy, if any, shall also be posted for seven (7) calendar days. The resulting vacancy, if any, shall also be posted seven (7) calendar days. Subsequent vacancies shall be filled at the Employer's discretion.

B.    The most senior qualified employee applying for the posted vacant position shall be assigned to the vacancy, provided assignments to vacant positions result in a minimum of one (1) year of combined county experience between the two partners assigned to the unit. In the event no employee has applied for the position which would result in the required combined experience, the least senior qualified employee with the minimum required experience shall be assigned to the vacancy.

A.    An employee who is under a performance improvement plan (remediation plan) shall not be allowed, or required, to assume a vacant position without the mutual consent of the employee and the Employer.

21

EXHIBIT F PAGE 144

BARTON00541

BARTON00542

**11.9   Work Schedules**

A.      Unless circumstances beyond the Employer's control dictate otherwise, work schedules and changes to the employee's regular unit assignment shall be posted and/or provided to employees at least fourteen (14) calendar days in advance.  The Employer reserves the right to adjust daily employee shift/unit assignments as necessary to meet operational needs.

B.      The Union and the Employer agree that supervisors will only be allowed to work as many shifts as may be required by the local Emergency Medical Services Agency to maintain such supervisor's accreditation.

C.      Notwithstanding the provisions of sub-section (B.) above, supervisors shall be allowed to work in bargaining unit positions when necessary to avoid shutting down a field unit and/or in emergency situations.  In addition, in those locations of the Employer where supervisors work regular shifts, such  practice shall continue.

**11.10   Seniority for Scheduling**

In the filling of temporary vacancies on a shift, part-time employees will have preference over full-time employees except if the part-time employee has already worked, or is scheduled to work, forty (40) hours in the week.

Employees may fill out an availability form indicating which days they are available to work. The Employer will first call, by seniority, the available part-time employees, who have not worked, or are not scheduled to work, forty (40) hours in the week, and then call the available full-time employees in seniority order.

**11.11   Seniority Application**

For purposes of overtime, time off accruals, scheduling, transfer, layoff or recall from layoff, seniority shall prevail within any classification within the county.  For a transfer to a special assignment or promotion seniority will prevail provided that skill, ability and job performance are relatively equal.

**11.12   Advance Notice of Layoff**

The Employer shall notify affected employees of any reduction in force as far in advance as required by applicable law.  In no event shall such notice be less than fourteen (14) days.

**11.13   Transfer**

A transfer is defined as the reassignment of a qualified non-probationary employee from their current county to a position in a different county, at the request of the employee.  This section only provides for transfers between AMR operations represented by NEMSA. The employer and

EXHIBIT F PAGE 145

BARTON00543

union agree that the provisions of this section shall not supersede the provisions of Section 11.23.

## 11.14  Transfer Eligibility

In order to be eligible for a transfer to another department an employee shall:

1. Possess, or obtain on their own, any necessary certifications as required by the department to which the employee wishes to transfer;

2. Have no pending investigations into any operational or medical performance issues or have any current certification/accreditation actions or be on probation by the Employer, county or state;

3. Not be on a medical quality improvement, operational improvement program, individual field instruction plan or other similar improvement programs;

4. Not have received any written warnings (or greater disciplinary actions) within the last six (6) months as measured from the date of the disciplinary action, (can't transfer to avoid discipline);

5. Not have transferred between departments within the preceding six months;

6. Be approved for transfer by the Director of Operations of the employee's current department, and of the department to which the employee wishes to transfer;

7. Maintain all eligibility standards from time of application through actual transfer date;

8. Complete a transfer form supplied by the Employer and submit to the current Operations Director or designee for approval;

9. The receiving Director or designee may contact the employee requesting a transfer and interview such employee prior to approving the transfer request;

10. Any denial of a Transfer Request shall be made in writing and will include the reasons for such denial.

## 11.15  Maintenance of Transfer Eligibility Standards

If all eligibility standards are not maintained, including required certifications, the transfer request will be placed on hold for a period of no more than thirty (30) days. If at the end of

EXHIBIT _F_ PAGE 146

BARTONI00544

thirty (30) days the eligibility standards and/or the required certification(s) have not been acquired, the transfer request will be denied and removed from consideration for transfer.

**11.16  Transfer Effective Date**

Approved transfers will be effective in the order received.  The effective date of an approved transfer will be the date of the first required training session to which the transferring employee is assigned.

**11.17  Transfer Field Training and Field Evaluation Assignments**

Less than full-time hours may be assigned during the training/evaluation time necessary to receive the required accreditation.  Employees will be paid for hours worked; however, such temporary reduction in hours will not affect the employee's eligibility for any applicable benefits.

**11.18  Seniority of Transferred Employee**

Employees who transfer from one county to another under this Article 11 shall maintain their most recent date of hire in their current classification from the county they are transferring from for purposes of any applicable time off accruals and benefits.  County seniority for the purposes of job bidding, lay-off, and recall, for employees transferring into any other county will begin to accrue on the effective date of the transfer.  No county seniority will be transferred from the previous county unless there is mutual agreement between the Employer and the Union to transfer such seniority or unless there is an existing local practice.

**11.19  Responsibility of Transferring Employee**

By applying for and accepting a transfer, the employee will be agreeing to accept the wages and benefits of the "new" department.

**11.20  Transfer Accreditation/Orientation**

All training necessary to obtain accreditation in the "new" county/department will be provided to the employee during the next regularly scheduled accreditation process.  This does not include any training necessary to obtain certification(s) required to be eligible for transfer as specified in Section 11.14 above.

**11.21  Compensation for Required Classroom/Field Training and/or Evaluation**

Transferred employees will be paid at the pay step appropriate to their company seniority at the 24 hour unit rate on the pay scale of the "new" department for all required classroom training attended.  Time spent during Field Training or Field Evaluation will be paid at the employee's pay step on the scale assigned to the unit on which the training or evaluation occurs.

EXHIBIT F PAGE 147

BARTONI00545

### 11.22  Transferred Employee Who Fails Training and/or Evaluation

An employee who has transferred and fails any part of the training or evaluation required by the receiving department or county will be moved back to the department such employee transferred from to an available opening.

### 11.23  Special Seniority Provisions

The Employer and the Union agree and recognize that certain seniority provisions concerning the application of seniority within individual county operations, (such as shift bids or intra-county transfers), exist and may be found in the side letters attached to and hereby made a part of this agreement.

### 11.24  Transfer in Lieu of or to Prevent Layoff

An employee who has been notified of layoff may be allowed to transfer to a posted opening in the same classification in another county prior to a qualified part-time employee in the county with the opening being awarded such opening. An employee who requests and is granted a transfer in lieu of layoff shall retain his/her seniority in the new county for all purposes. Such Transfer will only be made if the requesting employee meets all provisions contained in Article 11, Sections 11.13 through 11.22 of this Agreement.

An employee who volunteers to transfer from a county when such transfer will reduce the number of employees to be placed on layoff from such county, as determined by the employer, may be allowed to transfer to a posted opening in the same classification in another county prior to a qualified part-time employee in the county with the opening being awarded such opening. An employee who volunteers and is granted a transfer in lieu of other employees in the same classification and county being laid off shall retain his/her seniority in the new county for all purposes. Such transfer will only be made if the volunteering employee meets all provisions contained in Article 11, Sections 11.13 through 11.22, of this Agreement.

## ARTICLE 12 - PAID TIME OFF (PTO) AND HOLIDAYS

### 12.1  Paid Time Off (PTO)

All regular full-time employees covered by this Agreement who have completed their probationary period, shall be eligible for Paid Time Off (PTO), which shall accrue from date of hire, without loss of pay in accordance with the schedule provided in Section 12.2. Such time may be used for personal time, vacation or sick time as the employee wishes.

### 12.2  Paid Time Off (PTO) Schedule

A.  Regular full-time employees hired prior to the signing of this Agreement shall continue to accrue Paid Time Off (PTO) benefits (i.e. vacation, sick and personal time) in accordance with local practice, unless that results in less total time off than provided for below, in that case he/she will receive the benefit described below.

25



BARTONI00546

B. Regular full-time employees hired on or after the signing date of this Agreement shall have Paid Time Off (PTO) benefits (i.e. vacation, sick and personal time) computed in accordance with the following schedule:

| Continuous full-time Service | PTO Benefit |
|---|---|
| 1 through 4 years | 3 weeks |
| 5 through 7 years | 4 weeks |
| 8 through 10 years | 5 weeks |
| 11+ Years | 6 weeks |

Upon a field employee's shift/unit change, any accrued but unused PTO will be converted to allow the equivalent time off based on the same number of weeks.

### 12.3    PTO Use

An employee may utilize accrued PTO on a daily basis provided the employee notifies the Employer at least two (2) hours prior to the start of the employee's shift. Requests for PTO use in excess of one (1) day must be submitted at least three (3) days in advance of the intended usage date. Multiple requests for the same day off shall be approved in seniority order. PTO requests received with less than three (3) days notice shall be approved to the extent local staffing requirements permit on a first come, first served basis. Requests for PTO usage which are related to emergencies and other unexpected and unplanned events shall not be unreasonably denied by the Employer. Once an employee's request has been approved, it can not be canceled for reasons other than a major emergency.

Excessive single day PTO usage in close succession and/or a regular pattern of single day PTO usage may be grounds for disciplinary action if such usage is not explained to the satisfaction of the Employer.

### 12.4    PTO Week Use

A PTO/vacation week shall consist of seven (7) consecutive calendar days.. PTO/vacation pay benefits shall be paid as time worked.

### 12.5    VACATION Scheduling

Vacation dates may be reserved for the following calendar year (January 1 through December 31), on a seniority basis, by submitting a written request to Scheduling before November 30 of each year. Requests received after November 30 shall be approved on a first come first served basis. The Employer may limit the number of employees on vacation during the same period of time, based on operational requirements. Requests for the period from Thanksgiving Day through New Year's Day each year are subject to operational needs. Vacations over two (2) weeks in length, or schedules calling for multiple employees from the same operational area on vacation for any week, are subject to operational needs.

EXHIBIT _F_ PAGE _149_

BARTON100547

## 12.6    PTO near Holidays

PTO near holidays may be granted on a first come, first served basis, based on operational needs. Any and all scheduling conflicts will be resolved on a first come first served basis. Where more than one request for the same time off has the same date of request, seniority shall prevail between such requests.

## 12.7    PTO Carry Over

No more than two (2) years of accrual can be carried over past the employee's anniversary date and accrual will cease when such maximum is reached. The employee shall sell back any amount not allowed to be carried over and accrual will not start again until the employees has sold back or used sufficient hours to bring the accrued level below the maximum amount.

## 12.8    PTO Pay at Termination

An employee whose employment has been terminated, or who resigns, and who has unused accrued PTO pay shall receive such pay in addition to any other pay due in his/her final check. All sell backs or pay outs at time of termination, either voluntarily or involuntarily, shall be paid as time worked.

## 12.9    PTO Pay in Lieu of Time Off

Employees may, at their option, choose to receive pay in lieu of time off two (2) times per year for up to 50% of their PTO accrued amount. Requests for such payment need to be received fourteen (14) days in advance. If requested by the employee, pay in lieu of time off shall be issued on a separate payroll check during the regular payroll cycle.

## 12.10    Holidays

The following days shall be considered paid holidays for the purpose of holiday pay for employees who work on the holiday. Employees who work on a designated paid holiday will receive an additional half-time (1/2) pay for hours worked. Any employee whose unit is downed or whose shift is canceled for the holiday shall receive his/her full pay for the holiday, excluding the holiday premium.

Office employees on a Monday through Friday schedule shall observe holidays which occur on a Saturday on the proceeding Friday and holidays which occur on a Sunday on the following Monday. Office employees working a schedule other than Monday through Friday shall observe holidays, which fall on their regularly scheduled day off on the scheduled workday closest to the holiday.

New Years Day                         Labor Day
Presidents Day*                       Thanksgiving Day

27



| | |
|---|---|
| Memorial Day | Friday after Thanksgiving Day |
| Independence Day | Christmas Day |

\* Presidents Day may be traded for Martin Luther King Day (the third Monday in January), for the duration of this Agreement, in those counties where the Union requests such change by a letter to the Director of Human Resources within thirty (30) days of the effective date of this Agreement.

**12.11  Eligibility for Holiday Compensation**

Employees who are scheduled to work on the holiday and fail to report, shall not receive holiday pay.

**12.12  Holiday Duration**

The duration of the holiday shall be from midnight to midnight, and an employee shall be deemed to have worked the holiday if their shift began during this duration.

**12.13  Additional Holidays and/or Pay**

Any county operation where a prior Agreement provided for holiday pay for working a holiday or holidays in addition to those designated in Section 12.10 above shall continue to have such holiday(s) available to employees in that county operation who work such holiday(s). In addition, any county operation where a prior Agreement provided either, (1) holiday pay for employees not scheduled to work the holiday, and/or, (2) holiday pay at a different rate, shall continue to have such local practice(s) in effect. Such practices are noted in the side letters attached to and made part of this agreement.

**ARTICLE 13 - LEAVES OF ABSENCE (LOAS)**

**13.1  Personal Leave**

All employees after successfully completing their probationary period are eligible to request a voluntary leave of absence. Requests must be made in writing to the employee's immediate Supervisor and state the reason for the leave request in order to be reviewed and considered by the Employer. The maximum allowable leave of absence for a voluntary personal leave is 120 days. Such a request is considered an excused absence from work without pay wherein the employee is responsible for the full insurance premium amount (100%) consistent with COBRA procedures. Employees who request and are granted voluntary, personal leaves of absence of more than thirty (30) days cannot be guaranteed a return to their formerly held position upon return from the leave. The Employer agrees to make every practical effort to return the employee to a comparable position if such an opening exists. An employee who is granted a return to work after a voluntary personal leave of absence and who fails to show up on the first shift scheduled after the leave of absence shall be considered to have resigned.

EXHIBIT _F_ PAGE _151_

BARTONI00549

### 13.2    Family, Pregnancy, and Medical

Employees may request a leave of absence under the provisions of the Federal Family and Medical Leave Act of 1993 or the California Family Rights Act as amended in 1993, provided they meet all of the criteria required by these Acts. In all cases, the employee should make a reasonable effort to provide the Employer with not less than 30 days notice of the intent and reason for the leave. The Employer shall have the right to request the Employee obtain medical opinions and certifications supporting the leave request.

In all cases of leave under the provisions of the Family and Medical Leave Act of 1993 or the California Family Rights Act as amended in 1993, the employee shall be returned to their former or an equivalent position upon return from the leave. The Employer reserves the right to require that employees utilize available PTO/vacation benefit time in substitution for any part of the 12 week period required by the Act. Medical benefits for employees on Family and Medical Leave will continue to be provided by the Employer on the same basis as when the employee was actively at work provided that if the employee is normally responsible for a portion of the health insurance premium, the employee must continue to make such payments to maintain coverage.

Where the employee has been on leave because of personal illness or injury, the Employer reserves the right to require the employee to submit to a physical examination and/or provide an Employer's Unrestricted Return to Work Clearance Form completed and signed by a physician, prior to returning to work.

An employee who does not return to work on the first shift scheduled after a Family and Medical leave will be considered to have voluntarily resigned from employment. The sole exception will be if the employee is prevented from returning to work due to expired licenses, certifications or accreditations, in which case the employee shall have sixty days from the date of the leave expiration to restore any required license, certification or accreditation. The Employer retains the right to terminate any employee who fails to restore the required license, certification or accreditation within the sixty- (60) day period immediately following expiration of such license, certification or accreditation.

The maximum length of leave under this Section 13.2 shall be six (6) months and such maximum leave length shall be extended only at the sole discretion of the Employer.

### 13.3    Worker's Compensation Leave

Employees who become ill or injured as a result performance of their job responsibilities will be granted a leave of absence. This leave will not exceed the period of disability.

The Employer will continue to provide health benefits for employees on Worker's Compensation leave as long as the employee continues to pay any applicable contribution, up to a maximum of twelve (12) months.

Whenever feasible, the Employer intends to offer a light-duty position to employees injured at work. Time worked in such a position will be paid at the applicable job position pay rate.



BARTONI00550

### 13.4 Union Leave

Employees who have been continuously employed for at least one (1) year may request a leave of absence for Union business without pay for a period of time not to exceed ninety (90) calendar days. This request must be in writing and must be accompanied by a letter from a NEMSA representative requesting the leave of absence. Requests for leaves will be considered based on the employee's performance and the impact on the Employer's operations.

In no event shall more than one (1) employee at a time per county receive approval for a leave of absence for Union business. Employees on a leave of absence for Union business will continue to accrue Company seniority.

### 13.5 Military

Employees who enter active military service, or who are called to emergency military duty, will be granted a leave of absence upon presentation of the appropriate written orders without any loss of seniority. Reinstatement rights are governed by federal law and require that specific requirements be met. The Employer reserves the right to request verification details from any employee returning from a military leave of absence.

### 13.6 Extension of a Leave of Absence

A leave of absence may be extended by mutual agreement between the Employer and the employee.

### 13.7 Rights Upon Return from a Leave of Absence

For employees returning from any leave of absence provided under this Agreement, other than those for which federal or state law mandates the terms and conditions of such a return to work, provided the employee gives seven (7) calendar days notice of his/her intent to return, the Employer shall make every reasonable effort to return employees to an available, vacant position for which the employee is qualified. When an employee returns from any approved leave of absence he/she shall receive the rate of pay (plus any applicable contract-date wage increases) and shall be entitled to all seniority and benefits he/she had acquired and/or accrued prior to taking such a leave.

An employee who is on an approved leave of absence and who has a projected return to work date shall be eligible to participate in a shift bid if such return to work date is not more than thirty (30) days from the effective date of such shift bid.

### 13.8 Successive Leaves of Absence

Any leave of absence beginning within ninety (90) days of returning from any other leave of absence will be considered by the Employer to be a continuation of the prior leave.



BARTON00551

### 13.9    Jury Service

An employee who is called to jury duty will receive pay as time worked for any regularly scheduled shift they are required to miss, up to a maximum of two (2) weeks. To receive this pay, the employee must provide proof of the hours served.

An employee who is retained by the Court in excess of four (4) hours need not return to work for the remainder of that regularly scheduled shift.

Employees will be granted additional time off, without pay, for any further time required to serve obligatory jury duty.

Employees who receive a jury duty notice shall notify the scheduling department or their designee within forty-eight (48) hours of receipt of the notice. This will allow the appropriate party to anticipate and arrange for relief in the case of absence, should that become necessary. Employees must call the scheduling department or their designee daily to report their jury duty status and when they anticipate returning to work.

### 13.10   Subpoena/Witness Service

A full-time employee who is subpoenaed by a court of law will receive pay as time worked for any regularly scheduled shift(s) they are required to miss, up to a maximum of one (1) week, provided:

1.  The testimony given is relative to an event arising out of an incident occurring as part of the employee's duties with the Company.

2.  The cause of action is not a civil nature for which the employee may apply for witness fees.

As a condition of payment, the employee must report back to work for the remainder of their scheduled shift immediately after being released by the Court and must provide proof of hours served.

### 13.11   Bereavement

In the event of death in an employee's immediate family (defined as the employee's spouse, child, including still birth, stepchild, parent, step-parent, mother-in-law, father-in-law, sister, brother, stepsister, stepbrother, aunt, uncle, grandparent, grandchild, brother-in-law, sister-in-law or significant other) bereavement leave will be paid provided the employee has successfully completed his/her probationary period. Eligible employees will be paid for up to one half of the shifts that he/she is regularly scheduled to work in a two-week period, excluding overtime shifts. At the employee's request, the employee shall be permitted to take and complete the actual leave of absence anytime within two (2) weeks following the death. In addition, any employee who is notified of a death in the immediate family while on duty, will be relieved upon notification of the supervisor, for the remainder of his/her shift with pay. All bereavement leave pay will be paid as time worked.



BARTON00552

If an employee is on vacation and a death occurs in the immediate family, the employee may request to convert the vacation to Bereavement Leave. In no event shall the employee receive any pay greater than would have been paid had the leave been taken immediately (as described above).

In order to prove relationship to a significant other, the employee must submit to the Director, Human Resources, a letter containing the names and signatures of both the employee and the significant other. This must have been done at least sixty (60) days prior to the date of death. This letter shall remain sealed until opened by the employee or with the employee's consent. An employee may have only one (1) significant other or spouse identified at any time.

Bereavement pay will only be granted when an employee submits evidence satisfactory to the Employer of the date of death and the relationship of the deceased to the employee.

Time off without pay may be granted in cases of bereavement for individuals not included in the definition of the immediate family, or for probationary employees, provided advance notice has been made to the Employer and operating conditions permit such an absence at the sole discretion of the Employer.

## ARTICLE 14 EMPLOYEE BENEFITS

**14.1    Insurance Benefits**

    **A.    Medical Insurance**

Effective July 1, 2006, medical coverage shall be provided as described in either the AMR Anthem Consumer PPO Deductible plan or the Kaiser Consumer deductible plan.

Effective July 1, 2006 prescription drug coverage shall be provided as described in either the AMR Anthem Consumer PPO plan or the Kaiser Consumer deductible plan.

Effective January 1, 2007, the Company shall offer the Kaiser HMO-20 plan as a third medical option. For the life of this agreement, the Company shall not incur any premium or administrative shared costs above the premium share cost of the Anthem Consumer PPO plan. Employees choosing the Kaiser HMO-20 plan shall assume all costs above the Anthem Consumer PPO plan.

For all employees hired after ratification of this Agreement, the Employer shall pay seventy-five (75%) percent of the Medical insurance premium for "employee only" contribution and seventy-five (75%) percent of any dependent coverage.

EXHIBIT F PAGE 155

BARTON00553

For current employees upon ratification of this agreement effective July 1, 2006, the Employer shall pay ninety (90%) percent of the medical insurance premium for "employee only" contribution and eighty-five (85%) percent of any dependent coverage.

For current employees upon ratification of this agreement effective January 1, 2008, the Employer shall pay ninety (90%) percent of the medical insurance premium for "employee only" contribution and eighty (80%) percent of any dependent coverage.

B.     **Dental Insurance**

The Employer shall pay seventy-five (75%) percent of the premium for the dental insurance described in the AMR Dental plan summary.

Employees electing to participate in the AMR dental plan "buy-up" program shall pay 100% of the additional cost (above the Employer's seventy-five (75%) percent contribution for the AMR Dental plan) associated with the buy-up program.

C.     **Vision Plan**

The Employer will offer the vision plan, currently through VSP. The Employer agrees to pay 50% of the premium of this plan regardless of the tier level of coverage chosen by the employee.

D.     **Short Term Disability Insurance**

Employees may purchase individual short-term disability insurance on a voluntary individual basis. The entire cost of such individual short-term disability insurance shall be borne by the employee. The Employer agrees to implement a voluntary payroll deduction for the payment of premiums associated with individual short-term disability insurance plans when requested by employees.

E.     **Life and ADD Insurance**

The Employer will offer to eligible full-time employees, life and accidental death and dismemberment insurance in the amount of two (2) times an eligible employee's annual salary at no cost. Employees have the option to purchase additional supplemental life and/or accidental death and dismemberment insurance coverage for themselves and/or their spouses and dependent children through payroll deduction. Employer will also be offered LTD, Travel Insurance, and EAP Insurance at no cost.

F      156

BARTON00554

F.    **Opt-Out**

A full-time benefit eligible employee who chooses to "opt-out" of all medical, dental, vision, voluntary STD, supplemental life, and supplemental AD&D insurance is eligible to receive an "in lieu" amount of one hundred thirty dollars ($130.00) per month. The "in lieu" amount will be increased each year of the contract by the 12-month average of the San Francisco Bay Area CPI-U, May 1 through April 30. Proof of other medical coverage will be required to receive this benefit. This opt-out benefit shall terminate for all eligible employees on June 30, 2008.

G.    **Flex Pay**

The Employer offers to all benefit eligible full-time employees who are participating in any one (1) of the following benefit plan(s), (medical, dental, vision, supplemental life, supplemental AD&D or voluntary STD) forty dollars ($40) per month as a "flex-pay" benefit. This "flex-pay" benefit shall terminate for all eligible employees on December 31, 2006.

The Employer agrees to offer all insurance benefits on a pre-tax basis where allowable.

Domestic partner benefit coverage will be offered to employees who work in a geographical area where local laws require this benefit.

14.2    **Flexible Spending Account**

In order to off set the cost of out of pocket co-pays and deductibles the Employer shall establish funded flexible spending accounts for each employee enrolled in the Employer's medical health insurance plan in the amounts listed below:

| DATE | AMOUNT |
|------|--------|
| January 1, 2007 | $500 |
| January 1, 2008 | $500 |

The Employer will also allow employees to defer up to $5,000 per calendar year on a pre-tax basis per IRS & Section 125 guidelines for the purpose of paying for dependant care costs for qualified dependents.

The dependant care provider will be at the discretion of the employee; however, the employee must receive and present the third party Administrator with receipts for dependent care services and the tax identification number of the provider.

The Employer will allow employees to defer up to $4,000 per calendar year on a pre-tax basis per IRS & Section 125 guidelines for qualified health related expenses not otherwise covered under any health plan (i.e., medical, dental, vision). The employee must receive and present the third party Administrator with receipts for medical care. The Employer shall pay the

F    157

BARTON00555

administrative cost for this plan, excluding the elective fee to coordinate payments with the other health insurance plans.

### 14.3    Workers' Compensation

Premiums for workers' compensation insurance are paid in full by the Employer. Employees who are injured in a job-related situation or illness must immediately notify their Supervisor.

### 14.4    Employee Assistance Program (EAP)

The Employer recognizes that early recognition, intervention and treatment are important for successful rehabilitation and for reduced work, personal and family disruption. All employees who are eligible for benefits will be eligible for participation in the Employee Assistance Program as part of the "core" benefits of the cafeteria-style benefit program. Employees who are not eligible for the benefit plans provided in this Article 14 will still be eligible for the basic Employee Assistance Program, which provides for an initial assessment and up to five (5) free visits. An employee who voluntarily participates in the EAP provided by the Employer with the express purpose of correcting a personal incapacitating habit may do so without jeopardizing their continued employment with the Employer, provided they stop an involvement with illegal activity and do not jeopardize any of their required licenses. In disciplinary actions for other violations; provided however, that an employee's voluntary participation in the EAP shall not in itself be considered as evidence or admission of a violation. The Employer shall maintain the confidentiality, on a need to know basis, of all employees participating in EAP programs.

The Employer reserves the right, in addition to any corrective action and with reasonable cause, to refer an employee to the EAP for assessment and treatment.

### 14.5    Credit Union

The Employer shall make available a credit union for the term of this Agreement.

### 14.6    401(K) Plan

All newly hired employees as of the effective date of this Agreement are eligible for participation in the first enrollment after they have been employed for an uninterrupted period of one (1) year during which they have worked at least 1000 hours.

Each payroll period, the Employer will make a Matching Contribution for the benefit of each Participant on whose behalf it made Elective Contributions for the period. The amount of Matching Contributions made by the Employer for the period shall be equal to 100% of the elective contributions made on behalf of the Participant for the period which does not exceed 5% of the Participants Compensation for such period. If there is any discrepancy or conflict between the plan document and this Agreement, the plan document will govern.



BARTONI00556

All newly hired employees as of the effective date of this Agreement are eligible for participation in the first enrollment after they have been employed for an uninterrupted period of one (1) year during which they have worked at least 1000 hours.

### 14.7   Unemployment Insurance

Unemployment insurance is a coordinated federal/state program designed to provide economic security during temporary periods of unemployment for eligible individuals. Jobless benefits of this program are derived from payroll tax entirely paid for by the Employer and based on the employee's earnings.

## ARTICLE 15 - COMPENSATION

### 15.1   Annual Increase

Effective July 1, 2006, all existing wage scales shall be increased by 6% across the board. Effective July 1, 2007, all wage scales shall be increased by an additional 5% across the board.

### 15.2   Appointment - Wages

New entrants into the bargaining unit may be hired above the entry-level step on an exception basis and with the Employer's prior approval. Promotion to a classification with a higher pay scale shall be to the lowest pay step which results in an increase in pay.

### 15.3   Overtime

A.   **Field Employees** - The Employer has established shifts of twenty four (24), twelve (12), ten (10), and nine (9) hours in a number of variations as described in Appendix A. Daily overtime shall not be applicable to any of these shifts or other shifts that may be established by the Employer in excess of eight (8) hours. However, weekly overtime, for hours worked over forty (40) hours in a work week, shall be paid at the rate of time and one half (1.5) the average weekly hourly rate in accordance with federal law.

B.   **Clerical, Dispatch, and Support Employees** - Except as otherwise indicated, full-time employees will have a forty (40) hour work week, based on a five (5) day week of eight (8) hours per day. Daily overtime, for hours worked over eight (8) hours in a work day, shall be paid at the rate of time and one half (1.5) the average weekly hourly rate in accordance with federal law.

The Employer and the Union may mutually agree to implement a ten- (10) hour   shift for any or all employees under such conditions as are mutually acceptable.

Overtime hours worked on ten (10) hour shifts shall be paid as follows:

1.   Up to ten (10) hours in a day - straight time.



BARTON00557

2.    Ten (10) to fourteen (14) hours in a day - time and one half.
3.    Over fourteen (14) hours a day - double time.

Overtime will be paid according to State law except as otherwise provided in this Agreement.
Overtime pay will only be paid for hours worked.

## 15.4    Filling Open Shift(s)

Except in cases of extreme emergency, when the Employer determines a shift is open, such shift
shall first be offered to part-time employees in seniority order who are not scheduled to work, or
have not worked, or as a result of this offer will not work over forty hours in the week of the
open shift. If the shift remains open after exhausting such part-time employee list, full-time
employees shall be offered the open shift in seniority order. If the shift remains open after
exhausting such full-time employee list, it shall be offered to part-time employees who have
worked, are scheduled to work, or as a result of this offer, will work over forty (40) hours. If the
shift remains open after exhausting that list it shall be offered to those employees on the "out of
department" list. If the shift cannot be filled from that list, the least senior full-time employee
who has not been called back within the last thirty (30) days, or in the event all full-time
employees have been called back within that period, the least senior full-time employee who has
been called back during such thirty (30) day period must work the open shift.

Overtime as described above may be offered in person, by individual phone call, or by an
alpha/numeric "all page". If offered by alpha/numeric page, employees shall be allowed 30
minutes to respond. Then the overtime shall be awarded to the respondents in the order
described above.

A mandatory assignment of overtime may not occur more than 48 hours in advance of the need
for such overtime. The sole exception to the 48 hours prior mandation limit shall be a natural
disaster such as, but not limited to, earthquake or fire.

An Employee who works a mandatory assignment of overtime shall be paid an additional one
(1x) times his/her pay in addition to such employee's applicable rate of pay. Mandatory
overtime for purposes of the additional overtime premium above shall not include holdover or
completion of a call.

If the procedure described in this section results in a "hold-over", an employee will not be
required to hold-over for more than two and one half (2 1/2) hours without such employee's
agreement in accordance with Section 10.10 above.

## 15.5    Holdover Pay

Should an employee be required to hold over, the employee shall receive one half (.5) time
additional compensation as a premium for all hours held over. Overtime will not be calculated
on the premium amount.

F 160

BARTON00558

### 15.6    Acting Supervisor Differential

Employees who, at the request of the Employer, serve as an Acting Supervisor will receive one dollar ($1.00) per hour in addition to their current rate of pay for each hour they serve in this capacity.

### 15.7    Bilingual Differential

The Employer shall be solely responsible for determining the need for employees who speak a second language and how many such employees are required. When the Employer has made that determination, the specific language(s) needed will be posted and non-probationary full-time employees who believe they are eligible may apply in writing to the Director of Human Resources. Employees determined to be eligible by the Employer will be given a proficiency examination chosen by the Employer.

A bilingual premium will only be paid in a county where the most recent census indicated a language is spoken by at least 20% of the population in that county. The Employer reserves the right to discontinue the bilingual premium in any county where the most recent census indicates a designated language usage has fallen below 20% of that county's population.

In any dispatch center which covers a qualifying area, the non-probationary full-time dispatchers currently employed in this center, will be eligible to test for the premium.

The proficiency examination may be given on a periodic basis according to a schedule determined by the Employer. Employees receiving this premium may be required, at the Employer's discretion, to be re-tested annually to continue to receive the premium.

The amount of the differential shall be seventy dollars ($70) per month for a regular full time employee, except in counties where a higher premium is currently paid.

### 15.8    In Lieu of Benefits Differential

In those locations listed in Article 1.1 of this Agreement where an in-lieu differential exists, such local practice shall continue.

Non-probationary part-time employees who are regularly scheduled for twenty (20) or more hours per week will be permitted to purchase medical benefits through payroll deduction only. Any such part-time employee, who fails to work enough hours during the month to pay the premium for their purchased benefits, shall lose benefits and will not be eligible for re-enrollment. The premium amount to be paid by the eligible employee shall be 100% of the Employer's cost for such benefit.

### 15.9    Field Training Officer (FTO) Differential

Employees who meet the FTO job description qualifications and are selected by the Employer to be FTOs will be paid an additional fifty (.50) cents per hour for all hours worked while on duty

BARTON00559

for as long as the Employer determines a need exists for such employee's services as an FTO. Such employee FTOs when used to perform classroom instruction while off duty will be paid a premium of three dollars ($3.00) per hour for each hour performing such classroom instruction. This three dollar ($3.00) premium will not be used to calculate overtime pay.

15.10   Communications Center Instructor Differential

Communication Center Instructors will be paid a differential of sixty cents ($.60) per hour for all normally scheduled hours worked.  Communication Center Instructors will be governed by Fremont Communication Center Guideline #1007.  The Employer agrees to confer with the Union through the Communication Center Labor/Management Committee prior to making any changes to this guideline or any other guideline which governs Communication Center Instructors.

15.11   Preceptor Pay

Preceptors are defined as those individuals meeting Title 22 (et al) requirements for monitoring and evaluating a paramedic student during the internship phase of paramedic training.

Employees who are selected as preceptor(s) by the Employer will be reimbursed at the rate of $600 per student for each internship.  An internship is minimally 480 hours in length, and in the event of a required extension of the student, will not exceed 720 hours.

This reimbursement will be paid upon the conclusion of the internship and upon submission by the preceptor to payroll of the required "Preceptor Reimbursement Request" form which must be signed by the designated Internship Coordinator, evidencing that the internship is complete, and that the preceptor is entitled to the requested reimbursement.

Normally, the Employer will assign one intern to one preceptor for the duration of the internship. Should the preceptor be unable to complete the assignment for any reason, a partial reimbursement based on a pro rata reimbursement for the % of internship completed may be requested.  A pro rata reimbursement would also be available to the preceptor assigned to complete the assignment if such completion is necessary.  Such requests shall be submitted on the same reimbursement form named above and requires the signature of the designated Internship Coordinator.

Notwithstanding this section 15.11, the Stanislaus County operation shall continue their Preceptor Pay program in accordance with their local practice.

15.12   Scholarships

AMR will provide a minimum of seven (7) paramedic scholarships per year, to applicable full-time EMT's, to a sponsored NCTI Training program.  Scholarships in addition to the seven- (7) minimum will be awarded at the discretion of the Employer.  The following items will be provided:

BARTONI00560

- Tuition, textbooks and other materials that may be required,
- Internship,
- EMT's may continue to work full-time,
- Full-time employees when they are in the scholarship programs will retain their full-time status, if they work 48 hours in a given pay period,
- Scholarships will be awarded based on seniority.  Definition of seniority will be in accordance with the provisions of article 11.1 of the core agreement.  Any disputes regarding seniority under this section will be resolved by the core labor management committee and will not be subject to the grievance procedure contained in article 6 of this agreement,
- Must have successfully completed probation to qualify.

### 15.13   Full-time EMTs with Paramedic Certification

EMTs who hold a valid paramedic certification may perform as an EMT-P without loss of a full-time benefited EMT position under the following guidelines:

Full-time EMTs who hold a paramedic certificate shall be allowed to have their name placed on the part-time paramedic list providing they have met the local county contract and operational requirements to work as a Paramedic in that location.  Such employees will be utilized for the filling of temporary open paramedic shifts in order following full-time paramedics pursuant to Section 15.4.  Any and all hours worked as an EMT-P will be paid at the applicable EMT-P rate.

All time on the part-time paramedic list shall accrue seniority pursuant to section 11.1 (paragraph 3) but such seniority may not be combined with or added to seniority concurrently earned as a full-time EMT.

### 15.14   Operational/Wage Parity Discussions

The Employer agrees to engage in discussions with NEMSA (facilitated jointly by Tim Talbot and Dave Banelli, using the mutual gains discussion techniques employed in San Mateo) to address wage parity and on going operational issues.  With respect to wage parity, the purpose and intent is to develop solutions to any wage disparity that may exist within the Northern California unit.  With respect to operational issues, the purpose and intent is to develop solutions to identified operational issues and implement agreed upon solutions.  The parties agree that the initial meeting to identify issues and set a quarterly meeting schedule shall be conducted before January 1, 2007.

### ARTICLE 16 UNIFORMS

### 16.1   Uniforms

All full-time and part-time field employees shall wear the uniform provided by the Employer while on duty.  Wearing uniforms while not on duty or while performing non-Employer related business is prohibited.

EXHIBIT F PAGE 163

Uniforms shall be provided in commercially available sizes with sleeve and pant length adjusted. No unauthorized buttons, patches, or pins may be worn on the uniform.

## 16.2    Replacement of Worn Uniform Components

With Employer approval, worn uniform components will be replaced at no charge upon return of the worn items to the Employer.

## 16.3    Uniforms Provided

The following uniform components will be provided as indicated:

    A.    Full-time field employees shall be provided with three (3) jumpsuits (Employee's choice of heavy or lightweight or two piece uniform).

    B.    Part-time field employees shall be provided with two (2) jumpsuits (Employee's choice of heavy or lightweight or two piece uniform).

    C.    All field employees shall be provided with the following additional uniform components:

        1.    One (1) jacket
        2.    Two (2) name tags
        3.    Rain gear (will provide reflective identification to go over the rain gear)
        4.    Leather gloves
        5.    County patch (if one exists) and company patch for each jacket and jumpsuit
        6.    Radio Holster

    D.    Notwithstanding the provisions contained in the first paragraph of this Section 16.3, optional uniforms, for employees who wish to wear a "summer" uniform, such uniforms may be worn between May 1 and October 31 of each year. Such "summer" uniform shall consist of an Employer approved polo type shirt which employees shall purchase at their own expense from an Employer authorized supplier and the pants from the two piece uniform authorized in sub-sections A and B above. As a condition of being granted the right to wear such optional uniform, the Union agrees that all crew members on a unit shall wear matching optional uniforms at the same time or the optional uniform may not be worn. The provisions of Section 16.2 above shall not apply to the optional polo type shirt, which shall be replaced when worn at the expense of the employee.

    E.    All full-time dispatch personnel in Burlingame, Sacramento, Modesto and Sonoma shall be provided with three (3) two (2) piece uniforms and one (1) sweatshirt or one (1) jacket. Part time dispatch personnel shall be provided with two (2) two (2) piece uniforms and one (1) sweatshirt or one (1) jacket. Dispatch

41

 EXHIBIT F PAGE 164

BARTON00561

BARTONI00562

employees shall be allowed one (1) "business casual" day per week. The day of the "business casual" will be determined by the Local Labor Management Committee.

F.    All full-time dispatch personnel in Monterey shall be provided with three (3) two (2) piece uniforms and one (1) jacket. All part-time dispatch personnel in Monterey shall be provided with two (2) two (2) piece uniforms and one (1) jacket. The current practice of Monterey dispatch employees wearing self-purchased polo shirts during night shifts shall continue. Monterey dispatch employees will not receive a uniform maintenance allowance due to laundry being provided by the Employer.

G.    The Local Labor Management Committee in each county covered by this Agreement shall meet within ninety (90) days of the ratification of this Agreement to determine the jacket best suited for the field employees of that county where satisfactory jackets don't already exist. If no agreement can be reached at the Local Labor Management Committee level, the issue shall be resolved at the Core Labor Management Committee. The issue of appropriate jackets shall not be subject to the grievance procedure contained in Article six of this Agreement.

### 16.4   Uniform Maintenance Allowance

The Employer agrees to provide a cleaning/launder allowance of twelve ($12) dollars per pay period for full-time employees to ensure that uniforms consistently present a positive, professional image. Beginning in the second year of the contract and each year thereafter, the Employer will adjust this allowance by the average amount of the twelve (12) months beginning May 1, and ending April 30, of the Bureau of Labor Statistics – CPI-U, San Francisco Bay Area.

At the sole discretion of the Employer, the Employer may establish a process for the cleaning/laundering of employee's uniforms. If such a process is established, the cleaning/laundering allowance will be discontinued.

### 16.5   Return of Uniforms

It is agreed that all uniforms or equipment provided by the Employer must be returned by the employee upon termination or request of the Employer. As a condition of employment, all employees are required to sign a statement which authorizes the Employer to deduct from the employee's paycheck an amount equal to the replacement cost of any unreturned uniforms, equipment, identification cards, and/or insignia which was purchased or provided by the Employer.

### 16.6   Employee Appearance

The Union and Employer agree that the Employer has the right to establish and maintain standards concerning personal grooming and appearance and the wearing of uniforms and accessories.

**ARTICLE 17 - NO STRIKE/NO LOCK-OUT**

**17.1** - Neither the Union, its agents nor any of its members will collectively, concertedly, or in any manner whatsoever, engage in, incite, or participate in any picketing, strike, sit-down, stay-in, slowdown, boycott, work stoppage, paper strike (the deliberate failure to submit timely, quality, accurate, and complete medical reports and billing information), or sympathy strike against the Employer during the term of this Agreement; and the Employer agrees that during the term of this Agreement, it shall not lock out any of the employees covered by this Agreement. It is further understood that the duly authorized representatives of the Union shall use their best effort on behalf of the Union to actively encourage the employee(s) engaging in a violation of this Section to cease such conduct.

Employees found to have violated the terms of this Article shall be subject to discipline up to and including discharge. Employees shall have the right to grieve discipline or discharge under this Article to the extent they claim not to have engaged in a violation of this Article.

The Employer and the Union recognize that the duties performed by employees involve life and death situations. Failure to immediately transport patients to hospitals and other designated medical facilities, and respond from hospitals and other medical facilities to patients, can result in compounding the problems of already ill and injured patients. Yet, it is also recognized that bargaining unit employees have a need to communicate with other Union employees who are engaged in job actions.

To meet both of these needs, the Employer and the Union agree that:

    1.    Under no conditions shall employees delay the transport of any patient because of a picket line or any other such job action.

    2.    Under no circumstances shall employees delay a response to a request for service due to any Union job action. Employees are expressly prohibited from delaying the response to any request for service or the provision of any care and/or transport as required.

    3.    Employees may, after crossing picket lines to deliver patients, following such patient delivery, return to the picket line and explain to picket captains or other picketers why the picket line was crossed. Employees shall at all times remain available for dispatch by the Employer's Communication Center, and immediately respond to patients or standby post locations as requested.

EXHIBIT _F_ PAGE _166_

BARTONI00564

## ARTICLE 18 - NO DISCRIMINATION/HARASSMENT

### 18.1    No Discrimination

Neither the Union or the Employer shall discriminate in any way against any employee on account of race, color, creed, religion, veteran status, national origin, sex, age, sexual orientation, marital status, HIV status, or Union or political activity. Neither the Employer nor the Union shall discriminate against any employee on the basis of physical handicap or disability to the extent prohibited by applicable law.

### 18.2    Sexual Harassment

The Union and the Employer agree that sexual harassment is a form of misconduct, which undermines the integrity of the employment relationship and cannot be tolerated in the workplace. Any conduct, whether committed by employees or Supervisory personnel, which falls within the definition of sexual harassment as defined in the Equal Employment Opportunity Commission and California Department of Fair Employment and Housing standards is prohibited and will be investigated fully in accordance with the Sexual Harassment policy and procedure. Any employee found to have engaged in sexual harassment will be subject to discipline up to and including immediate termination

## ARTICLE 19 - COMMITTEE(S)

### 19.1    Labor/Management Committee (LMC)

The Employer and the Union shall establish a Labor/Management Committee covering all AMR units represented by NEMSA, which shall be comprised of Employer the three Regional Vice-Presidents or their designees representing the Employer and two representatives each for EMT's, Paramedics and Communications Personnel appointed by the Union with rotation of Chairmanship. The AMR Vice-President for Administration and the NEMSA EMS Director shall staff the committee and jointly prepare the agenda. The function of the LMC shall be to discuss work-related matters of mutual interest and/or concern, for the purpose of establishing safe working conditions and procedures, efficiency of operations, quality patient care, and harmonious working relationships between the employees, the Employer, and the Union.

The LMC shall meet monthly and shall be run according to the Chair's agenda. The LMC shall not have the power to change the provisions of the Labor Agreement between the parties, to negotiate new agreements, or to resolve grievances.

### 19.2    Health and Safety Committee

A Health and Safety Committee shall be formed in each operational area to allow individual employees to request further information on safety issues as well as to allow ongoing review of Safety-related concerns.

EXHIBIT F PAGE 167

BARTONI00565

Each committee shall consist of two (2) management personnel and two (2) bargaining unit employees. The union members shall be appointed by the Union membership. Any employee and management personnel may attend the meetings as non-voting members. Each union member appointed to the Health and Safety Committee by the Union will serve a term of six (6) months and may be re-appointed with no limit on the number of terms. Union committee members will be paid as time worked for time spent in committee meetings up to a maximum of four (4) hours per month.

19.3    Role of the Health and Safety Committee

The committee will be responsible for an on-going review of health and safety issues, including ergonomic issues, as well as investigating safety concerns referred to them by an employee or by the Employer. This includes the following and other items only as they relate to health, safety and ergonomics.

    A. Worker's Compensation claims (only to determine what steps the employee and/or company can take in the future to reduce the likelihood of recurrence).
    B. Accidents (only to determine what steps the employee and/or company can take in the future to reduce the likelihood of recurrence)
    C. Review of possible new equipment or protective devices
    D. Equipment currently used in the performance of duties
    E. Any request for an additional piece of equipment that could be used in the performance of duties
    F. Job related procedures
    G. Review of safety and ergonomic related training needs
    H. Any perceived safety issue that may affect the employees or the general public
    I. Protocol for field testing equipment and procedures
    J. Facility security issues.

This committee shall be empowered to make recommendations to management. A consensus or majority vote of the entire four- (4) member committee will be "the results of the committee" (a minimum of three (3) of the four- (4) votes is required.)

The initiator of the investigation shall be allowed to address the committee at a reasonable hour and place, of the committee's choosing. Committee members may invite the participation of other individuals for the purpose of contributing to the process

This committee shall meet no less frequently than every other month unless a majority vote by the committee extends the meeting schedule.

19.4    Health and Safety Committee Recommendation(s)

Recommendations will be handled in accordance with the following procedure:

Step One: The Health and Safety Committee Chairperson will present the recommendation, in writing, to the Employer Representative or his/her designee. The Employer Representative shall



BARTON100566

respond to the recommendation, in writing, within a reasonable period of time, not to exceed thirty (30) days, to both the committee and the initiator of the request. If the Employer Representative elects not to follow the recommendation of the committee, the reason(s) must be included in this response.

Step Two: If the matter is not resolved to the satisfaction of the committee in Step One, the Chairperson will present the recommendation, in writing, to the Vice President, Field Operations. The Vice President, Field Operations, shall respond to the recommendation, in writing, within a reasonable period of time, not to exceed thirty (30) days, to both the committee and the initiator of the request. If the Vice President, Field Operations elects not to follow the recommendation of the committee, the reason(s) must be included in this response.

Safety issues addressed in this Section 19.4 shall not be subject to any part of the grievance procedure contained in Article 6 of this Agreement.

## 19.5    Affirmative Action Board

All American Medical Response counties or operational areas represented by NEMSA shall be the basis for the establishment of an Affirmative Action Board covering all such counties or operational areas. Such Affirmative Action Board shall be composed of three- (3) management and three (3) Union Representatives. This board shall be convened as needed to deal with affirmative action issues from the units so represented.

Union Representative board members will be paid at the straight time rate for time spent in board meetings up to a maximum of four (4) hours per quarter. These hours will not be counted as time worked and will not be used in the calculation of overtime. Any board member may call for a meeting, however the board shall meet no more often than once per quarter.

## 19.6    System Status Committee

The Employer agrees to establish a System Status Committee in each applicable county operation.

The Employer shall convene the committee to discuss proposed system status changes prior to implementation, (unless emergency conditions apply as provided in Section 10.5 of this Agreement), and to plan for future system requirements. The recommendations of the committee shall be of an advisory nature only. The committee shall include two (2) field personnel from the operation affected who shall be selected by the employees of such county operation. County Operation employees who are members of the System Status Committee shall suffer no loss of pay for attendance at System Status Committee meetings held during their shift.

## 19.7    Local Labor/Management Committee (LLMC)

Each county or operational area shall have the right to establish a local labor management committee which shall be made up of two (2) bargaining unit employees selected by the Union and two (2) members of management. The purpose of the labor/management committee shall be



BARTON00567

to discuss work related matters of mutual interest and/or concerns and to promote harmonious working relationships between the employees, the Union and the Employer. The committee shall meet no more often than monthly unless the parties jointly agree on the need for meeting more frequently. The committee shall not have the power to change the provisions of the Labor Agreement between the parties, to negotiate new agreements, or resolve grievances without concurrence from the Union and the Employer. Bargaining unit employees who serve on the committee shall suffer no loss of pay for attendance at Local Labor/Management Committee meetings held during their shift.

### 19.8    Committee Participation

Time spent as a representative for the Union in the committees listed below, shall be compensated up to a minimum of two (2) hours and a maximum of four (4) hours at straight time pay, not counted towards hours worked for overtime, per month per committee. Where possible committee meetings shall be scheduled during or immediately adjacent to the committee members regular shifts. The following committees are applicable:

> Health and Safety Committee
> System Status Committee
> Local Labor Management Committee

### 19.9    State EMS Commission/Authority

Any employee appointed to the State of California EMS Commission or to any committee established by the State of California EMS Commission or the State of California EMS Authority shall be granted leave without pay for all such service.

## ARTICLE 20 - CONTRACT BARGAINING UNDERSTANDINGS

### 20.1    Separability

This Agreement shall be subject to all present and future applicable Federal and State laws, or Executive Orders of the President of the United States and other appropriate rules and regulations of bona fide governmental authority. Should any provision(s) become unlawful by virtue of the above, or by declaration of any court of competent jurisdiction, such action shall not invalidate the remainder of the Agreement. Any provision(s) which become unlawful by virtue of the above, or by declaration of any court of competent jurisdiction, shall cause the parties to meet and negotiate replacement provisions that are valid. Any provision(s) of this Agreement not declared invalid shall remain in full force and effect for the life of this Agreement.

### 20.2    Amendments

Any changes or amendments to the Agreement shall be in writing and duly executed by the parties thereto.

EXHIBIT _F_ PAGE _170_

BARTON00568

**20.3    Waiver**

It is agreed that during the negotiations leading to the execution of this Agreement, the parties have had full opportunity to submit all items appropriate to collective bargaining; that the parties expressly waive the right to submit any additional item for negotiations during the term of this Agreement, whether or not such item is referred to or covered in this Agreement, or whether the item was or was not discussed during the course of negotiations leading to the execution of this Agreement; and that this Agreement incorporates the full and complete understanding, superseding and invalidating all previous commitments of any kind, oral or written, and past practices.

Nothing contained herein shall prevent the parties, by mutual agreement from negotiating on any subject matter. Nor will it void any specific provisions in this Agreement that expressly provide for bargaining.

## ARTICLE 21 - CRITICAL INCIDENT STRESS DEBRIEFING

**21.1    Stress Counseling**

The Employer will continue to provide Critical Incident Stress management. Time spent on AMR Critical Incident Stress Management Team duties will be paid as time worked. At the Employer's discretion, employees may be required to attend debriefing sessions.

## ARTICLE 22 - SUBSTANCE ABUSE TESTING

**Section 22.1 -** The Union and the Employer agree that it is important to maintain a drug, alcohol and substance abuse free work environment for the safety of employees and patients.

In order to discourage the use of non-prescribed controlled substances and alcohol in the workplace, the Union and the Employer agree that employees shall be tested for the presence of drug and alcohol if there is probable cause based on a reasonable suspicion that the employee has drugs and/or alcohol in his/her system.

Probable cause shall exist when specific behavioral performance or contemporaneous physical indicators of being under the influence of drugs or alcohol are demonstrated on the job as documented by the Employer. Probable cause will not exist, and thus is not a basis for testing, if a reasonable suspicion is based solely on the observation and verbal reports of third parties. A member of management shall evaluate the appropriateness of such third party observations and/or verbal reports and shall through investigation determine whether the employee(s) involved shall be tested for probable cause. The basis for the Employer finding probable cause shall be documented on an Incident Report Form.

**Section 22.2 -** Any system of random or periodic drug testing shall be prohibited, unless it is in accordance with a rehabilitation program, contractual obligation (subject to the contractual testing obligation set forth below) or is legally required.


EXHIBIT _F_ PAGE _171_

BARTON00569

**Section 22.3 – Contractual Testing Obligations**

The Employer agrees to meet and negotiate with the Union over the implementation of any system of random or periodic testing specifically required by a contracting agency or law at least ninety (90) days prior to the required implementation date. Such negotiations shall include the specific requirements of the program, the process for implementing the program and the impact of the program on affected employees.

## ARTICLE 23 - MISCELLANEOUS

### 23.1    Employer Required Protective Clothing and Equipment

The Employer shall furnish employees with any special items of protective clothing or equipment which the Employer requires to be used or worn by the employees while on duty such as pagers and portable communications equipment, and to be returned to the Employer upon termination.

### 23.2    Liability Insurance

The Employer shall maintain liability insurance which covers employees covered by this Agreement when they are performing their normal duties. The terms of the policy govern and are not subject to arbitration.

### 23.3    Outside Employment

Work requirements, including Employer (AMR) overtime, scheduled and/or non-scheduled, will have precedence over any outside employment. No employee shall be allowed to work for another provider of EMT-1 or Paramedic service, whether public or private, if that employment would place the employee in a conflict of interest as determined by the Employer (AMR), or on duty more than thirty-six (36) hours in succession, without a minimum break of eight (8) consecutive hours. Employees who are unable to maintain a high standard of work performance or are unable to report to duty as required by the Employer (AMR) as a result of outside employment will be subject to appropriate disciplinary action up to and including termination.

The Employer (AMR) will not pay any benefits for injuries or illness resulting from outside employment.

### 23.4    Work Stations

Work stations and units shall be kept clean and sanitary by the employees assigned to work in/and on such stations and units, and shall be maintained in accordance with all state, federal and local laws and/or ordinances by the Employer.

49

EXHIBIT F PAGE 172

BARTON100570

**23.5    Workplace Conduct**

The Employer and the Union agree that employees, managers, and supervisors will treat each other, regardless of position or profession, with dignity, courtesy, trust and respect. The foregoing principles shall also apply in providing services to patients and visitors. Disputes over the interpretation or application of this Section shall not be subject to the arbitration provision contained in the grievance procedure located elsewhere in this Agreement.

**23.6    Incident Reports**

Employees shall submit company incident reports to the Employer within twenty-four (24) hours following the request for the report. In unusual circumstances, as determined by the Employer, the Employer may require submission of an incident report earlier than twenty-four (24) hours.

**23.7    Replacement of Personal Items**

There shall be no replacement of personal items damaged in the performance of the employee's duties, except at the sole discretion of the Employer, but in no event shall the Employer pay over fifty dollars ($50.00) for any replacement.

The only exception to this shall be for prescription eyeglasses which are damaged in the course of an emergency response or providing patient care. Upon presentation of verification of damage and receipt for replacement, the Employer may reimburse the employee the full cost of replacement of the same lenses and/or frame or repair to same.

**23.8    Subcontracting**

A.    During the term of this Agreement, the Employer will not subcontract work exclusively for the purpose of displacing union employees.

B.    The Employer will not subcontract transportation services with the exception of any contracts that require a network of providers or as mandated by local government contract.

C.    In the event the Employer determines the need to enter into contracts that require a network of providers or to propose subcontracting or a transfer of union work to a fire department or other EMS provider as part of a bid for a local government contract, the union will be given advance written notification and will be given the opportunity to meet with the Employer to determine the effect such action may have on employees or whether the contract in question does require a network of providers or the subcontracting/transfer of union work.

If the parties cannot agree on the effect of such action on employees or the appropriateness of the contract/bid, the provisions of the grievance procedure contained in Article 6 of this Agreement shall apply.



BARTONI00571

dhstanding, should the Union claim that the
ring excessive union work and failing to staff
ɟ meet with the Union to discuss the issue. The issues
ving questions: (1) whether an increase to unit hours
nse to the excess call volume being subcontracted or
ɟible to staff units to handle the additional call volume. If
ers to these questions, the provisions of the grievance
ɟ of this Agreement shall apply.

not apply to any crossover, mutual aid, or automatic aid
hall require the Employer to alter, modify, or withdraw from a

**23.9          Files**

An employee shall h̲_   .e right to review his/her personnel file upon written request to
management. An appointment will be scheduled on a timely basis in the county in which the
requesting employee works. The review will take place in front of management personnel. The
employee may have a Union representative present. The employee may request a photocopy of
documents in his/her file at no cost to the employee. Confidential information or any
information pertaining to an on-going investigation is not subject for the employee's review.
The Employer shall provide an opportunity for the employee to respond in writing to any
information in the employee's personnel file about which he/she disagree. Such response shall
become a permanent part of the employee's personnel record. The employee shall be
responsible for providing the written response to be included as part of the employee's
permanent personnel record.

**23.10   Fatigue Policy**

It is the responsibility of the employee to arrive at work well rested, properly dressed and ready
to work the assigned shift.

A field employee who feels that he/she is no longer able to perform the basic job responsibilities
due to fatigue must immediately notify their co-worker(s) and the appropriate Communications
Dispatch Center. The unit shall be immediately placed out of service and the on-duty Field
Operations Supervisor shall be notified. The Field Operations Supervisor or designee will
promptly begin the process of finding replacement staff in an effort to return the unit to service.

Notification of fatigue must be made prior to receipt of a call. It is not appropriate for the
fatigued employee to wait and receive another call assignment and then advise that he/she is
unable to respond due to fatigue.

In order to ensure that fatigued employee(s) have had the opportunity to obtain sufficient rest
prior to leaving their workstation for the day, or returning to service, employee(s) invoking this
fatigue policy will continue on the Company's payroll and remain in their assigned station for
four (4) hours before being returned to service, or for three hours after going out of service

BARTON00572

before going home, whichever is appropriate. At the completion of this time, the employee shall page, or have Dispatch page, the on-duty Field Operations Supervisor and advise him/her that the employee is rested. The employee may not leave the station until the supervisor has cleared the employee, even if it is past the employee's off-duty time. This procedure has been established to ensure the employee's safety and will be adhered to without exception.

Prior to leaving their station, the employee shall complete an Information Report regarding the occurrence of fatigue and forward it to the on-duty Field Operations Supervisor. This report shall contain the following information:

1. The time the employee reported for duty.
2. The time the unit was placed out of service.
3. The number of calls completed during the shift.
4. The estimated number of hours spent in the ambulance during the shift.
5. The estimated number of hours of sleep obtained during the shift.
6. Identification of factors contribution to the employee's fatigue including outside employment.

A review shall occur for all incidents of fatigue. If an employee's claim of fatigue is determined to be reasonable, no further action will take place other than tracking and monitoring. If it is determined that the employee's claim of fatigue was not reasonable, measures may be taken to help prevent future occurrences. These measures may include, but are not limited to, the transfer of the employee to a different shift with different hours, or restriction from working overtime.

Reports of fatigue will be monitored by individual employee as well as by unit. If there are recurrent fatigue issues with a specific unit, the Director of Operations shall first examine the possibility of modifying deployment policies. These modifications may include changes in back-up procedures or call rotation in an effort to minimize the potential for future occurrences of fatigue. Should changes in deployment procedures fail to yield the desired results, the Director of Operations may alter the affected unit's schedule to rectify the problem.

Company policy and common-sense all dictate that if an employee is too ill or too fatigued to work safely, it is that person's obligation to place his/her unit out of service. It is not the intent of this policy, nor should this policy be construed as pressuring or limiting any field employee's obligation to monitor him/her self and maintain a safe work environment. Continuing to work when unsafe could open the employee to unnecessary legal liability and would be violation of AMR Codes of Safe Practice.

## 23.11  Job Sharing

Job sharing consists of two (2) employees who combine to make up full-time hours. They will work shift and unit assignments that are predetermined by the Employer. These employees will be classified as "job share" employees, but will remain on the full-time seniority list. Job share employees will accrue seniority at the same rate as full-time employees.

This opportunity is only available to current, non-probationary full-time employees who choose this option voluntarily. Full-time employees who have volunteered for job share positions will be paired together into shifts designated for job share by the Employer.

The Employer and the Union have agreed that any program of job sharing shall not result in increased cost to the Employer. As job sharing is an elective scheduling arrangement, it must remain cost-neutral. With this in mind, the following guidelines for the job share program shall apply:

1. Job share employees will "share" a full-time shift according to terms agreed to by job share "partners" and management (i.e. 50/50 or 75/25). These arrangements, once established, may not be altered without the agreement of both "partners" and management.

2. Job share employees may split shifts by each working half of a scheduled shift (i.e. 12 hours of a 24-hour shift).

3. Job share employees will be responsible for determining their work schedules (which "partner" will work on which days) according to the arrangements referred to in item 1., above, and must notify the scheduling department of any proposed change agreement at least fourteen (14) days in advance of such change.

4. Job share employees will be paid at the appropriate wage step in accordance with the wage schedule for full-time employees in current collective bargaining agreement.

5. Job share employees will be eligible to receive and must decide which employee receives either health and welfare benefits or PTO benefits provided in Article 14.1, 14.2 and 14.4 of the Core Agreement under the same conditions as regular, non-job share full-time employees. Job share employees may agree that one employee will waive benefits and the other job share employee will receive full health coverage including dependent coverage by presenting that agreement in writing to the Human Resources Department. Employees can only change their election of health and welfare or PTO at open enrollment time, as long as they are considered a full-time regular employee. If the job share assignment ends and the employee changes status to part-time, they will qualify for the same benefits as all other regular part-time employees.

6. Job share employees who are already enrolled and participating in the 401(k) plan on the effective date of a specific job share may continue their participation.

   However, any job share employees who are not so enrolled on the effective date of their specific job share must meet all eligibility requirements to enroll during an open enrollment while in such job share arrangement.

7. If the job share employee chooses to accrue PTO, it will accrue under the same conditions as regular, non-job share full-time employee.

EXHIBIT F PAGE 176

BARTON00573

BARTONI00574

8. If at any time, either of the "partners" in a job share position elect to leave the job share arrangement, that movement will be subject to the availability of a vacant position to move to full-time or part-time. In the event such a move is made, or one of the job share "partners" terminates employment, the remaining job share "partner" must work the entire full-time schedule until another job share "partner" volunteers or the opening is filled by posting. The open job share position will be posted for seven (7) days; however, the Employer will not be responsible for locating another job share "partner". If, after posting the vacant job share position for seven (7) days, a job share "partner" does not volunteer or bid, the job share shift will be converted to a regular full-time position.

9. The shifts and units available for job sharing will be determined by the Employer.

10. In the event of a shift bid the senior job share employee of a two person job share group will bid for the shift designated for a job share by the Employer and if that bid is successful in line with seniority the job share "partner" will go to the same shift as the more senior employee who was the successful bidder regardless of the less senior "partner's" seniority.

**23.12    Facsimile Facilities**

Within 90 days of ratification of this contract, AMR will provide facsimile machines in all crew quarters, workstations and deployment centers.

**ARTICLE 24 - DURATION**

**24.1    Term**

This Agreement shall remain in full force and effect from the date of final execution by the parties, except as otherwise specifically provided herein, through and including June 30, 2008 and shall continue in full force and effect from year to year thereafter, unless notice of desire to amend or terminate the Agreement is served in writing by either party upon the other at least ninety (90) but no more than one hundred and twenty (120) days prior to the date of expiration.

BARTONI00575

**FOR THE EMPLOYER:**          **AMERICAN MEDICAL RESPONSE**


David Banelli
National VP Labor Relations


Louis K. Meyer
CEO Western States

**FOR THE UNION:**          **NATIONAL EMS ASSOCIATION (NEMSA)**


Torren Colcord
President


Tim Talbot, Esq.
Chief Negotiator


Aaron Pelican
Labor Relations Representative


Eric Stephens
Labor Relations Representative


Jeff Misner
Labor Relations Representative


Dary Sardad
Labor Relations Representative

ALCO

Steve Lucy

Michelle Ross

BAY DISPATCH

Michael Johnson


_____


LIFECOM/MODESTO DISPATCH

Mark Maritzen

Misty Johnson

F PAGE 178

BARTONI00576

CONTRA COSTA

Kathy Ivy _____

_____

SANTA CLARA

Chris Duncan _____

Christopher "Che" King _____

SAN BENITO

Joe Carmack _____

Dave Graff _____

SHASTA

James Garner _____

Mike Heim _____

SACRAMENTO/PLACER/YOLO

Jamie Weeks _____

Lynda Case _____

SAN JOAQUIN

Steve Riley _____

Juan Gualardo _____

STANISLAUS

Paul Angelo _____

Rod Brouhard _____

TULARE

Brett Catchings _____

_____

EXHIBIT f PAGE 179

BARTONI00577

SONOMA

Mike Heynigger _____

Kevin Smith _____

MARIN

Robert Paoli _____

Kemp Hair _____

SAN FRANCISCO

Mary Roan _____

_____

SANTA CRUZ

Pete Kushner _____

Megan McNamara _____

SAN MATEO BLS

Ian Lee _____

Crystal Pasion _____

BAY CCT

Scott Lemmon _____

Michelle Ross _____

VALLEY CCT

Walt Saxton _____

_____

EXHIBIT _F_ PAGE _180_

BARTON100578

**Appendix A – Wages**

**Bay area EMT**
(Alameda, Contra Costa, Santa Clara, San Mateo,CCT)

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-8yrs | Step 7 8-10yrs | Step 8 10-11yrs | Step 9 11-12yrs |
|---|---|---|---|---|---|---|---|---|---|
| 24/72 | $10.74 | $11.33 | $11.86 | $12.91 | $13.52 | $14.06 | $14.50 | $14.91 | $15.38 |
| 24/56 | $10.74 | $11.33 | $11.86 | $12.91 | $13.52 | $14.06 | $14.50 | $14.91 | $15.38 |
| 24/48 | | | | | | | | | |
| 12/48 | $14.54 | $15.18 | $15.92 | $17.18 | $17.87 | $18.53 | $19.09 | $19.66 | $20.25 |
| 12/42 | $14.54 | $15.18 | $15.92 | $17.18 | $17.87 | $18.53 | $19.09 | $19.66 | $20.25 |
| 12/42 Midnight | $19.58 | $20.45 | $21.45 | $23.16 | $24.06 | $24.93 | $25.69 | $26.47 | $27.26 |
| 10/50 | $13.75 | $14.35 | $15.08 | $16.26 | $16.88 | $17.54 | $18.06 | $18.59 | $19.16 |
| 9/45 | $15.92 | $16.63 | $17.43 | $18.83 | $19.54 | $20.30 | $20.88 | $21.52 | $22.15 |
| ***9.5/47.5 | $14.73 | $15.40 | $16.17 | $17.46 | $18.13 | $18.79 | $19.37 | $19.95 | $20.55 |
| 8/40 | $14.95 | $15.60 | $16.33 | $17.56 | $18.37 | $19.25 | $19.80 | $20.39 | $21.00 |

*** (San Mateo BLS only)

F    181

BARTONI00579

**Bay Area Driver Wage Scale**
Alameda / Contra Costa / Santa Clara

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs |
|---|---|---|---|---|
| 9/45 | $11.66 | $12.02 | $12.36 | $12.73 |

F 182

59

BARTONI00580

Alameda, Contra Costa, Santa Clara, San Mateo Clerical support wage scale

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| Shift Type | Step 1<br>0-1yr | Step 2<br>1-2yrs | Step 3<br>2-3yrs | Step 4<br>3-4yrs | Step 5<br>4-5yrs | Step 6<br>5-8yrs | Step 7<br>8-10yrs | Step 8<br>10-11yrs |
|---|---|---|---|---|---|---|---|---|
| Clerk 1<br>8/40 | $19.22 | $20.14 | $20.72 | $21.67 | $22.84 | $23.95 | $24.48 | |
| Clerk 2<br>8/40 | $15.29 | $16.23 | $16.82 | $17.76 | $18.37 | | | |
| Stocker<br>prior to 1993<br>12/42 | $19.22 | $20.90 | $22.10 | $23.26 | $24.44 | $25.60 | $26.36 | |
| After 93<br>12/42 | $16.72 | $17.24 | $17.74 | $18.26 | $18.82 | $19.37 | $19.96 | |
| Washer / Curior<br>prior to 93<br>12/42 | $15.75 | $16.66 | $17.61 | $18.53 | $19.44 | $20.02 | | |
| after 93<br>12/42 | $13.99 | $14.39 | $14.86 | $15.29 | $15.76 | $16.23 | $16.70 | |

60



BARTON00581

**Burlingame Dispatch Wage Scale**

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-5yrs | Step 5 5-7yrs | Step 6 7-10 yrs | Step 7 10-11yrs | Step 8 11+yrs |
|---|---|---|---|---|---|---|---|---|
| 12/42 | $19.03 | $19.75 | $20.66 | $22.68 | $26.20 | $27.53 | $28.34 | $29.19 |
| 10/40 | $20.95 | $21.72 | $22.72 | $24.97 | $28.83 | $30.29 | $31.20 | $32.13 |
| 8/40 | $20.95 | $21.72 | $22.72 | $24.97 | $28.83 | $30.29 | $31.20 | $32.13 |

F 184

BARTON00582

**Santa Clara Paramedic Wage Scale**

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-8yrs | Step 7 8-10yrs | Step 8 10-11yrs |
|---|---|---|---|---|---|---|---|---|
| 24/72 | | | | | | | | |
| 24/56 | $16.02 | $16.79 | $17.68 | $18.57 | $19.55 | $20.51 | $21.49 | $22.45 |
| 24/48 | | | | | | | | |
| 12/48 | $19.78 | $20.75 | $21.83 | $22.92 | $24.14 | $25.33 | $26.55 | $27.77 |
| 12/42 | $23.37 | $24.52 | $25.81 | $27.07 | $28.54 | $29.98 | $31.38 | $32.81 |
| 12/42 Midnight | $23.37 | $24.52 | $25.81 | $27.07 | $28.54 | $29.98 | $31.38 | $32.81 |
| 10/50 | | | | | | | | |
| 9/45 | $20.10 | $21.04 | $22.16 | $23.26 | $24.49 | $25.71 | $26.93 | $28.12 |
| 8/40 | | | | | | | | |
| CCTP | | | | | | | | |
| 12/48 | $25.72 | $26.98 | $28.38 | $29.80 | $31.38 | $32.93 | $34.52 | $36.10 |
| 12/42 | $30.39 | $31.87 | $33.56 | $35.19 | $37.10 | $38.97 | $40.79 | $42.65 |

F 185

BARTON100583

**Alameda / Contra Costa Paramedic Wage Scale**

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-9yrs | Step 10 10+Yrs |
|---|---|---|---|---|---|---|---|---|---|---|
| 24/72 | | | | | | | | | | |
| 24/56 | $16.02 | $16.92 | $17.55 | $18.15 | $19.02 | $19.65 | $20.79 | $21.40 | $22.00 | $22.66 |
| 24/48 | | | | | | | | | | |
| 12/48 | $19.78 | $21.03 | $21.73 | $22.45 | $23.16 | $23.87 | $24.57 | $25.26 | $26.07 | $26.73 |
| 12/42 | $19.78 | $21.03 | $21.73 | $22.45 | $23.16 | $23.87 | $24.57 | $25.26 | $26.07 | $26.73 |
| 12/42 Midnight | $25.72 | $27.33 | $28.26 | $29.19 | $30.09 | $31.04 | $31.95 | $32.84 | $33.73 | $34.74 |
| 10/50 | $19.78 | $21.03 | $21.73 | $22.45 | $23.16 | $23.87 | $24.57 | $25.26 | $26.07 | $26.73 |
| 9/45 | $21.67 | $23.00 | $23.79 | $24.55 | $25.33 | $26.12 | $26.90 | $27.64 | $28.43 | $29.28 |
| 8/40 | | | | | | | | | | |
| | | | | | | | | | | |
| CCTP | | | | | | | | | | |
| 12/48 | $25.72 | $27.33 | $28.26 | $29.19 | $30.09 | $31.04 | $31.95 | $32.84 | $33.73 | $34.74 |



BARTONI00584

**Sacramento / Yolo / Placer EMT Wage Scale**

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-8yrs | Step 7 8-10yrs | Step 8 10-11yrs | Step 9 11-12yrs | Step 10 12+yrs |
|---|---|---|---|---|---|---|---|---|---|---|
| 24/72 | | | | | | | | | | |
| 24/56 | $11.35 | $11.81 | $12.48 | $12.85 | $13.23 | $13.70 | $14.11 | $14.54 | $14.97 | $15.42 |
| 24/48 | | | | | | | | | | |
| 12/48 | $14.31 | $14.92 | $15.53 | $16.02 | $16.47 | $16.99 | $17.51 | $18.04 | $18.57 | $19.12 |
| 12/42 | | | | | | | | | | |
| 12/42 Midnight | | | | | | | | | | |
| 10/50 | $13.21 | $13.78 | $14.50 | $14.91 | $15.42 | $15.87 | $16.36 | $16.85 | $17.35 | $17.87 |
| 9/45 | | | | | | | | | | |



64

BARTONI00585

**Sacramento / Yolo / Placer Paramedic Wage Scale**

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-8yrs | Step 7 8-10yrs | Step 8 10-11yrs | Step 9 11-12yrs | Step 10 12+yrs |
|---|---|---|---|---|---|---|---|---|---|---|
| 24/72 | | | | | | | | | | |
| 24/56 | $15.09 | $15.80 | $16.65 | $17.11 | $17.47 | $17.88 | $18.51 | $18.79 | $19.26 | $19.84 |
| 24/48 | | | | | | | | | | |
| 12/48 | $18.84 | $19.74 | $20.56 | $21.14 | $21.67 | $22.05 | $22.64 | $23.15 | $23.83 | $24.54 |
| 12/42 | | | | | | | | | | |
| 12/42 Midnight | | | | | | | | | | |
| 10/50 | $17.27 | $17.94 | $18.96 | $19.46 | $19.91 | $20.72 | $20.99 | $21.28 | $21.95 | $22.59 |
| 9/45 | | | | | | | | | | |

65

188

BARTONI00586

**Stanislaus County Paramedic Wage Scale**

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-9yrs | Step 10 9-10yrs | Step 11 10-11yrs | Step 12 11-12yrs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 24/72 | | | | | | | | | | | | |
| 24/56 | $13.77 | $14.18 | $14.61 | $15.04 | $15.50 | $15.96 | $16.43 | $16.92 | $17.45 | $17.96 | $18.49 | $19.06 |
| 24/48 | | | | | | | | | | | | |
| 12/48 | $17.84 | $18.38 | $18.94 | $19.50 | $20.08 | $20.69 | $21.31 | $21.95 | $22.61 | $23.30 | $23.99 | $24.71 |
| 12/42 | $20.80 | $21.42 | $22.08 | $22.74 | $23.42 | $24.13 | $24.83 | $25.58 | $26.35 | $27.16 | $27.96 | $28.81 |
| 12/42 Midnight | | | | | | | | | | | | |
| 10/50 | $14.53 | $14.98 | $15.42 | $15.89 | $16.37 | $16.85 | $17.35 | $17.88 | $18.41 | $18.96 | $19.51 | $20.12 |
| 9/45 | | | | | | | | | | | | |

F    189

BARTONI00587

**Stanislaus County EMT Wage Scale**

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-9yrs |
|---|---|---|---|---|---|---|---|---|---|
| 24/72 | | | | | | | | | |
| 24/56 | $10.98 | $11.32 | $11.65 | $12.01 | $12.36 | $12.74 | $13.14 | $13.53 | $13.94 |
| 24/48 | | | | | | | | | |
| 12/48 | $14.16 | $14.58 | $15.03 | $15.49 | $15.93 | $16.40 | $16.89 | $17.39 | $17.89 |
| 12/42 | $16.12 | $16.60 | $17.10 | $17.63 | $18.14 | $18.70 | $19.26 | $19.84 | $20.42 |
| 12/42 Midnight | | | | | | | | | |
| 10/50 | $13.65 | $14.07 | $14.49 | $14.95 | $15.40 | $15.87 | $16.35 | $16.84 | $17.36 |
| 9/45 | | | | | | | | | |

F 190

BARTON00588

Stanislaus  VST Wage Scale

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| 12 Hour Shift | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4+yrs |
|---|---|---|---|---|---|
| | $9.05 | $9.33 | $9.59 | $9.88 | $10.17 |

68

BARTONI00589

Sonoma EMT Wage Scale

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| Shift Type | Step 1 0-1yr | Step 2 1-3yrs | Step 3 3-5yrs | Step 4 5-7yrs | Step 5 7-10yrs | Step 6 10+ yrs |
|---|---|---|---|---|---|---|
| 24/72 | | | | | | |
| 24/56 | $11.58 | $12.65 | $13.36 | $14.33 | $17.11 | $17.62 |
| 24/48 | | | | | | |
| 12/48 | $14.26 | $15.55 | $16.44 | $17.65 | $21.05 | $21.71 |
| 12/42 | $16.83 | $18.39 | $19.44 | $20.85 | $24.90 | $25.64 |
| 12/42 Midnight | | | | | | |
| 10/50 | $13.47 | $14.69 | $15.54 | $16.68 | $19.91 | $20.52 |
| 9/45 | $15.59 | $17.04 | $17.99 | $19.31 | $23.06 | $23.75 |
| 8/40 | $18.53 | $20.20 | $21.39 | $22.94 | $27.38 | $28.20 |

F 192

BARTON00590

Sonoma Paramedic Wage Scale

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| Shift Type | Step 1<br>0-1yr | Step 2<br>1-3yrs | Step 3<br>3-5yrs | Step 4<br>5-7yrs | Step 5<br>7-10yrs | Step 6<br>10+ yrs |
|---|---|---|---|---|---|---|
| 24/72 | | | | | | |
| 24/56 | $15.15 | $15.71 | $16.58 | $18.36 | $21.39 | $22.03 |
| 24/48 | | | | | | |
| 12/48 | $18.65 | $17.18 | $20.39 | $22.60 | $26.31 | $27.09 |
| 12/42 | $22.04 | $22.83 | $24.10 | $26.70 | $31.09 | $32.02 |
| 12/42 Midnight | | | | | | |
| 10/50 | $17.62 | $18.25 | $19.29 | $21.34 | $24.88 | $25.62 |
| 9/45 | $20.39 | $21.16 | $22.33 | $24.73 | $28.79 | $29.68 |
| 8/40 | | | | | | |

_F_ 193

BARTONi00591

Sonoma Dispatch Wage Scale

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-9yrs | Step 10 9-10yrs | Step 11 10+yrs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/42 | $18.53 | $19.08 | $19.64 | $20.24 | $20.85 | $21.47 | $22.10 | $22.77 | $23.47 | $24.17 | $24.88 |

Sonoma Redcom Dispatch Wage Scale

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| Shift Type | Step 1 < 6mo | Step 2 6m-1 yr | Step 3 1-3 yrs | Step 4 3-5 yrs | Step 5 5-7 yrs | Step 6 > 7 yrs |
|---|---|---|---|---|---|---|
| 12/42 | $22.66 | $23.34 | $25.52 | $27.18 | $28.94 | $30.82 |
| ***24/56 | $15.58 | $16.05 | $17.55 | $18.69 | $19.89 | $21.19 |

*** added 2/19/06 for backup supervisor

F 194

San Joaquin (Stockton Only) EMT Wage Scale

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-10yrs |
|---|---|---|---|---|---|---|---|---|---|
| 24/72 | | | | | | | | | |
| 24/56 | $8.91 | $9.36 | $9.82 | $10.30 | $10.81 | $11.36 | $11.93 | $12.53 | $12.91 |
| 24/48 | | | | | | | | | |
| 12/48 | $10.96 | $11.52 | $12.06 | $12.69 | $13.33 | $13.99 | $14.68 | $15.43 | $15.89 |
| 12/42 | $12.95 | $13.66 | $14.28 | $14.97 | $15.75 | $16.51 | $17.37 | $18.23 | $18.79 |
| 12/42 Midnight | | | | | | | | | |
| 10/50 | $10.36 | $10.91 | $11.42 | $12.00 | $12.59 | $13.21 | $13.89 | $14.59 | $15.01 |
| 9/45 | $12.00 | $12.59 | $13.21 | $13.88 | $14.60 | $15.31 | $16.08 | $16.89 | $17.38 |
| 8/40 | $14.26 | $14.96 | $15.71 | $16.47 | $17.32 | $18.18 | $19.10 | $20.07 | $20.66 |

BARTON00592

BARTONI00593

San Joaquin (Stockton Only) Paramedic Wage Scale

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-10yrs | Step 10 10+Yrs |
|---|---|---|---|---|---|---|---|---|---|---|
| 24/72 | | | | | | | | | | |
| 24/56 | $14.03 | $14.61 | $15.18 | $15.79 | $16.43 | $17.09 | $17.77 | $18.48 | $19.22 | $19.79 |
| 24/48 | | | | | | | | | | |
| 12/48 | $17.29 | $17.98 | $18.69 | $19.45 | $20.22 | $21.03 | $21.87 | $22.73 | $23.66 | $24.37 |
| 12/42 | $20.43 | $21.25 | $22.09 | $22.97 | $23.90 | $24.85 | $25.84 | $26.89 | $27.95 | $28.79 |
| 12/42 Midnight | | | | | | | | | | |
| 10/50 | $16.33 | $17.00 | $17.67 | $18.38 | $19.11 | $19.89 | $20.66 | $21.49 | $22.36 | $23.02 |
| 9/45 | $18.92 | $19.67 | $20.46 | $21.27 | $22.12 | $23.00 | $23.92 | $24.88 | $25.87 | $26.67 |
| 8/40 | $22.45 | $23.38 | $24.31 | $25.28 | $26.29 | $27.34 | $28.43 | $29.55 | $30.74 | $31.68 |

**CCT-P Medics (30% above base rate)**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-10yrs | Step 10 10+Yrs |
|---|---|---|---|---|---|---|---|---|---|---|
| 24/56 | $18.24 | $18.98 | $19.74 | $20.53 | $21.36 | $22.22 | $23.10 | $24.02 | $24.98 | $25.73 |
| 12/48 | $22.47 | $23.37 | $24.30 | $25.29 | $26.29 | $27.34 | $28.43 | $29.54 | $30.76 | $31.68 |
| 12/42 | $26.55 | $27.63 | $28.72 | $29.86 | $31.08 | $32.30 | $33.59 | $34.96 | $36.35 | $37.43 |

F  196

BARTON/00594

San Joaquin VST Wage Scale

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4+yrs |
|---|---|---|---|---|---|
| | $10.78 | $11.10 | $11.42 | $11.76 | $12.11 |

74

BARTONI00595

Tulare EMT Wage Scale

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7 yrs | Step 8 7+ yrs |
|---|---|---|---|---|---|---|---|---|
| 24/72 | $8.71 | $8.94 | $9.17 | $9.38 | $9.62 | $9.91 | $10.21 | $10.52 |
| 24/60 | $10.95 | $11.24 | $11.53 | $11.79 | $12.09 | $12.46 | $12.84 | $13.23 |

75    F 198

BARTONI00596

**Tulare EMT II Wage Scale**

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1<br>0-1yr | Step 2<br>1-2yrs | Step 3<br>2-3yrs | Step 4<br>3-4yrs | Step 5<br>4-5yrs | Step 6<br>5-6yrs | Step 7<br>6-9yrs | Step 8<br>9-10yrs | Step 9<br>10-11yrs | Step 10<br>11-12 yrs | Step 11<br>12+ yrs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 24/72 | $9.35 | $9.57 | $9.81 | $10.03 | $10.27 | $10.53 | $10.79 | $11.06 | $11.38 | $11.73 | $12.08 |
| 24/60 | $11.75 | $12.03 | $12.33 | $12.61 | $12.91 | $13.24 | $13.56 | $13.90 | $14.31 | $14.75 | $15.19 |

EXHIBIT _F_ PAGE 199

BARTONI00597

**Tulare Paramedic Wage Scale**

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-9yrs | Step 8 9-10yrs | Step 9 10-11yrs | Step 10 11-12 yrs | Step 11 12+ yrs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 24/72 | $10.10 | $10.32 | $10.58 | $10.83 | $11.10 | $11.36 | $11.65 | $11.94 | $12.31 | $12.67 | $13.05 |
| 24/60 | $12.70 | $12.97 | $13.30 | $13.61 | $13.95 | $14.28 | $14.65 | $15.01 | $15.48 | $15.93 | $16.41 |



BARTONI00598

**Marin EMT Wage Scale**

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-10yrs | Step 10 10+Yrs |
|---|---|---|---|---|---|---|---|---|---|---|
| 24/72 | | | | | | | | | | |
| 24/56 | $10.71 | $11.02 | $11.35 | $11.69 | $12.04 | $12.41 | $12.77 | $13.15 | $13.55 | $13.97 |
| 24/48 | | | | | | | | | | |
| 12/48 | $13.19 | $13.57 | $13.98 | $14.39 | $14.84 | $15.26 | $15.74 | $16.21 | $16.70 | $17.19 |
| 12/42 | $15.93 | $16.41 | $16.89 | $17.38 | $17.92 | $18.45 | $19.00 | $19.56 | $20.13 | $20.74 |
| 12/42 Midnight | | | | | | | | | | |
| 10/50 | $12.48 | $12.85 | $13.23 | $13.62 | $14.03 | $14.49 | $14.88 | $15.32 | $15.78 | $16.27 |
| 9/45 | $14.44 | $14.86 | $15.29 | $15.76 | $16.23 | $16.73 | $17.24 | $17.74 | $18.27 | $18.83 |
| 8/40 | $17.12 | $17.65 | $18.19 | $18.73 | $19.29 | $19.88 | $20.47 | $21.10 | $21.72 | $22.36 |

F   201

BARTONI00599

**Marin Paramedic Wage Scale**

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-10yrs | Step 10 10+Yrs |
|---|---|---|---|---|---|---|---|---|---|---|
| 24/72 | | | | | | | | | | |
| 24/56 | $13.33 | $13.74 | $14.14 | $14.58 | $15.00 | $15.47 | $15.92 | $16.38 | $16.89 | $17.38 |
| 24/48 | | | | | | | | | | |
| 12/48 | $16.42 | $16.93 | $17.42 | $17.95 | $18.51 | $19.04 | $19.60 | $20.19 | $20.79 | $21.22 |
| 12/42 | $19.84 | $20.46 | $21.07 | $21.72 | $22.32 | $23.00 | $23.74 | $24.44 | $25.14 | $25.92 |
| 12/42 Midnight | | | | | | | | | | |
| 10/50 | $15.51 | $15.98 | $16.46 | $16.96 | $17.45 | $17.98 | $18.53 | $19.08 | $19.65 | $20.20 |
| 9/45 | | | | | | | | | | |

79

EXHIBIT *F* PAGE 202

BARTON000600

San Francisco EMT Wage Scale

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-10yrs | Step 10 10+yrs |
|---|---|---|---|---|---|---|---|---|---|---|
| All Shifts | $15.85 | $16.58 | $17.32 | $18.63 | $19.49 | $20.39 | $21.01 | $21.63 | $22.28 | $22.95 |

80

*F* 203

San Francisco Paramedic Wage Scale

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-10yrs | Step 10 10+Yrs |
|---|---|---|---|---|---|---|---|---|---|---|
| All Shifts | $19.83 | $20.94 | $21.80 | $22.68 | $23.36 | $23.83 | $24.28 | $24.75 | $25.20 | $26.04 |

BARTON/00601

EXHIBIT F PAGE 204

BARTON00602

Santa Curz Paramedic Wage Scale

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-10yrs | Step 10 10+Yrs |
|---|---|---|---|---|---|---|---|---|---|---|
| 24/72 | | | | | | | | | | |
| 24/56 | $15.05 | $15.79 | $16.59 | $17.46 | $18.31 | $18.31 | $19.22 | $20.13 | $21.03 | $22.09 |
| 24/48 | | | | | | | | | | |
| 12/48 | $18.53 | $19.44 | $20.42 | $21.44 | $22.50 | $22.50 | $23.63 | $24.75 | $25.86 | $27.16 |
| 12/42 | | | | | | | | | | |
| 12/42 Midnight | | | | | | | | | | |
| 10/50 | | | | | | | | | | |
| 9/45 | $18.78 | $19.73 | $20.71 | $21.75 | $22.84 | $22.84 | $23.97 | $25.12 | $26.26 | $27.57 |
| 8/40 | | | | | | | | | | |

EXHIBIT F PAGE 205

BARTONI00603

**Monterey EMT Wage Scale**

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-10yrs | Step 10 9-10Yrs | Step 11 10+ yrs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 24/72 | | | | | | | | | | | |
| 24/56 | $10.53 | $10.84 | $11.17 | $11.50 | $11.85 | $12.20 | $12.57 | $12.95 | $13.33 | $13.74 | $14.15 |
| 24/48 | | | | | | | | | | | |
| 12/48 | | | | | | | | | | | |
| 12/42 | $15.33 | $15.78 | $16.26 | $16.75 | $17.25 | $17.77 | $18.31 | $18.85 | $19.42 | $20.00 | $20.60 |
| 12/42 Midnight | | | | | | | | | | | |
| 10/50 | | | | | | | | | | | |
| 9/45 | | | | | | | | | | | |
| 8/40 | $16.85 | $17.36 | $17.88 | $18.41 | $18.96 | $19.54 | $20.12 | $20.72 | $21.35 | $21.98 | $22.65 |

F   206

BARTONI00604

**Monterey Paramedic Wage Scale**

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-10yrs | Step 10 9-10Yrs | Step 11 10+ yrs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 24/72 | | | | | | | | | | | |
| 24/56 | $14.81 | $15.25 | $15.71 | $16.18 | $16.66 | $17.16 | $17.68 | $18.21 | $18.75 | $19.32 | $19.90 |
| 24/48 | | | | | | | | | | | |
| 12/48 | | | | | | | | | | | |
| 12/42 | $21.52 | $22.16 | $22.82 | $23.51 | $24.38 | $25.48 | $26.64 | $27.57 | $28.52 | $29.52 | $30.57 |
| 12/42 Midnight | | | | | | | | | | | |
| 10/50 | | | | | | | | | | | |
| 9/45 | | | | | | | | | | | |
| 8/40 | $23.66 | $24.37 | $25.10 | $25.85 | $26.82 | $28.04 | $29.30 | $30.32 | $31.39 | $32.48 | $33.60 |



BARTONI00605

**Monterey Dispatch Wage Scale**

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-10yrs | Step 10 9-10Yrs | Step 11 10+ yrs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/42 | $18.31 | $18.86 | $19.42 | $19.96 | $21.69 | $23.20 | $24.25 | $25.33 | $26.49 | $27.67 | $28.91 |

85

EXHIBIT F PAGE 208

BARTONI00606

**Shasta EMT Wage Scale**

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1<br>0-1yr | Step 2<br>1-2yrs | Step 3<br>2-3yrs | Step 4<br>3-4yrs | Step 5<br>4-5yrs | Step 6<br>5-6yrs | Step 7<br>6-7yrs | Step 8<br>7-8yrs | Step 9<br>8-9yrs | Step 10<br>9-10yrs | Step 11<br>10+yrs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 24/72 | | | | | | | | | | | |
| 24/56 | $10.44 | $10.76 | $11.07 | $11.40 | $11.74 | $12.08 | $12.46 | $12.84 | $13.21 | $13.60 | $14.01 |
| 24/48 | | | | | | | | | | | |
| 12/48 | $12.84 | $13.23 | $13.62 | $14.02 | $14.43 | $14.88 | $15.37 | $15.79 | $16.28 | $16.77 | $17.28 |
| 12/42 | $15.52 | $16.01 | $16.47 | $16.97 | $17.48 | $17.98 | $18.54 | $19.11 | $19.68 | $20.28 | $20.88 |
| 12/42 Midnight | | | | | | | | | | | |
| 10/50 | $12.15 | $12.51 | $12.90 | $13.25 | $13.66 | $14.07 | $14.52 | $14.94 | $15.40 | $15.87 | $16.33 |
| 9/45 | $14.05 | $14.51 | $14.91 | $15.38 | $15.82 | $16.30 | $16.78 | $17.30 | $17.83 | $18.37 | $18.92 |
| 8/40 | $16.71 | $17.19 | $17.70 | $18.23 | $18.79 | $19.32 | $19.73 | $20.54 | $21.16 | $21.78 | $22.43 |

86

BARTON000607

**Shasta Paramedic Wage Scale**

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-9yrs | Step 10 9+yrs |
|---|---|---|---|---|---|---|---|---|---|---|
| 24/72 | | | | | | | | | | |
| 24/56 | $13.50 | $13.93 | $14.31 | $14.73 | $15.18 | $15.61 | $16.09 | $17.64 | $17.08 | $17.59 |
| 24/48 | | | | | | | | | | |
| 12/48 | $16.61 | $17.11 | $17.62 | $18.16 | $18.68 | $19.24 | $19.81 | $20.41 | $21.02 | $21.67 |
| 12/42 | $20.09 | $20.68 | $21.28 | $21.97 | $22.61 | $23.25 | $23.97 | $24.68 | $25.41 | $26.17 |
| 12/42 Midnight | | | | | | | | | | |
| 10/50 | $15.72 | $16.18 | $16.65 | $17.16 | $17.66 | $18.18 | $18.72 | $19.29 | $19.88 | $20.47 |
| 9/45 | $18.18 | $18.73 | $19.28 | $19.86 | $20.45 | $21.07 | $21.69 | $22.33 | $22.99 | $23.69 |
| 8/40 | $21.59 | $22.26 | $22.90 | $23.59 | $24.31 | $25.02 | $25.75 | $26.53 | $27.33 | $28.15 |

BARTONI00608

Sacramento Dispatch Wage Scale

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-9yrs | Step 10 9-10yrs | Step 11 10-11yrs | Step 12 11+yrs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/42 | $13.89 | $15.27 | $15.75 | $16.23 | $16.72 | $17.25 | $17.76 | $18.27 | $18.83 | $19.40 | $19.99 | $20.59 |



BARTON00609

Lifecom

Fire Dispatcher

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-9yrs | Step 10 9-10yrs | Step 11 10-11yrs | Step 12 11+ yrs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/42 | $15.27 | $16.80 | $17.33 | $17.85 | $18.39 | $18.97 | $19.54 | $20.10 | $20.71 | $21.34 | $22.00 | $22.64 |

This wage scale was added on 4/18/2006
Wage scale to increase first pay period following July 1 as per CBA
Wage scale to increase by 4.5 % on the first pay period following January 1, 2007
Wage scale to increase by 4.0 % on the first pay period following January 1, 2008

EMS Call Taker / Non Fire Dispatcher

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-9yrs | Step 10 9-10yrs | Step 11 10-11yrs | Step 12 11+ yrs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/42 | $14.60 | $15.03 | $15.48 | $15.94 | $16.43 | $16.92 | $17.42 | $17.93 | $18.49 | $19.03 | $19.60 | $20.20 |

BARTONI00610

**San Bonito EMT Wage Scale**

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1<br>0-1yr | Step 2<br>1-2yrs | Step 3<br>2-3yrs | Step 4<br>3-4yrs | Step 5<br>4-5yrs | Step 6<br>5-6yrs |
|---|---|---|---|---|---|---|
| 24/56 | $8.66 | $8.91 | $9.18 | $9.46 | $9.74 | $10.04 |
| Special Events | $11.05 | $11.30 | $11.56 | $11.84 | $12.13 | $12.42 |

90

EXHIBIT _F_ PAGE 213

BARTONI00611

**San Bonito Paramedic Wage Scale**

**The following wage scales are effective at the beginning of the first pay period following July 1, 2006.**

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6yrs |
|---|---|---|---|---|---|---|
| 24/56 | $13.68 | $13.58 | $13.98 | $14.42 | $14.84 | $15.29 |
| Special Events | $15.59 | $15.96 | $16.37 | $16.80 | $17.23 | $17.67 |

BARTONI00612

Valley CCT RN

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6 yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-9yrs | Step 10 9-10yrs | Step 11 10+yrs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/42 | $31.32 | $32.29 | $32.94 | $33.94 | $34.98 | $36.04 | $37.12 | $38.24 | $39.38 | $40.56 | $41.77 |

92

BARTONI00613

**Bay CCT RN**

The following wage scales are effective at the beginning of the first pay period following July 1, 2006.

| Shift Type | Step 1 0-1yr | Step 2 1-2yrs | Step 3 2-3yrs | Step 4 3-4yrs | Step 5 4-5yrs | Step 6 5-6 yrs | Step 7 6-7yrs | Step 8 7-8yrs | Step 9 8-9yrs | Step 10 9+yrs |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/42 | $37.65 | $38.77 | $39.94 | $41.14 | $42.38 | $43.64 | $44.64 | $46.30 | $47.70 | $49.12 |

EXHIBIT _F_ PAGE 216

BARTONI00614

# SIDE LETTER OF AGREEMENT
## To The
## Master Agreement
## Between
## AMR and NEMSA
## (Final Document 1/30/02)

## DESCRIPTION OF DOCUMENT

Listed below are agreed upon exceptions, including local modifications, to the Master Agreement between AMR and NEMSA. Previously these exceptions were memorialized in local addenda, side letters of agreement, expired contracts or, in some cases, in existing practice recognized by both the Employer and the Union. The parties have made a careful and good faith effort to determine all such exceptions and, therefore, it will be presumed that the exceptions listed in this side letter represent a complete list of such exceptions. That presumption may only be rebutted by clear and compelling evidence.

The following list identifies the section of the Master Agreement which is modified by the exception, the locality where the exception exists, the class(es) of workers affected by the exception and, if the exception is limited to certain individuals, the names of affected individuals.

## Section 5.4    Company Rules

In **Sacramento Valley** and **Shasta** new company rules shall be issued with paychecks and posted in all crew quarters and stations to ensure awareness of all regulations and new rules.

In **Solano** a copy of Company rules will be given to each employee who will sign as acknowledgment of having received such rules and a copy of such rules will be posted in all stations.

## Section 5.6    Disciplinary Hearings

In **San Mateo** disciplinary hearings will be held within 14 calendar days of management's knowledge of the incident, or incidents that caused discipline to occur. The 14-calendar day limit may be extended by mutual agreement if the investigation of involved issues is not complete.

## Section 7.2    Probationary Employee Shift Assignment

In **Marin** two probationary employees will be allowed to work together with a sum total of 6 months or more of Marin County work experience.

In **Calaveras** this section shall not apply.

In **Monterey Dispatch**, Dispatch employees shall be allowed to bid for shifts determined by the Employer and such bidding shall be subject to the provisions of Article 7, Probationary Period, Section 7.2 of the Master Agreement. If there are concerns about the requirement of a sum total of one year of experience for employees to work together on a particular shift, the parties shall meet locally to determine whether an adjustment to such requirement needs to be made on a non-precedent basis.



BARTON100615

Employees working on the BLS cars in the **San Joaquin** Operations may be regularly scheduled to work together regardless if their work experience in the county does not equal one-year total between the 2 employees on the same unit. It is further understood that this agreement applies to the BLS cars only and any car with 2 employees on the same unit who have less than the sum total of one year experience in the County will not be allowed to operate in the 911 service unless they are the last unit available as outlined below.

Should either of the employees on the same unit and involved in this situation, feel uncomfortable and wish to transfer to a BLS car with a partner that will bring their sum total of county experience to at least one year, they will be allowed to do so.

Further, when AMR is transmitting their daily schedule to SFD Dispatch and AMR Modesto Dispatch, these BLS units must be identified and will not be pulled into the 911 system due to low status unless they are the very last available unit. The Union is aware that AMR cannot control the actions of SFD Dispatch; however it is the responsibility of AMR to identify these units to SFD Dispatch so they are aware of the situation.

## Section 8.3    Safety Equipment

In **Sonoma, Modesto, and Sacramento Communications** this section shall not apply.

In **Sacramento Valley and Solano** the Company's policy on boots will be revised to eliminate the reference to "Public Safety Boots" and the requirement for steel toed boots. The replacement language will refer to, "black, polishable boots".

In **Calaveras** safety helmets with face shields shall not be provided.

## Section 8.5    Crew Quarters

At **Burlingame Communications** the Employer shall maintain all communication center locations, including break rooms, according to standards provided in all relevant labor codes. The employer shall also ensure that all mechanical operations, equipment and furniture meets manufactures codes and receives recommended manufacture maintenance including preventative maintenance needs. It is understood that daily maintenance of the locations is a joint responsibility of the Employer and the employees. Specific recommendation and concerns should be addressed through the Health and safety Committee.

In **Sacramento Valley** crew quarters (other than quarters shared with fire departments) shall meet the following standards:

Kitchens shall contain microwaves, stoves with oven (where not prohibited by law hot plates and convection ovens shall be utilized), sink, family/commercial sized refrigerator, coffee maker, toaster, eating and cooking utensils, pots/pans, dinnerware, kitchen table with chairs and paper towel dispenser. All of the afore mentioned shall be of the appropriate size and quantities sufficient for the number of crew members assigned to each station.

Bathrooms shall provide a toilet; shower, sink and paper towel dispenser and towel hooks for each assigned full-time crewmember.



BARTONI00616

Living quarters shall provide couches or recliners of appropriate numbers for each crewmember, lamps and tables as needed, TV/VCR/expanded basic cable or, where cable is unavailable, satellite service, and a non-pay telephone.

Sleeping quarters shall provide beds with separate quarters or commercial privacy dividers upon request, night stands and lamps as needed, telephones for each bedroom, lockers for each employee of adequate size for spare uniforms and bedding.

All biohazardous materials containers and compressed air shall be stored outside of living quarters. Upright vacuum cleaners and necessary cleaning supplies shall be provided. Any station dues required of employees at assignment stations shall be the subject of discussions at the local labor/management committee.

Non-24 hour stations shall provide all of the above except sleeping quarters.

In **Stanislaus** each crew quarter shall be outfitted with safe and working kitchens, to include microwaves, regular refrigerator, heating/air conditioning systems, TV, VCR, sofa or recliners, beds, 6 lockers and a phone. Outside lighting of all crew quarters will be maintained.

Each crew change facility shall be outfitted with a safe and working shower, bathroom, microwave, regular refrigerator, heating/air conditioning systems, TV, sofa or recliners, lockers and a phone.

Each Post location shall be well lighted, accessible to sanitary washing facilities and bathrooms, excluding mutual aid posts.

The Company agrees to submit the issues of showers and male/female bathrooms as part of their capital expenditures budget and, unless or until such proposal is approved, the Company agrees to keep the supervisors quarters unlocked and available to on duty crews 24 hours a day.

In **Sonoma** each crew's quarters shall be outfitted with safe and working kitchens, to include microwaves, refrigerator/freezers, sinks and bathrooms, heating/air conditioning systems, TV, VCR, sofa, beds, lockers and a phone, which is not a pay phone.

The **Sonoma Communications Center** shall be outfitted with a microwave oven, refrigerator/freezer, heating/air conditioning system, TV, VCR, lockers for each employee, and a phone that is a non-recorded line, and is not a pay phone.

In **Marin** crew quarter equipment shall include microwave ovens, toaster, cooking utensils, working shower, lockers, mail boxes, stair chairs, TV, cable and VCR.

In the **Modesto** and **Sacramento Communications Centers** the Employer will provide one (1) telephone, located in the break room that will not be recorded for purposes of personal telephone calls to be made on breaks or lunch periods.

In **Calaveras** the Employer agrees to provide basic cable TV service to all stations during the term of this agreement.

In **Monterey** the employer will provide cleaning of carpets on an as needed basis as determined by the Employer.

EXHIBIT F PAGE 219

BARTON00617

The Employer shall maintain all stations according to standards and ordinances provided by Federal, State and local statutes. Crew lounges where 24-hour crews are assigned shall continue to include at a minimum; one color television not less than 13" diagonal, one VCR, one mattress, box springs and frame bed per 24 hour crew member, full size refrigerator, stove, one couch, one dining table/chairs, one living room chair, microwave, and one locker per regularly scheduled 24-hour crew member. The Employer retains the right to reasonably access the lockers. Replacement and/or repair of articles shall be made within a reasonable time after notification to the designated employer's representative.

Employees shall not remove any furnishings, furniture or other employer items from crew lounges and employees shall reasonably care, clean and maintain such items. Bottled water with a dispenser will be provided at all such locations. In addition, air conditioning will be provided in the stations located in the Salinas valley.

The Employer will provide two lockers (2) at the Main for each short hour car deployed from that location.

In **San Francisco** the Company agrees to submit the issue of parking to the local Labor-Management Committee for possible solution.

In the **Modesto Communications Center** the Employer and the Union agree that parking passes will continue to be issued as they have in the past.

If it becomes apparent that there are not enough parking passes for every employee, the Employer and the Union agree to meet in the Labor Management Committee to develop a program whereby employees may share passes. The Union and employees understand that there will not be an increase in the number of parking passes or parking spaces.

## ARTICLE 9 – EDUCATION AND TRAINING

The Company will attempt to offer Company mandated training locally to employees assigned to the **Marin Division**. This will be dependent on availability of a suitable site, as well as any other factors that may affect the Company's ability to provide such training locally.

Full-time **Solano** employees who are not offered employer provided training as provided in article 9.2A and 9.3A of the Master agreement within Solano, Sonoma Marin, Alameda or Contra Costa counties may secure such training from outside sources and such fees will be paid by the Employer.

### Section 9.4     Licensing/Qualifications

On a non-precedent setting basis, the following **Monterey** employees will not be disqualified as field employees as the sole result of being unable to secure a State of California Ambulance Driver's License: **Jason Orthmann, Carol Irwin.**

### Section 9.5     Communications Center Training

In the **Modesto, Sacramento and Sonoma communications centers** the Employer agrees to pay, on an annual basis, 12 hours, at a straight time rate, to all employees for continuing education to maintain their EMD certification. **Monterey** will provide the above to full-time employees only.

EXH *F* PG 220

BARTON00618

## Section 10.1   Work Schedules

**In Alameda and Contra Costa ALS and Alameda, Contra Costa, Santa Clara and San Mateo BLS** the Company agrees to 24 hours notice of cancellation of overtime except in the following instances:

A.   The employee requests and the Employer agrees.
B.   There is no partner for the employee on the day of the shift.
C.   Special hardship situations occur as agreed to by the Union.
D.   Another employee is returning to work from an industrial leave.
E.   The unit the employee is assigned is closed or canceled or removed from the schedule.
F.   The employee was notified in advance that the shift might be canceled or the shift slot is being held for another employee or prospective employee.

**In Alameda, Contra Costa, Santa Clara and San Mateo BLS and Alameda, Contra Costa, Santa Clara, and Santa Cruz ALS** the Company agrees to meet and confer on the issues of special event teams or crews for the purpose of determining such things as selection processes, repairs to personal equipment, etc.

**In Contra Costa and Santa Clara ALS** the Company is willing to review the feasibility of implementing 42-hour shifts. However, implementation of these shifts will be dependent on whether the demand will allow for this shift configuration to be deployed, that 42 hours flex personnel are paid at the 48 hour flex hourly rate of pay, and that any such adjustment remains cost neutral to the system as a whole. If additional 12/42 shifts are mandated by the Company, the Union reserves the right to bargain over wages for such shifts.

## Section 10.4   Maximum Consecutive Shifts

At the sole discretion of the Employer, **Monterey County** employees may work 72-hour shifts in locations designated by the Employer provided such 72-hour shifts are approved by the Monterey County EMS Agency.

## Section 10.5   System Status Management

**In Sacramento Valley** if the Employer significantly changes one or more unit's starting time, length or shift type, the Employer will meet with the Union to determine the need for a countywide shift bid.

Shift bids will be conducted as per local agreement. Such bids will occur as needed in June for a July implementation or December for a January implementation. The exception to this clause shall be in emergency circumstances such as a significant reduction or increase in the work force. A Union representative will be present at all shift bids.

**In Solano** the Employer shall have the right to make major status plan changes three (3) times annually or as operationally necessary due to emergency circumstances. Changes made due to emergency circumstances will be made after meeting and conferring with the Union. The dates for status plan changes are September 1, January 1 and May 1 of each year.

**In Sacramento Communications and Modesto Radio** the Employer will conduct a shift bid every six-(6) months. One bid in December to be effective in January. One bid in June to be effective in July. The bid in December will be an open bid; the bid in June will be for those positions that the employee is



BARTONI00619

qualified for. If an employee chooses to change counties in December, such employee must make prior arrangements with the Employer to be trained in that county.

In **Shasta** the Employer shall conduct one annual shift bid each December for implementation the following January.

In **Sonoma Communications** the Employer will conduct shift bids every 6 months. One bid in December to be implemented in January. On bid in June to be implemented in July.

In **Stanislaus** the Employer will only make major system changes in January and July except in emergencies.

## Section 10.8   Report in Pay

In **San Mateo** employees who have shown up for work but for whom no work is available have the option to call the scheduler and pick up the next available shift.

## Section 10.9   Meal Periods

In the **Modesto Radio Center** and **Sacramento Dispatch Center** meal periods and eating conditions will be in accordance with the Operational Guidelines developed in the Labor/Management Committee. Those OGLs provide the following:

OGL G-1-360A (effective 10/29/98) for **Modesto Radio Center** "The Employer will continue the practice of providing employees the opportunity to take breaks as operationally feasible. No employee will be denied a break for personnel reasons. It is requested that employees keep their breaks to a reasonable amount of time. Any changes and/or modifications to this operational guideline must first receive mutual agreement by both the management and the union representatives within the communication department labor/management committee.

"Dispatchers will be allowed to eat meals next to their consoles. They will utilize covered drink containers at all times, the small filing cabinets will be utilized to place meals on, and all meals will be placed on a service tray provided by the Employer. No liquid meals, such as soup, are allowed, unless the liquid is in a no spill container.
If for some reason there is a spill, it is the employee's responsibility to clean up the spill immediately, and to report it to management, so management can ensure it is completely cleaned and to ensure no equipment is damaged. It is expected that each employee will ensure his ho her work area is clean at all times, and when a tray is utilized that it is cleaned. It is further understood, that only one dispatcher will be allowed to go on a "smoke"/meal break at a time this does not include restroom use, however it does include leaving to get lunch for the Radio Center.

OGL G-1-360B (effective 10/29/98) for **Sacramento Dispatch Center**, "The Employer will continue the practice of providing employees the opportunity to take breaks as operationally feasible. No employee will be denied a break for personal reasons. It is requested that employees take into consideration the needs of other employees who are waiting to take their breaks and keep their breaks to a reasonable amount of time.

•    Monday through Friday between the hours of 0900 and 1800, 1 dispatcher and 1 call taker may go on a break at the same time (if call volume and staffing allows two employees may leave their post).

F _____ 222

BARTONI00620

The on duty supervisor has the ability to change the number of employees on breaks and the length of time. Between the hours of 1800 and 0900 1 person may go on break at a time.
- Dispatchers and Call Takers will be allowed to eat meals at their consoles. They will utilize covered drink containers at all times. No liquid meals, such as soup, are allowed unless the liquid is in a no spill container.
- If for some reason there is a spill, it is the employee's responsibility to clean up the spill immediately and report it to management so that management can ensure the spill is completely cleaned and there is no equipment damaged.
- It is expected employees will ensure their work area is clean at all times."

In **Burlingame Dispatch Center** the Employer will provide the opportunity to take breaks as operationally feasible. No employee will be denied a break for personal reasons or for meals. Employees are asked to take into consideration the needs of other employees who are waiting to take their breaks and to keep their breaks to a reasonable amount of time. All employees are required at a minimum to take at least a fifteen (15) minute break every four (4) hours. If an employee leaves the premises for either a break or code 7, they must punch out on the time keeping system when they leave and punch back in again upon their return. No more than two (2) employees will be on a break at any given time. Employees may be called back from their break or meal due to operational necessities.

## Section 10.10 Notification of Holdover

In **Solano** notification of holdover will be performed by the Employer as provided in Article 10.10 except that every reasonable effort will be made to notify the employee involved of the potential holdover as soon as management becomes aware of such possibility.

## Section 10.15 Shift Trades

In **Sacramento Valley** full-time employees on 24-hour units may give away or trade six-hour blocks of time.

**Stanislaus County** employees may trade partial shifts of three (3) hours or more as long as such trades of partial shifts meet all other provisions of article 10.14 5.

Shift trades may be made by **Monterey** employees for increments of eight (8) hours or more. Requests for shift trades of lesser amounts will be allowed with the approval of the Employer. Requests for shift trades shall be submitted b y 9:00 am on Monday, Wednesday, and Friday of each week only. Results of shift trade requests will be available by noon of the date submitted.

In **Sonoma and Marin**, subject to the limitation of section 11.2 of the Master Agreement, shift giveaways for full and part time employees are unlimited in increments of one hour or more.

## Section 11.1 Seniority Defined

In **Stanislaus** full-time and part-time employee's seniority is based upon their most recent date of hire. Full-time employee's time off accruals, benefits, shift bidding, layoff, and recall from layoff rights shall be based on their last date of hire as a full-time employee. Full-time employees reverting to part-time shall use their original date of hire for purposes of seniority. Seniority for employees who change job classifications shall remain unchanged for purposes of time off accruals, benefits, shift bidding, layoff and recall.

EXHIBIT F PAGE 223

BARTON00621

The Parties agree that the provision of seniority of the Doctor's side letter will continue for the following people: Darrell Albino, Arnold Blagg, Jaime Field, Kevin Silva and Wes Adams.

If the following **Sonoma EMTs** upgrade their classification to paramedic, they shall be placed at the appropriate wage scale correlating with their seniority. Also, they will be placed on the shift-bidding list according to their most recent date of hire in any classification. The employees are; Bill Spice, Louise Roche, Karin Grummell, Rob Luis, Adam Schipper and Wayne Welbusch.

Seniority for **Shasta** employees who change classification shall remain unchanged for purposes of time off accruals and benefit eligibility only. For purposes of wag step and shift bidding, an employee who changes classification shall be given credit for one-half of their service with AMR Shasta Division, up to a maximum of credit which places such employee in step two of the wage schedule. For purposes of layoff or recall, the employee's original seniority date, regardless of classification, shall apply. Employees who otherwise would be laid off may bump down to a lower classification, based on total seniority, if otherwise eligible, and if such employee has been classified and worked in the lower classification while employed by AMR Shasta Division. Such employees will retain their date of hire seniority in the lower classification. Employees classified and working in the lower classification can not bump up to the higher classification even if they have been classified and worked in a higher classification in the past.

In **Sacramento** for upgrades from full-time EMT to full-time paramedic, employees shall retain local seniority for all applications except wages and shift bidding. Wages and shift bidding shall be applied by the following scale:

| EMT-I Time | Paramedic Wage & Shift bidding Seniority |
|---|---|
| 0-1 Years | 0 Years (Start) |
| 1-2 Years | 1 Year |
| 2-5 Years | 2 Years |
| 5+ Years | 3 Years |

In **Tulare** a promoted EMT-1 shall keep his/her seniority for all purposes except wages.

## Section 11.5  Loss of Seniority

In **Marin and Sonoma** a part-time employee must work a minimum of two (2) shifts per calendar month in order to retain their employment with AMR unless no work is available. Such shifts must be worked as a field employee. Special assignment shifts such as Star Team, and relief supervisor shifts are not applicable. Part-time employees must choose their shifts when they contact the scheduling department and advise that department of their availability. The choosing of shifts by such part-time employees must be done a minimum of fifteen (15) days in advance of the shifts to be worked. The supervisor in charge of scheduling shall do the tracking of shifts.

In **Monterey** all employees must work a minimum of two (2) shifts/details per calendar month for the Employer in order to maintain employment. Failure to meet such minimums may result in termination of employment or modification of schedule. This requirement excludes PTO and approved leaves of absence.

In **Santa Cruz** supervisors whose job includes working as a regularly scheduled paramedic on the unit who return to a bargaining unit position in the field shall retain seniority accrued prior to becoming a supervisor, but shall not accrue seniority while employed as a supervisor. Notwithstanding the language

BARTON00622

contained in Sub-section 11.5.G of the Master Agreement, the 18 month limit to be out of the bargaining unit and still retain previously accrued seniority, shall be waived in Santa Cruz County.

## Section 11.8    Filling Vacant Positions

In **Sacramento Valley** positions declared vacant by the Employer will be posted in all Sacramento Valley Division locations and will be open to all qualified bargaining unit members, regardless of current county of employment. (e.g. Sacramento, Yolo or Placer).

Also, in **Sacramento Valley** open full time paramedic shifts shall be filled by those paramedics who are currently reduced to part-time status as a result of a layoff before being offered to any other employee(s). Thereafter, the applicable contract provisions shall apply.

In **Sacramento Valley** when two or more qualified employees of the Sacramento Valley Division, bid for a permanently vacant full-time paramedic position, the position will be awarded to the employee with the most seniority in the Sacramento Valley Operation and for purposes of this Agreement only, such seniority shall be calculated without regard to classification or status. Therefore, in this circumstance only, EMT and paramedic service will be combined and full-time and part-time service will be combined to determine length of continuous service in the Sacramento Valley Operations.

## Section 11.9    Work Schedules

Supervisors in **Sonoma Communications** may handle dispatch and take calls during the course of their regular shift. The Employer and the Union agree to meet in the Labor/Management Committee to discuss and provide an operating guideline for supervisors working the console.

## Section 11.10 Seniority for Scheduling

In the filling of temporary shift vacancies the employer may use employees from outside the county/work location where the vacancies occur, provided that:

- All eligible part-time and full time employees with the county/work location have been offered the hours/shifts pursuant to Sections 11.10 and 15.4 of the Master Agreement
- Said employees meet all qualifications for the position and are accredited in the County of the assignment, if so required.

Applicable employees wishing to be assigned to work in another county/work location should submit a request to the appropriate scheduler, operations manager, director, or department head. The Company will then put such employee in a work-pool to call once the employees in that county/work location have been offered to fill open shifts.

Employees wishing to certify in more than one county/work location will be responsible for all expenses relating to accreditation and licensing.

Pay will be equivalent with employee's current pay step.

Seniority among the work-pool is non-existent – first come – first served pursuant to a page, or by pre-assigned availability list.

EXHIBIT F PAGE 225

BARTON100623

Employees working shifts/hours in a second county/work location shall not accrue seniority in said county/work location nor shall they accrue any special or additional rights under the transfer provisions of Sections 11.13 through 11.22 of the Master Agreement.

In **Sacramento Valley** availability schedules must be turned in by the 10th of each month at 1700 hours and time stamped by a management representative. Late availability schedules may result in no pre-scheduled shifts for the employee who turned in the late schedule.

In **Solano** every reasonable effort will be made to fax changes in work schedules to stations on a weekly basis. Availability forms filled out by employees shall not be used to discipline an employee for refusing a shift that was not pre-scheduled from the availability form.

In **Monterey** availability forms shall be submitted to the Employer by the 5th of each month for the following month.

In **Stanislaus** part-time and full-time employees will complete an availability form indicating which days they are available to work. Such availability forms shall be filled out two weeks prior to the start of the month.

Any employee who twice refuses a shift for which he/she has indicated availability during the month shall be placed at the bottom of the seniority list of the following month. If management exhausts the availability list without filling the shift, they may then fill the shift on a first come, first served basis.

Employees who accept voluntary shifts are responsible for those shifts and may not drop them except where circumstances are beyond the control of the employee. Any employee who drops a shift will be dropped from the voluntary overtime list for thirty (30) days.

Open shifts resulting from an employee becoming ill or injured while on duty, may be filled at the discretion of management.

## Section 12.2    Paid Time off (PTO) Schedule

The Union and the Employer have agreed on the PTO schedules referred to in Paragraph A of Section 12.2 of the prior Core Contract and, in a separate document have identified the individual employees who are "Grand-parented" on those schedules, from the previous Core Contract. The word "Agreement" in article 12.2.A of the Master Contract refers to the prior Core Contract.

## Section 12.9    PTO Pay in Lieu of Time Off

**Solano** employees may exceed the 50% limit but in any case must retain at least forty (40) hours of accrued but unused PTO in their account in order to ensure a reserve for unplanned sick time. The remaining accrued but unused PTO hours may be used for approved time off or illness.

## Section 12.13 Additional Holidays and/or Pay

In **Alameda** and **Contra Costa** ALS full-time employees hired prior to 3/26/93 who do not work a holiday receive 1/3 of their regularly scheduled hours at straight time. For those who work a 10-hour shift, they receive 3.5 hours at straight time.

F PAGE 226

In **Monterey** employees who work on Christmas Day shall receive a premium of one (1) time pay for hours worked on such holiday instead of the one-half (.5) time premium.

In **Stanislaus** employees working the holiday receive their regular rate in addition to the holiday premium of 1.0. Each full-time employee not working the holiday shall receive 4 hours of holiday pay at his/her regular straight time hourly rate. For purposes of clarification, the Federal Monday Holiday Act shall apply.

In **Sonoma** full time employees receive regular straight time rate of pay based on normally scheduled hours. Part-time employees receive regular straight time pay for all hours work. Full time employees who do not work receive eight (8) hours of straight time pay. Part time employees who do not work receive no holiday pay.

In **Alameda, Contra Costa, Santa Clara and San Mateo BLS, Alameda and Contra Costa ALS, Alameda, Contra Costa, Santa Clara and San Mateo Clerical & Support, San Francisco, Solano and Shasta** Martin Luther King, Jr. Day shall be observed instead of Presidents Day.

In **Sonoma, Solano, and Sacramento Valley** Veterans Day shall be observed instead of the Day after Thanksgiving.

In **San Francisco** Part-time and Full-time employees get a premium equal to one half or their regular straight time rate for all hours worked on the recognized holidays. 6 full-time employees (Trudy Tang, Derrall Nuttall, Joe Sullivan, Mary Roan, Dan Armstrong and Shannon Stabile) who do not work the holiday receive 8 hours of holiday pay at their regular straight time pay rate. Part-time employees who do not work the holiday do not receive holiday pay. Holiday practices that were in effect prior to the effective date of this agreement shall continue during the life of this Agreement.

In **Marin** John Tillman is grandfathered as same as San Francisco above and **Marin** receives pay for President's Day instead of MLK Day.

In **Solano** full time paramedics and EMTs who do not work the holiday shall receive eight-(8) hours holiday pay at his/her regular twenty-four-(24) hour rate of pay.

In **Monterey** employees who work on Christmas Day shall receive a premium of one-(1) times their regular straight time rate for all hours worked.

Full time **Clerical and Support workers** in **Alameda, Contra Costa, Santa Clara, and San Mateo** who work the holiday will receive a minimum of 8 hours worked at a .5 premium. Full time employees who do not work the holiday receive their regular shift hours at straight time pay.

## Section 13.2   Family, Pregnancy and Medical

In **Santa Cruz** in the event that the spouse or significant other of an employee gives birth to a child, or the employee adopts or gains custody of a child, he/she shall be eligible for up to two (2) weeks of unpaid leave provided that the employee has requested the leave of absence at least sixty (60) calendar days in advance.

The Employer may require proof of relationship to the significant other and proof of birth or custody of the child prior to authorizing the leave of absence.

In order to probe relationship to his/her significant other, the employee must submit to the Director of Human Resources, a letter containing the names and signatures of both the employee and the significant other. This must have been done at least sixty (60) days prior to the date of birth or of gaining custody.



EXHIBIT *F* PAGE 227

BARTON00624

BARTON100625

This letter shall remain sealed until opened by the employer, with the employee's consent, or when the employee submits a request for parental leave of absence. An employee may have only one (1) significant other or spouse identified at any time.

### Section 13.3   Worker's Compensation Leave

In **Alameda, Contra Costa, Santa Clara, and San Mateo BLS and Alameda, Contra Costa and Santa Clara ALS** the company agrees to limit modified duty for employees who would otherwise be on industrial leave of absence to fifty (50) miles from the county of such employee's residence unless otherwise restricted by a physician or waived by the employee.

### Section 14.1   Insurance Benefits

In a separate document the Employer and the Union have agreed upon a list of those employees that have been "Grand-Parented" for the purposes of health insurance coverage.

In **Santa Clara ALS** the Company agrees to continue the current practice, for benefits and seniority of the current part-time 36 employees (Linda Mulgrew, Sean Pickel, and Bob Sipple), of the employee paying fifty percent (50%) of employee coverage with no dependent coverage.

## ARTICLE 15 COMPENSATION

The following employees have been red-circled at an hourly rate greater than the .top step or the applicable pay scale. Such employees shall be eligible for all Cost Of Living Adjustments (COLAs) during the term of this agreement. The red-Circled employees are: **Lori James, Rich Wenmen, Charles Deno and Mark Hartzel in Sacramento Dispatch and Michael Heim in Shasta.**

Prior to the execution of the Master Agreement the following employees were placed on a pay step which did not reflect their actual seniority with the Company. On the effective date of the Master Agreement said employees shall be placed on the appropriate pay step to reflect their actual seniority. The affected employees are: **Shirley Jackson, Betty Vannenman, Evelyn Vaga and Lisa Silveria.**

In **Alameda and Contra Costa** the Senior Paramedic Program shall be continued for those employees who are currently in the program. Employees currently receiving the Senior Paramedic Differential are:

**Contra Costa;** Ronald Wolff, Fausta Uquillias, Steve Rodgers, Vicki Repetto, Dave Petit, Joe Parker, Dave Mullarky, Scott Miller, James Maddox, Rich Hodge, Don Fennell, Walter Fields, Robin Henry and Chris Hary

**Alameda;** Bert Burk, Mark Caplin, Kyle Carlson Michael Dutra, John Fagan, Paul Ladwig, Steven Mingus, Mark Quinn, Luis Alanis, Ryan Finlayson, Richard Martinez, Brian Oftedal, Lorena Omlor, Ben Schmidt, Ernest Aguirre, Damien Burnett and Paul Schuler.

In **Alameda, Contra Costa, Santa Clara, and San Mateo BLS** employees assigned to dedicated CCT or Neo-natal units will receive a pay differential of $ .35 per hour for all hours assigned. Employees on non-dedicated units which are assigned a CCT or Neo-natal call will receive the premium for the duration of the call. This differential will not be used to lengthen calls.

**EMTs in Stanislaus** will receive a differential of twenty-five cents ($ .25) per hour for all hours assigned to dedicated CCT unit. When an EMT is assigned to a unit not dedicated to CCT but is assigned a CCT



BARTON100626

call, he/she will receive the differential for the duration of the call. The Union and the Employer agree this will not be used to prolong calls.

**Marin** employees classified as **EMTs** who are out stationed in Sonoma County and cross trained for neo-natal/CCT shall receive an hourly premium such that their hourly wage rate will be equivalent to the rate step on the Sonoma EMT wage rate scale that is appropriate for their length of service.

In **Contra Costa** and **Santa Clara** certain **EMTs**, who were assigned to 24/72 schedules when those schedules were converted to 24/56, shall, when assigned to a 24/56 schedule, receive a differential of 7%. Dennis Frazier.

In **Contra Costa** those EMTs are: Tim Burkholder, Laron Johnson, John Greene, Chris Cobble, Cynthia Jagger.

In **Santa Clara** those EMTs are: Cynthia Smith, Marge Epich, Tom Levy, Larry Gapuz, Steve Ward, Eric Mortimer, Trina Johnson, Brian Massey, Keith Hartmen, Joe Hernandez.

Current **EMTs** in **Alameda** who are moved to a 24/56 hour work week as a result of the Company reducing units with two paramedics to "one on one" staffing, will be paid at the 24/72 hour rate and an additional amount of 7% for all hours worked on such "one on one" units.
For all future EMT employees who move to the 24/56 hour work week on "one on one" staffed units, will be paid the 24/72 hour rate for all hours worked on such units. The following employees are eligible for the 7% differential: Tamara Bedano, Felicia Buack, Andy Chelberg, Joe Fountain, Pat Gibson, Steve Hartwig, Pete Nahm, Mariam Tangerlini, Kevin Reynolds.

At Burlingame Dispatch the night shift differential shall be seventy-five cents ($.75) per hour for all hours worked between 6:00 p.m. and 6:00 a.m.

Employees in **Stanislaus** who are certified instructors in two (2) or more of the following categories will receive an additional three percent (3%) pay differential: ACLS, PALS, BTLS and/or PHTLS, CPR/American Red Cross or Heart Association, foreign language and/or sign language, advanced first aid and/or EMT/EMT-P instructor(s). Personnel who are certified instructors must provide services at Company directed or sponsored programs once every four months (3 times per year) to maintain the 3% differential unless there is not opportunity to instruct provided by the Company or an outside agency.

**In Alameda, Contra Costa, Santa Clara, and San Mateo Stockers & Washers** will be placed in a new classification known as **Stocker/Washer**. It is agreed that all such employees will perform the duties of both classifications and will be paid using the Stockers wage rates according to the appropriate step level found in the appropriate "after, 1993" or "before, 1993" column.

Stocker/Washers will be required to dispense controlled substances to the ambulances and to monitor the deployment office. Stocker/Washers will receive an additional $1.00 per hour per shift premium pay differential in return for these extra duties. Should the requirement for dispensing narcotics and monitoring the deployment office be eliminated the Employer may eliminate this pay differential.

Stocker/Washer duties shall be as follows:
1.    Ensure that company vehicles are properly stocked with required equipment, materials and controlled substances;
2.    Ensure that company vehicles are appropriately washed and detailed;
3.    Perform the cleaning and maintenance of ambulance related medical equipment;
4.    Handle and dispose of bio-hazardous and infected waste materials;

106



BARTON00627

5.    Coordinate with the mechanics for the repair and maintenance of company vehicles;
6.    Assist in changing main oxygen tanks;
7.    Receive and handle incoming supplies and requisitioned orders;
8.    Maintain general work area by sweeping floors and emptying trash;
9.    Monitor the deployment office when requested; and
10.   Perform other related duties as assigned.

It is agreed that employees hired after 9/1/97 may be hired in the combined Stocker/Washer job classification or into separate Washer or Stocker classifications so long as the appropriate rate of pay as found in the Master agreement is applied

Section 15.2    Appointment – Wages

In **Stanislaus** Rehired employees will be placed on the salary step appropriate for one half (1/2) of his/her verified years of service in their job classification.  At the employee's anniversary date (date of hire) he/she will advance to the next step of the salary schedule

In **Tulare** the current practice of increasing the promoted EMT1 to EMT2 to the wage rate step that will give such employee at least a 4% wage increase will remain in effect.

Section 15.3    Overtime

In all dispatch centers **(including Burlingame effective 2/1/02 going forward only)** except **Monterey**, eight (8) and ten (10) hour shifts will be administered in accordance with the language in article 15.3 of the Master Agreement with the addition of 12-hour shifts, which shall read:

A.    Up to 12 hours in a day, straight time
B.    Over 12 hours in a day, double time.

Overtime will be paid according to state law except as otherwise provided in this Agreement.  Overtime will only be paid for hours worked, except as provided for in Article 12.1 of the Master Agreement.

In **Alameda** the Employer may institute a shift variation which allows for the scheduling of twelve-(12) hour shift shifts for Stockers. **Stockers** assigned to a twelve-(12) hour shift configuration shall be considered full-time for benefit purposes as song as the hours scheduled average 40 hours per week or more.  It is further agreed that for purposes of applying overtime for Alameda Stockers only, Article 13.3 shall be modified to read as follows:  The Employer and the Union may mutually agree to implement a ten (10) and/or twelve (12) hour shift for any or all employees under such conditions as are mutually acceptable.  Overtime hours worked on ten (10) or twelve (12) hour shifts shall be paid as follows;

1.    Up to ten (10) hours in a day for a ten (10) hour shift or twelve (12) hours in a day for a twelve (12) hour shift – straight time.
2.    Ten (10)(for ten hour shifts) or twelve (12) (for twelve hour shifts) to fourteen (14) hours in a day – time and one half.
3.    Over fourteen (14) hours in a day – double time.

Overtime will be paid according to State law except as otherwise provided in this Agreement.  Either party may cancel the 12-hour shifts referenced in the ALCO Side Letter No. 2 by written request to do so and which gives fourteen (14) days notice of such cancellation.

F PAGE 230

BARTONI00628

## Section 15.4   Filling Open Shift(s)

In the filling of temporary shift vacancies, the employer may use employees from outside the county/work location where the vacancies occur, provided that:

- All eligible part-time and full time employees with the county/work location have been offered the hours/shifts pursuant to Sections 11.10 and 15.4 of the Master Agreement
- Said employees meet all qualifications for the position and are accredited in the County of the assignment, if so required.

Applicable employees wishing to be assigned to work in another county/work location should submit a request to the appropriate scheduler, operations manager, director, or department head. The Company will then put such employee in a work-pool to call once the employees in that county/work location have been offered to fill open shifts.

Employees wishing to certify in more than one county/work location will be responsible for all expenses relating to accreditation and licensing.

Pay will be equivalent with employee's current pay step.

Seniority among the work-pool is non-existent – first come – first served pursuant to a page, or by pre-assigned availability list.

Employees working shifts/hours in a second county/work location shall not accrue seniority in said county/work location nor shall they accrue any special or additional rights under the transfer provisions of Sections 11.13 through 11.22 of the Master Agreement.

In **Sonoma,** the company agrees to provide a $25 call in bonus whether the employee is called or not. The employer also agrees not to utilize the mandatory call back list to cover pre-scheduled personal time off or vacation shifts. On call days for mandatory call back lists shall be equitably rotated in order to prevent employees from continuously having to serve two days on the call back within a month.

Also in **Sonoma** the filling of shift(s) determined by the Employer to be open, shall be done as provided in Article 15.4 of the Master Agreement with the sole exception being that an employee may refuse a mandatory holdover for legitimate cause.

An employee who claims the right to refuse a mandatory holdover due to cause shall cooperate with management in verifying the reason(s) for such refusal by providing, in a timely manner, a note of excuse from a physician or any other reasonable verification requested by the Employer.

A sick call coverage system will be utilized in **Santa Cruz County.** The scheduled "sick-call" employee shall carry a pager or will be available by telephone for the same period of time as is current policy and shall report for duty when contacted by the supervisor or his/her designee. Employees who report for work under the sick-call system shall be paid at the assigned rate of pay for the shift worked in accordance with Appendix "A". In addition, the sick call employee will be paid forty-five dollars ($45) per shift.



BARTON100629

## Section 15.6   Acting Supervisor Differential

In the **Modesto, Sacramento and Sonoma Dispatch Centers** during any shift in which no supervisor is assigned by the employer, the Employer shall pay a $1.00 per hour premium to a designated "Communications Lead Dispatcher" who, in addition to working the board will perform duties as described in OGL 1-107 effective 11/8/98. The duties are: Training of personnel; complete trainee evaluations, critiques, plans for improvement and other paper work as required; ensure that OGLs are understood and followed; maintain established training manual; participate in all Training Academics; be involved in any special projects and produce material for special projects if needed; and other duties as assigned. The $1.00 per hour premium will not be used when computing overtime.

In **Calaveras** the Employer reserves the right to appoint a non-probationary full-time employee from the bargaining unit to serve as Calaveras County Crew Chief. Such an employee will not have the right to discipline but may perform any investigations of alleged policy violations and will pass such information on to management for evaluation and determination of whether discipline is merited or not, as well as perform other administrative duties as requested by the Employer.

The Employer also reserves the right to remove any such employee after notice to the employee and the Union. The appointment or removal of an employee from the above described position shall not be subject to the grievance procedure contained in Article 6 of the Master Agreement. An employee selected and appointed by the Employer shall be paid a differential of fifty cents ($.50) per hour for all hours worked while service as the Calaveras County Crew Chief.

## Section 15.7   Bilingual Differential

In Monterey the premium shall be thirty-four cents ($.34) per hour or $70.00 per month, which ever is greater.

## Section 15.10  Communications Center Instructor Differential

At the **Sonoma Communications Center** the Communications Training Officer will be paid a differential of $.50 per hour for all normally scheduled hours of work.

## Section 15.11 Preceptor Pay

In **Stanislaus** employees designated as Preceptors shall receive a preceptor differential of $150.00 per month. Such differential shall be payment for duties related to training of interns assigned to the preceptor. Preceptors will receive the pay whether they have an intern or not. This pay will be separate on the paychecks. Not less than 7 employees may be designated as preceptors during the term of this Agreement. No preceptor shall refuse to intern without mutual consent with management. A preceptor who does refuse to intern without consent of management shall lose the differential.


EXHIBIT F PAGE 232

BARTONI00630

## Section 16.3   Uniforms Provided

In **Alameda, Contra Costa, Santa Clara and San Mateo BLS and Alameda, Contra Costa and Santa Clara ALS and Solano** the Company shall provide two portable radios to each crew.

In **Placer County** the Company will provide turnout style jackets for Full time employees with spares available for use from Auburn Operations.

## Section 16.4   Uniform Maintenance Allowance

In **Monterey** in accordance with the provisions of Section 16.4 the Employer has established a process for the cleaning/laundering of employee's uniforms. The laundry accommodations are: AMR has 3 dry cleaning vendors, one each in Prunedale, Salinas and Seaside. Employees may take their uniforms there for cleaning and the bill is sent directly to AMR for reimbursement.

## ARTICLE 19 COMMITTEE(S)

In **Calaveras** the provisions of Article 19 shall be changed to provide one employee and one management person for any committees that are formed as a result of this Article.

## Section 23.7   Replacement of Personal Items

In **Solano** replacement of personal items shall be as provided in Article 23.7 of the Master Agreement with the sole exception that Solano employees shall be entitled to a maximum of $100.00 of replacement value.

EXHIBIT *F* PAGE 233

BARTONI0063I

## LETTER OF AGREEMENT – I- 0701

This letter of agreement is entered into by and between Hospital and Health Care Workers' Union, National EMS Association, and American Medical Response.

During the recently complete negotiations, the parties agreed that solely for the purpose of providing 100% Employer paid coverage, the employees on the attached list may elect to transition from their current health plan to a replacement plan. For these specific employees the replacement plan will be considered the lowest cost HMO in their respective counties. If any of these employees choose to transition to a plan that is not considered the "replacement" plan, their current coverage and their deductions will be as outlined in Article 14.2, Sections A., B., and C. All other employees of such counties shall be subject to the provisions of Article 14.2, Sections A., B., and C.

The following plan changes shall detail the application of the above provisions.

1.  Sonoma county employees (Principal group) who are currently in Aetna HMO $5.00 co-pay plan, will have the Health Worker's Trust HMO 5$.00 co-pay plan considere as their replacement plan. If one of these employees elects coverage under a different plan, this provision will no longer apply.
2.  Sacramento, Yolo, Placer, San Joaquin, and Stanislaus county employees (Omni) group in a Blue Cross HMO $5.00 co-pay plan will have the Heath Workers trust HMO $5.00 co-pay plan. If one of these elects coverage under a differential plan, this provision will no longer apply.
3.  Alameda, Contra Costa, and Santa Cruz ALS county employees formerly in the Aetna POS plan with a 10% premium cost (3 years of service or more) will have the Health Workers Trust PPO plan considered their replacement plan at a 10% premium cost. If one of these employees elects coverage under a different plan, this provision will no longer apply.

This Letter of Agreement is hereby approved and executed by the parties listed below and shall be valid for the term of the Collective Bargaining Agreement to which it is appended and made a part of.

F    234

BARTON00632

# LETTER OF AGREEMENT- 2-07016

This letter of Agreement is entered into by and between Hospital and Healthcare Workers' Union, National EMS Association and American Medical Response.

The Parties hereby agree that the following guidelines shall be adopted for the Alameda/ Contra Costa ALS and Alameda/ Contra Costa/Santa Clara /San Mateo BLS bargaining units of AMR to establish terms of a Paramedic Critical Care Transport (PCCT) program implementation within Alameda County.

1. The Rate of pay for paramedics accepted to the PCCT program will be the equivalent to that of the Alameda County Paramedic "strike" rate. Which will be paid beginning with the first day of training.
2. EMT's assigned to the program will be paid under the terms of the current language in the BLS/ALCO/ COC/Santa Clara local addendum A. In addition, they will receive FTO compensation as outlined in Article 15.9 of the Collective Bargaining Agreement.
3. Rate of pay will be in place for all hours worked up to 00:00 hours and starting no earlier than 04:00 hours. In the event that unit hours are increased or scheduled part of the stated time period, both parties agree to enter into negotiations regarding rate of pay changes.
4. Selection for the PCCT program will be to board on the criteria established by the county of Alameda and AMR.
5. Personal meeting the PCCT criteria will be awarded positions and shift assignments on the basis of seniority.
6. In the event the program is dissolved <u>within 90 days of implementation of the program</u> the personnel will be returned to an equal position within their former job classification without loss of seniority.

This letter of Agreement os hereby approved and executed by the paries listed below and shall be valid for the term of the Collective Bargaining Agreement to which it is appended and made part of.

112

EXH F PAGE 235

# LETTER OF AGREEMENT NO. 3-0920

This letter of Agreement is entered into by and between Hospital and Healthcare Workers' Union, National EMS Association and American Medical Response.

The parties hereby agree that the following requirements must be met for paramedics to successfully bid into a Quick Response Vehicle (QRV) shift within Stanislaus County.

- Minimum of 2 years paramedic field experience
- 24 months free of discipline
- 24 months free of any clinical issues
- 24 months free of any PIP
- 24 months free of any customer complaints
- No preceptors or FTOs

This letter of Agreement is hereby approved and executed by the parties listed below and shall be valid from July 2001 to January 2002, of the Collective Bargaining Agreement to which it is appended and made part of

113

BARTONI00633

_E PAGE 236_

## MEMORANUM OF UNDERSTANDING 4-1011

This Memorandum of understanding in entered into the National EMS Association, and American Medical Response (AMR).

The Monterey employees' group addendum (expired 6/30/01) allowed for a maximum holdover of an employee beyond their shift, without the employee permission, up to half of the immediately completed shift. With new Master Agreement between NEMSA and American Medical Response, whish was effective July 1, 2001, the addendum is no longer valid, thus the holdover language is now limited to 2.5 hours beyond their shift. To assist AMR in making this transition so patient care and the county contract is not jeopardized, AMR is proposing the following:

Hold-Over Criteria

Effective October 11, 2001 to October 31, 2001, American Medical Response proposes the following exception to the Master Agreement, Article 15.4: "The Employer may hold the employee up to a maximum of 10 hours beyond the end of their regularly scheduled 24-hour shift and up to a maximum of 5 hours beyond the end of their regularly scheduled 12-hour shift. The first 2.5 hours of the Holdover will be paid according to the Master Agreement, Article 15.5 at a .5 premium of the employee's regular hourly rate of pay. The remaining hours mandated by the Employer will be paid at a premium of 3.0 times the employee's regular hourly rate of pay."

AMR and the NEMSA have agreed to work together during this time to resolve the issue and help create a solution for the transition. AMR has agreed to pay 3 employees their regular hourly rate of pay, appointed by the Union to serve on the committee that will be working with local management towards a solution. All time-spent working on this committee will be paid as hours worked.

> The company further agrees, that it will only employ the use of advance mandations (as specified in Section 15.4 of the Master Agreement) in cases where no other means for covering shifts is possible. The company further agrees to make reasonable efforts to continue their attempts to find coverage and relieve those assigned.

Should it become necessary to extend this practice beyond October 31, 2001, it will only be done by mutual agreement from both the Employer and the Union.

The Union and the Employer agree this is a non-precedent setting agreement.

This Memorandum of Understanding is hereby approved and executed by the parties listed below.

BARTON00634

# MEMORANDUM OF UNDERSTANDING 5-1026

BARTONI00635

This Memorandum of understanding in entered into the National EMS Association, and American Medical Response (AMR).

Mandatory Criteria

Effective October 26, 2001 and continuing for the next 90 days all full-time Alameda County EMT's and Paramedics will be required to sign-up for 2 mandation shifts every thirty days. Field staff will have the option to sign-up for open shifts on their own, or will be assigned them by AMR administrative staff. The union is waving the 48-hour mandation window for the period of this agreement. Any additional shifts worked above the mandated two will be paid under normal terms of he labor contract for overtime unless that shift was deemed mandatory by AMR supervisory staff. In the event that open shift demand does not require every field staff person to work two mandated shifts, AMR holds no liability for financial reimbursement for un-needed coverage. Both parties understand that this assignment can be cancelled with 15 day written notice.

Should it become necessary to extend this practice beyond 90 days from October 26, 2001, it will only be done by mutual agreement from both the employer and the union.

The Union and the Employer agree this is a non-precedent setting agreement.

This Memorandum of Understanding is hereby approved and executed by the parties listed below.

115

EXHIBIT E PAGE 238

BARTON00636

## MEMORANDUM OF UNDERSTANDING 6-1119

This Memorandum of understanding in entered into the National EMS Association, and American Medical Response (AMR).

The Monterey employees and the Union group has worked with the AMR Management to create temporary processes which will assist the operations with staffing units during a specific period of time. These processes will be a change to the new Master Agreement between the National EMS Association and American Medical Response, which was effective July 1, 2001. This will not be precedent setting and shall apply only to the Monterey Operations and will continue for 60 days from the effective date of 12/01/01. If these processes need to continue beyond 60 days from the effective date, it will be mutually agreed upon by both the Employer and the Union.

Night Car Incentive Pay

All non-24 hour cars that are scheduled to end after 0100 hours shall be paid at the eight hour rate.

Scheduling Part-Time Employees

Part-time employees will be provided with a list of all open shifts to include approved PTO, stand-by, open shifts, special events, and planned compliance cars, before the next month's bid for scheduling. Shifts will be assigned by order of seniority. A minimum of two (2) shifts a month to a maximum of thirty-six (36) hours in a week, shall be pre-scheduled. The list will be mailed to the employee's home by the 28th day, two (2) months in advance and must be returned to the local Monterey Operations by mail or in-person (preferred) by the 5th. As example: The pre-scheduled shift for November will be mailed to employees by September 28th and expected return to the Monterey Operations by the 5th of October.

Pre-Scheduling Mandatory Assignment of Full-Time Personnel

When the Employer determines it is necessary based on the needs of the Local operations to assign mandatory extra duty shifts on the schedule, full-time personnel will be provided with a list of available shifts. The amount of shifts to be pre-scheduled will be determined by managers using the amount of shifts remaining after pre-scheduling part-time personnel. The shifts will be assigned in order of seniority. The remaining open shifts will be assigned in reverse seniority. The list will be posted the 8th of the proceeding month and bids for assignment must be turned in to the local Monterey Operations by the 10th of the month. Full-time employees who have not returned their prescheduled bid days before the 10th of the month, will be moved to the bottom of the seniority list for scheduling of open shifts and will have shifts assigned to them.

Filling post Scheduled Openings

Shifts that need to be filled during the month such as sick call, PTO, stand-by, special events, compliance cars, vacated positions, openings due to reassignment or any other work assignment that may revert to a mandatory opening, will be offered at the mandatory overtime rate premium as stipulated in article 15.4 of the Master Agreement, which is 1.0 premium pay.

Voluntary Assignment of Open Shift

Full-time personnel, who pick up a shift offered through means outlined in article 15.4 of the Master Agreement, will be automatically moved to the bottom of the mandatory callback list.

Stand-by and Special Events

Stand-by and special events will be paid at the eight- hour (8) rate for the entire shift.
Voluntary Pre-Scheduling of Extra Duties

EXHIBIT F PAGE 239

BARTONI00637

A full-time employee who pre-schedules three (3) extra shifts by the 5th of the preceding month will be continuously cycled to the bottom of the mandation lists for the month those shift were submitted. In cases were two or more employee pre-scheduled shifts under agreement on the same date; the employees will be ranked at the bottom of the list in seniority order. The shifts shall be paid at the employees prevailing rate, defined as their standard rates, which may include normal overtime, but with no specially imposed differentials, bonuses, or premium rates not otherwise specified in the Master Agreement. In the event the employee gives availability on a day that does not have an open shift, the employee will be highlighted on the scheduled to be called in case of a sick call or any other unforeseen event.

School Schedules

Full-time employees with a verified (copy of registration schedule from school) school schedule, may request to have the days they are in school added to the pre-scheduled availability list. The days requested must be replaced one for one with like shifts and one additional extra duty in addition to any oher required mandatory assignment on verified school days. The number and criteria for eligibility will be established and mutually agreed upon by a subcommittee of both management and field representatives. This subcommittee will convene prior to the implementation of this agreement, and assemble in written form, all applicable parameters for participation.

Incentive Rewards Programs

Full-Time Employees who maintain a perfect attendance record for 90 days, which includes not giving shifts away, will be awarded with a bonus of $250 at the end of the period. This bonus will be paid on a separate paycheck on the next regularly scheduled pay period after the completion of 90 days.

The Union and the Employer agree this is a non-precedent setting agreement.

This Memorandum of Understanding is hereby approved and executed by the parties listed below.

117

# MEMORANDUM OF UNDERSTANDING 8-0205

This Memorandum of Understanding is entered into by and between the National EMS Association and American Medical Response (AMR)

The Solano employees, (Helen Profeit, Brad Holms, and Paul Paole) and Union agrees to dissolve the Solano collective bargaining unit and transfer to the Sacramento/Placer/Yolo bargaining unit with the following conditions:

The 3 employees listed above will continue to receive the following:

- The recognized holidays for these 3 employees will be as follows.
- New Years Day
- Martin Luther King Day
- Memorial Day
- Independence Day
- Labor Day
- Veterans Day
- Veterans Day
- Thanksgiving Day
- Christmas Day
- These 3 employees will continue to be paid according to the Solano Wage scale that was negotiated and effective 7/1/01.
- The three employees listed above have first rights of refusal to continue to work in Solano County. Should they bid outside of Solano County, they loose firs rights of refusal benefit under this MOU.
- Helen Profeit will remain a part-time EMT with shift requirements only including Solano and Yolo Counties.
- If American Medical Response is successful in the future to obtain the ALS countywide contract for Solano, American Medical Response agrees to reinstate the Solano Wage Schedule and all other applicable contract provisions in the current Collective Bargaining Agreement.

If any of the 3 employees listed above transfer into another county, besides Solano during the life of this agreement, this MOU will also be immediately null and void and there are 3 employees will be part of the Sacramento/Yolo/Placer bargaining unit for all wages and benefits. However, they would be circled until they fall into the appropriate wage step on the Sacramento/Yolo/Placer wage scale.

This MOU is a change to the new Master Agreement between the National EMS Association and American Medical Response, which was effective July 1, 2001.

The Union and the Employer agree this is a non-precedent setting agreement.

This Memorandum of Understanding is hereby approved and executed by the parties listed below, effective immediately on the execution date signed by the Union and continues until the expiration date of the current Master Agreement, which expires June 30, 2006

118

BARTON100638

## LETTER AGREEMENT #10
### San Benito Field Employees

This letter of Agreement is entered into by and between NEMSA and American Medical Response solely to recognize that the field employees of San Benito County have elected to join the Union and to set a wage scale effective 2/27/02. All other terms and conditions of the Collective Bargaining Agreement between American Medical Response and National EMS Association dated 7/1/01 will apply to these employees.

San Benito operations

Paramedic

| Shift | #1<br>0-1yr | #2<br>1-2 yr | #3<br>2-3 yr | #4<br>3-4 yr | #5<br>4-5 yr | #6<br>>5 yr |
|-------|------|-------|-------|-------|-------|-------|
| 24/56 | 11.06 | 11.39 | 11.73 | 12.09 | 12.45 | 12.82 |
| Special Events | 13.06 | 13.39 | 13.73 | 14.09 | 14.45 | 14.82 |

EMT

| | #1 | #2 | #3 | #4 | #5 | #6 |
|-------|------|-------|-------|-------|-------|-------|
| 24/58 | 7.26 | 7.48 | 7.70 | 7.93 | 8.17 | 8.42 |
| Special Events | 9.26 | 9.48 | 9.70 | 9.93 | 10.17 | 10.42 |

1. All employees will remain in the same step that they were in prior to the union election.
2. Step Increase is on an annual basis.
3. Step Increases will only occur on the employee's next anniversary date after the election.
4. Employees will be grandfathered into their existing steps. The placement is not based upon tenure or years of service.

119

EXHIBIT F PAGE 242

BARTON100639

## MEMORANDUM OF UNDERSTANDING #11-0502

BARTONI00640

**This Memorandum of Understanding** is entered into by and between the National EMS Association and American Medical Response (AMR).

It is understood that AMR Alameda County Clerical, Pre-Billers and Schedulers will have Presidents day as their designated holiday in place of Martin Luther King Day.

This MOU is a change to the new Master Agreement between the National EMS Association and American Medical Response, which was effective July 1, 2001

The Union and the Employer agree this is a non-precedent setting agreement.

This Memorandum of Understanding is hereby approved and executed by the parties listed below; effective immediately on the date signed by the union and counties until the expiration date of the current Master Agreement, which expires June 30, 2006.

120

F PAGE 243

## LETTER OF AGREEMENT #12-0502

This Letter of Agreement is entered into by and between National EMS Association and American Medical Response solely to
Recognize that the Pre-Billers of Sonoma County have elected to join the union and set a wage scale effective
With beginning of the first pay period following July 1, 2002

All other terms and conditions of the Collective Bargaining Agreement between American Medical Response and National EMS Association dated 7/1 01 will apply to these employees.

Sonoma Pre-Billers

| Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 |
|--------|--------|--------|--------|--------|--------|
| 0-1yrs | 1-3 yrs | 3-5 yrs | 5-7 yrs | 7-10yrs | >10yrs |
| 10.82 | 11.63 | 12.42 | 13.29 | 14.32 | 15.32 |
|  |  |  |  |  |  |

Effective 7/1/2002, Sandra Peter will be placed in Step 5 and Juan Mondrogon will be placed in Step 4 of the above Wage Scale. In consideration of their continued employment, on April 19, 2003, Sandra Peter will be advanced to step 6 and on July 22, 2004, Joann Mondrogon will be advanced to a step 5. At that time, her step will be frozen until July 22, 2009, when she will advance to a step 6.

Sandra Peter will not be granted grand-fathering status for her medical benefits.

This letter of Agreement is hereby approved and executed by the parties listed below; effective immediately on the execution date signed by the Union and continues until the expiration date of the current Master Agreement which expires June 30, 2006.

121

EXHIBIT _F_ PAGE 244

BARTON100641

## MEMORANDUM OF UNDERSTANDING 13-0602

BARTON00642

This Memorandum of understanding is entered into by and between the National EMS Association and American Medical Response (AMR).

The Company and the Union agree that the below interpretation of the CBA should be used in determining the employees cost sharing calculations.

A.   Section 14.2, Paragraph A, B, & C are interpreted to read as follows:

> For Employers over three years:
> If the employee chooses the lowest cost plan available, the employer will pay 100% of the cost except where the increase in costs from year is greater than 15%. In that case, the employee and employer will equally share all annual cost increases greater than 15% on a cumulative basis through the life of the contract.
> If the employee chooses a higher cost plan, the employee will pay the difference in costs between that plan and the lowest cost plan for the prior plan year, plus the employee and employer will equally share all cost increases for the chosen plan greater than 15% for the current year in addition to any previous years cumulative shared costs for the lowest cost plans as in the above paragraph.
> The lowest cost plan will be considered in the Kaiser $20 co-pay plan unless any other approved plan has actual lower costs.

> For employees under three years:
> The employee will pay 25% of the cost of the chosen plan.

B.   Side Letter #1 is interpreted to read as follows:

> There are employees described in Sections 1 & 2 will be considered to have the Health Workers Trust HMO $20 co-pay plan considered as their replacement plan.

EXHIBIT _F_ PAGE 245

# MEMORANDUM OF UNDERSTANDING 4-1011-A
### Revised 1/14/02 for additional 60 day continuance

BARTONI00643

This memorandum of Understanding is entered into by and between the National EMS Association and American Medical Response (AMR).

The Santa Clara employee and Union group and AMR Management have agreed to create a temporary process to assist the local operations with shift bids and mandatory assignment while the local operations is experiencing a staffing shortage. This process will be temporary and continue for 60 days from the above date and maybe extended upon mutual consent of both parties.

To assist AMR in making this transition, so patient care and the county contract is not jeopardized. AMR is proposing the following:

- Prior to the beginning of the month all part-time employees must be allowed to sign up for the number of shifts normally required to fulfill their minimum requirements. They may also sign up for extra shifts not to exceed 40 hours per week for the said month. This shall occur prior to determining the number of shifts of mandatory overtime required to be staffed by full time employees.
- AMR will notify National EMS Association of the number of open shifts for that month and the number of shifts each full time employees is expected to commit to.
- AMR will hold a "seniority Bid" style process to allow the most senior local employee to the last senior employee to "bid" on shifts left open. A local shop bid style process may be present at the time to help resolve any issues that may arise.
- The number of shifts allowed to each employee will be equal to the number of the shifts determined by AMR for each employee.
- Each job share partner and part-time 36 employees will be required to sign up for the same amount of shifts as full-time employees.
- Each full time employee may elect not to sign up for the number of shifts required. However, they may be assigned a shift or shifts to full fill their maximum requirement on an as needed basis.
- If the employer signs up for the expected number of shifts as determined by AMR they will be exempt from manning for the entire time period covered by shift sign up/ seniority overtime bid.
- At the conclusion of the shift sign up/seniority overtime bid, a "free for all" sign up for the remaining shifts will be held.
- To fill any remaining shifts a second bid style process will be held after the "free for all". For this "bid", AMR will contact employees in reverse seniority order and the employee must then choose their required number of mandated shifts or management will then assign them in their shifts. The number of mandated shifts shall not exceed the number of shifts per employees as determined necessary for that time period. All employees will be responsible to provide contact numbers to AMR for the assignment process. The rules and procedures for contact of these sign-ups will be the same as out regular bid days.
- Beyond this procedure all open shifts will be filled by regularly scheduled floats and/or those volunteering to work and then force manning those that have not worked or signed up for the requisite number of shifts for the given time period.
- No employee who has worked or signed up for the required numer of shifts may be mandated for additional shifts. At this employee's discretion they may volunteer to work additional shift(s) and if they do so they will be compensated as if mandated.

The Union and the Employer agree this is a non-precedent setting agreement.

This Memorandum of Understanding is hereby approved and executed by the parties listed below

 EXHIBIT _F_ PAGE _246_

BARTON00644

# MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding is entered by and between the National EMS Association and American Medical Response (AMR).

AMR and the Union have agreed to create a temporary process to assist the Santa Cruz operation with filling open shifts at time when the division is experiencing an unprecedented staffing shortage. This process will be temporary and effective from December 14, 2002 through January 1, 2002 but may be extended upon mutual consent of both parties.

In order to ensure uninterrupted ambulance services to the community, AMR proposes the following:

- On December 13th and 14th, Operations will attempt to contact every part-time employee in order to fill as many of the openings as possible.
- By close of business on December 14th, AMR will notify the local shop stewards of open shifts in seniority order. Employees will be required to call the Main at a specified time based on their position on the seniority list to place their bid. A local shop steward is encouraged to be present during this process to help resolve any issues that may arise. Any employee who are unreachable or fails to call in at their specified time will be assigned a shift at the time they call. If they fail to call for their assignment at all, they will be assigned a shift by Operations.
- Job share partners must commit to sign up for the total number of shifts required for one full-time employee.
- If any shifts remain open at the end of the bid process on December 17th, a final bid process will be held on December 18th. AMR will contact employees in reverse seniority order to assign mandatory shifts until all are filled. All employees will be responsible to provide contact numbers in order for AMR to carry out the bid process on December 18th. Employees who are unreachable or fail to call back during the bid process will be assigned a shift by Operations.
- The number of shifts per employee as determined necessary for the time period in question.
- Employees will be exempt from further mandatory assignment according to the term and language in the current Master Agreement specifically section 15.4.

The Union and the Employer agree this is a non-precedent setting agreement.

This Memorandum of Understanding is hereby approved and executed by the parties listed below.

124

EXHIBIT _F_ PAGE 247

# DECLARATION

## DECLARATION OF LYNNE M. WARD

I, Lynne M. Ward, the undersigned, hereby declare and say as follows:

1.    I am Paralegal/Contracts Administrator for Emergency Medical Services Corporation ("EMSC"). EMSC is the parent company of  Defendants American Medical Response, Inc., American Medical Response West, American Medical Response Ambulance Service Inc., American Medical Response of Inland Empire, and American Medical Response of Southern California (collectively "Defendants").  I have direct and personal knowledge of the facts stated herein and, if called and sworn as a witness, I would and could testify competently to the truth of the matters set forth herein.   I submit this declaration in support of Defendants' removal of the State Court Action.

2.    Defendant American Medical Response, Inc. was, at the time of the filing of this action, and still is, a corporation formed under the laws of the State of Delaware, and has its principal place of business in Greenwood Village, Colorado. It has no employees in California. Defendant American Medical Response, Inc. is, therefore, a citizen of Delaware and Colorado.

3.    Defendant American Medical Response Ambulance Service, Inc. was, at the time of the filing of this action, and still is, a corporation formed under the laws of the State of Delaware, and has its principal place of business in Greenwood Village, · Colorado.   It has no employees in California. Defendant American Medical Response Ambulance Service, Inc. is, therefore, a citizen of Delaware and Colorado.

4.    Defendants currently employ 265 dispatchers in California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of August, 2008, at Greenwood Village, Colorado.

LYNNE M. WARD

- 248 -

LA:525517v1

Bartoni v. American Medical Response, Inc., et al.
NOTICE OF REMOVAL

1

2                                  **PROOF OF SERVICE**

3    STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4    1.   At the time of service I was at least 18 years of age and not a party to this
          legal action.

5
     2.   My business address is 1925 Century Park East, Suite 500, Los Angeles,
6         California 90067-2506.

7    3.   I served copies of the following documents (specify the exact title of each
          document served):

8         **NOTICE OF REMOVAL BY DEFENDANTS AMERICAN MEDICAL
          RESPONSE WEST, AMERICAN MEDICAL RESPONSE**
9         **AMBULANCE SERVICE INC., AMERICAN MEDICAL RESPONSE
          OF INLAND EMPIRE, and AMERICAN MEDICAL RESPONSE OF**
10        **SOUTHERN CALIFORNIA; Under 28 U.S.C. § 1332(d)) [Class Action
          Fairness Act Of 2005]; 28 U.S.C. §1441(a) and (b) [Federal Question]**

11
     4.   I served the documents listed above in item 3 on the following persons at the
12        addresses listed:

13
                    **Attorneys for Plaintiff and the**
14                  **proposed class:**

15                  Todd M. Schneider, Esq.              Telephone:  415.421.7100
                    Clint J. Brayton, Esq.               Facsimile:   415.421.7105
16                  W.H. "Hank" Willson, IV
                    SCHNEIDER WALLACE COTTRELL
17                  BRAYTON KONECKY LLP
                    180 Montgomery Street, Suite 2000
18                  San Francisco, CA 94104

19   5.   a.  ☐   **By personal service.**  I personally delivered the documents on the
                  date shown below to the persons at the addresses listed above in item
20                4.  (1) For a party represented by an attorney, delivery was made to
                  the attorney or at the attorney's office by leaving the documents in an
21                envelope or package clearly labeled to identify the attorney being
                  served with a receptionist or an individual in charge of the office.  (2)
22                For a party delivery was made to the party or by leaving the
                  documents at the party's residence between the hours of eight in the
23                morning and six in the evening with some person not less than 18
                  years of age.
24
          b.  ☒   **By United States mail.**  I enclosed the documents in a sealed
25                envelope or package addressed to the persons at the addresses in item
                  4 and *(specify one):*
26
                  (1) ☐  deposited the sealed envelope with the United States Postal
27                       Service, with the postage fully prepaid on the date shown
                         below, or
28

                                      - 249 -

LA:525517v1

1

2

(2) ☒  placed the envelope for collection and mailing on the date shown below, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

3

4

5

6

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

7

8

c. ☐  **By overnight delivery.** I enclosed the documents on the date shown below in an envelope or package provided by an overnight delivery carrier and addressed to the person at the addresses in item 4. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

9

10

11

d. ☐  **By messenger service.** I served the documents on the date shown below by placing them in an envelope or package addressed to the person on the addresses listed in item 4 and providing them to a professional messenger service for service. (A declaration by the messenger must accompany this proof of service or be contained in the Declaration of Messenger below.)

12

13

14

15

e. ☐  **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents on the date shown below to the fax numbers of the persons listed in item 4. No error was reported by the fax machine that I used. A copy of the fax transmission, which I printed out, is attached.

16

17

18

f. ☐  **By e-mail or electronic transmission.** Based on an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent on the date shown below to the e-mail addresses of the persons listed in item 4. I did not receive within a reasonable time after the transmission any electronic message or other indication that the transmission was unsuccessful.

19

20

21

6.  I served the documents by the means described in item 5 on *(date)*: August 20, 2008

22

23

I declare under penalty of perjury under the laws of United States of America and the State of California that the foregoing is true and correct.

24

| 8/20/08 | Donna M. Bourgeois | |
|---------|--------------------|--|
| DATE | (TYPE OR PRINT NAME) | (SIGNATURE OF DECLARANT) |

25

26

27

28

Bartoni v. American Medical Response, Inc., et al.
NOTICE OF REMOVAL